# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS,
# DALLAS DIVISION

| | |
|---|---|
| Hiram Patterson, Texas Division, Sons of Confederate Veterans, Inc., Plaintiffs, <br><br> v. <br><br> Mike Rawlings, In His Official Capacity as Mayor of the City of Dallas, and Scott Griggs, Adam Medrano, Casey Thomas, II, Dwaine Caraway, Rickey Callahan, Omar Narvaez, Kevin Felder, Tennell Atkins, Mark Clayton, Adam McGough, Lee Kleinman, Sandy Greyson, Jennifer Gates, Philip Kingston, In Their Official Capacities as Members of the Dallas City Council, Defendants. | Civil Action No. 17-2361 |

## PLAINTIFFS' ORIGINAL COMPLAINT
## & APPLICATION FOR INJUNCTIVE RELIEF

### A. PARTIES

1. Plaintiff, Hiram Patterson, is a citizen of the State of Texas, a resident taxpayer of Dallas, and a descendant of Confederate veterans.

2. Plaintiff, Texas Division, Sons of Confederate Veterans, Inc., is a non-profit corporation that is organized under the laws of the State of Texas.

3.     Defendant, Mike Rawlings, is an officer of the City of Dallas and is being sued in his official capacity. He may be served by serving the Office of the Mayor. *See* Fed. R. Civ. P. 4(j)(2)(A).

4.     Defendant, Scott Griggs, is an officer of the City of Dallas and is being sued in his official capacity. He may be served by serving the Office of the City Council. *See* Fed. R. Civ. P. 4(j)(2)(A).

5.     Defendant, Adam Medrano, is an officer of the City of Dallas and is being sued in his official capacity. He may be served by serving the Office of the City Council. *See* Fed. R. Civ. P. 4(j)(2)(A).

6.     Defendant, Casey Thomas, is an officer of the City of Dallas and is being sued in his official capacity. She may be served by serving the Office of the City Council. *See* Fed. R. Civ. P. 4(j)(2)(A).

7.     Defendant, Dwaine Caraway, is an officer of the City of Dallas and is being sued in his official capacity. He may be served by serving the Office of the City Council. *See* Fed. R. Civ. P. 4(j)(2)(A).

8.     Defendant, Ricky Callahan, is an officer of the City of Dallas and is being sued in his official capacity. She may be served by serving the Office of the City Council. *See* Fed. R. Civ. P. 4(j)(2)(A).

9.     Defendant, Omar Narvaez, is an officer of the City of Dallas and is being sued in his official capacity. He may be served by serving the Office of the City Council. *See* Fed. R. Civ. P. 4(j)(2)(A).

10. Defendant, Kevin Felder, is an officer of the City of Dallas and is being sued in his official capacity. She may be served by serving the Office of the City Council. *See* Fed. R. Civ. P. 4(j)(2)(A).

11. Defendant, Manny Pelaez, is an officer of the City of Dallas and is being sued in his official capacity. He may be served by serving the Office of the City Council. *See* Fed. R. Civ. P. 4(j)(2)(A).

12. Defendant, Tennell Atkins, is an officer of the City of Dallas and is being sued in his official capacity. He may be served by serving the Office of the City Council. *See* Fed. R. Civ. P. 4(j)(2)(A).

13. Defendant, Mark Clayton, is an officer of the City of Dallas and is being sued in his official capacity. He may be served by serving the Office of the City Council. *See* Fed. R. Civ. P. 4(j)(2)(A).

14. Defendant, Adam McGough, is an officer of the City of Dallas and is being sued in his official capacity. He may be served by serving the Office of the City Council. *See* Fed. R. Civ. P. 4(j)(2)(A).

15. Defendant, Lee Kleinman, is an officer of the City of Dallas and is being sued in his official capacity. He may be served by serving the Office of the City Council. *See* Fed. R. Civ. P. 4(j)(2)(A).

16. Defendant, Sandy Greyson, is an officer of the City of Dallas and is being sued in his official capacity. He may be served by serving the Office of the City Council. *See* Fed. R. Civ. P. 4(j)(2)(A).

17. Defendant, Jennifer Gates, is an officer of the City of Dallas and is being sued in his official capacity. He may be served by serving the Office of the City Council. *See* Fed. R. Civ. P. 4(j)(2)(A).

