UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HIRAM PATTERSON, TEXAS DIVISION SONS OF CONFEDERATE VETERANS, INC., | § § § § | |
| Plaintiffs, | § § | No. 3:17-CV-02361-D |
| v. | § § | |
| MIKE RAWLINGS, et al., | § § | |
| Defendants. | § § § | |

**DEFENDANTS' RESPONSE IN OPPOSITION TO TEMPORARY
RESTRAINING ORDER AND MOTION TO DISSOLVE
TEMPORARY RESTRAINING ORDER**

Defendants Mike Rawlings, Scott Griggs, Adam Medrano, Casey Thomas II, Dwaine Caraway, Rickey Callahan, Omar Narvaez, Kevin Felder, Tennell Atkins, Mark Clayton, Adam McGough, Lee Kleinman, Sandy Greyson, Jennifer Gates, and Philip Kingston, all sued in their official capacities as Mayor and City Council Members of the City of Dallas, file this Response in Opposition to the Plaintiffs' Motion for Temporary Restraining Order (Dkt. 1) and Motion to Dissolve Temporary Restraining Order.  Defendants ask the Court to deny the Plaintiffs' Motion in its entirety and to dissolve the ex parte temporary restraining order issued on September 6, 2017.

## I.    SUMMARY OF RESPONSE

After a lawful and properly noticed legislative procedure and public debate, Defendants voted to remove a Confederate monument at Lee Park in Dallas and store it for safekeeping at another location until further action of the city council.  Before the monument was removed, however, Plaintiffs filed their complaint and motion and obtained a TRO without notice to the City or Defendants.  Plaintiffs are not entitled to the preliminary injunctive relief they seek, including

1

the temporary restraining order.  Neither the Complaint (Dkt. 2) nor the Motion for Temporary Restraining Order allege or prove any facts demonstrating Plaintiffs' standing to bring this lawsuit. Moreover, Plaintiffs have not established the elements necessary for the Court's issuance of a TRO or preliminary injunction.  They have made no showing of the requirements of Rule 65(b) for a TRO without written or oral notice to the Defendants. They have made no showing of substantial likelihood of success on the merits, substantial threat of irreparable harm absent the injunction, the threatened injury outweighing any harm the injunction would cause the Defendants, or that the injunction would not impair the public interest.

## II.   PROCEDURAL BACKGROUND

On August 24, 2017, the Mayor of the City of Dallas, appointed 20 individuals to serve on the Mayor's Task Force on Confederate Monuments (the "Task Force").  The Task Force is to consider whether to remove symbols of the Confederacy on City property and to rename streets and other public places named for Confederate figures.  The Task Force held its first meeting on August 31, 2017.

On Friday, September 1, 2017, the Mayor placed on item on the briefing agenda (the "Agenda") of the Dallas City Council, for September 6, 2017.  *See*, the Agenda attached as **Exhibit 1**.  (All exhibits attached hereto are true and correct copies of the originals.)  The item was to consider a resolution (the "Resolution") to direct the Dallas City Manager to remove the Alexander Phimster Proctor monument of Robert E. Lee at Lee Park (the "Lee Monument") and to store it at a safe location until the City Council received the recommendations of the Task Force.  *See*, the Resolution attached as **Exhibit 2**.  The Resolution also directed the Task Force to conduct at least two public meetings to receive public input, and work with and make recommendations to the

Dallas Cultural Affairs Commission (the "CAC").  The CAC is then to provide its findings and recommendations to the Dallas City Council.  (*Id.*)

On Wednesday, September 6, 2017, the Dallas City Council considered the Resolution. See, http://dallastx.swagit.com/play109002017-759 (last visited on September 7, 2017).  During the consideration of the Resolution, Councilmember Callahan made a motion to table the consideration of the Resolution so that an election could be held for the voters of Dallas to consider the issue of the removal of symbols of the Confederacy.  *Id.*  That motion failed.  *Id.*  Councilman Kingston inquired of the Mayor how a voting item such as the consideration of the Resolution, could be held on a briefing agenda day.  *Id.*  The Mayor advised the Council that under the City Council Rules of Procedure, emergency items for a vote can be considered on a briefing agenda and since there have been violent clashes involving Confederate monuments across the country, the Mayor concluded that an emergency existed warranting the placement of a voting item on a briefing agenda. *Id.*  None of the members of the City Council objected to the consideration of the Resolution.  *Id.*

There were over 45 individuals signed up to speak for and against the Resolution and the public speakers spoke for almost two hours.  *See,* id., and the speakers list attached hereto as **Exhibit 3**.  After discussion by the Council, the Dallas City Council approved the Resolution by a vote of 13 to 1, with Councilmember Callahan not voting.

###    III.    LAWS AND RULES GOVERNING THE ACTIONS
### OF THE DALLAS CITY COUNCIL

####   A.  Texas Open Meetings Act

The Texas Open Meetings Act or TOMA provides that items to be considered by a governmental body such as the Dallas City Council must be posted at least 72 hours prior to the item being considered.  Tex. Gov't Code, §§551.041, 0411.  TOMA makes no distinction between

regular or briefing meetings.  Notice of the City Council's consideration of the Resolution was posted more than 72 hours prior to the September 6th meeting, so there was no violation of TOMA and Plaintiffs do not allege a TOMA violation.

### B.  Dallas City Charter

The Dallas City Charter governs actions of the Dallas City Council.  *See*, Charter as **Exhibit 4**.  The Charter makes no distinction between briefing agendas and voting agendas, they are both defined as regular meetings.  Dallas City Charter, ch. III, sec. 6(b).  The Charter also directs the City Council to adopt rules regulating its actions.  Specifically, it provides that the "[C]ouncil shall determine its own rules of procedure …" *id*. at ch. III, sec. 10, and "[T]he city council shall: (1) adopt rules of procedure governing the conduct of city council meetings … *Id*. at ch. III, sec. 13(a)(1).

### C.     Dallas City Council Rules of Procedure

The City Council Rules acknowledge that the Charter provides for "open meetings of the city council at which reasonable opportunity shall be given for citizens to be heard under such rules as the council may provide.  See, Council Rules as **Exhibit 5**.  The Rules establish **guidelines** to be followed by all persons attending a city council meeting, including members of the city council …" Rules, sec. 1.  (emphasis added).  The Rules further provide that any member of the City Council may appeal to the entire city council a ruling of the presiding officer, Rule, sec. 4.4, and a councilmember may also express dissent or protest against any ordinance, resolution or action of the City Council.  *Id*. at Rule 4.8.

Section 6.1(b)(2) of the Rules provides that voting items will not be scheduled on briefing days except for emergencies, construction contracts, construction change orders, architectural and engineering contracts, and architectural and engineering supplemental agreements.  Public

comment is encouraged since speakers may sign up to speak on any voting item placed on a briefing agenda and speakers may also sign up to speak at the open microphone periods at the beginning and end of each briefing meeting. *Id.*

## IV.   ARGUMENT

### A. Legal Standard for Injunctive Relief

To obtain injunctive relief, including a TRO, a plaintiff must establish that (1) there is a substantial likelihood that the plaintiff will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury to the plaintiff outweighs whatever damage the proposed injunctive relief would cause the defendant; and (4) the granting of the injunction is not adverse to the public interest. *Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009) (quoting *Canal Auth. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974)).

Under Federal Rule of Civil Procedure 65(b), an ex parte TRO can be issued only if (1) specified facts in an affidavit or verified complaint clearly show that the plaintiff will suffer immediate and irreparable injury, loss, or damage if the TRO is not granted before the defendant can be heard; and (2) the plaintiff's attorney certifies in writing whether efforts were made to give notice and why notice should not be required. Fed. R. Civ. P. 65(b)(1). The application for a TRO must be supported by an affidavit or a verified complaint. *Id.*

### B.    Plaintiffs fail to allege facts demonstrating their standing to sue

Plaintiffs' complaint and motion for TRO do not state that Plaintiffs have standing to sue and are devoid of any allegations that demonstrate their standing. "The requirement that a claimant have 'standing is an essential and unchanging part of the case-or-controversy requirement of Article III'" of the Constitution. *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733 (2008)

(quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  Standing "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

To establish constitutional standing, a plaintiff must satisfy three elements: (1) the plaintiff must have suffered an injury in fact that is concrete and particularized and actual or imminent, not merely conjectural or hypothetical; (2) causation, or a fairly traceable connection between the plaintiff's injury and the defendant's alleged conduct; and (3) redressability, or a likelihood that the requested relief will remedy the alleged injury. *Lujan*, 504 U.S. at 560-61.  To obtain injunctive relief, a plaintiff must be "likely to suffer future injury."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983).  The threat of future injury to the plaintiff "must be both real and immediate, not conjectural or hypothetical."  *Id.* at 102.

Prudential standing, by contrast, does not emanate from the Constitution, and instead refers to judicially created limitations on a court's exercise of jurisdiction.  *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004).  These limitations include a rule barring adjudication of generalized grievances that would be more properly addressed by the legislative branch.  *Id.* at 12 (prudential standing prevents courts from being called on to decide abstract questions of wide public significance when other government branches may be better suited to address those questions).

Plaintiffs do not plead or prove any concrete and particularized or actual or imminent injury that has occurred or will occur to them as a result of the actions of the Dallas City Council or the moving of the Lee Monument.  They do not plead or prove how their alleged injuries are different or distinct from the general public.  Being insulted by or disagreeing with the plans for the monument does not equate to a specific injury to the Plaintiffs and cannot be the basis for their

standing.  In a nearly identical lawsuit involving the removal of Confederate monuments on the campus of the University of Texas at Austin, the Sixth Court of Appeals of Texas recently held that the plaintiffs in that suit – two different individuals and the same Sons of Confederate Veterans, Inc. group as in this case, represented by the same lawyer – did not plead or prove a particularized injury distinct from the general public sufficient to confer standing under Texas law. *See Bray v. Fenves*, No. 06-15-00075-CV, 2016 WL 3083539 (Tex. App.—Texarkana Mar. 24, 2016, pet. denied.  In addition, a district court in the Western District of Texas at San Antonio ruled last week that plaintiffs seeking to enjoin removal of a Confederate monument in a city-owned park had not pleaded or proven they had standing to sue.  *See Brewer v. Nirenberg*, No. 17-CV-837-DAE (W.D. Tex. Aug.31, 2017) (order denying TRO).

Plaintiff Patterson alleges that he is a taxpayer of Dallas.  To the extent that he may assert standing based on his status as a city taxpayer, he has not alleged and cannot demonstrate facts that would support suit in that narrowly proscribed capacity.  *See Flast v. Cohen*, 392 U.S. 83, 102-103 (1968); *see also Bray v. Fenves*, 2016 WL 3083539 at *12 (plaintiffs did not plead or demonstrate that they had taxpayer standing).

Because Plaintiffs have not alleged or demonstrated any facts sufficient to confer standing, their motion for TRO should be denied.

**C.      Plaintiffs have not shown a substantial likelihood of success on the merits.**

Plaintiffs' Complaint appears to allege two bases for their lawsuit:  Defendants have abridged their First Amendment rights to free speech and their Due Process rights.  They have not shown a substantial likelihood of success on the merits of either claim.

### 1.      There is no abridgement of free speech.

Plaintiffs' argument that removal of the Lee Monument will violate their First Amendment rights because the monument somehow communicates political speech is without merit.  There are no facts alleged to support that theory in either the Complaint or in the vague and insufficient affidavit submitted by Plaintiffs' counsel.  In addition, the Supreme Court has held that "the placement of a permanent monument in a public park is best viewed as a form of government speech and is therefore not subject to scrutiny under the Free Speech Clause." *Pleasant Grove City v. City of Summum*, 555 U.S. 460, 464 (2009).  The Court reasoned that "[w]hen a government entity arranges for the construction of a monument, it does so because it wishes to convey some thought or instill some feeling in those who see the structure." *Id.* at 470.  Indeed, "[g]overnments have long used monuments to speak to the public." *Id.*  Further, a government entity 'is entitled to say what it wishes" and "select the views that it wants to express." *Id.*  at 467-468.  "Therefore, the removal of the [M]onument [] is a form of government speech and is exempt from First Amendment scrutiny." *Monumental Task Comm., Inc. v. Foxx,* 157 F. Supp. 3d 573, 594 (E.D. La. 2016), *aff'd,* 678 F. App'x 250 (5th Cir. 2017).  Whether a city installs a monument, or removes a monument, it is exercising its government speech.  The Plaintiffs cannot establish a substantial likelihood of success on the merits of their First Amendment claim, and the TRO should be denied or dissolved on that basis.

