UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HIRAM PATTERSON; TEXAS DIVISION, SONS OF CONFEDERATE VETERANS, INC., | § § § § | |
| Plaintiffs, | § § | No. 3:17-CV-02361-D |
| v. | § § | |
| MIKE RAWLINGS, et al., | § § | |
| Defendants. | § | |

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS FOR LACK OF
JURISDICTION AND FOR FAILURE TO STATE A CLAIM**

CITY ATTORNEY OF THE CITY OF DALLAS

Larry E. Casto
Dallas City Attorney

Stacy Jordan Rodriguez
Executive Assistant City Attorney
Texas Bar No. 11016750
stacy.rodriguez@dallascityhall.com
Charles Estee
Senior Assistant City Attorney
Texas Bar No. 06673600
charles.estee@dallascityhall.com
7DN Dallas City Hall
1500 Marilla Street
Dallas, Texas 75201
Telephone: 214-670-3519
Facsimile: 214-670-0622

ATTORNEYS FOR DEFENDANTS

# TABLE OF CONTENTS

I.    SUMMARY ................................................................................................ 1

II.   FACTUAL BACKGROUND ................................................................... 1

III.  THE CASE SHOULD BE DISMISSED FOR LACK OF JURISDICTION ................. 3

    A.    Standards for Standing and Rule 12(b)(1) ....................................... 3

    B.    Factual standing challenge:  the evidence establishes that Plaintiffs lack standing ................................................................................................ 5

        1.    The evidence establishes Plaintiffs have no standing to assert a copyright violation. ........................................................................... 5

        2.    The evidence establishes Plaintiffs have no standing to assert an interest in Pioneer Cemetery Park. ................................................. 5

        3.    The evidence establishes Plaintiffs have no standing to assert an interest in the Confederate Cemetery. ............................................. 6

        4.    The evidence establishes Plaintiffs have no standing to assert any injury ................................................................................................. 7

        5.    The evidence establishes Plaintiffs have no standing to assert "abridgement of free speech." ......................................................... 8

    C.    Plaintiffs failed to allege facts demonstrating their standing to sue ............... 10

        1.    Plaintiffs failed to allege plausible standing for a copyright violation... ................................................................................................. 10

        2.    Plaintiffs failed to allege plausible standing for a quiet title action for Pioneer Cemetery Park. ......................................................... 10

        3.    Plaintiffs failed to allege plausible standing for a quiet title action in the Confederate Cemetery. ..................................................... 11

        4.    Plaintiffs failed to allege plausible standing for any claim of abridgment of free speech. ........................................................... 12

        5.    Plaintiffs lack standing for any of the claims or causes of action asserted ..................................................................................... 12

    D.    No justiciable claim is presented, only a political question is presented ........ 12

    E.    Any claim to enjoin the removal of the Lee statute is moot. ........................... 15

**IV.  THE CASE SHOULD BE DISMISSED BECAUSE OF PLAINTIFFS' FAILURE TO STATE A CLAIM** ................................................................................................ **15**

    **A.**    **Standard for Rule 12(b)(6).** ................................................................... **15**

    **B.**    **No copyright violation is alleged.** ......................................................... **16**

    **C.**    **A claim to quiet title is not stated.** ...................................................... **16**

    **D.**    **No abridgement of free speech claim is stated.** .................................... **19**

    **E.**    **No contract or estoppel claim is stated.** .............................................. **20**

    **F.**    **A claim for declaratory relief is not stated and any attempted claim is duplicative.** ....................................................................................... **21**

    **G.**    **No plausible claim for injunctive relief is stated.** ............................... **21**

**V.  CONCLUSION** .................................................................................................... **23**

# TABLE OF AUTHORITIES

**Cases**

*A.M. v. Cash*,
  585 F.3d 214 (5th Cir. 2009) ................................................ 13

*Allen v. Fluor Corporation*,
  No. 3:16-CV-1219-D, 2017 WL 2618821,
  (N.D. Tex. June 15, 2017)................................................ 12, 13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................. 15, 16

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)....................................................... 15

*Bexar Metro. Water Dist. v. Educ. & Econ.*
  *Dev. Joint Venture*,
  220 S.W.3d 25 (Tex. App.—San Antonio
  2006, pet. dism'd) ........................................................ 20

*Board of Regents of Univ. of Wis. System v.*
  *Southworth*, 529 U.S. 217 (2000) ........................................ 23

*Bray v. Fenves*,
  No. 06-15-00075-CV, 2016 WL 3083539
  (Tex. App.—Texarkana Mar. 24, 2016,
  pet. denied)................................................................. 9

*Brewer v. Nirenberg*,
  No. SA:17-CV-837-DAE
  (W.D. Tex. Aug. 31, 2017) .............................................. 1, 9

*Cameron County v. Tompkins*,
  422 S.W.3d 789 (Tex. App.–Corpus Christi
  2013, pet. denied).......................................................... 19

*City of San Antonio v. Hays Street Bridge*
  *Restoration Grp.*,
  No. 04-14-00886-CV, 2017 WL 776112
  (Tex. App.—San Antonio March 1, 2017,
  pet. filed) ................................................................... 20

*Clark v. Amoco Production Co.*,
  794 F.2d 967 (5th Cir. 1986) .............................................. 18

*Cornerstone Christian Sch. v.*
  *Univ. Interscholastic League*,
  563 F.3d 127 (5th Cir. 2009) ............................................... 3

*Davis v. Fed. Election Comm'n*,
  554 U.S. 724 (2008)......................................................... 3

*Dawson v. City of Grand Haven*,
  No. 329154, 2016 WL 7611556
  (Mich. Ct. App. Dec. 29, 2016) .......................................... 20

*eBay, Inc. v. MercExchange, L.L.C.*,
   47 U.S. 388 (2006) ........................................................................ 22

*Elk Grove Unified Sch. Dist. v. Newdow*,
   542 U.S. 1 (2004) ....................................................................... 4, 13

*Enis v. Bank of Am., N.A.*,
   No. 3:12–CV–0295–D, 2013
   WL 840696 (N.D. Tex. Mar. 7, 2013) ......................................... 20

*Flast v. Cohen*,
   392 U.S. 83 (1968) ......................................................................... 9

*Geske v. Wells Fargo Bank, N.A.*,
   No. 3:11–CV–3337–L, 2012 WL 1231835
   (N.D. Tex. April 12, 2012) .......................................................... 20

*Hawk v. Deutsche Bank National*
   *Trust Company*,
   No. 3:15-CV-1784-D, 2015
   WL 8164779 (N.D. Tex. Dec. 8, 2015) ........................................ 17

*Heckler v. Community Health Servs. of*
   *Crawford Cnty., Inc.*,
   467 U.S. 51 (1984) .................................................................. 21, 23