18. Defendant, Philip Kingston, is an officer of the City of Dallas and is being sued in his official capacity. He may be served by serving the Office of the City Council. *See* Fed. R. Civ. P. 4(j)(2)(A).

## B. JURISDICTION

19. The Court has jurisdiction over the lawsuit, because the suit arises under Amendments I and XIV, Sec. 1, of the U.S. Constitution. "Congress shall make no law . . . abridging the freedom of speech.". . . "Nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." 28 U.S.C. § 1331. *Gunn v. Minton*, 133 S.Ct. 1059, 1064 (2013); *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 552 (2005).

## C. VENUE

20. Venue is proper in this district under 28 U.S.C. § 1391(B)(2), because all of the events or omissions giving rise to this claim occurred in this district and because all of the property at issue is situated in this district. The Confederate Monuments in Dallas are located in this district, and defendants' actions occurred and will occur in this district.

## D. FACTS

21. In June 1936, Lee Park and the equestrian statue to Robert E. Lee were dedicated.

22. Today, September 6, 2017, at 9 a.m., the Dallas City Council has convened to consider removing the Lee Monument in Lee Park.

23. The City Council is considering the removal of the Lee Monument under agenda item No. 1. Dallas City Council, Agenda, City Council Briefing Meeting, Wednesday September 6, 2017 http://dallascityhall.com/government/Council%20Meeting%20Documents/Agenda_090617.pdf.

24. The Resolution under No. 5 directs the city manager to immediately remove the Robert E. Lee Monument. Under No. 6, the Resolution directs the city manager to transfer funds to remove all Confederate monument.

25. The Rules of Procedure for the Dallas City Council do not allow such actions to be undertaken in Briefing Meetings. Dallas City Council Rules 6.1(b)((2), http://www.dallascityattorney.com/City%20Council%20Rules%203-2015.pdf. No voting items are allowed on briefing days except "emergencies, construction contracts, construction change orders, architectural and engineering contracts, and architectural and engineering supplemental agreements." *Id.*

### E. COUNT 1 - ABRIDGEMENT OF FREE SPEECH

26.     Freedom of speech, expressed in Article 1, Section 8, of the Texas Constitution and the First Amendment of the U.S. Constitution, may not be abridged.  The Supreme Court of the United States has held in a case concerning whether the public burning of the American flag at a political protest was a criminal act that:

> Expression may not be prohibited on the basis that an audience that takes serious offense to the expression may disturb the peace, since the Government cannot assume that every expression of a provocative idea will incite a riot, but must look to the actual circumstances surrounding the expression. . . .
>
> The Government may not prohibit the verbal or nonverbal expression of an idea merely because society finds the idea offensive or disagreeable, even where our flag is involved.  Nor may a State foster its own view of the flag by prohibiting expressive conduct relating to it, since the Government may not permit designated symbols to be used to communicate a limited set of messages.

*Texas v. Johnson*, 491 U.S. 397, 397-98 (1984).

27.     The State can have no interest in determining the message, or referent, of political symbols.

> [T]he State's claim is that it has an interest in preserving the flag as a symbol of nationhood and national unity, a symbol with a determinate range of meanings. (record citation omitted). . . .
>
> If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the expression of an idea itself offensive or disagreeable.

*Texas v. Johnson*, 491 U.S. at 413-14 (citing *City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 804 (1984); *Bolger v. Young's Drug*

*Products Corp.*, 463 U.S. 60, 65, 72 (1983); *Buckley v. Valeo*, 424 U.S. 1, 16-17 (1976); *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 95 (1972)).

> If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein.

*Texas v. Johnson*, 491 U.S. at 415 (quoting *West Virginia Board of Education v. Barnette*, 319 U.S. 624, 624 (1943) (Jackson, J.)) (public school students cannot be compelled to salute American flag, nor to recite Pledge of Allegiance).

28.     The Confederate Monument was erected to express a controversial political opinion. The City's plan to remove the Monument in a matter of hours is an imminent and unconstitutional attempt to curtail free speech by ordaining what mute political symbols must mean. The City's planned suppression of the Monuments' political speech is a first step in a totalitarian move to determine authorized forms of political communication and to punish unauthorized political speech. The City has expressed no compelling interest in the abridgment of this core political speech.