### 2.      There is no abridgment of due process

Plaintiffs claim that the City denied them procedural due process by considering the Resolution on a briefing agenda day rather than a voting agenda day without discussing how that makes a difference.  They claim that the City Council's Rules provide them fair notice and opportunity to appear before the Council, but they received exactly the same notice and appearance

opportunity on September 6th, the briefing agenda date, as they would have received had the Resolution been considered on a voting agenda meeting.  First, Plaintiffs were given at least 72 hours' notice of the September 6th meeting, the same notice had the Resolution been considered on a voting agenda meeting.  Second, they were permitted to sign up to speak on the Resolution on September 6th, just like they would have had the Resolution been considered on a voting agenda meeting.  Third, they were permitted to sign up for the open microphone periods at the beginning and end of the September 6th meeting, just as they would have had the Resolution been considered at a voting agenda meeting.  Since Plaintiffs received the same notice and speaking opportunities at the September 6th meeting as they would have received had the Resolution been considered at a voting agenda meeting, they failed to assert a valid due process claim.

In order to raise a procedural due process claim, a plaintiff must have a protected property right or liberty interest.  *Foxx*, 240 F. Supp. 3d at 499.  Plaintiffs have asserted no property right or liberty interest that is impaired by the removal of any of the Confederate monuments about which they complain.  They do not allege that they own the Lee Monument or the Confederate monuments in Pioneer Park.  They also fail to allege how the City has deprived them of their First Amendment rights to protest the removal of these monuments.  Nothing in the Resolution limits anyone's right to protest anything.

Plaintiffs cite *Goldberg v. Kelly*, 397 U.S. 254, 267-68 (1970) for the proposition they are entitled to procedural due process but *Goldberg* dealt with the termination of financial aid, which the Supreme Court held the plaintiff was statutorily entitled to receive.  This case is not about statutory entitlements but the potential removal of monuments on City property.  Plaintiffs also cite *Armstrong v. Manzo*, 380 U.S. 545, 552 (1970), which involved notice of an adoption proceeding.  In that case the Supreme Court held that a child's natural father was entitled to notice

9

of the adoption proceeding by the child's adoptive father.  This is not an adoption case and *Armstrong* has no applicability here.

> **D.      Plaintiffs have not shown a substantial threat of irreparable harm.**

Plaintiffs have also failed to provide facts or evidence showing a substantial threat of irreparable harm to them if the injunction is not granted. Plaintiffs contend that the irreparable harm to them would be the removal of the Lee Monument.  Because the monument is a form of government speech, as discussed above, they cannot demonstrate a substantial threat of irreparable harm if it is removed.  Moreover, as described in Section II, the City does not intend to destroy the Lee Monument, but merely to store it elsewhere while the Task Force completes its work.  Absent a showing of irreparable harm, the Plaintiffs are not entitled to the injunctive relief they seek.

> **E.      Plaintiffs have not shown that injury to them outweighs any harm or that an injunction would not harm the public interest.**

Because the Plaintiffs have failed to demonstrate the first two elements necessary for an injunction, this Court need not weigh the relative harms to the parties or consider the public interest.  *See* Monumental *Task Comm.,* 157 F. Supp. 3d at 594.  The harm to the Defendants, and to the public, of issuing a TRO or not dissolving it is that such an order would thwart the duly conducted legislative process of the City and its elected officials.

Respectfully submitted,

CITY ATTORNEY OF THE CITY OF DALLAS

Larry E. Casto
Dallas City Attorney

*/s/  Christopher J. Caso*
Christopher J. Caso
Senior Executive Assistant City Attorney
Texas Bar No. 03969230
chris.caso@dallascityhall.com
Stacy Jordan Rodriguez
Executive Assistant City Attorney

Texas Bar No. 11016750
stacy.rodriguez@dallascityhall.com
Charles Estee
Senior Assistant City Attorney
Texas Bar No. 06673600
charles.estee@dallascityhall.com
7DN Dallas City Hall
1500 Marilla Street
Dallas, Texas 75201
Telephone: 214-670-3519
Facsimile: 214-670-0622

## CERTIFICATE OF SERVICE

I certify that on the 7th day of September, 2017, the foregoing document was served on counsel of record for Plaintiffs via the Court's electronic filing manager.

*/s/ Christopher J. Caso*
Christopher J. Caso

RECEIVED

2017 SEP -1 PM 9: 11

CITY SECRETARY
DALLAS, TEXAS



# COUNCIL BRIEFING AGENDA

September 6, 2017
Date

(For General Information and Rules of Courtesy, Please See Opposite Side.)
(La Información General Y Reglas De Cortesía Que Deben Observarse
Durante Las Asambleas Del Consejo Municipal Aparecen En El Lado Opuesto, Favor De Leerlas.)

DEFENDANT'S
EXHIBIT
1

## General Information

The Dallas City Council regularly meets on Wednesdays beginning at 9:00 a.m. in the Council Chambers, 6th floor, City Hall, 1500 Marilla. Council agenda meetings are broadcast live on WRR-FM radio (101.1 FM) and on Time Warner City Cable Channel 16. Briefing meetings are held the first and third Wednesdays of each month. Council agenda (voting) meetings are held on the second and fourth Wednesdays. Anyone wishing to speak at a meeting should sign up with the City Secretary's Office by calling (214) 670-3738 by 5:00 p.m. of the last regular business day preceding the meeting. Citizens can find out the name of their representative and their voting district by calling the City Secretary's Office.

If you need interpretation in Spanish language, please contact the City Secretary's Office at 214-670-3738 with a 48 hour advance notice.

Sign interpreters are available upon request with a 48-hour advance notice by calling (214) 670-3738 V/TDD. The City of Dallas is committed to compliance with the Americans with Disabilities Act. *__The Council agenda is available in alternative formats upon request__*.

If you have any questions about this agenda or comments or complaints about city services, call 311.

## Rules of Courtesy

City Council meetings bring together citizens of many varied interests and ideas. To insure fairness and orderly meetings, the Council has adopted rules of courtesy which apply to all members of the Council, administrative staff, news media, citizens and visitors. These procedures provide:

- That no one shall delay or interrupt the proceedings, or refuse to obey the orders of the presiding officer.

- All persons should refrain from private conversation, eating, drinking and smoking while in the Council Chamber.

- Posters or placards must remain outside the Council Chamber.

- No cellular phones or audible beepers allowed in Council Chamber while City Council is in session.

"Citizens and other visitors attending City Council meetings shall observe the same rules of propriety, decorum and good conduct applicable to members of the City Council. Any person making personal, impertinent, profane or slanderous remarks or who becomes boisterous while addressing the City Council or while attending the City Council meeting shall be removed from the room if the sergeant-at-arms is so directed by the presiding officer, and the person shall be barred from further audience before the City Council during that session of the City Council. If the presiding officer fails to act, any member of the City Council may move to require enforcement of the rules, and the affirmative vote of a majority of the City Council shall require the presiding officer to act." Section 3.3(c) of the City Council Rules of Procedure.

## Información General

El Ayuntamiento de la Ciudad de Dallas se reúne regularmente los miércoles en la Cámara del Ayuntamiento en el sexto piso de la Alcaldía, 1500 Marilla, a las 9 de la mañana. Las reuniones informativas se llevan a cabo el primer y tercer miércoles del mes. Estas audiencias se transmiten en vivo por la estación de radio WRR-FM 101.1 y por cablevisión en la estación *Time Warner City Cable* Canal 16. El Ayuntamiento Municipal se reúne el segundo y cuarto miércoles del mes para tratar asuntos presentados de manera oficial en la agenda para su aprobación. Toda persona que desee hablar durante la asamblea del Ayuntamiento, debe inscribirse llamando a la Secretaría Municipal al teléfono (214) 670-3738, antes de las 5:00 pm del último día hábil anterior a la reunión. Para enterarse del nombre de su representante en el Ayuntamiento Municipal y el distrito donde usted puede votar, favor de llamar a la Secretaría Municipal.

Si necesita interpretación en idioma español, por favor comuníquese con la oficina de la Secretaria del Ayuntamiento al 214-670-3738 con notificación de 48 horas antes.

Intérpretes para personas con impedimentos auditivos están disponibles si lo solicita con 48 horas de anticipación llamando al (214) 670-3738 (aparato auditivo V/TDD). La Ciudad de Dallas está comprometida a cumplir con el decreto que protege a las personas con impedimentos, *Americans with Disabilities Act*. *__La agenda del Ayuntamiento está disponible en formatos alternos si lo solicita__*.

Si tiene preguntas sobre esta agenda, o si desea hacer comentarios o presentar quejas con respecto a servicios de la Ciudad, llame al 311.

## Reglas de Cortesía

Las asambleas del Ayuntamiento Municipal reúnen a ciudadanos de diversos intereses e ideologías. Para asegurar la imparcialidad y el orden durante las asambleas, el Ayuntamiento ha adoptado ciertas reglas de cortesía que aplican a todos los miembros del Ayuntamiento, al personal administrativo, personal de los medios de comunicación, a los ciudadanos, y a visitantes. Estos reglamentos establecen lo siguiente:

- Ninguna persona retrasará o interrumpirá los procedimientos, o se negará a obedecer las órdenes del oficial que preside la asamblea.

- Todas las personas deben de abstenerse de entablar conversaciones, comer, beber y fumar dentro de la cámara del Ayuntamiento.

- Anuncios y pancartas deben permanecer fuera de la cámara del Ayuntamiento.

- No se permite usar teléfonos celulares o enlaces electrónicos (*pagers*) audibles en la cámara del Ayuntamiento durante audiencias del Ayuntamiento Municipal.

"Los ciudadanos y visitantes presentes durante las asambleas del Ayuntamiento Municipal deben de obedecer las mismas reglas de comportamiento, decoro y buena conducta que se aplican a los miembros del Ayuntamiento Municipal. Cualquier persona que haga comentarios impertinentes, utilice vocabulario obsceno o difamatorio, o que al dirigirse al Ayuntamiento lo haga en forma escandalosa, o si causa disturbio durante la asamblea del Ayuntamiento Municipal, será expulsada de la cámara si el oficial que esté presidiendo la asamblea así lo ordena. Además, se le prohibirá continuar participando en la audiencia ante el Ayuntamiento Municipal. Si el oficial que preside la asamblea no toma acción, cualquier otro miembro del Ayuntamiento Municipal puede tomar medidas para hacer cumplir las reglas establecidas, y el voto afirmativo de la mayoría del Ayuntamiento Municipal precisará al oficial que esté presidiendo la sesión a tomar acción." Según la sección 3.3(c) de las reglas de procedimientos del Ayuntamiento.

# Handgun Prohibition Notice for Meetings
# of Governmental Entities

"Pursuant to Section 30.06, Penal Code (trespass by license holder with a concealed handgun), a person licensed under Subchapter H, Chapter 411, Government Code (handgun licensing law), may not enter this property with a concealed handgun."

*"De acuerdo con la sección 30.06 del código penal (ingreso sin autorización de un titular de una licencia con una pistol oculta), una persona con licencia según el subcapítulo h, capítulo 411, código del gobierno (ley sobre licencias para portar pistolas), no puede ingresar a esta propiedad con una*
*pistola oculta."*

"Pursuant to Section 30.07, Penal Code (trespass by license holder with an openly carried handgun), a person licensed under Subchapter H, Chapter 411, Government Code (handgun licensing law), may not enter this property with a handgun that is carried openly."

*"De acuerdo con la sección 30.07 del código penal (ingreso sin autorización de un titular de una licencia con una pistola a la vista), una persona con licencia según el subcapítulo h, capítulo 411, código del gobierno (ley sobre licencias para portar pistolas), no puede ingresar a esta propiedad con una pistola a la vista."*

AGENDA
CITY COUNCIL BRIEFING MEETING
WEDNESDAY, SEPTEMBER 6, 2017
CITY HALL
1500 MARILLA STREET
DALLAS, TEXAS 75201
9:00 A.M.