*Henderson v. Stalder*,
   287 F.3d 374 (5th Cir. 2002) ......................................................... 9

*Hoover v. Morales*,
   164 F.3d 221 (5th Cir. 1998) ....................................................... 22

*Hurd v. BAC Home Loans Servicing, LP*,
   880 F. Supp. 2d 747 (N.D. Tex. 2012) ........................................ 17

*In re African-American Slave*
   *Descendants Litigation*,
   375 F. Supp. 2d 721 (N.D. Ill. 2005)
   *aff'd in part and rev'd in part*,
   471 F.3d 754 (7th Cir. 2006) .................................................... 15

*Joseph Paul Corporation v. Trademark*
   *Custom Homes, Inc.*,
   No. 3:16-CV-1651-L, 2016 WL 4944370,
   (N.D. Tex. Sept. 16, 2016) .......................................................... 16

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ........................................................................ 3

*Mamoth v. Dallas Co. Municipal Courts*,
   No. 3:02-CV-1062-D, 2002 WL 1331995,
   (N.D. Tex. June 13, 2002) ........................................................... 10

*Metcalf v. Deutsche Bank Nat. Trust Co.*,
   No. 3:11–CV–3014–D, 2012
   WL 2399369 (N.D. Tex. June 26, 2012) ................................. 17, 21

*Monumental Task Comm., Inc. v. Foxx,*
   157 F. Supp. 3d 573 (E.D. La. 2016), *aff'd,*
   678 F. App'x 250 (5th Cir. 2017) ................................................................. 12, 19
*Moore v Bryant,*
   853 F.3d 245 (5th Cir. 2017) ........................................................................ 9
*Parks and Wildlife Dept. v. Sawyer Trust,*
   354 S.W. 3d 384 (Tex. 2011) ....................................................................... 19
*Planned Parenthood of Greater Tex.*
   *Surgical Health Servs. v. Abbott,*
   734 F.3d 406 (5th Cir. 2013) ....................................................................... 23
*Pleasant Grove City v. Summum,*
   555 U.S. 460 (2009) ................................................................................. 13, 19
*Powell v. McCormack,*
   395 U.S. 486 (1969) ..................................................................................... 15
*Robbins v. Amoco Production Co.,*
   952 F.2d 901 (5th Cir. 1992) ....................................................................... 18
*TF-Harbor, LLC v. City of Rockwall, Tex.,*
   18 F. Supp. 3d 810 (N.D. Tex. 2014) ........................................................... 4
*Three Expo Events, L.L.C. v. City of Dallas,* No. 3:16-CV-0513-D, 2017 WL 1955527,
   (N. D. Tex. May 11, 2017) ............................................................................ 4
*United States ex rel. Willard v. Humana*
   *Health Plan of Texas Inc.,*
   336 F.3d 375 (5th Cir. 2003) ....................................................................... 16
*United Veterans Memorial and Patriots*
   *Ass'n of City of New Rochelle v.*
   *City of New Rochelle,*
   72 F. Supp. 3d 468 (S.D. N.Y. 2014) ........................................................... 20
*Va. Ry. v. Sys. Fed'n No. 40,*
   300 U.S. 515 (1937) ..................................................................................... 23
*Walker v. Texas Div., Sons of Confederate*
   *Veterans, Inc.,*
   135 S.Ct. 2239 (2015) .................................................................................. 19
*Warth v. Seldin,*
   422 U.S. 490 (1975) ..................................................................................... 3
*Williams v. Parker,*
   843 F.3d 617 (5th Cir. 2016) ....................................................................... 9

**Rules**

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 14

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS FOR LACK OF JURISDICTION AND FOR FAILURE TO STATE A CLAIM**

Defendants, Mike Rawlings, Scott Griggs, Adam Medrano, Casey Thomas II, Dwaine Caraway, Rickey Callahan, Omar Narvaez, Kevin Felder, Tennell Atkins, Mark Clayton, Adam McGough, Lee Kleinman, Sandy Greyson, Jennifer Gates, and Philip Kingston, all sued in their official capacities as Mayor and City Council Members of the City of Dallas, (collectively "Defendants") file this brief in support of their motion to dismiss.[1]

## I.      SUMMARY

After a lawful and properly noticed City Council meeting and public debate, with a vote of 13 to 1, Defendants voted to remove a Confederate statue located at a park owned by the City of Dallas ("the City") and store it for safekeeping at another location until further action of the City Council.  Plaintiffs, an individual named Hiram Patterson ("Patterson") and an entity called Texas Division, Sons of Confederate Veterans, Inc. ("TDSCV"), filed this action.  Without factual or legal basis, Plaintiffs assert purported violations of the First Amendment, claims of copyright violations, and ownership interests in City property.  All the claims are frivolous and the case should be dismissed because Plaintiffs' central claim is moot, Plaintiffs lack standing, there is no justiciable issue, and Plaintiffs have failed to state a claim.

## II.      FACTUAL BACKGROUND

On August 24, 2017, the Mayor of the City of Dallas appointed 20 individuals to serve on the Mayor's Task Force on Confederate Monuments (the "Task Force"). (Defendants' App'x at 1-4).   The Task Force is to consider whether to remove symbols of the Confederacy currently on

---

[1] In their pleading, Plaintiffs list Manny Pelaez as an officer of the City of Dallas.  (ECF No. 10, at 3 [¶ 11]). He is not listed in the caption.  Mr. Palaez is a San Antonio council-member and a defendant in a different lawsuit brought by one of the Plaintiffs.   Apparently, Plaintiffs failed to delete his name from their copied pleadings in that case. *See Brewer v. Nirenberg,* No. 17-CV-837-DAE (W.D. Tex. Aug. 31, 2017), ECF No. 1 at 3 [¶ 12]).

City property and to rename streets and other public places named for Confederate figures. (Defendants' App'x at 1).

After proper notice, on September 6, 2017, the Dallas City Council considered a resolution concerning Confederate monuments, symbols, and names.  (Defendants' App'x at 8, 11-13). (*See also* ECF No. 6 at 12-16). Included within the resolution was a directive to the Dallas City Manager to remove the Alexander Phimister Proctor statue of Robert E. Lee at Lee Park (the "Lee statue") and to store it at a safe location until the City Council received the recommendations of the Task Force.  (Defendants' App'x at 13).   The proposed resolution also directed the Task Force to conduct public meetings, receive public input, make recommendations to the Dallas Cultural Affairs Commission, and the Commission was then to make a presentation to the Dallas City Council. (Defendants' App'x at 12).  Over forty individuals signed up to speak for and against the resolution and the public speakers spoke for almost two hours.  (*See* ECF No. 6 at 20-21).  After discussion by the Council, the Dallas City Council approved the resolution.  (Defendants' App'x at 11-13, 40).  (*See also* ECF No. 6 at 17-19).