### F. COUNT - ABRIDGEMENT OF DUE PROCESS

29.     The U.S. Constitution requires that for government benefits or property or a liberty interest to be denied, the state actor must provide meaningful opportunity to be heard. *Goldberg v. Kelly*, 397 U.S. 254, 267-68 (1970). The hearing must be "at a meaningful time and in a meaningful manner." *Id.* quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965). This requires that recipients have timely and adequate notice. *Goldberg*, 397 U.S.

at 268.

30.   The Dallas City Council is preventing meaningful hearing of public opinion on the removal of Confederate Monuments by voting on the Monuments' removal in a manner not permitted under City Council Rules. These Rules were promulgated in order to provide fair notice and opportunity to appear before the Council. However, when the City Council votes in a briefing session and not during an agenda session, the City Council is purposefully avoiding public participation of a highly controversial issue that public polling shows favors the retention of these Confederate Monuments.

31.   The Council's removal votes in a procedurally improper hearing creates unfairness to the public that the Council represents.

### H. REQUEST FOR TEMPORARY RESTRAINING ORDER

32.   An affidavits that proves the allegations in the application for injunctive relief is attached and incorporated by reference.

33.   Plaintiffs will likely suffer irreparable injury, if the defendants are not immediately restrained from removing the Confederate Monuments. Fed. R. Civ. P. 65(b)(1); *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 22 (2008). The Dallas City Council has reported on their website that it is ready and standing by to remove the Lee Monument on Wednesday morning. Other misguided local governments around the country have swiftly removed historic monuments. Plaintiff believes that the City will remove the Lee Monument within minutes of a vote to remove.

34. Plaintiffs will suffer irreparable injury, because defendants have publicly announced that they will remove the Confederate Monument and terminate the minority political speech that the Monument communicates. Fed. R. Civ. P. 65(b)(1); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). "The loss of First Amendment interests were either threatened or in fact being impaired at the time relief was sought. The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

35. The City Council is a state actor who is ordaining the political meaning of political symbols in a public forum. This government determination of political symbols in a public forum without a showing of any compelling interest in making the determination and without due process is an irreparable harm, as contemplated under *Texas v. Johnson* and *Elrod v. Burns*.

36. There is no adequate remedy at law, because any legal remedy would be merely illusory. *Northern Cal. Power Agency v. Grace Geothermal Corp.*, 469 U.S. 1306, 1306 (1984). The denial of free speech and due process on a continuing basis cannot be readily reduced to monetary damages. The only adequate remedy to the abridgment of free speech is the injunctive demand to protect the abridged free speech and to provide the denied due process.

37. There is a substantial likelihood that the plaintiffs will prevail on the merits. *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975). The City is planning to abridge the political speech of the Confederate Monuments and attempt to substitute its own government-controlled interpretation of the Monuments' political communication. Case law on this issue clearly supports the constitutional promise that government actors may not force their own interpretation of political messages on political symbols in a public forum. *Johnson*, 491 U.S. at 415. In addition, the parks are not forums for government speech, because the case law for monuments as government speech pertains to the placement of new monuments, not the retentions of existing monuments. In addition, government speech concerns forums that a state actor has funded and controls. These parks and monuments were not funded by the City and, therefore, are not forums of pure government speech or even partial government speech. Plaintiffs are confident that the Court will agree that the City is seeking to abridge the long-standing tradition of political speech in a public forum, which should be remedied by the Court's authority.

38. The harm to plaintiffs outweighs the harm that a temporary restraining order would inflict on defendants. *Winter*, 555 U.S. at 24; *Yakus v. United States*, 321 U.S. 414, 440 (1944). Plaintiffs will experience irreparable harm by the denial of political speech communicated by the

Monuments. *Elrod*, 427 U.S. at 373. Defendant will suffer no definable harm by allowing the Monuments to stand.

39. Issuance of a temporary restraining order would not adversely effect the public interest and public policy, because issuance of the order would serve the public interest. *See Winter*, 555 U.S. at 24-26. Indeed, the benefit to third parties would be enormous, as the continued non-abridgment of political speech in a public forum that the City has agreed not merely to tolerate but to promote by promissory estoppel cannot be undervalued. Indeed, the order would mark the end of the proposed Orwellian terror that the City is planning to inflict on the public. The Court's injunction against the City's plan to control political speech in a public forum will reinforce basic constitutional guarantees in Dallas that the City would gladly ignore. If there is one principle that the Civil War and the Ku Klux Klan Act resolved it was that federal constitutional protections cannot be ignored by local authorities. The affirmation of this principle will serve the public interest.