9:00 am        Invocation and Pledge of Allegiance                                        6ES

               Special Presentations

               Open Microphone Speakers

VOTING AGENDA                                                                              6ES

1.     Approval of Minutes of the August 16, 2017 City Council Meeting

2.     Consideration of appointments to boards and commissions and the evaluation and
       duties of board and commission members (List of nominees is available in the City
       Secretary's Office)

ITEMS FOR INDIVIDUAL CONSIDERATION

**Mayor and City Council**

3.     A resolution **(1)** acknowledging that public Confederate monuments and the names
       of public places, including parks and streets, named for Confederate figures do not
       promote a welcoming and inclusive city; **(2)** supporting the Mayor's Task Force on
       Confederate Monuments, which is made up of a diverse group of city leaders who
       will provide various recommendations to the city council; **(3)** providing timelines for
       the Mayor's Task Force and the Cultural Affairs Commission, as well as requiring
       that the Task Force hold at least two public meetings to receive public input; **(4)**
       providing for the city council to take further action as needed, including authorizing
       the renaming of certain public places, on November 8, 2017, and directing city staff
       to take any and all appropriate actions to implement the city's policy in accordance
       with the Charter, City Code, and other rules, regulation, and policies as well as all
       applicable state and federal law; **(5)** directing the city manager to immediately
       remove and store the Alexander Phimster Proctor monument (of Robert E. Lee); **(6)**
       authorizing the city manager to transfer funds or appropriate funds from excess
       revenue, as necessary, to remove all public Confederate monuments; and **(7)**
       acknowledging that, consistent with City Council Rules of Procedure, Rule 6.2(b),
       the Mayor shall not place any item on the agenda that has been voted on by the city
       council within the one-year period preceding the date requested for placement of the
       item on the agenda - Financing: Current Funds

AGENDA
CITY COUNCIL BRIEFING MEETING
WEDNESDAY, SEPTEMBER 6, 2017

ITEMS FOR INDIVIDUAL CONSIDERATION (continued)

**Office of Financial Services**

4.      First reading of the appropriation ordinances for the proposed FY 2017-18 City of
        Dallas Operating, Capital, and Grant & Trust Budgets - Financing: This action has
        no cost consideration to the City

PUBLIC HEARINGS AND RELATED ACTIONS

**Office of Financial Services**

5.      A public hearing to receive comments on a $0.7825/$100 property tax rate for the
        2017-18 fiscal year as discussed on August 16, 2017; City Council will vote to adopt
        a tax rate on Wednesday, September 20, 2017 at Dallas City Hall, 6ES at 9:00 a.m.
        - Financing:  No cost consideration to the City

BRIEFINGS                                                                          6ES

A.      FY 2017-18 Annual Budget: Council Amendments


Lunch


Closed Session                                                                     6ES
Attorney Briefings (Sec. 551.071 T.O.M.A.)
-       Kenneth E. Albert, et al. v. City of Dallas, Cause No. 199-00697-94; Anthony
        Arredondo, et al. v. City of Dallas, Cause No. 199-1743-99; David L. Barber, et al. v.
        City of Dallas, Cause No. 199-624-95; David S. Martin, et al. v. City of Dallas, Cause
        No. 1-95-506; George G. Parker, et al. v. City of Dallas, Cause No. 1-95-107; Kevin
        Michael Willis, et al. v. City of Dallas, Cause No. 199-200-95.


Open Microphone Speakers                                                           6ES

The above schedule represents an estimate of the order for the indicated briefings and is
subject to change at any time.  Current agenda information may be obtained by calling
(214) 670-3100 during working hours.
Note: An expression of preference or a preliminary vote may be taken by the Council on
any of the briefing items.

**171385**

<u>September 6, 2017</u>

**WHEREAS,** the enslavement of the then Africans was one of the causes of the Civil War, which divided our country over 150 years ago;

**WHEREAS,** the Confederacy lost its war against the United States and the "negro" slave was then freed from slavery, transferring names from "negro" to "colored";

**WHEREAS,** "colored" individuals continued to face discriminatory laws, legal practices, and unpunished violence specifically aimed at preventing them from achieving equality from Reconstruction through the Jim Crow Era;

**WHEREAS,** even after the economic, social, and legal gains made by the Civil Rights Movement, those now referred to as "blacks" were still denied equality by a society that discriminated against them even when hard-won laws call for equal treatment;

**WHEREAS,** through the progression of history, those African descendants who were formerly known as "negro" slaves, then "coloreds," and then "blacks" are now referred to as African Americans;

**WHEREAS,** in spite of every obstacle placed in their path, the African-American community has always persisted and has in the most fundamental way prevailed;

**WHEREAS,** now, we are faced with the decision of keeping, removing, or replacing public monuments, images, and symbols, as well as names of public places, including parks, and streets that may be continuous reminders of the Civil War;

**WHEREAS,** Confederate monuments, along with public places, including parks, and streets that are named for prominent Confederates may continue to be symbols of our country's division, and may create racial barriers in our city;

**WHEREAS,** these Confederate monuments, symbols, images, and public places, including parks, and streets named for Confederate figures may distort the violent and oppressive history of the Confederacy and may preserve the principles of white supremacy;

**WHEREAS,** for many years, leaders of diverse backgrounds have consistently called for the removal of Confederate monuments and symbols from public property;

**WHEREAS,** the city of Dallas strives to be a welcoming and inclusive city for all its residents and visitors, regardless of their cultural or ethnic backgrounds; and



171385

**WHEREAS**, it is time for a robust public discussion of the history of the Confederate monuments and commemorations, and the city of Dallas' policy regarding the standards for public commemoration of persons, places, and historical events.

Now, Therefore, **BE IT RESOLVED BY THE CITY COUNCIL OF THE CITY OF DALLAS:**

**Section 1.**  That the display of public Confederate monuments glorifying Confederate causes does not promote a welcoming and inclusive community and is against the public policy of the City of Dallas.

**Section 2.**  That the city council supports the Mayor's Task Force on Confederate Monuments ("Task Force"), which is made up of a diverse group of city leaders who will provide recommendations to the city council:

 a.    regarding the costs associated with removal and relocation of public Confederate monuments and symbols and with the renaming of public places, including parks, and streets along with available options for private funding;

 b.    regarding the process of disposal or relocation of Confederate monuments and symbols if deemed necessary;

 c.    suggesting additional standards for the naming of public places, including parks, and streets going forward if deemed necessary;

 d.    suggesting replacements for Confederate monuments and symbols recommended for removal to promote a more welcoming and inclusive Dallas if deemed necessary; and

 e.    suggesting replacement names for public places, including parks, and streets that also promote a more welcoming and inclusive Dallas if deemed necessary.

**Section 3.**  That the Task Force shall convene at least two public meetings to receive public input and shall work with, and make recommendations to, the Cultural Affairs Commission by October 12, 2017.

**Section 4.**  That the Cultural Affairs Commission shall make a final presentation to city council on November 1, 2017, reporting its findings and making its recommendations.

**Section 5.**  That the city council may take any further action, as needed, including authorizing the renaming of certain public places, including parks, and streets, on November 8, 2017, and directing city staff to take any and all appropriate actions to implement the city's policy in accordance with the Charter, City Code, and other rules, regulation, and policies as well as all applicable state and federal law.

**171385**

**Section 6.** That the city manager shall immediately remove the Alexander Phimster Proctor monument (of Robert E. Lee) at Lee Park and store it at a safe location until the conclusion of the recommendations of the Task Force as this monument is not a designated city landmark.

**Section 7.** That the city manager is hereby authorized to transfer funds or appropriate funds from excess revenue, as necessary, to remove the Alexander Phimster Proctor monument (of Robert E. Lee) at Lee Park. The city manager will take all appropriate actions to seek private funding to reimburse the expenses associated with this action.

**Section 8.** That, consistent with City Council Rules of Procedure, Rule 6.2(b), the Mayor shall not place any item on the agenda that has been voted on by the city council within the one-year period preceding the date requested for placement of the item on the agenda.

**Section 9.** That this resolution shall take effect on September 6, 2017, and it is accordingly so resolved.

> APPROVED BY
> CITY COUNCIL
>
> SEP 0 6 2017
>
> *[signature]*
> Interim City Secretary

**CITY OF DALLAS**
**CITY COUNCIL BRIEFING**
**OPEN MICROPHONE**
**PUBLIC APPEARANCE LIST**
**SEPTEMBER 6, 2017**

| SPEAKER NAME | RESIDENT ADDRESS | DAYTIME TELEPHONE | COUNCIL DISTRICT/ CITY | SUBJECT AGENDA/ADDENDUM ITEM NO. | REPRESENTING (FIRM OR ORGANIZATION) |
|---|---|---|---|---|---|
| **BEGIN - OPEN MICROPHONE** | | | | | |
| 1 Robert Holland | 929 N. Marsalis Ave. | 214-721-2301 | 1 | DPD recruiting more minorities in South Dallas | |
| 2 Billie Betzen | 6717 Cliffwood Dr. | 214-957-9739 | 3 | Budget | |
| 3 Robert Ceccarelli | 1822 Young St. | 214-639-0743 | 2 | Homeless | |
| 4 Michelle Alexander | 2518 Kenesaw Dr. | 469-354-8991 | 6 | Permanent Supportive Housing | |
| 5 Deloris Phillips | 3101 Luxar Way | 469-671-8941 | 3 | Green Oaks transparency | |
| **ADDITIONAL - OPEN MICROPHONE** | | | | | |
| 1 Cora Canady | 2514 Perryton Dr. | 214-333-0808 | 3 | City Attorney prosecuting slum lords | |
| 2 Donald Bell | 1828 S. Corinth St. Rd. | 214-801-6541 | 4 | New phone product | |
| 3 Linda Abramson Evans | 5822 Clendenin Ave. | 469-233-4422 | 7 | Confederate monument removal | Thanksgiving Square Inter-Faith Council |
| 4 Will Hartnett | 4722 Walnut Hill Ln. | 214-460-5527 | 13 | Confederate monuments | |
| 5 Michael Waters | 3203 Holmes St. | 972-754-7275 | 7 | Confederate monuments | North Texans for Historical Justice |
| 6 John Fullinwider | 1851 Fuller Dr. | 214-319-8247 | 9 | Confederate monuments | Mothers Against Police Brutality |
| 7 Jo Trizilla | 6818 Southpoint Dr. | 214-232-0078 | 12 | Confederate monuments | |
| 8 Sam Ratcliffe | 6915 Dalhart Ln. | 214-603-8194 | 9 | Confederate monuments | |
| 9 Sam L. Hocker | 6154 Yorkshire Dr. | 214-502-9173 | 11 | Confederate monuments/Lee Park | |
| 10 Allen West | 9925 Wood Forest Dr. | 202-825-4170 | 10 | Confederate monuments/Lee Park | |
| 11 Mary Hogan | 6139 N. Jim Miller Rd. | 214-686-4694 | 7 | Confederate monuments | |
| 12 John Clay | 511 N. Akard St. | 214-883-4639 | 14 | Confederate monuments | |
| 13 Larry Waldrop | 17312 Village Ln. | 214-728-1374 | 11 | Confederate monuments (opposition) | |
| 14 Arnold Mozisek | 3708 Brown St. | 214-526-3251 | 14 | Confederate monuments | |
| 15 Debbie Georgatos | 6531 Waggoner Dr. | 214-454-8790 | 13 | Confederate monuments | |
| 16 Buddy Apple | 729 N. Winnetka Ave. | 469-323-6609 | 1 | Confederate monuments | Preservation Dallas |
| 17 Eric Ramsey | 11903 Coit Rd. | 817-575-9095 | 11 | Confederate monuments | In Solidarity |
| 18 Jacqueline Espinal | 1200 Main St. | 214-699-9961 | 14 | Confederate monuments | |
| 19 Taft Thompson | 1506 Reynoldston Ln. | 202-486-0968 | 3 | Confederate monuments | |
| 20 Linda Parsel | 3401 Lee Pkwy. | 713-870-0059 | 14 | Confederate monuments | |
| 21 Eddie Morgan | 2426 Hondo Ave. | 469-547-2240 | 2 | Confederate monuments | |
| 22 Charles Lawhon | 5420 Spruce View Dr. | 469-335-2028 | 3 | Confederate monuments | |
| 23 Brad Thompson | 3916 Park Ln. | 214-352-6752 | 6 | Confederate monuments | |
| 24 Toni Taylor | 331 W. Clarendon Dr. | 214-948-3127 | 1 | Confederate monuments | |
| 25 Dominique Alexander | 2512 Overton Rd. | 469-734-7580 | 4 | Confederate monuments | Next Generation Action Network |
| 26 Joseph Hill | 6036 Birchbrook Dr. | 214-226-3361 | 14 | Confederate monuments | |
| 27 Barvo Walker | 1010 E. Clarendon Dr. | 214-505-9887 | 4 | Confederate monuments/Lee Park | Mayor's Task Force of Confederate Monuments |
| 28 Gerald Britt | 1610 S. Malcolm X Blvd. | 469-904-7014 | 3 | Confederate monument removal | North Texans for Historical Justice |
| 29 Kirby White | 8650 Southwestern Blvd. | 214-507-5191 | 14 | Confederate monuments | |
| 30 Liz Magallanes | 1408 N. Washington Ave. | 972-244-3762 | 14 | Confederate monuments | |
| 31 Dick Zinnendorf | 2353 N. Field St. | 214-537-4675 | 14 | Parks | |
| 32 Kristian Craige | 2122 Kidwell St. | 214-909-0588 | 14 | Confederate monuments | Mystic Media Foundation |