On September 6, 2017, Plaintiffs filed this action asserting First Amendment claims and seeking a temporary restraining order preventing the removal of the Lee statue.  (ECF Nos. 1, 2). The Court ordered that the Lee statue not be removed and scheduled a hearing for the following day on September 7, 2017.  (ECF No. 4).  On September 7, 2017, the Court held a hearing and dissolved its earlier order and denied Plaintiffs' request for a temporary restraining order.  (ECF Nos. 7, 8).

On September 14, 2017, the City removed the Lee statue and placed it in storage. (Defendants' App'x at 41).  On the same day, Plaintiffs filed an amended complaint.  (ECF No. 9).  On September 15, 2017, Plaintiffs filed a second amended complaint.  (ECF No. 10).  They

essentially repeat the allegations in the original complaint but now also assert other meritless claims.  In addition to complaining about the Lee statue, Plaintiffs complain about the possible removal of a Confederate monument at Pioneer Cemetery Park, unspecified actions at the Confederate Cemetery, and other unidentified conduct concerning other Confederate memorials, names, and symbols. They have added a purported copyright claim and purported quiet title claims.[2]  On September 18, 2017, Plaintiffs filed another motion for a temporary restraining order. (ECF No. 13).  The Court denied the motion the next day.  (ECF No. 14).

This action should be dismissed with prejudice.  Plaintiffs alleged facts that they knew or with reasonable inquiry would have known were false.[3]  Plaintiffs' central claim is moot, Plaintiffs have no standing, there is no justiciable claim, and no possible claim is stated.

## III.    THE CASE SHOULD BE DISMISSED FOR LACK OF JURISDICTION

### A.   Standards for Standing and Rule 12(b)(1).

Standing "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  Plaintiffs have the burden to allege facts that give rise to a plausible claim of standing.  *Cornerstone Christian Sch. v. Univ. Interscholastic League*, 563 F.3d 127, 134 (5th Cir. 2009).  "The requirement that a claimant have 'standing is an essential and unchanging part of the case-or-controversy requirement of Article III'" of the Constitution.  *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733 (2008) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  As this Court stated:

It is well-settled that the irreducible constitutional minimum of standing contains three elements. These elements are (1) an injury-in-fact that is concrete and actual or imminent, not hypothetical; (2) a fairly traceable causal link between the injury

---

[2] Plaintiffs abandoned a due process claim that appeared in their original complaint.
[3] Plaintiffs' counsel provided an affidavit in support of the latest pleading and stated the facts in the amended complaint were within his personal knowledge and true and correct.  (ECF No. 10 at 30).

and the defendant's actions; and (3) that the injury will likely be redressed by a favorable decision. To obtain injunctive relief, a plaintiff must be likely to suffer future injury. Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief[.] The threat of future injury to the plaintiff must be both real and immediate, not conjectural or hypothetical.

*Three Expo Events, L.L.C. v. City of Dallas*, No. 3:16-CV-0513-D, 2017 WL 1955527, at *2 (N. D. Tex. May 11, 2017) (citation and quotation marks omitted).

Prudential standing is a judicially created limitation on a court's exercise of jurisdiction. *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004). The limitations include a rule barring adjudication of generalized grievances that would be more properly addressed by the representative branches. *Id.* at 12 (prudential standing prevents courts from being called on to decide abstract questions of wide public significance when other government branches may be better suited to address those questions).

Standing can be challenged by either a facial or a factual challenge. *TF-Harbor, LLC v. City of Rockwall, Tex.*, 18 F. Supp. 3d 810, 817 (N.D. Tex. 2014). A facial challenge is made based on the pleadings under the same standard for a Rule 12 (b)(6) motion. *Id*. A factual attack is based on evidence which the court is free to weigh, there is no presumption given to a plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. *Id*. In a factual challenge, the plaintiff must prove subject matter jurisdiction by a preponderance of the evidence. *Id*. The Defendants bring a facial and factual attack on the Plaintiffs' standing.

**B.    Factual standing challenge:  the evidence establishes that Plaintiffs lack standing.**

    **1.    The evidence establishes Plaintiffs have no standing to assert a copyright violation.**

Plaintiffs first assert a copyright violation related to the Lee statue.  Mr. Alexander Phimister Proctor was the sculptor of the statue and Plaintiffs allege that TDSCV is negotiating for copyrights interests with Ms. Laura Ames, the co-director of the Proctor estate and that the City was non-responsive to Ms. Ames.  (ECF No. 10 at 10-11; 23 [¶¶ 36, 62 and note 7]).  The statement is false.  Ms. Ames wrote the City's Director of Cultural Affairs and said:

> I just left you a phone message, and am following up to inform you the Proctor Foundation is not involved with any legal complaint against the City of Dallas.  We have just become aware that we were included in a complaint, without our approval, and are not in any way connected to the attorney who prepared it, or the organization filing the complaint. We have communicated this with the attorney who prepared the complaint, and he acknowledged we were included without our approval and agreed to remove us immediately. Furthermore, I've made it clear that you have been completely responsive to me and answered my call immediately, both times I reached out to you.  We look forward to further conversations with you and the City of Dallas.

(Defendants' App'x at 42).  Plaintiffs do not even have a potential interest in the copyright of the Lee statue.   The evidence establishes Plaintiffs' lack of standing for any claimed copyright violation.

    **2.    The evidence establishes Plaintiffs have no standing to assert an interest in Pioneer Cemetery Park.**

Plaintiffs next allege that they somehow have a reversionary interest in Pioneer Cemetery Park.  (ECF No. 10 at 27 [¶ 71(f)]). The allegation is false.  Plaintiffs concede that title was transferred to the City from local lodges of the Independent Order of Odd Fellows and the Ancient and Free Masons.  (ECF No. 10 at 6, 19 [¶¶ 25, 53]; ECF No. 10-1 at 1-7).  The local lodges of the

Masons and the Odd Fellows remain viable entities.  *See* https://www.masonsofdallas.org/ (last visited September 25, 2017); http://iiooftxdallas44.weebly.com/ (last visited September 25, 2017).[4]  Dallas Lodge Number 44 of the Odd Fellows expressly denies conveying any interest to Plaintiffs.  (Defendants' App'x at 133-134).  Plaintiffs do not allege and there is no evidence that any of the lodges' interests or rights were ever transferred to Plaintiffs.  Additionally, Plaintiffs do not even allege that the Confederate monument is located on the property previously owned by the local lodges.  The documents located so far indicate it was not placed on the local lodges' former property.  (*See* Defendants' App'x at 123).[5]  The evidence establishes Plaintiffs' lack of standing for any claimed interest in Pioneer Cemetery Park.