40. Plaintiffs are willing to post a bond in the amount the Court deems appropriate. However, plaintiffs are filing this cause in the public interest and request that the Court order no or a nominal bond. *Kaepa, Inc., v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996). Firstly, defendant stands in no financial risk by the issuance of the requested injunction. And secondly, plaintiffs are suing in the public interest and stand to recover no damages in this action.

41. The Court should enter this temporary restraining order without notice to defendant, because plaintiffs will likely suffer immediate and irreparable injury, loss, or damage if the order is not granted before defendant can be heard and there is no less drastic way to protect plaintiffs' interests. Fed. R. Civ. P. 65(b)(1); *Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 106 (2d Cir. 2009); *see also Benchbook for U.S. District Court Judges,* at 239. Historic monuments, especially Confederate monuments, are at risk from political ideologues across the country. The City has already made plans to remove the Monument and publicly announced this. Plaintiffs have reason to believe that the City will ignore legal constraints, as they attempt to evade the authority of this Court as they publicly denounce the Constitutional right to political free speech in a public forum. Plaintiffs believe that were the City to receive notice that this Court was contemplating an injunction to protect the Monument, the City would quickly order the Monument's removal.

42. Plaintiffs ask the Court to set the request for a preliminary injunction hearing at the earliest possible time.

## J. CONCLUSION

43. Plaintiffs have proper jurisdiction and venue to appear before the Court and request injunctive relief. The City has already announced that it will abridge plaintiffs' free speech by removing the Confederate Monuments. Plaintiffs will suffer constitutional harm by the removal of the political speech expressed in the Monuments. Plaintiffs have serious

concerns that the City's Orwellian agenda of control of political speech will succeed without intervention of this Court. For these reasons, plaintiffs ask the Court to issue a temporary restraining order, preventing defendants from removing the Confederate Monuments.

## K. PRAYER

44. For these reasons, plaintiffs ask that the Court do the following:

   a. Order that the City of Dallas not remove the Confederate Monuments from Lee and Pioneer parks;

   b. Enter judgment for plaintiffs;

   c. Award attorney costs to plaintiffs;

   d. Award costs of suit to plaintiffs; and,

   e. Grant any other relief the Court deems appropriate.

September 6, 2017

                Respectfully submitted,

                By: /s KIRK DAVID LYONS
                Texas Bar No. 12743500
                P.O. Box 1235
                Black Mountain, N.C. 28711
                E-mail kdl@slrc-csa.org
                Tel. (828) 669-5189
                Fax (828) 669-5191

No Subject

kdl@slrc-csa.org [kdl@slrc-csa.org]

Sent: 9/6/2017 1:40 PM
To: "Kirk Lyons" <kdl@slrc-csa.org>

## CERTIFICATE OF SERVICE

I certify that on September 6, 2017, a copy of this Plaintiff's Original Complaint was hand delivered on all defendants at their offices in Dallas City Hall.

/s KIRK DAVID LYONS

Texas Bar No. 12743500

P.O. Box 1235

Black Mountain, N.C. 28711

E-mail kdl@slrc-csa.org

Tel. (828) 669-5189

Fax (828) 669-5191

Copyright © 2003-2017. All rights reserved.

| | |
|---|---|
| STATE OF NORTH CAROLINA | § |
| | § |
| BUNCOMBE COUNTY | § |

### AFFIDAVIT OF KIRK DAVID LYONS

Before me, the undersigned notary, on this day personally appeared Kirk David Lyons, affiant, a person whose identity is known to me. After I administered an oath, affiant testified as follows:

1. "My name is Kirk David Lyons. I am competent to make this affidavit. The facts stated in this complaint are within my personal knowledge and are true and correct.

2. I have been reading news articles, talking with witnesses, and reading statements made by the parties in this matter."

*[signature]*
KIRK DAVID LYONS

SWORN TO and SUBSCRIBED before me by Kirk David Lyons on September 6, 2017.

*[signature]*

CHARLEEN TINSLEY
NOTARY PUBLIC
Burke County
North Carolina
My Commission Expires July 24, 2021

Notary Public in and for
The State of North Carolina