DEFENDANT'S EXHIBIT
3

*Continued on Next Page*

CITY OF DALLAS
CITY COUNCIL BRIEFING
OPEN MICROPHONE
PUBLIC APPEARANCE LIST
SEPTEMBER 6, 2017

| SPEAKER NAME | RESIDENT ADDRESS | DAYTIME TELEPHONE | COUNCIL DISTRICT/ CITY | SUBJECT AGENDA/ADDENDUM ITEM NO. | REPRESENTING (FIRM OR ORGANIZATION) |
|---|---|---|---|---|---|
| **CONTINUING ADDITIONAL - OPEN MICROPHONE** | | | | | |
| 33 Eugene Gaytan | 13100 Pandora Dr. | 469-340-7869 | 9 | Public resolution item #3 | |
| 34 Bryce Weigand | 3733 Normandy Ave. | 214-796-1707 | Highland Park, TX | Confederate monuments | Mayor's Task Force |
| 35 Baker Hughes | 2533 Cheyenne Ln. | 817-690-1903 | Crowley, TX | Confederate monuments | |
| 36 Jeff Hood | 2723 Northcrest Rd. | 404-210-6760 | Denton, TX | Confederate monuments | |
| 37 Terry Hulsey | 1515 Postbridge Ct. | 817-308-5638 | Arlington, TX | Confederate monuments | Sons of Confederate |
| 38 Mark Enoch | 1805 Faulkner Dr. | 972-475-2991 | Rowlett, TX | Confederate monuments | |
| 39 Carole Haynes | 44 Indian Trl. | 469-867-3068 | Hickory Creek, TX | Confederate monuments | |
| 40 Robin Dillard | 329 Murray Farm Dr. | 469-766-3802 | Fairview, TX | Leave monuments alone | Texas Freedom Force |
| 41 Pierce Allman | 4242 Lomo Alto Dr. | 214-801-8114 | Highland Park, TX | Confederate monuments | Dallas Citizens for Unity and Reconciliation |
| 42 Pete Rainone | 605 Westview Terrace | 817-455-1480 | Arlington, TX | Confederate monuments | |
| 43 Karen Watson | 4323 Beverly Dr. | 469-321-0076 | Highland Park, TX | Removal of statue | |
| 44 Beth Biesel | 3608 Southwestern Blvd. | 214-691-4180 | University Park, TX | Lee statue | |
| 45 Alia Salem | 301 Las Colinas Blvd. | 817-538-8269 | Irving, TX | Confederate monuments | Muslim Community of North Texas |
| **END - OPEN MICROPHONE** | | | | | |
| 1 Katina Robertson | 14332 Montfort Dr. | 214-693-9363 | 11 | No Civil Service guidelines | |
| 2 Sherrill Crowell | 3050 Villa Sun Trl. | Not Provided | 9 | Dallas health care/community problem | |
| 3 Noelle Brisson | 3611 Cole Ave. | 469-600-2505 | 14 | Confederate monuments | |
| 4 Katherine McGovern | 4364 Royal Ridge Dr. | 214-351-1506 | 13 | Confederate monuments | |
| 5 Sherri Lowe | 330 E. Camp Wisdom Rd. | 469-258-5650 | 8 | Municipal system | |
| 6 Christopher Gambino | 1142 Elmdale Pl. | 956-572-0064 | 1 | Confederate monuments | |
| 7 Wanda Summers | 2317 E. 11th St. | 214-500-4710 | 4 | Rezoning of Skyline High School | |
| 8 Billy Persley | 2702 E. 11th St. | 214-943-8018 | 4 | Property matter | B & D Muffler |
| 9 Fred Villanueva | 3203 Ash Ln. | 917-554-5286 | 7 | Confederate monuments | Ash Studios |
| 10 John Lee | 3131 Turtle Creek Blvd. | 214-522-7461 | 14 | Buying statue | |
| 11 Frank Elam | 927 Elliott Dr. | 469-531-8633 | Cedar Hill, TX | Pioneer Cemetery | |
| 12 Robert Beverly | 3101 Pleasant Valley Ln. | 817-784-8878 | Arlington, TX | Confederate monuments | |

Speakers must observe the same rules of propriety, decorum, and good conduct applicable
to members of the city council. Any speaker making personal, impertinent, profane, or
slanderous remarks or who becomes boisterous while addressing the city council shall be
removed from the room. [Dallas City Council Rules of Procedure, Section 3.3(c)]

*Under Chapter 12A of the Dallas City Code, each person who lobbies or engages another person to
lobby before the city council identified in Section 12A-15.2(1)(H) must orally identify himself or herself
and any client he or she represents upon beginning the address. Therefore, if this requirement
applies to you, please state for the record the name of your client.*

(48)  To erect and establish work houses, houses of correction, or rehabilitation facilities within or without the city limits; to make all necessary rules and regulations therefor; to employ personnel necessary to manage and control the same; to assign persons confined to the city jail to any such facility so established.

(49)  To provide a code of ethics by ordinance which shall be binding on all officers, employees, and elective and appointive officials as provided herein, setting out the acts, conduct and financial interest which shall be considered to be in conflict with the position they hold and providing the procedure for enforcing the same. This may be either in addition to, or incorporated into personnel rules and regulations as pertain to various employees.

(50)  To adopt rules and regulations regarding campaign contributions and expenditures for city elections.

(51)  To adopt a disaster emergency preparedness ordinance that provides for the development and adoption of a comprehensive city emergency management plan, to take effect in the event of the occurrence or imminent threat of widespread or severe damage, injury, or loss of life or property resulting from any natural or man-made cause. The comprehensive city emergency management plan must ensure the continuity of governance. (Amend. of 5-3-97, Prop. No. 6; Amend. of 11-8-05, Prop. Nos. 4, 6, and 10)

## SEC. 2.  GENERAL POWERS ADOPTED.

The enumeration of particular powers in the Charter shall not be held or deemed to be exclusive, but in addition to the powers enumerated herein, implied thereby or appropriate to the exercise thereof, the city shall have and may exercise all other powers which under the Constitution and laws of the State of Texas, it would be competent for the Charter specifically to enumerate. The city shall have and exercise all the powers conferred upon cities by what is known as the Home Rule Amendment to the Constitution of the State of Texas and the Enabling Act relative thereto, passed by the Thirty-third Legislature of the State of Texas, found in the published laws of said legislature, Regular Session, pages 307 to 317, and effective July 7, 1913, and all other laws passed by the legislature of the State of Texas, relating thereto, or which may hereafter be passed by said legislature in relation to such matters.

## SEC. 3.  CHARTER REVIEW PROCESS.

At intervals of not more than 10 years (the first interval to occur not more than 10 years after adoption of this section), the Charter shall be reviewed by a commission appointed by the council. The commission shall complete the review and report to the council within one year after its appointment. Notwithstanding this section, amendments to the Charter may at any time be framed and proposed as provided by law. (Amend. of 11-8-05, Prop. No. 7)

# CHAPTER III.  CITY COUNCIL

DEFENDANT'S
EXHIBIT

4

## SEC. 1.  COMPOSITION OF CITY COUNCIL.

Except as otherwise provided by this Charter, all powers conferred on the city shall be exercised by a city council to be composed of 15 members, nominated and elected in the manner hereinafter provided unless otherwise provided by law. One member of the city council, Place 15, shall be elected by the qualified voters of the entire city and 14 members by the qualified voters residing in a particular district, Places 1 through 14 respectively, as provided in Chapter IV of this Charter. Members of council, Places 1 through 14, shall each be elected for a term of two years and member of council, Place 15, shall be elected for a term of four years. The city council members so elected shall take office on the first Monday following the

30th calendar day after the final canvass of the general election, and they shall serve until their respective successors have been elected and qualified. (Amend. of 4-3-76, Prop. No. 1; Amend. of 8-12-89, Prop. No. 1; Amend. of 5-1-93, Prop. No. 1; Amend. of 5-3-97, Prop. No. 7; Amend. of 11-8-05, Prop. No. 6)

## SEC. 2. MAYOR'S ELECTION AND DUTIES.

(a) The person elected as member of council, Place 15, shall be the presiding officer of the city council and the mayor of the City of Dallas. The mayor shall have a vote on all matters coming before the city council, other than confirmation of appointments by the mayor, unless otherwise disqualified, but no power to veto. The mayor shall be the official head of the city government.

(b) In addition to the mayor's other duties, the mayor shall ensure that annual reports are made as to the state of the city, its financial condition, its accomplishments, and its plan and needs for the future. (Amend. of 4-3-76, Prop. No. 2; Amend. of 8-12-89, Prop. No. 1)

## SEC. 3. COUNCIL QUALIFICATIONS.

Each member of the city council shall, in addition to the other qualifications prescribed by law, be at the date of election a qualified voter of the city, and shall not be in arrears in the payment of any taxes or other liabilities due the city. (Amend. of 11-8-05, Prop. No. 13)

## SEC. 3A. LIMITATION OF TERMS.

(a) A person who has served as a member of the city council other than Place 15 for four consecutive two-year terms shall not again be eligible to become a candidate for, or to serve in, any place on the city council except Place 15 until at least one term has elapsed.

(b) A person who has served two consecutive terms as a member of the city council, Place 15, shall not again be eligible to become a candidate for, or to serve in, Place 15 on the city council until at least one term for Place 15 has elapsed.

(c) A "term" as used in Subsection (a) shall include any period of service during a city council term when that period is in excess of one year, including a term from which the member resigned.

(d) For the purpose of limiting terms under Subsection (b), a term includes a period of time less than four years when the period of service by a mayor during a term is in excess of 731 days. (Amend. of 1-17-81, Prop. No. 2; Amend. of 8-12-89, Prop. No. 1)

## SEC. 4. COMPENSATION OF THE MEMBERS OF THE CITY COUNCIL.

(a) Effective October 1, 2001, each member of the city council, other than the mayor, shall receive as compensation for services the sum of $37,500 for each year (prorated for partial years) that the member serves on the city council. The mayor shall receive as compensation for services the sum of $60,000 for each year (prorated for partial years) served as mayor on the city council. *[Note: This version of subsection (a) is effective until the swearing in of city council members in June 2015.]*

(a) Effective upon the swearing in of city council members in June 2015, each member of the city council, other than the mayor, shall receive as compensation for services the sum of $60,000 for each year (prorated for partial years) that the member serves on the city council. The mayor shall receive as compensation for services the sum of $60,000 for each year (prorated for partial years) served as mayor on the city council. *[Note: This version of subsection (a) is effective upon the swearing in of city council members in June 2015 and until the swearing in as mayor of an individual who did not hold the office of mayor on November 4, 2014.]*

(a) Effective upon the swearing in of city council members in June 2015, each member of the city council, other than the mayor, shall receive as compensation for services the sum of $60,000 for each year (prorated for partial years) that the member serves on the city council. Effective upon the swearing in as mayor of an individual who did not hold the office of mayor on November 4, 2014, the mayor shall receive as compensation for services the sum of $80,000 for each year (prorated for partial years) served as mayor on the city council. *[Note: This version of subsection (a) is effective upon the swearing in as mayor of an individual who did not hold the office of mayor on November 4, 2014.]*



(b) For purposes of this section, a "year" means a 12-consecutive-month period.

(c) The compensation provided for in Subsection (a) will be paid on a biweekly basis.

(d) In addition to receiving the compensation provided for in Subsection (a), all necessary expenses incurred by members of the city council in the performance of their duties will be paid by the city, when authorized by the city council.

(e) If any city council member, including the mayor, misses more than 10 percent of the total number of regular meetings held by the city council during any compensation year, then the city council member's compensation provided for under Subsection (a) for that year will be reduced proportionately by the percentage of meetings missed. For purposes of this subsection, regular meetings include both those held by the full city council and those held by the standing city council committees on which a member serves. Meetings missed by a city council member while he or she is on the official business of the city council and at the direction of the city council will not be counted towards the percentage of missed meetings for which compensation reduction is required under this subsection, but will be counted as though the member had attended the meetings that are missed while so engaged in city business. (Amend. of 5-5-01, Prop. No. 1; Amend. of 11-4-14, Prop. No. 8)

## SEC. 5. VACANCIES IN THE CITY COUNCIL; HOW FILLED.

(a) If a vacancy occurs on the city council, the vacancy must be filled at a special election for that purpose unless a general election that would fill the vacant place is scheduled to occur within 120 days after the vacancy occurred. As soon as practicable after the occurrence of the vacancy, the city council shall call a special election to be held at the next authorized election date that is at least 60 days after the date of the occurrence of the vacancy.

(b) A person selected to fill a vacancy on the city council shall serve only until the next general city election for that place.

(c) If a candidate duly elected to the city council at the general election fails to take the oath of office on or before 10 days after the beginning of the term, then that place will be considered a vacancy and filled as provided in this section for other vacancies. If a candidate elected to the city council at a special election fails to take the oath of office on or before 10 days after the official canvass of the election, then that place will be considered a vacancy and filled as provided in this section for other vacancies.

(d) In the event of the death or disability of all members of the city council for any reason, such that the city council is unable to call an election to fill vacancies on the city council, the city attorney is authorized to institute an action on behalf of the city in the district court of Dallas County, Texas to obtain an appropriate order declaring an emergency and calling a special election to fill the city council vacancies. If state law provides for the manner and method of calling such an election, then state law shall be followed in lieu of the instituting of court action by the city attorney. (Amend. of 4-3-76, Prop. No. 2; Amend. of 8-12-89, Prop. No. 1; Amend. of 5-1-93, Prop. No. 6; Amend. of 11-8-05, Prop. No. 4)

## SEC. 6. REGULAR MEETINGS.

(a) On the day the members of the city council take office, they shall meet at the building designated as the official city hall, and thereafter all regular meetings of the city council must be held in the city hall building in such locations and at such times as may be prescribed by ordinance, resolution, or lawfully-posted notice.