### 3. The evidence establishes Plaintiffs have no standing to assert an interest in the Confederate Cemetery.

Plaintiffs next contend they are now the owner of the Confederate Cemetery.  (ECF No. 10 at 7, 20-22 [¶ 27 and note 1; ¶¶ 56-59]).  They first contend that there was no conveyance and no record of title transferring the property to the City.  (*Id.*).  The contention is false.  On November 17, 1936, the property was conveyed to the City and the warranty deed was recorded in the Dallas County land records.  (Defendants' App'x at 45-47).

Second, in order to make the claim that there was no conveyance, Plaintiffs rely on and misstate a question and answer page from the Mayor's Task Force and allege the statements were admissions of non-ownership.  (ECF No. 10 at 20-22 [¶¶ 56-59]).  The actual statements from the questions and answers were that as of the time that the questions and answers were written there

---

[4] The City has contacted the Masons about Plaintiffs' claims but as of the time of this filing, the City has not received a response.

[5] *See also* http://dallascityhall.com/departments/sustainabledevelopment/historicpreservation/HP%20Documents/Landmark%20Structures/Pioneer%20Cemetery%20Plan%201986.jpg (last visited September 27, 2017); http://freepages.history.rootsweb.ancestry.com/~pioneerparkcem/cemmap.html (last visited September 27, 2017).

was no official action found accepting the cemetery but further research was ongoing. (Defendants' App'x at 20).   A City resolution accepting the cemetery has now been located. (Defendants' App'x at 48-49).   As stated above, the deed transferring the property to the City has been recorded in the Dallas County land records.   (Defendants' App'x at 45-47).   The allegation of the City's non-ownership is false.

As part of the basis for the claim, Plaintiffs contend that they performed maintenance work at the cemetery for the last three years.   (*Id*. at 21, 22 [¶¶ 58, 59]).   The City has performed the mowing, maintenance, and litter removal at the cemetery during that time.   (Defendants' App'x at 50-72).   The City has not authorized or approved anyone else taking such action at the Confederate Cemetery.   (Defendants' App'x at 51).

Also as part of this claim, TDSCV asserts the previous owner was Sterling Price Camp Number 31, a unit of United Confederate Veterans, and TDSCV is its successor.   (ECF No. 10 at 7, 20-22 [¶ 27 and note 1; ¶¶ 56-59]).   Sterling Price Camp was incorporated in 1892 and became inactive in 1917.   (Defendants' App'x at 37-38).   The United Confederate Veterans' last reunion was in 1951 and ceased to exist.   *See* https://en.wikipedia.org/wiki/United_Confederate_Veterans. TDSCV was not formed until 2001 and none of its corporate filings suggest being a successor Sterling Price Camp Number 31.   (Defendants' App'x at 73-84).[6]   The evidence establishes Plaintiffs lack of standing for any claimed interest in Confederate Cemetery.

### 4.   The evidence establishes Plaintiffs have no standing to assert any injury.

In an apparent attempt to allege an injury, Plaintiffs assert that the Lee statue was damaged in the removal process.   (ECF No. 10 at 5, 8, 25 [¶¶ 23, 28, 68]).   The allegation of damage is false;

---

[6] There also appears to be a competing Texas entity with a nearly identical name, Sons of Confederate Veterans, Inc., and mission statement.   (Defendants' App'x at 85-119).   None of its corporate filings suggest being a successor to Sterling Price Camp Number 31.

the statute was not damaged. (Defendants' App'x at 44). To the extent Plaintiffs assert any property interest in the Lee statute or its pedestal or any other property owned by the City, the allegation is false. (Defendants' App'x at 41).

In a footnote, Plaintiffs assert that Special Agent Eric Radwick of the United States General Services Administration made an unsolicited call to Plaintiffs' counsel, seeking information and documentation, and the GSA was considering asserting a reversionary interest in the base and pedestal of the Lee statute. (ECF No. 10 at 8 [note 2]).[7] The allegations are false. Special Agent Radwick denies the allegations and states he told Plaintiffs' counsel that "GSA did not have documentation to establish a claim of federal ownership in the base of the statue and reiterated that as a result, we had no legal interest in the statue." (Defendants' App'x at 120-122).

### 5. The evidence establishes Plaintiffs have no standing to assert "abridgement of free speech."

Plaintiffs' final contention is that the removal of the Lee statue somehow abridged the First Amendment. (ECF No. 10 at 11-19 [¶¶ 37-52]). The standing challenge for this claim is limited to a facial challenge because Plaintiffs make no allegation concerning themselves. In their second count, which asserts "ABRIDGEMENT OF FREE SPEECH", no reference to Plaintiffs has been located. (*Id*.). Under the listing of parties, Patterson alleges that he is a taxpayer of Dallas and a descendant of Confederate veterans and TDSCV alleges it is a non-profit organized under the laws of the State of Texas. (*Id*. at 1 [¶¶ 1, 2]). Under the "FACTS" section, there is no mention of Plaintiffs. (*Id*. at 6-10). Plaintiffs do not allege any concrete and particularized or actual or imminent injury that has occurred or will occur to them caused by moving the Lee statue or any other action by the City regarding its other property. The amended complaint is devoid of any allegations that demonstrate Plaintiffs' standing and the claim should be dismissed. *Williams v.*

---

[7] In the footnote, Plaintiffs also published the agent's cell phone number.

*Parker,* 843 F.3d 617, 622-23 (5th Cir. 2016) ("bare assertions" or "unadorned contentions" of violations of First Amendments rights insufficient to confer standing).

Additionally, Plaintiffs do not plead how their alleged injuries are different or distinct from the general public.  To the contrary, they allege they filed "in the public interest."  (ECF No. 10 at 25 [¶ 66]).  In a nearly identical lawsuit involving the removal of Confederate monuments on the campus of the University of Texas at Austin, the Sixth Court of Appeals of Texas recently held that the plaintiffs in that suit – two different individuals and TDSCV– did not plead or prove a particularized injury distinct from the general public sufficient to confer standing under Texas law.  *See Bray v. Fenves*, No. 06-15-00075-CV, 2016 WL 3083539 (Tex. App.—Texarkana Mar. 24, 2016, pet. denied).  In addition, a federal district court in the Western District of Texas ruled that plaintiffs, including TDSCV, seeking to enjoin removal of a Confederate monument in a city-owned park did not plead nor prove they had standing to sue.  *Brewer v. Nirenberg*, No. SA:17-CV-837-DAE (W.D. Tex. Aug. 31, 2017) (order denying TRO) (copy attached as Defendants' App'x at 124-131); *see also Moore v Bryant*, 853 F.3d 245 (5th Cir. 2017) (holding plaintiff lacked standing to complain about the presence of the Confederate battle flag as part of the state flag of Mississippi).