(b) For purposes of this Charter, a regular meeting of the city council means a meeting of the full city council at which city council members vote or are briefed on matters of interest to the city. (Amend. of 6-12-73, Prop. No. 5; Amend. of 8-12-89, Prop. No. 5; Amend. of 5-1-93, Prop. No. 5; Amend. of 11-4-14, Prop. No. 9)

## SEC. 7. SPECIAL MEETINGS.

Special meetings shall be called by the city secretary upon the written request of the mayor, the city manager or three members of the council. Any such notice shall state the subject to be considered at the special meeting and may provide for the taking up of any other matters presented at such meeting.

## SEC. 8. OPEN MEETINGS; SPEAKERS.

(a) All official meetings of the city council and of all city council committees must be open to the public as provided by state law. Those meetings involving an attorney and client relationship, or other matters authorized by law to be deliberated in closed session, need not be open to the public.

(b) The city council shall adopt rules of procedure that provide reasonable opportunity for citizens to be heard by the city council. (Amend. of 5-1-93, Prop. No. 5)

## SEC. 9. CITY COUNCIL QUORUM.

A quorum shall consist of nine members, except when the number of city council members, due to vacancies, is reduced to less than nine, in which event a quorum shall consist of all of the remaining city council members; but a less number than a quorum may adjourn from time to time and compel the attendance of absent members in such manner and under such penalties as may be prescribed by ordinance. (Amend. of 8-12-89, Prop. No. 1)

## SEC. 10. COUNCIL VOTE.

No member shall be excused from voting except on matters involving the consideration of his or her own official conduct, where required by law, or where his or her financial interests are involved, and in these instances, the member shall not vote. The council shall determine its own rules of procedure, and may punish its members for misconduct, and may compel the attendance of absent members. (Amend. of 11-8-05, Prop. No. 13; Amend. of 11-4-14, Prop. No. 9)

## SEC. 11. ELECTION AND DUTIES OF THE MAYOR PRO TEM AND DEPUTY MAYOR PRO TEM.

The city council shall elect one of its members as mayor pro tem, who shall perform a specific duty of the mayor if the mayor is unable to discharge that specific duty, and who shall, during that time, be vested with all the powers belonging to the mayor to perform that specific duty. The council shall also elect one of its members as deputy mayor pro tem to act if both the mayor and the mayor pro tem are unable to discharge a specific duty and to exercise the powers of the mayor to perform that specific duty. (Amend. of 11-8-05, Prop. No. 13; Amend. of 11-4-14, Prop. No. 9)

## SEC. 12.  CITY COUNCIL MAY SUMMON WITNESSES, ETC.

The city council shall have power to summon and compel the attendance of witnesses and the production of books and papers before it whenever it may be necessary for the more effective discharge of its duties, and shall have the power to punish for contempt before it with the same fines and penalties as the county judge may punish for contempt before the county court. All process shall be signed by the mayor and attested by the city secretary and shall be served by the chief of police or any police officer of the said city.

The mayor, city secretary or any member of the city council shall have authority to administer oaths in any matter pertaining to municipal affairs.

## SEC. 13.  POLICY-MAKING PROCEDURES AND OVERSIGHT RESPONSIBILITIES.

(a)  In the performance of the powers of government, it is the duty of the mayor and the city council to make suitable provision for the assurance of adequate and appropriate prior review and consideration of official actions to be taken by the city council, and to assure that a high performance level of services to the citizens is maintained, responsiveness to the people is provided, and accountability in municipal government is assured. To this end, the city council shall:

(1)  adopt rules of procedure governing the conduct of city council meetings and the introduction, consideration, and method of review of actions to be considered by the city council, consistent with the city manager's authority to present directly to the entire city council the city manager's operational agenda;

(2)  create a standing finance committee of the city council charged with the responsibility for financial and audit oversight of the operations of city government;

(3)  establish such additional standing committees and their duties as the city council determines is appropriate; and

(4)  establish the process by which the committees shall conduct their business and review matters for city council consideration, consistent with the city manager's authority to present directly to the entire city council the city manager's operational agenda.

(b)  The mayor shall appoint the members and chairs of all city council committees, and it shall be the duty of each member of the city council to serve and to participate on each committee to which the member is appointed. The mayor shall have the power to remove and reassign members to and from the various city council committees. (Amend. of 8-12-89, Prop. No. 2)

## SEC. 14.  PROFESSIONAL AND ADMINISTRATIVE ASSISTANTS TO MAYOR AND COUNCIL.

The city manager shall provide professional and administrative assistants to aid the council in the performance of its official duties. Assistants to individual council members shall be selected by the respective council members from a pool of applicants provided by the city manager. An individual council member may, at any time, require the city manager to reassign his or her council assistant and provide a pool of applicants from which the council member may select a new assistant. Personnel filling these positions shall not be subject to civil service. (Amend. of 6-12-73, Prop. No. 7; Amend. of 11-8-05, Prop. No. 2)

## SEC. 15.  NO INTERFERENCE BY COUNCIL WITH APPOINTMENTS OR SUBORDINATES OF CITY MANAGER.



CHARTER of THE CITY OF DALLAS, TEXAS

Neither the council nor any of its committees or members shall dictate or attempt to dictate any person's appointment to, or removal from, office or employment by the city manager or any of the city manager's subordinates, or in any manner interfere in the appointment of officers and employees in the departments of administrative service vested in the manager by this Charter. Except for the purpose of inquiry, the council and its members shall deal with that part of the administrative service for which the city manager is responsible solely through such manager, and neither the council nor any city council member shall give orders to any of the subordinates of the city manager in those departments, either publicly or privately. This section shall not apply to those professional and administrative assistants provided for in Section 14 of this chapter. (Amend. of 6-12-73, Prop. No. 7; Amend. of 11-8-05, Prop. Nos. 2 and 13)

## SEC. 16. EXPULSION OF COUNCIL MEMBER.

Willful violation of the foregoing provisions of this Charter by any member of the council shall constitute official misconduct, and shall authorize the council, by a vote of two-thirds of its entire membership, to expel such offending member from the council, if found guilty after a public hearing, and thereby create a vacancy in the place held by such member.

## SEC. 17. PROHIBITING HOLDING OR RUNNING FOR OTHER OFFICE.

(a) No person elected to the city council shall, during the term for which he or she was elected, be appointed to any office or position of emolument in the service of the city. If a member of any board or commission appointed by the council or any appointive officer of the city, including municipal judges, city appointees to the Dallas Area Rapid Transit Board, and city appointees to the Dallas/Fort Worth International Airport Board, becomes a candidate for nomination or election to any public office, he or she shall immediately forfeit his or her place or position with the city. This provision does not prohibit a person from applying for a position as a municipal judge while a candidate for nomination or election to any public office.

(b) A member of the city council shall forfeit his or her place on the council if he or she becomes a candidate for nomination or election to any public office other than a place on the city council or if he or she becomes a candidate for election to any different place on the city council that requires taking office prior to the end of his or her elective term. (Amend. of 6-12-73, Prop. No. 8; Amend. of 11-8-05, Prop. No. 13; Amend. of 11-4-14, Prop. Nos. 7 and 9)

## SEC. 18. INVESTIGATIONS.

The council, the city manager or any person or committee authorized by either or both of them shall have power to inquire into the conduct of any department or office of the city; to make investigations as to city affairs, and for that purpose may subpoena witnesses, administer oaths and compel the production of books, papers and other evidence material to said inquiry. The council shall provide by ordinance penalties for contempt in refusing to obey any such subpoenas or failure to produce books, papers and other evidence, and shall have the power to punish any such contempt in the manner provided by ordinance.

## SEC. 19. INDEPENDENT AUDIT.

The city council shall cause the annual financial statements and related records and accounts of the city to be audited annually by a firm registered with the Texas State Board of Public Accountancy as a firm practicing public accountancy. The auditor shall be selected by the city council, and shall be responsible to the council. The report of such auditor and the financial statements and related audit opinion for the fiscal year shall be printed and a copy shall be furnished to each city council member and the city manager, and a copy shall be kept available in the office of the city secretary for inspection by any citizen upon request. A summary of the annual financial statements and the audit report shall also be published once in a newspaper



of general circulation in the city. The original report of the auditor or auditors shall be kept among the permanent records of the city. (Amend. of 6-12-73, Prop. No. 9; Amend. of 11-8-05, Prop. Nos. 11 and 13; Amend. of 11-4-14, Prop. No. 9)

## SEC. 20.  CITY TREASURER AND SELECTION OF CITY DEPOSITORY.

(a)  The person designated by the city manager as the chief financial officer of the city shall serve as the city treasurer, who shall have the custody of all the public moneys, funds, notes, bonds, and other securities belonging to the city. The chief financial officer shall give such bond as the council may require, conditioned on the faithful discharge of his or her duties, and the premium of such bond shall be paid by the city. In addition to such bond, the city shall, in accordance with state law, require designated city depositories to hypothecate securities in such amount as it shall prescribe.

(b)  The city council shall, in accordance with state law, select and designate a depository for the moneys and funds of the city. The city council may at any time, in accordance with state law, select and designate more than one depository. The chief financial officer shall be responsible for administering the contract with the depository. The depository shall receive and securely keep all moneys belonging to the city and make all payments from the same upon orders signed by the city manager and countersigned by the chief financial officer, after authorization of the city council. All monies received by any person, department, or agency of the city for or in connection with the affairs of the city shall be deposited promptly in a commercially reasonable manner in city depositories. The chief financial officer shall ensure that a full and correct statement of receipts and payments is provided to the city manager and the city council, at such times as the city manager or city council may require and in such form as the city manager may prescribe. The chief financial officer shall perform such other acts and duties as the city manager may prescribe. (Amend. of 4-2-83, Prop. No. 6; Amend. of 4-6-85, Prop. No. 1; Amend. of 11-8-05, Prop. Nos. 8 and 13; Amend. of 11-4-14, Prop. No. 9)

# CHAPTER IIIA. CITY SECRETARY

(Added by Amend. of 4-3-76, Prop. No. 3)

## SEC. 1.  APPOINTMENT; REMOVAL; COMPENSATION.

The city council shall appoint a city secretary who shall serve for a period of two years from the date of appointment or until a successor is appointed and qualified, unless sooner discharged by the council. The city secretary shall be a resident of the City of Dallas. If at the time of appointment, the city secretary resides outside the City of Dallas, then he or she shall move into the city within a time period required by the city council. The city secretary shall be appointed by a majority vote of all of the members of the city council and shall not be discharged during his or her term of office except upon a majority vote of all of the members of the council. The city secretary shall receive such compensation as shall be fixed by the council. (Amend. of 11-8-05, Prop. Nos. 2 and 13)

## SEC. 2.  ASSISTANTS AND EMPLOYEES.

The city council shall provide the city secretary with such assistants as it may deem necessary, and they shall receive such compensation as may be fixed by the council. Any such assistant may be discharged at any time by the city secretary. All powers and duties imposed on the city secretary may be exercised and performed by any assistant under the city secretary's direction. (Amend. of 11-8-05, Prop. Nos. 2 and 13)

## SEC. 3.  DUTIES OF THE CITY SECRETARY.



# CITY COUNCIL

# RULES OF PROCEDURE

# CITY OF DALLAS, TEXAS

Adopted August 11, 1993

Amended by Resolution Nos. 94-0297, 94-2571, 94-3328, 94-3675, 95-1545,
95-2450, 95-2451, 95-2760, 95-4204, 96-0713, 98-3005, 99-3641, 01-2476, 03-1652,
03-1779, 04-1257B, 05-1211, 07-2686, 09-1868, 09-2128, 09-2835, 11-2458, 11-3297,
13-1441, 14-0430, 15-0344, 17-0953, and 17-1122.