To the extent that Patterson may assert standing based on his status as a city taxpayer, he has not alleged and cannot demonstrate facts that would support suit in that narrowly proscribed capacity.  *See Flast v. Cohen*, 392 U.S. 83, 102-103 (1968); *see also Henderson v. Stalder*, 287 F.3d 374, 379 (5th Cir. 2002) (taxpayer lacked sufficient personal stake to challenge laws of general applicability and lacked standing to complain about license plates that said "Choose Life"); *Bray v. Fenves*, 2016 WL 3083539 at *12 (plaintiffs did not plead or demonstrate that they had taxpayer standing); *Mamoth v. Dallas Co. Municipal Courts*, No. 3:02-CV-1062-D, 2002 WL

1331995, at *3 (N.D. Tex. June 13, 2002) (rejecting taxpayer standing claims because of failure to show plaintiff sustained or was in danger of sustaining some direct injury and not merely suffered in some indefinite way in common with people generally).  There is no evidence to support Plaintiffs' standing.

**C.   Plaintiffs failed to allege facts demonstrating their standing to sue.**

Under a more limited facial challenge, Plaintiffs have failed to plausibly allege standing for any of the asserted causes of action.

**1.   Plaintiffs failed to allege plausible standing for a copyright violation.**

Plaintiffs assert that moving the Lee monument was somehow a copyright violation.  (ECF No. 10 at 10-11).  Elsewhere they concede they do not own any copyright interest but are merely trying to obtain the rights from another person.  (ECF No. 10 at 23 [¶ 62 and note 7]).  Plaintiffs concede they have no standing.  Also, Plaintiffs do not even allege there was a copy made.  Plaintiffs have failed to allege an injury in fact, have failed to allege causation between Defendants' actions and any claimed Plaintiffs' injury, and failed to allege how any claimed injury would be redressed by a favorable decision.  Plaintiffs have no standing as to any purported copyright violation.

**2.   Plaintiffs failed to allege plausible standing for a quiet title action for Pioneer Cemetery Park.**

Plaintiffs next allege that the Defendants somehow violated a term of reversion in the grant of land for the Pioneer Cemetery Park by the possible removal of a Confederate monument and that the property should revert to the original grantors.  (ECF No. 10 at 19-20).  However, in their prayer, Plaintiffs seek a "judgment that quiets title to Pioneer Cemetery Park in favor of plaintiffs." (ECF No. 10 at 27 [¶ 71(f)]).  Plaintiffs make no allegation of any relationship to the original grantors or otherwise explain how they have any rights or interest in the property.  Plaintiffs fail

to allege that the monument is even located on the property formerly owned by the lodges. Plaintiffs also fail to allege how removing a monument that was moved to the property after its transfer to the City violates maintaining the property as memorial cemetery park.  Plaintiffs have failed to allege an injury in fact, have failed to allege causation between Defendants' actions and any claimed Plaintiffs' injury, and failed to allege how any claimed injury would be redressed by a favorable decision.  Plaintiffs have not alleged any plausible basis for standing to assert claims regarding Pioneer Cemetery Park.

### 3. Plaintiffs failed to allege plausible standing for a quiet title action in the Confederate Cemetery.

Plaintiffs next contend that because there is no record of conveyance of the Confederate Cemetery to the City, that the Plaintiffs, not the City, are the owners.  Plaintiffs allege a unit of United Confederate Veterans was the apparent prior owner and "their successor association is the Sons of Confederate Veterans, the associational plaintiff in this matter."  (ECF No. 10 at 7, 20-22 [¶ 27 and note 1; ¶¶ 56-59]).  Plaintiffs have not alleged a plausible basis for their ownership of or any legal interest in the Confederate Cemetery.

Initially, Plaintiffs allege that Dallas County agreed that a portion of its property "be set aside" as a cemetery "under the direction and control of Sterling Camp No. 31."  (ECF No. 10 at 7 [¶ 27]).  The "set aside" did not convey any ownership interest in the property.  Ownership remained with Dallas County and the Sterling Camp Number 31 would have no possible ownership interest to convey to any claimed successor.  Also, Plaintiffs do not plausibly allege any basis to believe they have any of the rights of the Sterling Camp Number 31.  Plaintiffs only make a naked conclusory allegation, in footnotes, that TDSCV is a successor to Sterling Camp Number 31.  (ECF No. 10 at 7, 20 [notes 1, 6]).  Finally, Plaintiffs do not allege any type of injury from the supposed lack of filing of the record of conveyance.  Plaintiffs have failed to allege an injury in fact, have

failed to allege causation between Defendants' actions and any claimed Plaintiffs' injury, and failed to allege how any claimed injury would be redressed by a favorable decision. *See also Monumental Task Comm., Inc. v. Foxx,* 157 F. Supp. 3d 573, 597-98 (E.D. La. 2016), *aff'd,* 678 F. App'x 250 (5th Cir. 2017) (rejecting plaintiffs' contention that possible question as to others' ownership of Confederate statues or the land that they were located on created property or liberty interest in plaintiffs).

> **4. Plaintiffs failed to allege plausible standing for any claim of abridgment of free speech.**

The lack of standing for Plaintiffs' abridgment of free speech was addressed above.

> **5. Plaintiffs lack standing for any of the claims or causes of action asserted.**

For all of the causes of action and claims asserted, Plaintiffs have failed to allege an injury in fact, have failed to allege causation between Defendants' actions and any claimed Plaintiffs' injury, and failed to allege how any claimed injury would be redressed by a favorable decision. Because Plaintiffs have not plausibly alleged facts sufficient to confer standing, the lawsuit should be dismissed with prejudice.

**D.   No justiciable claim is presented, only a political question is presented.**

The political question doctrine implicates jurisdiction and forecloses as nonjusticiable actions which would improperly require judicial review of decisions exclusively within the purview of the political branches of government. *Allen v. Fluor Corporation*, No. 3:16-CV-1219-D, 2017 WL 2618821, at *3 (N.D. Tex. June 15, 2017).  Whether a particular case raises a political question is to be determined by considering the following factors:

> (1) a textually demonstrable constitutional commitment of the issue to a coordinate political department;
>
> (2) a lack of judicially discoverable and manageable standards for resolving it;

(3) the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion;

(4) the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government;

(5) an unusual need for unquestioning adherence to a political decision already made;

(6) or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Id.*, 2017 WL 2618821, at *3 (citations and quotations omitted).

The issue of what names, symbols, monuments, statues, or memorials are to be installed on or removed from a local government's property is a political question. All the factors support the conclusion that the issue is a political question.

First, as discussed below, actions involving the placement or removal of monuments is government speech. *See Pleasant Grove City v. Summum*, 555 U.S. 460, 464 (2009). *Summum* and related cases demonstrate a constitutional commitment of the issue to state and local legislatures and executives and not to the courts. Also, the complaint involves a generalized grievance which courts refuse to entertain. *Elk Grove Unified Sch. Dist.*, 542 U.S. at 12.