# TABLE OF CONTENTS

**Section 1      AUTHORITY** ...................................................................................4

**Section 2      MEETINGS**
   2.1.   Regular Meetings ...................................................................4
   2.2.   Special Meetings ....................................................................4
   2.3.   Public Notice .........................................................................4
   2.4.   Quorum ..................................................................................4
   2.5.   Compelling Attendance .........................................................4
   2.6.   City Manager Participation ...................................................4
   2.7.   City Attorney Participation ...................................................4
   2.8.   City Secretary Participation ..................................................4
   2.9.   City Auditor Participation .....................................................5
   2.10.  Executive Sessions ................................................................5
   2.11.  Reserved.................................................................................5
   2.12.  Punctuality and Breaks .........................................................5
   2.13.  Briefing Meetings .................................................................5

**Section 3      CODE OF CONDUCT**
   3.1.   City Council Members...........................................................5
   3.2.   Administrative Staff...............................................................6
   3.3.   Citizens and Other Visitors....................................................7
   3.4.   Enforcement...........................................................................7

**Section 4      DUTIES AND PRIVILEGES OF MEMBERS**
   4.1.   Seating Arrangement .............................................................7
   4.2.   Right of Floor .......................................................................8
   4.3.   Conflict of Interest ................................................................8
   4.4.   Right of Appeal.....................................................................8
   4.5.   Voting ...................................................................................8
   4.6.   Demand for Roll Call.............................................................8
   4.7.   Personal Privilege .................................................................8
   4.8.   Dissents and Protests.............................................................8
   4.9.   Excusal from Attendance ......................................................8
   4.10.  Excusal During Meetings......................................................9
   4.11.  Absence Because of Official City Business............................9
   4.12.  Absence from More than 50 Percent of a Meeting...........9

**Section 5      CHAIR AND DUTIES**
   5.1.   Chair......................................................................................10
   5.2.   Call to Order .........................................................................10
   5.3.   Preservation of Order ............................................................10




5.4.   Questions to be Stated.....................................................................10
5.5.   Call for Recess ...............................................................................10

**Section 6      ORDER OF BUSINESS**
6.1.   Agenda .............................................................................................10
6.2.   Presentations by Members of Council .............................................12
6.3.   Citizen Speakers..............................................................................12
6.4.   Communications to Mayor and City Council ...................................15
6.5.   Oral Presentations ...........................................................................15
6.6.   Public Hearings ...............................................................................16

**Section 7      CONSIDERATION OF ORDINANCES, RESOLUTIONS AND MOTIONS**
7.1.   Printed Form ....................................................................................16
7.2.   City Attorney to Approve ................................................................16
7.3.   Distribution of Ordinances ..............................................................16
7.4.   Rules of Order..................................................................................16
7.5.   Order of Precedence of Motions ......................................................16
7.6.   Reconsideration................................................................................17
7.7.   The Previous Question .....................................................................17
7.8.   Withdrawal of Motions ....................................................................17
7.9.   Amendments to Motions ..................................................................18
7.10.  Appropriations of Money.................................................................18
7.11.  Deferral of Agenda Items.................................................................18
7.12.  Moratoriums.....................................................................................19

**Section 8      VOTES REQUIRED**
8.1.   Charter and State Requirements.......................................................20
8.2.   City Council Rules Requirements.....................................................20

**Section 9      CITY COUNCIL COMMITTEES**
9.1.   Committees Established.....................................................................21
9.2.   Appointment .....................................................................................21
9.3.   Committee Meetings.........................................................................22
9.4.   Ad Hoc Committees..........................................................................22
9.5.   Reserved............................................................................................22
9.6.   Agenda and Information ...................................................................22

**Section 10     RULES SUSPENSION OR AMENDMENT**
10.1.  Suspension of Rules.........................................................................22
10.2.  Amendment of Rules ........................................................................22

## SECTION 1          AUTHORITY.

The Charter of the City of Dallas, Texas, provides for open meetings of the city council at which reasonable opportunity shall be given for citizens to be heard under such rules as the council may provide. The Rules of Procedure establish guidelines to be followed by all persons attending a city council meeting, including members of the city council, administrative staff, news media, and visitors. [City Charter Chapter III §8 and §10]

## SECTION 2          MEETINGS.

2.1.   **Regular Meetings.** The city council will meet at 11:00 a.m. on the day the council members take office, and thereafter on dates and at times set by the city council, unless postponed or canceled for valid reasons. [City Charter Chapter III §6]

2.2.   **Special Meetings.** The city secretary shall call special meetings upon written request of the mayor, the city manager, or three members of the council. [City Charter Chapter III §7]

2.3.   **Public Notice.** The agenda for all regular meetings and the notice listing items to be considered shall be posted by the city secretary on the City's official bulletin board in accordance with the Texas Open Meetings Act. [Texas Government Code Chapter 551]

2.4.   **Quorum.** Nine members constitute a quorum except when the number of council members, due to vacancies, is reduced to less than nine, in which event a quorum consists of all the remaining council members. [City Charter Chapter III §9.] A quorum of the city council must be present to conduct a city council meeting, except that a quorum is not required to hear proclamations and special recognitions.

2.5.   **Compelling Attendance.** A lesser number than a quorum may adjourn from time to time and compel the attendance of absent members. [City Charter Chapter III §9]

2.6.   **City Manager Participation.** The city manager, or acting city manager, shall attend all meetings of the city council unless excused. The city manager may make recommendations to the city council and shall have the right to take part in all discussions, but shall have no vote. [City Charter Chapter VI §2(6)]

2.7.   **City Attorney Participation.** The city attorney, or designated assistant city attorney, shall attend all meetings of the city council unless excused and shall, upon request, give an opinion, either written or oral, on questions of law. The city attorney shall act as the city council's parliamentarian. [City Charter Chapter VII §3(7)]

2.8.   **City Secretary Participation.** The city secretary or designated assistant city secretary shall attend all meetings of the city council and shall keep accurate records of all actions taken by the city council. [City Charter Chapter IIIA §3(1)]



2.9.   **City Auditor Participation.**   The city auditor or designated assistant city auditor shall be available in City Hall during all city council meetings to respond to inquiries made by the city council. Upon the request of any city council member, the auditor shall attend the briefing or deliberation of any specific agenda item.

2.10.   **Executive Sessions.**   The city council may meet in executive session when it is scheduled by the mayor upon request by the city attorney, city manager, city auditor, city secretary, or any member of the city council and when it is in compliance with the Texas Open Meetings Act. No vote shall be taken in an executive session on any matter under consideration nor shall any city council member enter into a commitment with another respecting a vote to be taken subsequently in a public meeting of the city council. The city council shall follow the letter and the spirit of the Texas Open Meetings Act, and closed executive sessions shall be kept to a minimum.

2.11.   **Reserved.**

2.12.   **Punctuality and Breaks.**   City council members shall arrive at city council and committee meetings at or before the scheduled time for the meeting to begin. If a quorum of a city council committee has not arrived at a committee meeting within 15 minutes after the scheduled starting time of the meeting, the chair may cancel the meeting. At the beginning of each city council meeting, the mayor shall announce the schedule for breaks and lunch to be taken during the meeting.

2.13.   **Briefing Meetings.**   During briefing meetings, city council members shall refrain from calling on members of the public to speak unless arrangements with the mayor are made in advance of the meeting.

## SECTION 3          CODE OF CONDUCT.

3.1.   **City Council Members.**

(a)   During city council meetings, city council members shall assist in preserving order and decorum and shall neither by conversation or otherwise delay or interrupt the proceedings nor refuse to obey the orders of the presiding officer or the rules of the city council.

(b)   A city council member desiring to speak shall address the chair and, upon recognition by the presiding officer, shall confine discussion to the question under debate, avoid discussion of personalities and indecorous language, and refrain from personal attacks and verbal abuse.

(c)     A city council member desiring to question the administrative staff shall address questions to the city manager who shall be entitled either to answer the inquiries or to designate some member of city staff for that purpose. City council members shall not berate nor admonish staff members.

(d)     A city council member, once recognized, shall not be interrupted while speaking unless called to order by the presiding officer, unless a point of order is raised by another member, or unless the speaker chooses to yield to questions from another member. If a city council member is called to order while speaking, that member shall cease speaking immediately until the question of order is determined. If ruled to be in order, the member shall be permitted to proceed. If ruled to be not in order, the member shall remain silent or make additional remarks so as to comply with rules of the city council.

(e)     City council members shall confine their questions to the particular matters before the assembly and in debate shall confine their remarks to the issues before the city council.

(f)     When there is more than one speaker on the same subject, city council members will delay their comments until after all speakers on the subject have been heard.

(g)     City council members shall refrain from eating food inside the council chamber.

## 3.2    Administrative Staff.

(a)     Members of the administrative staff and employees of the City shall observe the same rules of procedures and decorum applicable to members of the city council.

(b)     Although the presiding officer has the authority to preserve decorum in meetings, the city manager also is responsible for the orderly conduct and decorum of all city employees under the city manager's direction and control.

(c)     The city manager shall take such disciplinary action as may be necessary to ensure that decorum is preserved at all times by city employees in city council meetings.

(d)     All persons addressing the city council, including the city manager, other staff members, or members of the public shall be recognized by the presiding officer and shall limit their remarks to the matter under discussion.

(e)     All remarks and questions addressed to the city council shall be addressed to the city council as a whole and not to any individual member.

(f)     No staff member, other than the staff member having the floor, shall enter into any discussion either directly or indirectly without permission of the presiding officer.





### 3.3    Citizens and Other Visitors.

(a)    Citizens and other visitors are welcome to attend all public meetings of the city council and will be admitted to the city council chamber or other room in which the city council is meeting up to the fire safety capacity of the room.

(b)    Everyone attending the meeting will refrain from private conversations while the city council is in session.

(c)    Citizens and other visitors attending city council meetings shall observe the same rules of propriety, decorum and good conduct applicable to members of the city council. Any person making personal, impertinent, profane or slanderous remarks or who becomes boisterous while addressing the city council or while attending the city council meeting shall be removed from the room if the sergeant-at-arms is so directed by the presiding officer, and the person shall be barred from further audience before the city council during that session of the city council. If the presiding officer fails to act, any member of the city council may move to require enforcement of the rules, and the affirmative vote of a majority of the city council shall require the presiding officer to act.

(d)    Unauthorized remarks from the audience, stamping of feet, whistles, yells, and similar demonstrations shall not be permitted by the presiding officer, who may direct the sergeant-at-arms to remove offenders from the room.  Aggravated cases shall be prosecuted on appropriate complaint signed by the presiding officer.  In case the presiding officer shall fail to act, any member of the city council may move to require enforcement of the rules, and the affirmative vote of the majority of the city council shall require the presiding officer to act.

(e)    No placards, banners, or signs will be permitted in the city council chamber or in any other room in which the city council is meeting. Exhibits, displays, and visual aids used in connection with presentations to the city council, however, are permitted.  Video presentations requested by citizens as visual aids will not be broadcasted over cable television.

(f)    Citizens or other visitors attending city council meetings shall not bring food or drink into the city council chamber or into any other room in which the city council is meeting.

3.4    **Enforcement.** The city manager, as chief law enforcement officer, shall act as sergeant-at-arms for the city council and shall furnish whatever assistance is needed to enforce the rules of the city council.

## SECTION 4         DUTIES AND PRIVILEGES OF MEMBERS.

4.1.    **Seating Arrangement.** City council members shall occupy the seats in the city council chamber assigned to them by the mayor, but any two or more members may exchange seats.



4.2.    **Right of Floor.** A city council member who desires to speak must be recognized by the presiding officer.  No member shall address the presiding officer or demand the floor while a vote is being taken.

4.3.    **Conflict of Interest.** A member prevented from voting by a conflict of interest shall leave the city council meeting during the debate, shall not vote on the matter, and shall otherwise comply with the state law and city ordinances concerning conflicts of interest.

4.4.    **Right of Appeal.** Any member may appeal to the city council from a ruling of the presiding officer.  If the appeal is seconded, the member making the appeal may briefly explain the ruling; but there shall be no debate on the appeal, and no other member shall participate in the discussion.  The presiding officer shall then put the question, "Shall the decision of the chair be sustained?"  If a majority of the members present vote "Aye," the ruling of the chair is sustained; otherwise, it is overruled.

4.5.    **Voting.**

(a)    Every member present when a question is called shall vote either "Yes" or "No" except where required by law, or on matters involving a conflict of interests or the consideration of the member's own official conduct.  [City Charter Chapter III §10]

(b)    After the result of a vote is announced, a member may not change a vote unless, before the adjournment of that meeting, permission is given to change the vote by a majority vote of the members present.

4.6.    **Demand for Roll Call.**  Upon demand of any member for roll call vote, made before the result is announced, the vote shall be taken on the city council chamber voting machine, or if the machine is unavailable, the roll shall be called for yes and no votes upon any question before the city council.  It shall not be in order for members to explain their vote during the roll call.

4.7.    **Personal Privilege.** The right of a member to address the city council on a question of personal privilege shall be limited to cases in which the member's integrity, character, or motives are assailed, questioned, or impugned.

4.8.    **Dissents and Protests.**  Any member shall have the right to express dissent from or protest against any ordinance, resolution, or other action of the city council and have the reason for the dissent or protest entered in the minutes.  Such dissent or protest may be filed in writing and presented to the city secretary for placement in the minutes not later than the next regular agenda meeting following the date of the city council's action on the matter.

4.9.    **Excusal from Attendance.** City council members are expected to attend meetings and stay in attendance during each meeting.  No member shall be excused from attendance at a city council meeting except for good and valid reasons.





4.10.   **Excusal During Meetings.** No member should leave a city council meeting while in session without advising the presiding officer.