Second, there is no manageable judicial standard for resolving what names, symbols, monuments, statues, or memorials should be or not be used. What standard does any court use? In the specific context of Confederate monuments, how does a court balance the claims of those asserting the monuments honor a noble lost cause or those asserting the monuments are symbols of oppression and racism?[8] If a state or local government decided to retain its Confederate monuments, could a court overrule that decision and order removal?

---

[8] For example, in *A.M. v. Cash*, 585 F.3d 214, 222 (5th Cir. 2009), the court observed that some view the Confederate flag as a symbol of racism and intolerance regardless of whatever other meanings may be associated with it. The court chronicled and quoted from other opinions that noted the Confederate flag was viewed as a symbol of heritage by some and by others as a symbol of white supremacy and racism by those that harbor a racial bias against African-Americans. *Id.* at 222, note 5.

Third, the response to the preceding factor also establishes the impossibility of deciding the issue without an initial, clearly nonjudicial, policy determination.  If that were not the case, then courts could decree whose name should be on a building or whose statue should be placed in the city square.

Fourth, any resolution of the issue by a court would represent a disrespect and disregard of the local executive or legislative branch's decision whether to install or remove particular names, symbols, monuments, statues, or memorials from government-owned property.  Here, the City has created a task force to make recommendations to a commission who will in turn provide suggestions to City Council.  City Council will then decide what action, if any, should be taken.  Public input has been and will be provided at each step.  Any court action would be in contravention to this process.

Fifth, in the context of this issue, the courts should adhere to the political decision involving whether names, symbols, monuments, statues, or memorials should be preserved or removed. There is a vigorous political debate as to state and local governments' use or display of Confederate names, symbols, or figures.   The courts should adhere to the decisions of the elected officials.

Finally, there is the very real potential of differing decisions by state and local governments on the continued governments' use or display of Confederate names, symbols, or figures.  The Court may take judicial notice that certain governments have decided to remove them and others have decided to let them remain.  The City itself may reach different decision as to particular monuments.  The decisions will be made by state and local governments weighing the various political factors.

Only a political question is presented and the case should be dismissed. *See In re African-American Slave Descendants Litigation*, 375 F. Supp. 2d 721, 754-66 (N.D. Ill. 2005) *aff'd in part and rev'd in part,* 471 F.3d 754 (7th Cir. 2006) (discussing standards for a political question).

**E.   Any claim to enjoin the removal of the Lee statute is moot.**

Plaintiffs originally filed this action to enjoin the removal of the Lee statue.  The same relief is still requested in the amended complaint.   Mootness is a jurisdictional issue and can occur in two ways: (1) when the issues presented are no longer live, and (2) when the parties lack a legally cognizable interest in the outcome. *Powell v. McCormack*, 395 U.S. 486, 496 (1969). Plaintiffs admit that the Lee statute has been removed. The issue as to its removal is no longer live and is moot.

## IV.   THE CASE SHOULD BE DISMISSED BECAUSE OF PLAINTIFFS' FAILURE TO STATE A CLAIM

**A.   Standard for Rule 12(b)(6).**

Rule 12(b)(6) authorizes dismissal of a complaint for failing to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To state a claim upon which relief may be granted, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *Id.* at 555.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  A plaintiff's obligation to provide the "grounds" of its entitlement to relief requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action is not sufficient. *Twombly,* 550 U.S. at 555.  A court is not bound to accept as true "a legal conclusion couched as a factual allegation." *Twombly, 550 U.S. at 555*.  "A claim for relief is implausible on

its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Iqbal,* 556 U.S. at 679. A court may consider documents attached to or incorporated in the complaint and matters of which judicial notice may be taken. *United States ex rel. Willard v. Humana Health Plan of Texas Inc.,* 336 F.3d 375, 379 (5th Cir. 2003). Here, Plaintiffs have failed and cannot meet their burden to allege a plausible cause of action.

**B. No copyright violation is alleged.**

Direct copyright infringement requires a plaintiff to allege that it owns a valid copyright and that the defendant copied constituent elements of the plaintiff's work that are original. *Joseph Paul Corporation v. Trademark Custom Homes, Inc.,* No. 3:16-CV-1651-L, 2016 WL 4944370, at *10-11 (N.D. Tex. Sept. 16, 2016). The ownership element is satisfied by allegations that the work is original, can be copyrighted, and that the plaintiff has complied with all statutory formalities for copyright registration and ownership. *Id.* The copying element is satisfied by factual copying of substantial similarity. *Id.*

As discussed above, Plaintiffs do not allege that they own a valid copyright but just have a speculative hope to own it. (ECF No. 10 at 23 [¶62 and note 7]). Plaintiffs do not allege that the copyright has been properly registered or the other statutory formalities satisfied. Plaintiffs likewise fail to allege the basic element of a copying. No possible claim of a copyright violation is stated.

**C. A claim to quiet title is not stated.**

Plaintiffs seek a judgment that quiets title to the Pioneer Cemetery Park and to the Confederate Cemetery in favor of Plaintiffs. (ECF 10 at 4, 27 [¶¶ 20, 71(f), (g)]). Plaintiffs make conclusory claims of interests in the cemeteries. (*Id.* at 19-22 [¶¶ 55-59]).

The elements for quiet title claims under Texas law are that: (1) plaintiff has an interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) the

claim, although facially valid, is invalid or unenforceable.  *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 766-67 (N.D. Tex. 2012).  A plaintiff must allege right, title, or ownership in itself with sufficient certainty to enable the court to see that plaintiff has a right of ownership that will warrant judicial interference.  *Id*.  The plaintiff must recover on the strength of its own title, not on the weakness of his adversary's title.  *Id*.[9]  S*ee also Metcalf v. Deutsche Bank Nat. Trust Co*., No. 3:11–CV–3014–D, 2012 WL 2399369, at *7 (N.D. Tex. June 26, 2012).

For the Confederate Cemetery, Plaintiffs make only conclusory allegations about the weakness of the City's title and do not allege having superior title.  (ECF No. 10 at 20-22 [¶¶ 56-59]).  For Pioneer Cemetery Park, they do not dispute the City ownership and make no allegations about having any interest in the property.  (*Id*. at 19-20 [¶¶ 53-55]).  As in *Hurd*, Plaintiffs here have failed to allege how they have superior title to either cemetery.  *Hurd,* 880 F. Supp. 2d at 767 (dismissing quiet and trespass title claims pursuant to Rule 12(b)(6) because of a failure to plead facts to enable a reasonable inference of superior title to the property); *see also Hawk v. Deutsche Bank National Trust Company*, No. 3:15-CV-1784-D, 2015 WL 8164779, at *4 (N.D. Tex. Dec. 8, 2015) (dismissing quiet title claim pursuant to Rule 12(b)(6) because of a failure to plead facts to enable a reasonable inference of superior title to the property).