4.11.   **Absence Because of Official City Business.**

(a)      If a city council member is absent from an entire regular city council meeting, or an entire regular meeting of a city council committee to which he or she is assigned, because he or she is on official city business at the direction of the city council, the member shall request that the city secretary record in the minutes for that meeting that the member was absent because of official city business. The city secretary shall maintain a record of these absences on official city business so that such absences will not count against the city council member in determining his or her annual compensation under Dallas City Charter Chapter III §4.

(b)      An absence for any of the following reasons will automatically be deemed to be for official city business at the direction of the city council and will not be counted against a city council member for purposes of determining the council member's annual compensation under Dallas City Charter Chapter III §4:

(1)      Attending a meeting or conference of a professional organization of or association of municipalities or municipal officers.

(2)      Testifying at a legislative hearing at the request of the mayor, the city council, the chair of the city council's legislative affairs committee, or the city manager.

(3)      Attending a meeting of a board, commission, or committee to which the city council member has been appointed by the mayor or the city council.

(c)      In addition to absences automatically considered to be on official city business at the direction of the city council under Paragraph (b) of this subsection, the city council may by resolution designate whenever a council member's absence is for official city business and not counted as a missed meeting for purposes of Dallas City Charter Chapter III §4.

4.12.   **Absence from More than 50 Percent of a Meeting.**

(a)      If a city council member is absent from more than 50 percent of a regular city council meeting, or more than 50 percent of a regular meeting of a city council committee to which he or she is assigned, and he or she is not on official city business at the direction of the city council as approved under Subsection 4.11 of these rules, the member will be deemed to be absent from the meeting, and the absence will be counted against the member for purposes of determining the member's annual compensation under Dallas City Charter Chapter III §4.





(b)     If a city council committee meeting is scheduled to last for a designated length of time, then a city council member who is present during half or more of the scheduled length of the meeting shall be counted as having attended the meeting even if the meeting runs past its scheduled length.

(c)     The city secretary, or a person designated by the city secretary or the city manager to record attendance of city council members at a meeting, shall maintain a record of each city council member's absences so that such absences can be used in determining the member's annual compensation under Dallas City Charter Chapter III §4.

## SECTION 5          CHAIR AND DUTIES.

5.1.     **Chair.** The mayor, if present, shall preside as chair at all meetings of the city council.  In the absence of the mayor, the mayor pro tem shall preside.  In the absence of both the mayor and mayor pro tem, the deputy mayor pro tem shall preside.  In the absence of all three, the council shall elect a chair.  If the mayor vacates the chair during a meeting, and the mayor pro tem or deputy mayor pro tem is not available, the mayor may, subject to the approval of the city council, appoint a temporary chair.  The first adjournment puts an end to this appointment.  [City Charter Chapter III §2 and §11]

5.2.     **Call to Order.** The meetings of the city council shall be called to order by the mayor or, in the mayor's absence, by the mayor pro tem or, in the mayor pro tem's absence, by the deputy mayor pro tem.  In the absence of the mayor, mayor pro tem, and deputy mayor pro tem, the meeting shall be called to order by the city secretary.



5.3.     **Preservation of Order.** The chair shall preserve order and decorum, call upon the sergeant-at-arms as necessary to enforce compliance with the rules, and confine members in debate to the question under discussion.

5.4.     **Questions to be Stated.** The chair shall state all questions submitted for a vote and announce the result.  A roll call vote shall be taken when requested by a member in accordance with Subsection 4.6.

5.5.     **Call for Recess.** The chair may call for a 10-minute recess at regular intervals of approximately one hour at appropriate points in the meeting agenda.

## SECTION 6          ORDER OF BUSINESS.

6.1.     **Agenda.**

(a)     **Preparation and Distribution.** The order of business of each meeting shall be as contained in the agenda prepared as follows:



(1)     The agenda shall be a listing by topic of subjects to be considered by the city council, and shall be delivered to members of the city council in advance of each meeting in accordance with the directives of the city council.

(2)     The mayor shall determine the contents of the agenda relating to policy items. The mayor shall transmit these items to the city manager in time for distribution to the city council at the same time operational items are distributed.

(3)     The city manager shall present the operational agenda to the city council. [City Charter Chapter III §13(a)(1) and (4)]

(b)     **Briefing Meetings.**

(1)     On the first and third Wednesday of each month, the city council will hold a briefing meeting, which shall begin at 9:00 a.m. At a briefing meeting, the city council shall present any proclamations or other recognitions scheduled for the day. At the conclusion of the proclamations, the briefings scheduled for the day will begin. The city manager will present options and recommendations at the end of each policy briefing. A council member may speak no more than two times on any briefing item, and each time will be limited to five minutes.

(2)     Voting items will not be scheduled on briefing days except for emergencies, construction contracts, construction change orders, architectural and engineering contracts, and architectural and engineering supplemental agreements. Speakers may sign up to speak on any voting item placed on a briefing agenda. Speakers may also sign up to speak at open microphone periods at the beginning and end of each briefing meeting. Speakers shall appear in accordance with applicable rules established in Subsection 6.3 of these rules.

(c)     **Voting Agenda Meetings.**

(1)     On the second and fourth Wednesday of each month, the city council will hold a voting agenda meeting, which shall begin at 9:00 a.m. At a voting agenda meeting, the city council shall hear speakers who wish to comment on matters that are scheduled on the city council's voting consent and individual item agenda for that day. The city council shall also hear open microphone speakers. Speakers shall appear in accordance with applicable rules established in Subsection 6.3 of these rules. Upon completion of any speakers allowed under Subsection 6.3 to speak at the beginning of the meeting, the city council will consider the minutes, the consent agenda, and individual items for consideration until noon when they shall recess. No earlier than 1:00 p.m. the city council shall reconvene to conduct public hearings. At the completion of the public hearings, the city council shall resume its voting agenda.





(2)     A city council member may speak no more than two times on any one voting agenda item, and each time will be limited to three minutes. After 5:00 p.m., the time will be limited to two minutes, unless altered by majority vote. A council member may be recognized to exceed established limits upon passage of a nondebatable motion made by a council member. Responses by the staff or citizens to a council member's questions will not be included in the council member's speaking time. The chair shall take care that responses are brief and to the point. Briefings will not be scheduled for voting days except for emergencies.

(d)     **Fifth Wednesdays.** When a fifth Wednesday occurs in a month, the city council meeting may be used for special workshops, planning sessions, or other matters as agreed between the city manager and the city council.

(e)     The times specified for speakers and city council activities at the briefing meetings and the voting agenda meetings may be adjusted on days when the city council determines to hold an evening meeting.

6.2.     **Presentations by Members of Council.**

(a)     The mayor shall include on an agenda any item requested by five city council members or by a majority of a city council committee to be brought before the city council. Unless the request is withdrawn by any of the five city council members or by a majority of the city council committee, whichever applies, the item must be placed on:

(1)     the first briefing agenda scheduled at least 30 calendar days after receipt of the request by the mayor and the city manager, if the item is requested to be placed on a briefing agenda; or

(2)     the first voting agenda scheduled at least 30 calendar days after receipt of the request by the mayor, if the item is requested to be placed on a voting agenda.

(b)     The mayor shall not place on an agenda any item that has been voted on by the city council within the one-year period preceding the date requested for placement of the item on the agenda.

6.3.     **Citizen Speakers.** At briefing meetings and voting agenda meetings, a person may address the city council concerning voting items on the agenda or may present a subject for the city council's consideration during the open microphone periods in accordance with the following rules:



(a)     **Speakers to Register.** A person wishing to address the city council must first register with the city secretary and provide the following information: Name, residence address, daytime telephone number, the subject matter to be presented, and whether the subject is on the current city council meeting agenda. A person may register in person, by electronic mail, or by telephone. The earliest a person may register for an upcoming city council meeting is 8:15 a.m. of the next regular business day following the previous city council meeting. The deadline for registering to address the council at a city council meeting is 5:00 p.m. of the last regular business day preceding the meeting.

(b)     **Manager May Contact Speaker.** On the Tuesday before the Wednesday city council meeting, the city secretary will provide the city manager with the registration information of persons who have registered up to that time. The city manager may direct a member of the city staff to contact the person to try to resolve a problem. Contact by a member of the city staff should in no way suggest that the person should not appear and address the city council.

(c)     **Speaker Rules.** In order that the city council may properly consider each matter brought to it by citizens, speakers are asked to observe the following rules:

(1)     Only one person may approach the microphone at any one time, and only the person at the microphone will be allowed to speak.

(2)     There will be no substitutions or pooling of speakers.

(3)     Speakers must address their comments to the presiding officer rather than individual city council members or staff. Speakers may not refer to a city council member by name.

(4)     Speakers may file copies of their remarks or supporting information with the city secretary. The city secretary will make the information available to the city council and city manager if requested.

(5)     A person who addresses the city council during a public hearing must limit remarks to the specific subject matter being considered by the city council in that public hearing.

(6)     Dallas citizens will be allowed to speak before nonresidents.

(7)     Any person who has addressed the city council at either a briefing meeting or a voting agenda meeting in the preceding 30 days, excluding speaking at a public hearing, may only speak during the open microphone period at the end of the city council meeting.





(d)     **Time Limits on Voting Items.** The length of time a person will be allowed to speak on voting items at city council meetings will be determined according to the following rules:

(1)     A person who registers to speak on a voting item, other than a public hearing, will be called on at the time the item is considered by the city council, subject to the time restraints set forth in Subsection 6.1(c). A person who registers to speak on multiple voting items must speak on all items at the time the first item for which the speaker is registered is considered by the city council. Speakers will have a maximum of three minutes to speak regardless of the number of voting items they wish to address. The mayor may determine the order in which speakers are called. The order in which speakers are called is not required to be in the order that items appear on the agenda, nor are all speakers on a particular item required to be called at the same time. If an item is deferred from a city council agenda, a speaker who signed up to speak on the item may not be heard until the item is actually considered by the city council.

(2)     The mayor may impose more restrictive time limits on voting items that are not public hearings, but for which a large number of persons register to speak.

(3)     For called public hearings concerning applications to change zoning, to remove a flood plain designation, to change the name of a street, to use park land for another purpose, and similar cases, each person who registers will have a maximum of three minutes to speak, or if the city council approves by a majority vote, each side of the issue will be allowed a maximum of 15 minutes to make a presentation.

(4)     For other called public hearings, including annexation, benefit assessment, budget, community development block grant, development code amendments, thoroughfare alignment, thoroughfare plan, and other specially-called hearings, each person who registers will have a maximum of three minutes to speak. The mayor may impose more restrictive time limits on public hearings for which a large number of persons register to speak.



(e)     **Closed Public Hearings.** A person will not be permitted to address the city council during the consideration of a zoning ordinance placed on the agenda on which a public hearing has been held by the city council if the public hearing has been closed.

(f)     **Open Microphone.** The city council will provide an opportunity for citizens to present concerns or address issues that are not matters for consideration listed on a posted meeting agenda during an "open microphone" period at city council meetings, subject to the following rules:



(1)     Five persons may speak on any matter, including an agenda item, during an open microphone period at the beginning of each city council meeting. These first five speakers will be called in the order in which they registered to speak with the city secretary. Whenever a person fails to speak when his name is called, the name of the next speaker registered for the initial open microphone period will be called, until either five persons have spoken or all of the names have been called. An open microphone period will also be provided after the city council has concluded its agenda, at which time all speakers not heard earlier in the meeting may speak. For purposes of enforcing all provisions of Subsection 6.3 governing citizen speakers, a person who signs up to speak during the open microphone period at the beginning of a city council meeting, but who fails to speak when called upon, will be deemed to have spoken at the meeting.

(2)     Each speaker may speak only once, and the length of time a person will be allowed to speak during the open microphone period is three minutes. If a large number of speakers register for the open microphone period, however, the mayor may, with the concurrence of a majority of the city council, impose more restrictive time limits in order to allow the maximum number of persons to speak.

(3)     The order in which speakers will be called will be determined by the mayor.

(4)     No person may register to speak during an open microphone period more than once within any 30-day period.

(g)     During designated speaker times city council members may ask factual questions or make a brief acknowledgement of speakers. Speakers will have one minute to respond. More time may be granted to the speaker for a response at the discretion of the mayor or by a nondebatable motion approved by the city council. Council members will refrain from debate on any item during time allotted to speakers unless a specific time is granted by the mayor or by a nondebatable motion approved by the city council.

(h)     **Use of Interpreters.** Whenever it is necessary for a speaker to use an interpreter to translate his or her comments to the city council, the time required for the translation will not be counted against the designated time allotted for the speaker to address the city council.

6.4.     **Communications to Mayor and City Council.** The city manager shall provide the city council with an analysis of major items to be acted upon by the city council at its meetings. The analysis shall be delivered to the city council members preceding the meeting at which the item is to be discussed.

6.5.     **Oral Presentations.** Matters requiring the city council's attention or action may be presented orally by the city manager. If matters have developed since the deadline for delivery of the agenda, the city manager, or any city council member, may make oral report to the city council, but formal action, if required, shall be delayed until the next meeting.