Included within this failure to allege superior title is Plaintiffs' failure to allege a plausible basis to assert any interest in either property.  Texas law requires a plaintiff claiming title to real property to make an affirmative showing of superior title in one of three ways: (1) proof of adverse possession; (2) proof of a regular chain of conveyances out of the sovereign; or (3) proof that he

---

[9] If Plaintiffs should later argue they sought a trespass to try title a plaintiff must (1) prove a regular chain of conveyances from the sovereign, (2) establish superior title out of a common source, (3) prove title by limitations, or (4) prove title by prior possession coupled with proof that possession was not abandoned. The plaintiff must recover upon the strength of his own title and not the weakness of the defendant's title. *Id*. at 767.

holds a superior title from a common source.  *Robbins v. Amoco Production Co*., 952 F.2d 901,

905 (5th Cir. 1992).  Plaintiffs make no allegations to support any theory.

Additionally, for Pioneer Cemetery Park, Plaintiffs' claim is based on a potential removal

of a Confederate monument on the property as violating the City's claimed obligation to "maintain

the property as a Memorial Cemetery Park by mowing the grass, trimming the hedges, shrubbery

and trees" but the City has no obligation "to maintain headstones, markers or tombstones."  (ECF

No. 10 at 19 [¶ 53]).  Plaintiffs admit that the Confederate monument was placed in Pioneer

Cemetery after the property was conveyed to the City.  (*Id*. at 6-7 [¶¶ 25-26]).   Therefore, its

presence or removal could never have been part of the donor's intent.  Further, Plaintiffs offer no

explanation or allegation of how moving a monument that was not part of the original cemetery

violates maintaining the property as a memorial cemetery park.  No possible claim is alleged.

For Confederate Cemetery, Plaintiffs' claim is based on the conclusory claim of the

absence of a copy of the deed transferring the property to the City.  (ECF No. 10 at 20-22 [¶¶ 56-

59]).  As noted, the allegation is factually false and there is a recorded deed evidencing the transfer.

(Defendants' App'x at 45-46).  Even if a deed could no longer be located, that does not mean it

did not exist or that the City did not own the property.  *See Clark v. Amoco Production Co*., 794

F.2d 967, 970-71 (5th Cir. 1986) (title can be established under the presumed lost deed doctrine).

Plaintiffs also assert a failure to maintain or abandonment.  Neither claim divests an owner

of its property or causes some type of reverter to the prior owner.  *See Robbins*, 952 F.2d at 905.

To the extent, Plaintiffs assert some type of adverse possession claim, it fails on its face.  *Id*.

(failure to assert possession defeats adverse possession claim).

Finally, the claims to quiet title concern property owned by a governmental entity and thus

involve the City's governmental or sovereign immunity.  Plaintiffs do not allege any type of waiver

18

of immunity. *See Parks and Wildlife Dept. v. Sawyer Trust*, 354 S.W. 3d 384, 388-90 (Tex. 2011) (claims against governments' title in property barred by sovereign immunity); *Cameron County v. Tompkins*, 422 S.W.3d 789, 800-801 (Tex. App.–Corpus Christi 2013, pet. denied) (county official had co-extensive immunity with the county against plaintiffs' quiet-title and declaratory-judgment claims because the county officials were sued in their official capacity).

No possible quiet title or trespass to try title claim is stated.

**D.   No abridgement of free speech claim is stated.**

Plaintiffs claim that removal of the Lee statue is an abridgment of free speech. (ECF No. 10 at 11-19 [¶¶ 37-52]). As discussed above, there are no allegations concerning any impact to Plaintiffs or any basis for standing.

Furthermore, no possible abridgment of free speech is alleged. The Supreme Court has held that "the placement of a permanent monument in a public park is best viewed as a form of government speech and is therefore not subject to scrutiny under the Free Speech Clause." *Summum*, 555 U.S. at 464. The Court reasoned that "[w]hen a government entity arranges for the construction of a monument, it does so because it wishes to convey some thought or instill some feeling in those who see the structure." *Id.* at 470. Indeed, "[g]overnments have long used monuments to speak to the public." *Id.* Further, a government entity "is entitled to say what it wishes" and "select the views that it wants to express." *Id.* at 467-468. "Therefore, the removal of the [M]onument [] is a form of government speech and is exempt from First Amendment scrutiny." *Monumental Task Comm., Inc.,* 157 F. Supp. 3d at 594.

Whether a city installs or removes a monument, it is exercising its government speech. The Defendants' actions are not limiting the First Amendment rights of Plaintiffs or anyone else. No possible claim is alleged. *See also Walker v. Texas Div., Sons of Confederate Veterans, Inc.,* 135 S.Ct. 2239 (2015) (symbols on license plates were government speech and state was entitled to

refuse and could not be forced to include Confederate battle flag on its license plates); *United Veterans Memorial and Patriots Ass'n of City of New Rochelle v. City of New Rochelle*, 72 F. Supp. 3d 468 (S.D. N.Y. 2014) (city decision to remove Gadsden flag from city flagpole was government speech and did not implicate the First Amendment); *Dawson v. City of Grand Haven*, No. 329154, 2016 WL 7611556 (Mich. Ct. App. Dec. 29, 2016) (per curiam) (city decision to prohibit previously allowed display of cross on city monument was government speech and removal did not implicate the First Amendment).  A plausible claim is not alleged.

### E.   No contract or estoppel claim is stated.

In their prayer, Plaintiffs assert specific performance to return the Lee statute.  (ECF No. 10 at 27 [¶ 71(d)]).  The claim is frivolous.  Specific performance is an equitable remedy for a breach of contract.  *Enis v. Bank of Am., N.A.*, No. 3:12–CV–0295–D, 2013 WL 840696, at *3 (N.D. Tex. Mar. 7, 2013) (citing *Geske v. Wells Fargo Bank, N.A.*,  No. 3:11–CV–3337–L, 2012 WL 1231835 at *5 (N.D. Tex. April 12, 2012)).  A plaintiff seeking specific performance must establish the elements for breach of contract and establish there is no adequate remedy at law.  *Id.* There are no allegations of a contract between Plaintiffs and the City, of a breach, or any resulting harm. There are no allegations of an inadequate remedy at law.  Finally, there are no allegations of a waiver of City's governmental immunity.  *See Bexar Metro. Water Dist. v. Educ. & Econ. Dev. Joint Venture*, 220 S.W.3d 25, 28-9 (Tex. App.—San Antonio 2006, pet. dism'd) (concluding governmental immunity barred claims for specific performance); *City of San Antonio v. Hays Street Bridge Restoration Grp.*, No. 04-14-00886-CV, 2017 WL 776112, at *5 (Tex. App.—San Antonio March 1, 2017, pet. filed) (mem. op.) (holding there is no statutory waiver of governmental immunity for claims of specific performance).  A claim is not stated.