### 6.6. Public Hearings.

(a)     The city manager shall schedule public hearings on the city council's agenda to be held at least two weeks before the city council must vote on the matter, except for zoning and assessment hearings.

(b)     By request of a majority of the city council or by the mayor, the city manager may schedule a public hearing on the same day or within two weeks before the time that a vote must be taken on the item.

(c)     Whether a public hearing is closed or held open, the vote on the item may be placed on the agenda two weeks after the opening of the public hearing.

(d)     The city council may schedule public hearings at times other than its regular meetings when it determines that the matter to be heard is a significant issue that requires more time than is available at regular meetings.  The mayor may call an advertised public hearing at a specified time on any matters.

## SECTION 7        CONSIDERATION OF ORDINANCES, RESOLUTIONS, AND MOTIONS.

7.1.     **Printed Form.**  All ordinances and resolutions shall be presented to the city council only in printed form.

7.2.     **City Attorney to Approve.**  All ordinances shall be approved as to form by the city attorney.  [City Charter Chapter VII §3 and §4]

7.3.     **Distribution of Ordinances.**  The city manager shall prepare copies of all proposed ordinances to be available for distribution to all members of the city council at the meeting at which the ordinance is introduced, or at such earlier time as is appropriate.

7.4.     **Rules of Order.**  The most recent edition of Roberts Rules of Order Revised shall govern the proceedings of the city council in all cases, unless they are in conflict with these rules.

7.5.     **Order of Precedence of Motions.**  The following motions shall have priority in the order indicated:

| | | |
|---|---|---|
| 1. | Adjourn (when privileged) | See notes 1 and 2 |
| 2. | Take a recess (when privileged) | See notes 1 and 3 |
| 3. | Raise a question of privilege | |
| 4. | Lay on the table | |
| 5. | Previous question | See note 5 |
| 6. | Limit or extend limits of debate | See notes 3 and 5 |
| 7. | Postpone to a certain time | See note 3 |





8.    Commit or refer              See note 3
9.    Amend                        See notes 3 and 4
10.   Postpone indefinitely
11.   Main motion                  See note 3

**Note 1:**    The first two motions are not always privileged.  To adjourn shall lose its privileged character and be a main motion if in any way qualified.  To take a recess shall be privileged only when other business is pending.

**Note 2:**    A motion to adjourn is not in order: (1) when repeated without intervening business or discussion; (2) when made as an interruption of a member while speaking; (3) while a vote is being taken.

**Note 3:**    Can be amended - others cannot be amended.

**Note 4:**    A motion to amend shall be nondebatable when the question to be amended is nondebatable.

**Note 5:**    Two-thirds vote of members present required.

7.6.   **Reconsideration.**

(a)    A motion to reconsider any action of the city council may be made, seconded, and voted on not later than the next succeeding voting agenda meeting of the city council. If reconsideration of the council action has not been posted on the council agenda for the meeting at which the motion to reconsider is made, however, actual reconsideration of the item must be delayed until the next voting agenda meeting after the posting requirements of the Open Meetings Act are met.

(b)    A motion to reconsider an action of the city council may only be made by a member who voted with the prevailing side.  It can be seconded by any member.  No question shall be twice reconsidered except by unanimous vote of the city council, except that action relating to any contract may be reconsidered at any time before the final execution thereof.

7.7.   **The Previous Question.** When the previous question is moved and seconded, it shall be put as follows: "Shall the main question be now put?"  There shall be no further amendment or debate, but pending amendments shall be put in their order before the main question. If the motion for the previous question is lost, the main question remains before the city council. An affirmative vote of two-thirds of the city council members present shall be required to approve the previous question.  (To demand the previous question is equivalent in effect to moving "that debate now cease, and the city council immediately proceed to vote on the pending motion."  In practice, this is done with the phrase "Call for the Question," or by simply saying "Question.")

7.8.   **Withdrawal of Motions.** A motion may be withdrawn, or modified, by its mover without asking permission until the motion has been stated by the chair.  If the mover modifies the



motion, the seconder may withdraw the second. After the question has been stated, the mover shall neither withdraw it nor modify it without the consent of the city council.

7.9. **Amendments to Motions.** No proposal of a subject different from that under consideration shall be admitted as a motion or amendment to a motion. A motion to amend an amendment shall be in order, but one to amend an amendment to an amendment shall not be in order.

7.10. **Appropriations of Money.** Before formal approval by the city council of motions providing for appropriation of money, information must be presented to the city council showing the purpose of the appropriation and the account to which it is to be credited. In addition, before finally acting on an appropriation, the city council shall obtain a report from the city manager as to the availability of funds and the city manager's recommendations as to the desirability of the appropriation.

7.11. **Deferral of Agenda Items.**

(a)    A city council member may defer, until the next city council voting agenda meeting, a voting item appearing on the city council agenda by delivering a written list of the agenda item numbers to be deferred to the city secretary before 5:00 p.m. of the Friday before the city council meeting for any item on the regular agenda and before 5:00 p.m. of the Monday before the city council meeting (or if Monday is a city holiday, then 5:00 p.m. of the Tuesday before the city council meeting) for any item on the addendum to the agenda, unless the item:

(1)    previously appeared on a city council meeting agenda and was deferred by request of a city council member;

(2)    was previously presented and discussed at a city council briefing meeting within the past six months at which a quorum was present during at least part of the briefing on that item;

(3)    is a public hearing or was previously discussed within the past six months at a public hearing before the city council; or

(4)    was placed on the agenda pursuant to a request by five city council members or by a majority of a city council committee under Subsection 6.2 of these rules.

(b)    A majority vote of the city council is required to:

(1)    defer an agenda item described in Paragraph (a)(1), (2), (3), or (4); or

(2)    defer an agenda item to a time later than the next city council voting agenda meeting.



(c)     The city manager may delete agenda items by delivering a written list of the agenda item numbers to be deleted to the city secretary before 5:00 p.m. of the Friday before the city council meeting for any item on the regular agenda and before 5:00 p.m. of the Monday before the city council meeting (or if Monday is a city holiday, then 5:00 p.m. of the Tuesday before the city council meeting) for any item on the addendum to the agenda.

(d)     No later than 5:30 p.m. of the Friday before each city council meeting, the city secretary shall post a list of all items appearing on the regular agenda that were deferred by a city council member or deleted by the city manager.  No later than 5:30 p.m. of the Monday before each city council meeting (or if Monday is a city holiday, then 5:30 p.m. of the Tuesday before the city council meeting), the city secretary shall post a list of all items appearing on the addendum to the agenda that were deferred by a city council member or deleted by the city manager.  The lists must be posted adjacent to each entrance to the city council chamber in Room 6 E North.  The city secretary shall not include on these lists any item described in Paragraph (a)(1), (2), (3), or (4).

(e)     For the convenience of the public, other city council members, and the staff, a city council member should announce the intent to defer an item on the agenda as soon as that determination is made.

7.12.   **Moratoriums.**

(a)     No moratorium on the acceptance of applications for permits, certificates, licenses, or other city approvals may be imposed for a time period of greater than 120 days.

(b)     No moratorium may be extended beyond its original time period unless three-fourths of all members of the city council approve the extension.  An extension may not exceed an additional 120 days each time.  When the city council desires to extend a moratorium, it shall direct the city manager to:

(1)     publish a notice of the proposed extension in the official newspaper of the City at least 15 days before the date the extension is to be considered; and

(2)     use best efforts to notify the organizations and associations whose members would be most directly affected by the extension.

(c)     When the city council imposes a moratorium, it shall direct the city manager and all appropriate city boards and commissions to:

(1)     expedite their performance of appropriate analyses, evaluation of alternatives, and preparation of recommendations as to what amendments, if any, should be made to the city's regulations during a moratorium; and

(2)     submit these recommendations by a specified date.



**SECTION 8        VOTES REQUIRED.**

Approval of every ordinance, resolution, or motion shall require on final passage the affirmative vote of a majority of city council members present, except that the City Charter and certain state statutes impose other voting requirements on various questions. In addition, these rules set forth certain instances in which the number of votes required is greater than a majority of all members. As a matter of convenience, questions on which the voting requirement is varied by City Charter, State statutes and these rules are listed below:

8.1.    **Charter and State Requirements.**

(a)    **Removal of Certain Officers - Two-thirds Vote of All Members.** Removal of the city manager (unless otherwise provided by contract) during a term of office requires a vote of two-thirds of all members of the city council. [City Charter Chapter VI §1]

(b)    **Establishment of Departments - Three-fourths Vote of All Members.** Ordinances creating or making any change in a department require approval of three-fourths of all members of the city council. [City Charter Chapter X §1]

(c)    **Changing Paving Assessment Plans - Two-thirds Vote of All Members.** A change that substantially affects the nature or quality of an improvement funded by an assessment requires a two-thirds vote of all members of the city council. [Texas Transportation Code §313.053(b)]

(d)    **Expulsion of Members - Two-thirds Vote of All Members.** Expulsion of a member of the city council requires an affirmative vote of two-thirds of all members of the city council. [City Charter Chapter III §16]

(e)    **Changes in Zoning Ordinance - Three-fourths Vote of All Members.** A change in zoning district classification or boundary that has been recommended for denial by the city plan commission or that has been protested by the owners of 20 percent or more of either the land in the area or request or land within 200 feet of the boundary of the area of request must have the approval of three-fourths of all members of the city council. [Texas Local Government Code §211.006(d) and (f) and Dallas Development Code §51A-4.701(c)(2)]

8.2.    **City Council Rules Requirements.**

(a)    **Suspending Rules - Two-thirds Vote of Members Present.** A city council rule may be suspended by an affirmative vote of two-thirds of the members present. [Rules of Procedure 10.1]

(b)    **Special Meeting - Three Votes.** Special meetings may be called by the mayor, city manager or any three city council members. [Rules of Procedure 2.2]



    (c)    **The Previous Question - Two-thirds Vote of Members Present.** An affirmative vote of two-thirds of the members present is required to approve the previous question. [Rules of Procedure 7.7]

    (d)    **Extension of Moratoriums - Three-fourths Vote of All Members.** A moratorium may be extended by an affirmative vote of three-fourths of all members of the city council. [Rules of Procedure 7.12(b)]

## SECTION 9          CITY COUNCIL COMMITTEES.

   9.1.   **Committees Established.**

    (a)    The following standing committees of the city council are established:

       (1)    Economic development and housing committee.

       (2)    Government performance and financial management committee.

       (3)    Quality of life, arts, and culture committee.

       (4)    Public safety and criminal justice committee.

       (5)    Mobility solutions, infrastructure, and sustainability committee.

       (6)    Human and social needs committee.

    (b)    Each standing committee shall review matters in its area of responsibility that are referred to it by the city council, the city manager, or an individual city council member. A standing committee may by majority vote recommend action to the city council, but committee recommendation is not necessary for a matter to be placed on the city council agenda. The committee chair may make a statement on behalf of the committee on an item in a briefing or voting meeting of the council.

   9.2.   **Appointment.**

    (a)    A standing committee shall consist of not less than three members of the city council appointed by the mayor. The mayor shall also appoint a chair and vice chair of each committee. Only city council members may serve on a standing committee.

    (b)    The mayor may remove and reassign members to and from the various standing committees.



### 9.3.    Committee Meetings.

(a)    Standing committees shall meet each month in accordance with the schedule adopted by the city council in its annual calendar, unless the chair cancels the meeting or establishes another meeting time. The chair may also schedule additional meetings, but such meetings may not exceed two each month unless called by the mayor or the council.

(b)    The chair of a committee must place an item on the agenda of a committee meeting at the request of any three members of the committee. The request must allow for at least 72 hours public notice that the item will be considered at the committee meeting.

(c)    A majority of the members of the committee constitutes a quorum. Committee meetings must be conducted in accordance with the Texas Open Meetings Act. Committees may also, as approved by the mayor or the council, conduct public hearings to receive public comments.

9.4.    **Ad Hoc Committees.** The mayor may appoint ad hoc committees from time to time to study and review specific issues. The mayor shall determine the number of members and appoint a chair of ad hoc committees. The ad hoc committees shall be established for a designated period of time which may be extended by the mayor and shall meet as needed.

9.5.    **Reserved.**

9.6.    **Agenda and Information.** Before each committee meeting, the city manager shall provide an agenda and supporting information for each committee meeting to committee members and the public. Items may be scheduled on the agenda for committee briefing by the chair, the city council, the city manager, or the mayor.

### SECTION 10        RULES SUSPENSION OR AMENDMENT.

10.1.    **Suspension of Rules.** Any provision of these rules not governed by the City Charter, City Code, or state law may be temporarily suspended by a two-thirds vote of the members of the city council present. The vote on any such suspension shall be taken by yeas and nays and entered upon the record.

10.2.    **Amendment of Rules.** These rules may be amended, or new rules adopted, by a majority vote of the members of the city council present.