Similarly, in their prayer, Plaintiffs seek a permanent injunction to require Defendants to maintain and retain unidentified Confederate monuments "as agreed upon in several written

agreements and by virtue of estoppel." (ECF No. 10 at 27 [¶ 71(e)]).  The claim is frivolous.  There are no allegations of a contract between Plaintiffs and the City or agreements requiring the retaining of Confederate monuments.  There are no allegations of any facts to support a claim of estoppel.  *Heckler v. Community Health Servs. of Crawford Cnty., Inc.,* 467 U.S. 51, 59 (1984) (a party claiming estoppel must establish reliance on its adversary's misleading conduct in such a manner as to change his position for the worse and that reliance must have been reasonable). There are no allegations of a waiver of the City's governmental immunity and estoppel does not generally apply to governments.  *Id.*  A plausible claim is not stated.

**F.   A claim for declaratory relief is not stated and any attempted claim is duplicative.**

In passing, Plaintiffs allege the Court has authority to grant declaratory relief.  (ECF No. 10 at 5 [¶ 22]).  The only reference to declaratory relief appears in the prayer where Plaintiffs request a declaratory judgment of Defendants' past and present violations of Plaintiffs First Amendment rights and a declaratory judgment that Defendants infringed on Plaintiffs' copyright. (ECF No. 10 at 27 [¶ 71(b), (c)]).

The federal Declaratory Judgment Act does not create substantive rights and federal courts have broad discretion to grant or to refuse declaratory judgment.  *Metcalf v. Deutsche Bank Nat. Trust Co.,* 2012 WL 2399369 at *9.  Since Plaintiffs have failed to state any plausible viable claim, the Court should decline to entertain their declaratory judgment request.  *Id.*  Furthermore, the requested declaratory relief duplicates Plaintiffs' claims of copyright violations and claims under 42 U.S.C. § 1983 and should be dismissed as redundant.  *Id.*

**G.   No plausible claim for injunctive relief is stated.**

In addition to failing to state any possible substantive claims, Plaintiffs have failed to state a claim for injunctive relief.  In their amended complaint, Plaintiffs set out vague allegations concerning their request for a preliminary injunction concerning the removal of the statue.  (ECF

No. 10 at 22-25 [¶¶ 60-67]).   However, plaintiffs acknowledge it has already been removed.  (*Id*. at 23, 25 [¶¶ 62, 68]).   In their prayer, Plaintiffs request for a preliminary injunction against Defendants "that they may not remove, obscure, alter, or destroy Confederate Monuments" including the Lee statue.  (*Id*. at 26 [¶ 71(a)]).  Plaintiffs also seek "specific performance" to replace the Lee statue "to its original and perpetual site in Lee park."  (*Id*. at 27 [¶ 71(d)]).  Finally, in their prayer, Plaintiffs request a permanent injunction against Defendants requiring them to "maintain and retain the Confederate Monuments", "in their original locations and in perpetuity."  (*Id*. at 27 [¶ 71(e)]).

The party seeking a permanent injunction must meet a four-part test. It must establish (1) success on the merits; (2) that a failure to grant the injunction will result in irreparable injury; (3) that said injury outweighs any damage that the injunction will cause the opposing party; and (4) that the injunction will not disserve the public interest.  *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).[10]

As discussed above, Plaintiffs lack standing, the central claim is moot, there is no justiciable claim, and they have failed to allege a plausible cause of action.  As a matter of law, Plaintiffs' success on the merits is impossible.

Likewise, Plaintiffs have failed to allege any irreparable harm to themselves.   In their amended complaint, Plaintiffs make only general conclusory claims of irreparable harm and fail to allege how any harm will occur to them.  (ECF No. 10 at 22, 24 [¶¶ 60, 64]).  Absent a plausible allegation and a showing of irreparable harm, the Plaintiffs are not entitled to the injunctive relief.

---

[10] The elements for a preliminary injunction are nearly the same but without the same exactitude.  They are: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is denied; (3) that the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest. *Hoover v. Morales*, 164 F.3d 221, 224 (5th Cir. 1998).

Since Plaintiffs have no injury, the only consideration is whether Defendants will be harmed by an injunction.  The harm to the Defendants is essentially the same harm and disservice to the public interest that would result from an injunction.  The issue of whether to remove, replace, or retain Confederate-era names, statues, and symbols is a political question properly resolved through a legislative decision.  Elected officials exercising the authority and discretion granted to them by the citizenry are best suited to make those determinations.  Those who disagree with political policy decisions can attempt to seek a different result through the ballot box.  *See Board of Regents of Univ. of Wis. System v. Southworth*, 529 U.S. 217, 235 (2000) ("[w]hen the government speaks, for instance to promote its own policies or to advance a particular idea, it is, in the end, accountable to the electorate and the political process for its advocacy.  If the citizenry objects, newly elected officials later could espouse some different or contrary position.").  Granting an injunction would thwart the duly conducted legislative process of the City and its elected officials.

The policy of the City Council by its elected officials as reflected in the Resolution is "in itself a declaration of public interest and policy." *Va. Ry. v. Sys. Fed'n No. 40*, 300 U.S. 515, 552 (1937).  If legislation is enjoined, the City "necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws."  *Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2013).  The City's harm merges with the public's harm.  *Id.  See also Heckler*, 467 U.S. at 60 (when government is unable to enforce its law, "the interest of the citizenry as a whole in obedience to the rule of law is undermined.").

No plausible claim for injunctive relief is stated.

## V.    CONCLUSION

WHEREFORE, PREMISES CONSIDERED, the Defendants requests that the Court grant in whole, or alternatively in part, their motion to dismiss for lack of jurisdiction or in the alternative

their motion to dismiss for failure to state a claim, dismiss this action with prejudice, and grant

Defendants such other relief as the Court finds just.

Respectfully submitted,

CITY ATTORNEY OF THE CITY OF DALLAS

Larry E. Casto
Dallas City Attorney

*/s/  Charles S. Estee*
Stacy Jordan Rodriguez
Executive Assistant City Attorney
Texas Bar No. 11016750
stacy.rodriguez@dallascityhall.com
Charles Estee
Senior Assistant City Attorney
Texas Bar No. 06673600
charles.estee@dallascityhall.com
7DN Dallas City Hall
1500 Marilla Street
Dallas, Texas 75201
Telephone: 214-670-3519
Facsimile: 214-670-0622

## CERTIFICATE OF SERVICE

I certify that on the 29th day of September 2017, the foregoing document was served on counsel of record for Plaintiffs via the Court's electronic filing manager.

*/s/ Charles S. Estee*
Charles S. Estee

24