UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HIRAM PATTERSON, TEXAS DIVISION SONS OF CONFEDERATE VETERANS, INC., | § § § § | |
| Plaintiffs, | § § | No. 3:17-CV-02361-D |
| v. | § § | |
| MIKE RAWLINGS, et al., | § § | |
| Defendants. | § § | |

## APPENDIX TO DEFENDANTS' BRIEF IN SUPPORT OF ITS MOTIONS TO DISMISS

LARRY E. CASTO
Dallas City Attorney

STACY JORDAN RODRIGUEZ
Executive Assistant City Attorney
Texas Bar No. 11016750
stacy.rodriguez@dallascityhall.com

CHARLES ESTEE
Assistant City Attorney
Texas Bar No. 17827020
charles.estee@dallascityhall.com

City Attorney's Office
1500 Marilla Street, Room 7B North
Dallas, Texas 75201
Telephone:    214-670-3519
Telecopier:   214-670-0622

Attorneys for Defendants

# TABLE OF CONTENTS

## Exhibits

Ex. 1; Mayor's Task Force on Confederate Monuments .................................................. 1

Ex. 2; August 24, 2017 memorandum from the Mayor to City Council members ........................ 3

Ex. 3; September 1, 2017, City Council Agenda notice and item.................................... 5

Ex. 4; September 6, 2017 Resolution .......................................................... 11

Ex. 5; Task Force Question and Answer Page dated September 6, 2017.................................... 14

Ex. 6; Texas Secretary of State inquiry results .......................................... 37

Ex. 7; Authenticating Affidavit ............................................................ 39

Ex. 8; Affidavit of Jennifer Scripps......................................................... 40

Ex. 8A; Email from Ms. Laura Ames........................................................... 42

Ex. 8B; Report on condition of Lee statute................................................. 44

Ex. 9; Certified copy of recorded warranty deed conveying Confederate Cemetery to the City ....................................................................... 45

Ex. 10; Certified copy of Dallas City Council minutes accepting Confederate Cemetery........................................................................ 48

Ex. 11; Affidavit of David Dixon............................................................ 50

Ex. 11A; Park Records of maintenance at Confederate Cemetery.............................. 53

Ex. 12; Texas Secretary of State records re Texas Division, Sons of Confederate Veterans, Inc. ....................................................................... 73

Ex. 13; Texas Secretary of State records re Sons of Confederate Veterans, Inc.......................... 85

Ex. 14; Declaration of Special Agent Radwick................................................. 120

Ex. 15; Map of Pioneer Cemetery Park ...................................................... 123

Ex. 16; Order from *Brewer v. Nirenberg*, No. SA:17-CV-837-DAE (W.D. Tex. Aug. 31, 2017) ......................................................................... 124

Ex. 17; Affidavit of Ivan Kotcher........................................................... 133

Respectfully submitted,

CITY ATTORNEY OF THE CITY OF DALLAS

Larry E. Casto
Dallas City Attorney

*/s/ Charles S. Estee*
Charles S. Estee
Senior Assistant City Attorney
Texas Bar No. 06673600
charles.estee@dallascityhall.com
Stacy Jordan Rodriguez
Executive Assistant City Attorney
Texas Bar No. 11016750
stacy.rodriguez@dallascityhall.com
7DN Dallas City Hall
1500 Marilla Street
Dallas, Texas 75201
Telephone: 214-670-3519
Facsimile: 214-670-0622

## CERTIFICATE OF SERVICE

I certify that on the 29th day of September 2017, the foregoing document was served on counsel of record for Plaintiffs via the Court's electronic filing manager.

*/s/ Charles S. Estee*
Charles S. Estee

# MAYOR'S TASK FORCE ON CONFEDERATE MONUMENTS

Home / Mayor's Task Force on Confederate Monuments

On August 24, 2017, Mayor Michael S. Rawlings appointed a task force to provide recommendations related to the removal and relocation of public Confederate monuments and symbols, and renaming of public places, including parks and streets. The Task Force will also provide recommendations related to the cost and process of disposal or relocation of monuments, suggesting additional standards for the naming of public places, suggesting replacements for Confederate monuments and symbols recommended for removal, and suggesting replacement names for public places.

All task force meetings will be publicly posted in accordance with the Texas Open Meetings Act and recorded/broadcasted. City Secretary's Office – Official Posted Public Meetings

Mayor's appointment memo

City of Dallas Cultural Policy

**Submit Written Comments**

✦ **Confederate Monuments & Symbols**

✦ **Task Force Members**



EXHIBIT

1

DEFS' APPX   1

9/22/2017

✤ **Task Force Questions and Responses**

# Meeting Information:

✤ **August 31 2017**

✤ **September 7 2017**

✤ **September 15 2017**

✤ **September 19 2017**

✤ **September 22 2017**

DEFS' APPX   2

RECEIVED

2017 SEP -1  PM 9: 11

CITY SECRETARY
DALLAS, TEXAS



# COUNCIL

# BRIEFING

# AGENDA

*Public Notice*

170878

POSTED CITY SECRETARY
DALLAS, TX

September 6, 2017
Date

EXHIBIT

tabbies*

3

(For General Information and Rules of Courtesy, Please See Opposite Side.)
(La Información General Y Reglas De Cortesía Que Deben Observarse
Durante Las Asambleas Del Consejo Municipal Aparecen En El Lado Opuesto, Favor De Leerlas.)

DEFS' APPX   5

## General Information

The Dallas City Council regularly meets on Wednesdays beginning at 9:00 a.m. in the Council Chambers, 6th floor, City Hall, 1500 Marilla. Council agenda meetings are broadcast live on WRR-FM radio (101.1 FM) and on Time Warner City Cable Channel 16. Briefing meetings are held the first and third Wednesdays of each month. Council agenda (voting) meetings are held on the second and fourth Wednesdays. Anyone wishing to speak at a meeting should sign up with the City Secretary's Office by calling (214) 670-3738 by 5:00 p.m. of the last regular business day preceding the meeting. Citizens can find out the name of their representative and their voting district by calling the City Secretary's Office.

If you need interpretation in Spanish language, please contact the City Secretary's Office at 214-670-3738 with a 48 hour advance notice.

Sign interpreters are available upon request with a 48-hour advance notice by calling (214) 670-3738 V/TDD. The City of Dallas is committed to compliance with the Americans with Disabilities Act. *The Council agenda is available in alternative formats upon request*.

If you have any questions about this agenda or comments or complaints about city services, call 311.

## Rules of Courtesy

City Council meetings bring together citizens of many varied interests and ideas. To insure fairness and orderly meetings, the Council has adopted rules of courtesy which apply to all members of the Council, administrative staff, news media, citizens and visitors. These procedures provide:

- That no one shall delay or interrupt the proceedings, or refuse to obey the orders of the presiding officer.

- All persons should refrain from private conversation, eating, drinking and smoking while in the Council Chamber.

- Posters or placards must remain outside the Council Chamber.

- No cellular phones or audible beepers allowed in Council Chamber while City Council is in session.

"Citizens and other visitors attending City Council meetings shall observe the same rules of propriety, decorum and good conduct applicable to members of the City Council. Any person making personal, impertinent, profane or slanderous remarks or who becomes boisterous while addressing the City Council or while attending the City Council meeting shall be removed from the room if the sergeant-at-arms is so directed by the presiding officer, and the person shall be barred from further audience before the City Council during that session of the City Council. If the presiding officer fails to act, any member of the City Council may move to require enforcement of the rules, and the affirmative vote of a majority of the City Council shall require the presiding officer to act." Section 3.3(c) of the City Council Rules of Procedure.

## Información General

El Ayuntamiento de la Ciudad de Dallas se reúne regularmente los miércoles en la Cámara del Ayuntamiento en el sexto piso de la Alcaldía, 1500 Marilla, a las 9 de la mañana. Las reuniones informativas se llevan a cabo el primer y tercer miércoles del mes. Estas audiencias se transmiten en vivo por la estación de radio WRR-FM 101.1 y por cablevisión en la estación *Time Warner City Cable* Canal 16. El Ayuntamiento Municipal se reúne el segundo y cuarto miércoles del mes para tratar asuntos presentados de manera oficial en la agenda para su aprobación. Toda persona que desee hablar durante la asamblea del Ayuntamiento, debe inscribirse llamando a la Secretaría Municipal al teléfono (214) 670-3738, antes de las 5:00 pm del último día hábil anterior a la reunión. Para enterarse del nombre de su representante en el Ayuntamiento Municipal y el distrito donde usted puede votar, favor de llamar a la Secretaría Municipal.

Si necesita interpretación en idioma español, por favor comuníquese con la oficina de la Secretaría del Ayuntamiento al 214-670-3738 con notificación de 48 horas antes.

Intérpretes para personas con impedimentos auditivos están disponibles si lo solicita con 48 horas de anticipación llamando al (214) 670-3738 (aparato auditivo V/TDD). La Ciudad de Dallas está comprometida a cumplir con el decreto que protege a las personas con impedimentos, *Americans with Disabilities Act. La agenda del Ayuntamiento está disponible en formatos alternos si lo solicita.*

Si tiene preguntas sobre esta agenda, o si desea hacer comentarios o presentar quejas con respecto a servicios de la Ciudad, llame al 311.

## Reglas de Cortesía

Las asambleas del Ayuntamiento Municipal reúnen a ciudadanos de diversos intereses e ideologías. Para asegurar la imparcialidad y el orden durante las asambleas, el Ayuntamiento ha adoptado ciertas reglas de cortesía que aplican a todos los miembros del Ayuntamiento, al personal administrativo, personal de los medios de comunicación, a los ciudadanos, y a visitantes. Estos reglamentos establecen lo siguiente:

- Ninguna persona retrasará o interrumpirá los procedimientos, o se negará a obedecer las órdenes del oficial que preside la asamblea.

- Todas las personas deben de abstenerse de entablar conversaciones, comer, beber y fumar dentro de la cámara del Ayuntamiento.

- Anuncios y pancartas deben permanecer fuera de la cámara del Ayuntamiento.

- No se permite usar teléfonos celulares o enlaces electrónicos (*pagers*) audibles en la cámara del Ayuntamiento durante audiencias del Ayuntamiento Municipal.

"Los ciudadanos y visitantes presentes durante las asambleas del Ayuntamiento Municipal deben de obedecer las mismas reglas de comportamiento, decoro y buena conducta que se aplican a los miembros del Ayuntamiento Municipal. Cualquier persona que haga comentarios impertinentes, utilice vocabulario obsceno o difamatorio, o que al dirigirse al Ayuntamiento lo haga en forma escandalosa, o si causa disturbio durante la asamblea del Ayuntamiento Municipal, será expulsada de la cámara si el oficial que esté presidiendo la asamblea así lo ordena. Además, se le prohibirá continuar participando en la audiencia ante el Ayuntamiento Municipal. Si el oficial que preside la asamblea no toma acción, cualquier otro miembro del Ayuntamiento Municipal puede tomar medidas para hacer cumplir las reglas establecidas, y el voto afirmativo de la mayoría del Ayuntamiento Municipal precisará al oficial que esté presidiendo la sesión a tomar acción." Según la sección 3.3(c) de las reglas de procedimientos del Ayuntamiento.

# Handgun Prohibition Notice for Meetings of Governmental Entities

"Pursuant to Section 30.06, Penal Code (trespass by license holder with a concealed handgun), a person licensed under Subchapter H, Chapter 411, Government Code (handgun licensing law), may not enter this property with a concealed handgun."

*"De acuerdo con la sección 30.06 del código penal (ingreso sin autorización de un titular de una licencia con una pistol oculta), una persona con licencia según el subcapítulo h, capítulo 411, código del gobierno (ley sobre licencias para portar pistolas), no puede ingresar a esta propiedad con una*
*pistola oculta."*

"Pursuant to Section 30.07, Penal Code (trespass by license holder with an openly carried handgun), a person licensed under Subchapter H, Chapter 411, Government Code (handgun licensing law), may not enter this property with a handgun that is carried openly."

*"De acuerdo con la sección 30.07 del código penal (ingreso sin autorización de un titular de una licencia con una pistola a la vista), una persona con licencia según el subcapítulo h, capítulo 411, código del gobierno (ley sobre licencias para portar pistolas), no puede ingresar a esta propiedad con una pistola a la vista."*

# Memorandum



**DATE** August 24, 2017

**CITY OF DALLAS**

**TO** Honorable Members of the City Council

**SUBJECT** Members of Mayor's Task Force on Confederate Monuments

I am pleased to present the members of the Mayor's Task Force on Confederate Monuments. It is critical that this task force be an independent, qualified and diverse panel. I appreciate you all for sending your recommendations to achieve this goal.

**Chair:**
Frances Waters, J.D., is the Chief Strategist of FCW Strategic Consulting with a particular focus on arts/culture, education and organizational strategic planning, and capacity-building. She has also served as a United Methodist pastor and church strategist. She is a graduate of Stanford University and Harvard Law School and is an involved, committed member of the Dallas community.

**Task Force Members:**
Buddy Apple, Attorney and Preservationist
Sara Mokuria, Associate Director for Leadership Initiatives, University of Texas at Dallas
Coy Murchison, Health Care Administration Professional
Jesse Hornbuckle, Photographer and Business owner
Terrance Perkins, Executive Director, Passage of Youth, Inc. and Pastor
Dr. Ervin Seamster, Jr., President, Southwestern Christian College and Pastor
Marilyn Mayse, Attorney
Dr. Frederick D. Haynes, Senior Pastor, Friendship-West Baptist Church
Norma Minnis, Mortgage Broker
Coy Poitier, Dallas County Historical Commission
Dr. Glynn Newman, Professor, Eastfield College
Jo Trizila, President & CEO, TrizCom Public Relations
Maggie Murchison, Executive Committee, The University of Texas Chancellor's Council
Barvo Walker, Sculptor
Rene Martinez, Education Consultant
Joli Robinson, Dallas Truth, Racial Healing & Transformation
Larry Schoenbrun, Attorney, Gardere Wyne Sewell LLP
Bryce Weigand, Architect, Weigand Art & Architecture
Arman Rupani, Managing Partner, Rupani & Matthew Group LLC

**Communications Advisor:**
Ken Luce, Founding Partner, LDWWgroup



EXHIBIT

tabbies®

2

DATE      August 24, 2017
SUBJECT   Members of Mayor's Task Force on Confederate Monuments

Director of Cultural Affairs Jennifer Scripps will serve as the lead city staff liaison for the task force. The task force may also consult with relevant staff in Historic Preservation, Parks and Recreation and the City Attorney's Office.

The first task force meeting will be held on Thursday, August 31, at 6 p.m. in the Dallas City Council Chambers. All meetings will be publicly posted in accordance with the Texas Open Meetings Act and recorded/broadcasted.

If you have any questions, please contact Patricia Blasquez at patricia.blasquez@dallascityhall.com.

Best Regards,

Michael S. Rawlings
Mayor

c:   Larry Casto, City Attorney                              Jon Fortune, Assistant City Manager
     Craig D. Kinton, City Auditor                           Joey Zapata, Assistant City Manager
     Rosa A. Rios, City Secretary                            M. Elizabeth Reich, Chief Financial Officer
     Daniel F. Solis, Administrative Judge                   Nadia Chandler Hardy, Chief of Community Services
     Kimberly Bizor Tolbert, Chief of Staff to the City Manager   Raquel Favela, Chief of Economic Development & Neighborhood Services
     Majed A. Al-Ghafry, Assistant City Manager              Theresa O'Donnell, Chief of Resilience
     Jo M. (Jody) Puckett, Assistant City Manager (Interim)  Directors and Assistant Directors

AGENDA
CITY COUNCIL BRIEFING MEETING
WEDNESDAY, SEPTEMBER 6, 2017
CITY HALL
1500 MARILLA STREET
DALLAS, TEXAS 75201
9:00 A.M.

9:00 am      Invocation and Pledge of Allegiance                               6ES

             Special Presentations

             Open Microphone Speakers

## VOTING AGENDA                                                               6ES

1.    Approval of Minutes of the August 16, 2017 City Council Meeting

2.    Consideration of appointments to boards and commissions and the evaluation and duties of board and commission members (List of nominees is available in the City Secretary's Office)

## ITEMS FOR INDIVIDUAL CONSIDERATION

### Mayor and City Council

3.    A resolution **(1)** acknowledging that public Confederate monuments and the names of public places, including parks and streets, named for Confederate figures do not promote a welcoming and inclusive city; **(2)** supporting the Mayor's Task Force on Confederate Monuments, which is made up of a diverse group of city leaders who will provide various recommendations to the city council; **(3)** providing timelines for the Mayor's Task Force and the Cultural Affairs Commission, as well as requiring that the Task Force hold at least two public meetings to receive public input; **(4)** providing for the city council to take further action as needed, including authorizing the renaming of certain public places, on November 8, 2017, and directing city staff to take any and all appropriate actions to implement the city's policy in accordance with the Charter, City Code, and other rules, regulation, and policies as well as all applicable state and federal law; **(5)** directing the city manager to immediately remove and store the Alexander Phimster Proctor monument (of Robert E. Lee); **(6)** authorizing the city manager to transfer funds or appropriate funds from excess revenue, as necessary, to remove all public Confederate monuments; and **(7)** acknowledging that, consistent with City Council Rules of Procedure, Rule 6.2(b), the Mayor shall not place any item on the agenda that has been voted on by the city council within the one-year period preceding the date requested for placement of the item on the agenda - Financing: Current Funds

AGENDA
CITY COUNCIL BRIEFING MEETING
WEDNESDAY, SEPTEMBER 6, 2017

ITEMS FOR INDIVIDUAL CONSIDERATION (continued)

**Office of Financial Services**

4.   First reading of the appropriation ordinances for the proposed FY 2017-18 City of Dallas Operating, Capital, and Grant & Trust Budgets - Financing: This action has no cost consideration to the City

PUBLIC HEARINGS AND RELATED ACTIONS

**Office of Financial Services**

5.   A public hearing to receive comments on a $0.7825/$100 property tax rate for the 2017-18 fiscal year as discussed on August 16, 2017; City Council will vote to adopt a tax rate on Wednesday, September 20, 2017 at Dallas City Hall, 6ES at 9:00 a.m. - Financing:  No cost consideration to the City

BRIEFINGS                                                                              6ES

A.   FY 2017-18 Annual Budget: Council Amendments


Lunch


Closed Session                                                                         6ES
Attorney Briefings (Sec. 551.071 T.O.M.A.)
-       Kenneth E. Albert, et al. v. City of Dallas, Cause No. 199-00697-94; Anthony Arredondo, et al. v. City of Dallas, Cause No. 199-1743-99; David L. Barber, et al. v. City of Dallas, Cause No. 199-624-95; David S. Martin, et al. v. City of Dallas, Cause No. 1-95-506; George G. Parker, et al. v. City of Dallas, Cause No. 1-95-107; Kevin Michael Willis, et al. v. City of Dallas, Cause No. 199-200-95.


Open Microphone Speakers                                                               6ES

The above schedule represents an estimate of the order for the indicated briefings and is subject to change at any time.  Current agenda information may be obtained by calling (214) 670-3100 during working hours.
Note: An expression of preference or a preliminary vote may be taken by the Council on any of the briefing items.

2

## EXECUTIVE SESSION NOTICE

A closed executive session may be held if the discussion of any of the above agenda items concerns one of the following:

1.  seeking the advice of its attorney about pending or contemplated litigation, settlement offers, or any matter in which the duty of the attorney to the City Council under the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas clearly conflicts with the Texas Open Meetings Act.  [Tex, Govt. Code §551.071]

2.  deliberating the purchase, exchange, lease, or value of real property if deliberation in an open meeting would have a detrimental effect on the position of the city in negotiations with a third person.  [Tex. Govt. Code §551.072]

3.  deliberating a negotiated contract for a prospective gift or donation to the city if deliberation in an open meeting would have a detrimental effect on the position of the city in negotiations with a third person. [Tex. Govt. Code §551.073]

4.  deliberating the appointment, employment, evaluation, reassignment, duties, discipline, or dismissal of a public officer or employee; or to hear a complaint or charge against an officer or employee unless the officer or employee who is the subject of the deliberation or hearing requests a public hearing. [Tex. Govt. Code §551.074]

5.  deliberating the deployment, or specific occasions for implementation, of security personnel or devices.  [Tex. Govt. Code §551.076]

6.  discussing or deliberating commercial or financial information that the city has received from a business prospect that the city seeks to have locate, stay or expand in or near the city and with which the city is conducting economic development negotiations; or deliberating the offer of a financial or other incentive to a business prospect. [Tex Govt. Code §551.086]

DEFS' APPX   10

September 6, 2017

**WHEREAS,** the enslavement of the then Africans was one of the causes of the Civil War, which divided our country over 150 years ago;

**WHEREAS,** the Confederacy lost its war against the United States and the "negro" slave was then freed from slavery, transferring names from "negro" to "colored";

**WHEREAS,** "colored" individuals continued to face discriminatory laws, legal practices, and unpunished violence specifically aimed at preventing them from achieving equality from Reconstruction through the Jim Crow Era;

**WHEREAS,** even after the economic, social, and legal gains made by the Civil Rights Movement, those now referred to as "blacks" were still denied equality by a society that discriminated against them even when hard-won laws call for equal treatment;

**WHEREAS,** through the progression of history, those African descendants who were formerly known as "negro" slaves, then "coloreds," and then "blacks" are now referred to as African Americans;

**WHEREAS,** in spite of every obstacle placed in their path, the African-American community has always persisted and has in the most fundamental way prevailed;

**WHEREAS,** now, we are faced with the decision of keeping, removing, or replacing public monuments, images, and symbols, as well as names of public places, including parks, and streets that may be continuous reminders of the Civil War;

**WHEREAS,** Confederate monuments, along with public places, including parks, and streets that are named for prominent Confederates may continue to be symbols of our country's division, and may create racial barriers in our city;

**WHEREAS,** these Confederate monuments, symbols, images, and public places, including parks, and streets named for Confederate figures may distort the violent and oppressive history of the Confederacy and may preserve the principles of white supremacy;

**WHEREAS,** for many years, leaders of diverse backgrounds have consistently called for the removal of Confederate monuments and symbols from public property;

**WHEREAS,** the city of Dallas strives to be a welcoming and inclusive city for all its residents and visitors, regardless of their cultural or ethnic backgrounds; and



EXHIBIT

4

Resolution – Page 1

**WHEREAS,** it is time for a robust public discussion of the history of the Confederate monuments and commemorations, and the city of Dallas' policy regarding the standards for public commemoration of persons, places, and historical events.

Now, Therefore, **BE IT RESOLVED BY THE CITY COUNCIL OF THE CITY OF DALLAS:**

**Section 1.** That the display of public Confederate monuments glorifying Confederate causes does not promote a welcoming and inclusive community ~~That the display of public Confederate monuments and the names of public places, including parks, and streets named for Confederate figures do not promote a welcoming and inclusive city and, thus, are against the public policy of the city of Dallas~~.

**Section 2.** That, ~~to accomplish the removal of these public Confederate monuments and symbols and the renaming of public places, including parks, and streets,~~ the city council supports the Mayor's Task Force on Confederate Monuments ("Task Force"), which is a made up of a diverse group of city leaders who will provide recommendations to the city council:

    a.    regarding the costs associated with removal and relocation of public Confederate monuments and symbols and with the renaming of public places, including parks, and streets along with available options for private funding;

    b.    regarding the process of disposal or relocation of Confederate monuments and symbols if deemed necessary;

    c.    suggesting additional standards for the naming of public places, including parks, and streets going forward if deemed necessary;

    d.    suggesting replacements for Confederate monuments and symbols recommended for removal to promote a more welcoming and inclusive Dallas if deemed necessary; and

    e.    suggesting replacement names for public places, including parks, and streets that also promote a more welcoming and inclusive Dallas if deemed necessary.

**Section 3.** That the Task Force shall convene at least two public meetings to receive public input and shall work with, and make recommendations to, the Cultural Affairs Commission by October 12, 2017.

**Section 4.** That the Cultural Affairs Commission shall make a final presentation to city council on November 1, 2017, reporting its findings and making its recommendations.

**Section 5.** That the city council may take any further action, as needed, including authorizing the renaming of certain public places, including parks, and streets, on November 8, 2017, and directing city staff to take any and all appropriate actions to

DEFS' APPX   12

implement the city's policy in accordance with the Charter, City Code, and other rules, regulation, and policies as well as all applicable state and federal law.

**Section 6.** That the city manager shall immediately remove the Alexander Phimster Proctor monument (of Robert E. Lee) at Lee Park and store it at a safe location until the conclusion of the recommendations of the Task Force as this monument is not a designated city landmark.

**Section 7.** That the city manager is hereby authorized to transfer funds or appropriate funds from excess revenue, as necessary, to remove the Alexander Phimster Proctor monument of Robert E. Lee at Lee Park all public Confederate monuments. The city manager will take all appropriate actions to seek private funding to reimburse the expenses associated with this action.

**Section 8.** That, consistent with City Council Rules of Procedure, Rule 6.2(b), the Mayor shall not place any item on the agenda that has been voted on by the city council within the one-year period preceding the date requested for placement of the item on the agenda.

**Section 9.** That this resolution shall take effect on September 6, 2017, and it is accordingly so resolved.

APPROVED BY
CITY COUNCIL

SEP 06 2017

Interim City Secretary

### GENERAL QUESTIONS:

### Does city staff receive anti-racist training and/or racial equity training?

HR offers diversity, ethics, workplace discrimination and workplace violence training. All City of Dallas employees receive diversity and ethics training as part of our new employee orientation. Discrimination, workplace violence and workplace harassment trainings are part of supervisor development training and are also offered on demand.

The Dallas Police Department training is as follows:

Recruit officers receive the following in the Academy:
- Professionalism and Ethics – 8 hours
- Multiculturalism and Human Relations Courses covering topics regarding the African-American Community, Asian Community, Hispanic Community, Native American Community, GLBT Community, and Hearing/Visually/Mobility Impaired – 19 hours
- Racial Profiling – 4 hours
- Penal Code – to include hate crimes / racial profiling
- General Order / Code of Conduct – training regarding treatment of the citizens we serve

In-service officers received the following training during our last Core training cycle:
- Procedural Justice & Police Legitimacy – 8 hours
  - 8 hour block of instruction based upon the process by which the police and community groups interact with each other. The procedural justice perspective argues that the legitimacy of the police is linked to public judgement about fairness of the processes through which the police make decisions and exercise authority. It is a procedural justice based approach to police allowing the police to focus on controlling crime without alienating the public.
- Personal Perspectives
  - 2 hour block of instruction that provides information that enables officers to recognize their own personal bias and perspectives. This allows officer's effectiveness to create a safer environment for citizens and the officer.

In the next Core cycle to start in October, 2017 we will include:
- Ethics training as required by Ordinance amending Ch12A
- Section 1701.2S3, Occupations Code training regarding Senate Bill 30 – creating additional requirements for law enforcement training regarding the role of law enforcement and duties of a police officer during traffic stops, proper behavior for police officers during interactions, laws regarding questioning and detention by police officers, etc.

We do not offer a topic titled "anti-racist training" and/or "racial equity training".

### Do appointed board members receive anti-racist and/or racial equity training?

No.

1



EXHIBIT
5

*What is the current ethnic and racial composition of the city of Dallas?*

| | Ethnicity | Count | % |
|---|---|---|---|
| **Citywide** | African American | 4251 | 33.75% |
| | American Indian | 101 | 0.80% |
| | Asian | 376 | 2.99% |
| | Causian | 4421 | 35.10% |
| | Hispanic | 3326 | 26.41% |
| | Other | 120 | 0.95% |
| | Grand Total | 12595 | 100.00% |

*Please provide a briefing on the Daughters of the Confederacy and the Lost Cause movement.*

A briefing on the historical context of the Dallas monuments will be presented.

*Please provide details of all forms of segregation in policy and practice for the City of Dallas.     (Specifically in the 1930's)*

The briefing mentioned above will delve into on our city's history from this period, although it likely will not provide "details on all forms of segregation in policy and practice for the City of Dallas" due to the vast nature of this request and the limited time available to this Task Force work.

*For further context for the time periods of the two Confederate Monuments*

Texas History online is a respected source:
Antebellum Texas- https://tshaonline.org/handbook/online/articles/npa01
Civil War in Texas- https://tshaonline.org/handbook/online/articles/qdc02
Slavery- https://tshaonline.org/handbook/online/articles/yps01
Late 19th Century Texas  https://tshaonline.org/handbook/online/articles/npl01
Texas Centennial- https://tshaonline.org/handbook/online/articles/lkt01
Fair Park- https://tshaonline.org/handbook/online/articles/ggf03
Hall of Negro Life  https://tshaonline.org/handbook/online/articles/pkh01
African Americans in Texas https://tshaonline.org/handbook/online/articles/wmafr
Segregation https://tshaonline.org/handbook/online/articles/pks01
Civil Rights https://tshaonline.org/handbook/online/articles/pkcfi

Additional information
American Historical Association
AHA statement: http://blog.historians.org/2017/08/aha-statement-confederate-monuments/

The Lost Cause Movement
http://civil-war-journeys.org/the_lost_cause.htm
https://www.nps.gov/resources/story.htm%3Fid%3D217
History of Jim Crow
http://www.crf-usa.org/black-history-month/a-brief-history-of-jim-crow

2

Daughters of the Confederacy:
https://tshaonline.org/handbook/online/articles/vsu01

**What input did people of color, specifically Black people have in the naming of the streets associated with the confederacy, naming of Lee park and the erection of the monuments?**

It is safe to say that the input from Black citizens was minimal to non-existent due to the disenfranchisement and segregation that predominated our City when these monuments were erected and Lee Park was named.

***As all of the recommendations we will provide have financial implications, please provide detailed budgets for each department impacted by possible recommendations from this Task Force as well as rules governing private donations.***

We will develop estimated costs once we have guidance from the Task Force as to the areas of recommendations and which options are being considered. This is clearly in the scope of the work and something staff has already done for the Lee Statue vote on September 6th.

With respect to private donations, those are governed by City of Dallas Administrative Directive 2-13 which can be found in ATTACHMENT A.

3

### *STREETS:*

#### *How many streets have been named for abolitionist and/or the formally enslaved?*
+ Wheatley Place is named for an enslaved African poet, Phillis Wheatley.
+ Bonton Street is named for the former freedman's community – now neighborhood, Bon Ton.

#### *Are there any streets named to commemorate emancipation and or Juneteenth?*
+ We have not been able to identify any.

#### *Which streets are considered historic street names?*
An historic street name commemorates:
- A person who significantly contributed to the cultural, economic, social, religious, or political heritage of the city
- A site or area where there occurred historic events which significantly contributed to the cultural, economic, social, religious, or political heritage of the city
- A person or family founding or traditionally associated with the area where the street is located

If the street name meets one of the criteria above, the street is deemed an historic street.
An historic street requires three-fourths vote of City Council to rename.

#### *Do we have any written policies around ethical standards for street names?*
The guidelines for street names are:
- A street name may be based upon physical, political, or historic features of an area.
- The name of a subdivision and names thematically related to the name of a subdivision may be given to a street within the subdivision.

Other rules regarding street name changes relate to similarity to an existing street, configuration of the roadway, the length of the name of the street.

#### *On average, how many streets are renamed in Dallas annually?*
- City Council approved 47 street name changes in the past 20 years.
- On average, two street name changes per year.

#### *How expensive was it to name Central Expressway and George Bush Expressway? Or is it just another name for Central Expressway?*
The "George W. Bush Expressway" moniker for Central Expressway was implemented by TxDOT and is ceremonial in nature. The official name, as far as the City is concerned, remains "North Central Expressway".

#### *Street Naming: Please provide further clarity on Jefferson and Davis. Stonewall St and Junius and Peak are not on the list, please explain why and/or add them to the list to be discussed.*
Please see the updated list of streets that have been researched as part of this ongoing effort to document any Confederate ties.

4

| Street Name | Named for (or presumed) | On Plat | Renamed | Notes |
|---|---|---|---|---|
| Beauregard | Pierre G.T. Beaurgard | 1/22/1948 | | Confederate General |
| Cabell | William L. Cabell | | 1923 | Confederate General *"For General W.L (Old Tige) Cabell, Confederate commander, mayor" |
| Clark | Edward Clark | | | *"For Edward Clark, governor of Texas, 1861-63" Need to verify if Confederate Colonel |
| Coit | | | | Still researching - D Magazine article not verified |
| Davis (Oak Cliff) | A.E. Davis | | | *"For A.E. Davis, developer of an addition in 1890" |
| Forest | Suggested as variant of FORREST, for Nathan B. Forrest. | | | Forest Avenue renamed Martin Luther King, Jr. Blvd in 1981; "Believed to have been named originally for the Confederate General Nathan B. Forrest. Present spelling, adopted sometime during the 1880s, suggested by the trees which lined the street." Archivist not convinced named for NB Forrest |
| Gano | Richard Montgomery Gano | | | Confederate Brigadier General *For General R.M. Gano, rancher, physician, and noted Conderate soldier" |
| Gaston | William Henry Gaston | 1885 | | Confederate Captain; purported model for Confederate Memorial; moved to Dallas after the Civil War. *"For Captain W.H. Gaston, early-day banker and developer. Originally Wallace Street, for Wallace W. Peak" |
| Good | John Jay Good | | | *For John J. Good, lawyer, landowener, mayor, 1880-81" need to verify Confederate Captain |
| Jefferson (Oak Cliff) | Thomas Jefferson | | | *"For U.S. President Thomas Jefferson" Considered an extension of the Jefferson Street in CBD named by John Neely Bryan. (Ord 866, 1922) |

5

| | | | | |
|---|---|---|---|---|
| Junius | | | | "one of the earliest residents/land owners of the area/town of East Dallas. They moved to the area in the mid-1850s. The Peaks had several children, whose names, including Junius, are reflected in street names. In his lifetime, Junius served as City Marshal and as superintendent of White Rock Lake." |
| Lee Parkway | Lee Park - and by extension, Robert E Lee | | 1904 | Confederate General |
| Lemmon | William H. Lemmon | 1886 and 1887 | | Confederate Captain *"For W.H. Lemmon, realty developer" |
| Peak | Jefferson Peak | | | "one of the earliest residents/land owners of the area/town of East Dallas. They moved to the area in the mid-1850s. The Peaks had several children, whose names, including Junius, are reflected in street names. In his lifetime, Junius served as City Marshal and as superintendent of White Rock Lake." |
| Stonewall | | | | Still researching |
| Young | | | | *For the Reverend William C. Young, district clerk, 1867-68: Still researching - D Magazine article not verified |

*The WPA Dallas Guide and History, published by the Dallas Public Library and the University of North Texas Press, 1992 (written and compiled from 1936 to 1942 by the workers of the Writers' Program of the Work Projects Administration in the City of Dallas)

**City Archives staff

*Please also see Attached estimate for cost of renaming streets with Confederate names [ATTACHMENT B]*

6

*PARKS:*

*Question: What is the process for changing the plaques and narrative associated with artwork in Fair Park?*
Any new signage at Fair Park would need a Certificate of Appropriateness approved by the Landmark Commission and approval from the Park and Recreation Board.

*Are there Confederates buried at Pleasant Mount Cemetery?*
The Park and Recreation Department does not have any records on whether individuals buried at the Pleasant Mound Cemetery served in the Confederate Army. Records in the file indicate that there are 741 bodies interred in this cemetery.

*What is the green space next to Confederate Cemetery?*
The park adjacent to Confederate Cemetery is considered part of Opportunity Park. An aerial map of both Opportunity Park and Confederate Cemetery are enclosed with these responses [ATTACHMENT C].

*What documentation is available regarding the naming of Lee Park?*
A timeline of the actions taken by the Park and Recreation Board and City Council is enclosed with these responses [ATTACHMENT D].

*What documentation is available regarding the City's ownership of Confederate Cemetery?*
Staff researched the records of the Park and Recreation Department. In 1901, J. A. Crawford and his wife Mattie sold six acres adjacent to Oakland Cemetery to Dallas County. In 1907, the Dallas County Commissioners Court set aside .75 acres of the tract for the burial of ex-Confederate soldiers "under the direction and the control of Sterling Price Camp [United Confederate Veterans] No. 31." In 1936 the Sterling Price Camp wrote to the Park and Recreation Department giving the cemetery to the Park and Recreation Department to operate and maintain. While there is mention in the board minutes of the Confederate Cemetery being given to the Park and Recreation Department on November 17, 1936, there is no official board action accepting this cemetery. Staff has reached out to Dallas County to determine if the county has any records pertaining to the transfer of the Confederate Cemetery to the Park and Recreation Department. Attached to this document is the 1907 deed [ATTACHMENT E].

*Please provide the Department's O&M cost for Lee Park. Please also identify the responsibilities of the Park and Recreation Department and the Lee Park/Arlington Hall Conservancy.*
In FY15-16 the Park and Recreation Department's O&M costs for Lee Park was $36,674.
The Lee Park/Arlington Hall Conservancy performs the following at Lee Park:
- Manages and maintains Arlington Hall
- Maintains developed portions of the park to the west and north of Arlington Hall
- Manages reservations and events at Lee Park and Arlington Hall
- Performs enhance maintenance on horticulture beds at Lee Park

The Park and Recreation Department:
- Mows open lawn areas and performs litter pick up
- Performs Turtle Creek clean up and maintenance
- Maintains the historic roque courts
- Performs forestry work at Lee Park

7

A map of Lee Park is included with these responses [ATTACHMENT F].

**What rules govern structural changes to Arlington Hall?**
Since 1998, Arlington Hall has been managed by the Lee Park/Arlington Hall Conservancy per agreement with the Park and Recreation Board. Any structural changes to Arlington Hall would be require approval from the Park and Recreation Board.

**LANDMARKS:**

**If monuments were removed, will Fair Park lose its historic status?**
More than likely not. Even though the Confederate statue along the Esplanade and other allegorical representations in the Hall of State are part of a larger narrative and context, the removal or changes to just those particular items wouldn't necessitate the removal of the Local, SAL, or National Historic Landmark status.

**What would be the economic impact if it were to lose that status?**
The historic status of Fair Park is a main selling point in promotional materials and source of pride for the City of Dallas, so any loss of historic status would certainly affect that prestige factor. Loss of National Landmark status could possibly impact the ability to apply for grants for maintenance, etc. since that status is sometimes required.

**Clarification on Timing for Landmark Commission:**
To clarify when a Certificate for Appropriateness or a Certificate for Demolition or Removal could be applied, since the Council will give the final direction and recommendations, OCA would apply after Council has given that final direction and recommendations. If Council is expected to make those on November 8th, then the next submittal date would be NOON, Thursday, December 7th for the January 8th Landmark Commission meeting.

8

DEFS' APPX   21

*PUBLIC ART:*

*Which states have laws prohibiting the removal of Confederate Art?*

| Alabama | Monument Preservation Law |
|---|---|
| Georgia | Monument Preservation Law |
| Louisiana | Louisiana Military Memorial Conservation Act, the bill bars all structures, plaques, statues or monuments that mark certain US wars, including the Civil War, from being altered or removed. It allows local governments to take down a memorial only if voters approve the action at "an election held for that purpose." The bill also allows for the state to take action to protect, preserve or repair a memorial. |
| Mississippi | State law prohibiting removal or alterations of statues or memorials honoring military including civil war |
| North Carolina | State law passed two years ago barring governments from removing any "object of remembrance" on public property. |
| South Carolina | Heritage Act: 2/3 vote in legislature to remove |
| Tennessee | State historical commission control and State Heritage Act |
| Virginia | In Virginia, where a lawsuit is proceeding over the Charlottesville City Council's proposal to remove the Robert E. Lee statue, a state law bans cities that attempt to "disturb or interfere" with historic monuments and memorials. |

### When was the last piece of public art for the City of Dallas commissioned?

The Public Art commissioning process is on-going and there are currently 30 projects in various stages from development, community input, artist selection through fabrication and installation.

### How many works of art have been donated by African Americans?

Freedman's Memorial, Martin Luther King Jr. sculpture, Murals at the Martin Luther King library. No works were commissioned by African Americans prior to 1990.

### Who funded Fair Park?   The State of Texas and the federal government.  See
https://tshaonline.org/handbook/online/articles/ggf03

9

### What role did African Americans play in the selection of art at the Hall of Negro Life at Fair Park?

The Hall of Negro Life was funded by the federal government at the urging of the Dallas Negro Chamber of Commerce and other black groups.  The Negro Advisory Committee, chaired by Eugene K. Jones who planned the exhibition and Jesse O. Thomas of the National Urban League.  Other involved included Antonio Maceo Smith, leader of the Dallas Negro Chamber of Commerce; Willette Rutherford Banks, Samuel Walker Houston, and A.E. Holland. https://tshaonline.org/handbook/online/articles/pkh01  see also:  http://hallofnegrolife.org/

Hall of Negro Life was lead by high profile members of the Dallas African American Community and the work was not only notable, but highly prominent in its time and by current evaluation.

The works by Aaron Douglas stand as high points in the Harlem Renaissance and the other artists are also of art historical note.  Two of the murals by Aaron Douglas are in prominent American Art Museums.

This link has images of the Hall of Negro Life and work by Aaron Douglas: https://flashbackdallas.com/2014/06/19/juneteenth-at-the-texas-centennial-1936/



## Juneteenth at the Texas Centennial — 1936 | Flashback : Dallas

flashbackdallas.com

The federally-funded Hall of Negro Life was dedicated Juneteenth, 1944 at Fair Park.

### What is the process for contextualizing the works containing Confederate imagery?

The Park and Recreation Department will develop specifications for new signage and will issue a request for proposals to vendors for wayfinding and information signage

### Who has to approve changes at Fair Park?

Park Board

10

11

# Administrative Directive 2-13

## SUBJECT: GIFT AND TRUST ADMINISTRATION

1. **POLICY**

   Gifts of money, artifacts, tangible assets, and real estate will be administratively managed in accordance with this Directive. All donations received by the City will be managed in conformance with the City's budget and accounting systems.

2. **PURPOSE**

   To establish policies and procedures for the acceptance and proper investment and accounting of gifts and trusts by City departments.

3. **SCOPE**

   This directive applies to all City departments. It does not apply to the Employees Retirement Fund and the Police and Fire Pension Fund.

4. **DEFINITIONS**

   4.1   Endowment.  See Nonexpendable Trust.

   4.2   Expendable Trust.  A trust in which all money (principal and interest) is spent in the course of the designated operation.

   4.3   Nonexpendable Trust.  Funds whose principal must be preserved intact.  (Interest and dividend earnings are appropriated and spent for the intended purpose.)

5. **RESPONSIBILITIES**

   5.1   Budget and Management Services is responsible for:

   Establishing appropriations based on estimated revenues and ORG numbers for trust funds and maintaining centralized files of all trust documents and this directive.

   5.2   Finance is responsible for:

   Providing investment assistance to maximize the earnings on trust funds, counseling with departments regarding most advantageous methods for establishing new trust fund management, and providing support for the disposition of donated stocks and bonds.

---

# Administrative Directive 2-13

**SUBJECT: GIFT AND TRUST ADMINISTRATION**

Assigning fund numbers, recording accounting transactions and reporting on trust activities in conformance with Governmental Auditing Accounting and Financial Reporting (GAAFR) requirements.

Receiving and disposing of tangible assets, such as stocks and bonds. Entering donated artifacts and their fixed assets on the fixed asset inventory and assigning departmental responsibility.

5.3   Property Management is responsible for:

Processing all gifts of real estate for all departments, conferring with the City Attorney as needed regarding real estate donations, and notifying the Finance Department/Controller so that appropriate accounting for taxes may be made.

5.4   Departments (recipients of gifts) are responsible for:

Accepting for gifts, preparing budgets for submission to Budget and Management Services, securing trust documents, expending in compliance with the terms of the trust fund provisions and requirements, and coordinating with Finance and Property Management, as required.

## 6.   PROCEDURES

6.1   Expendable Trusts

6.1.1   Each department receiving miscellaneous monetary gifts shall establish a general gift fund though the Department of Finance.  Generally, gifts of less than $10,000 will be placed in the general gift fund.

Gifts over $10,000 may also be placed in a general gift fund if no departmental need exists to separately manage such gifts.  Only when necessary will a separate fund be established for large gifts.  ORG numbers may be established if needed, to budget and account for separate activities.

6.1.2   To the extent possible, departments shall estimate gift revenues and request appropriations of gifts as part of the annual budget process.  No additional action by the City Council is required for departments to accept gifts.  An exception requiring City Council approval is gifts establishing contractual or large purchase obligations.  A second exception would be actions of the Park Board required under Chapter 17, Section 4 of the City Charter.

6.1.3   For gifts in excess of the appropriation, the expenditure of such gifts can be deferred under the next year, or an appropriation adjustment can be made for expenditure in the current year.

6.1.4   At any time, the recipient department may only expend to the amount of the cash balance in any trust fund.

6.1.5   Gift revenues will not be used to reduce operating budgets for the services for which the gift was given or for related services except as specified by the donor.

6.1.6   The expenditure of appropriated gift revenues should comply with regular City procurement and contracting procedures.

6.1.7   At the department's discretion and for purposes of public recognition, the City Council may be asked to accept any gift.  However, there is no requirement that Council approve acceptance of gifts and donations, as long as a contractual relationship is not created.  An exception should be Park Board actions subject to Chapter 17, Section 4 of the City Charter.

6.1.8   Expendable trusts should be set up as City funds to ease transference of money to expenditure accounts and to insure having funds to cover encumbrances for large construction projects.

6.1.9   To fully disclose responsibilities, liabilities, and continuing maintenance costs, gifts which may create a burden to the City should be approved in advance by the City Attorney and appropriate City management.  Council approval will be required where a donation results in the need for expenditure of other City funds or where some contractual obligation is incurred by the City.

6.2   Endowments

6.2.1   Departments wishing to establish an endowment will consult with the Finance Department which will provide guidance on the type of investments available and the most appropriate type of investment for any particular trust fund.

The Finance Department can assist in inclusion in suggesting appropriate investment guidelines for the trust document.  Proper instruction to the trustee regarding types of investments and income needs of the trust can maximize benefits to the City.

6.2.2   Endowments can be established with the City as trustee or with an outside trustee.  In any case, the City must account for the trust in its annual financial statement.

6.3   Other Gifts

6.3.1   Upon receipt of tangible assets such as stocks and bonds, the receiving department shall immediately contact the Finance Department to properly accept such assets and liquidate, as appropriate.

6.3.2   Artifacts and other fixed assets are frequently donated to the City and need to be properly managed and accounted for.  For all gifts with as assumed value in excess of $100.00, the receiving department or official will contact the Finance Department which will place the artifact or fixed asset on the fixed asset inventory and will assign departmental responsibility

*Effective Date:  7/1/84*                                        *Latest Revision Date: 10/2/95*
*Issuing Department:  Budget & Management Servuces*                        *Page 4 of 4*

DEFS' APPX    28

for custody and maintenance of the item.  If the item is presented to the City Council, the City Secretary shall notify the Finance Department.

6.3.3   Gifts of services only, which do not result in financial or fixed asset transactions with the City, need not be accounted for under this directive.

6.3.4   All gifts of real estate, without exception, will be processed through Property Management so that accurate records are kept of the ownership.  Property Management will check the surveys and field notes and will examine all deeds, liens, and other title records in consultation with the City Attorney and will file all County recordings.  Property Management will be responsible for notifying the Department of Finance so that appropriate accounting may be made.

6.3.5   Where donor anonymity is necessary, an appropriate method for acceptance of the gift is through a nonprofit organization associated with the particular City service.  The nonprofit organization can then donate the funds to the City, thus protecting donor anonymity.

6.3.6   Original Trust Agreement documents will be maintained in the recipient department, and a copy will be provided to Budget and Management Services which will maintain the complete City file.

## 7.   PRIOR ACTION

7.1   Latest Revision Date:                          October 2, 1995
       Effective Date of Revised AD:  October 2, 1995

7.2   Revisions made to reflect departmental re-organizations.

## 8.   ISSUING DEPARTMENT:  Budget & Management Services

*Effective Date:   7/1/84*                                                      *Latest Revision Date: 10/2/95*
*Issuing Department:  Budget & Management Servuces*                           *Page 5 of 4*

DEFS' APPX   29

**Confederate Street Names Estimate**

| City of Dallas Streets | Street Type | Street Segments | Cross-Streets | Signalized Intersection | Highway Signs | | | | | | Ground-Mounted Street Name Signs | | Signal-Mounted Street Name Signs | | Total Cost |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | # of Overhead Guide Signs | Cost @ $25,000 | # of Ornamental Bridge Identifier | Cost @ $10,000 | # of Service Rd Gantry Sign | Cost @ $500 | # of | Cost @ $100 | # of | Cost @ $500 | |
| Beauregard | DR | 1 | 2 | 0 | | $0 | | $0 | | $0 | 4 | $400 | 0 | $0 | $400 |
| Cabell | DR | 12 | 12 | 0 | | $0 | | $0 | | $0 | 24 | $2,400 | 0 | $0 | $2,400 |
| Clark | RD/ST/Ramp | 78 | 78 | 1 | 8 | $200,000 | | $0 | | $0 | 154 | $15,400 | 2 | $1,000 | $216,400 |
| Gano | ST | 8 | 19 | 0 | | $0 | | $0 | | $0 | 38 | $3,800 | 0 | $0 | $3,800 |
| Gaston | AVE/PKWY | 111 | 123 | 21 | | $0 | | $0 | | $0 | 204 | $20,400 | 42 | $21,000 | $41,400 |
| Lemmon | AVE | 242 | 219 | 27 | 11 | $275,000 | 2 | $20,000 | 2 | $1,000 | 384 | $38,400 | 54 | $27,000 | $361,400 |
| Lee | PKWY | 2 | 2 | 0 | | $0 | | $0 | | $0 | 4 | $400 | 0 | $0 | $400 |
| Goode* | | | | | NA | | NA | | NA | NA | NA | 0 | NA | NA |
| Total # Signs | | | | | 19 | | 2 | | 2 | | 812 | | 98 | | |
| Total Cost | | | | | | $475,000 | | $20,000 | | $1,000 | | $81,200 | | $49,000 | $626,200 |

*In Wilmer/Hutchins and Unincorporated Dallas County

With 25% Contingency $782,750

ATTACHMENT C



Opportunity Park & Opportunity Cemetery
3105 Pine St

46 Y

District 7

6/23/2014

Lee Park Timeline
9/6/2017

| Event/Subject/Site | Notes | Date | Source |
|---|---|---|---|
| Lee Statue | DMN reports that Dallas Southern Association (DSA) may campaign for a Lee statue to give to the City. | 4/13/1928 | DMN |
| Lee Statue | As of this date, the DSA had raised over $22K for the statue DMN | 10/24/1929 | DMN |
| Lee Statue | Committee requested that the "laying of the foundation for the REL Memorial in Oak Lawn Park be included in the program of park development under the Civil Works Administration.  Park Board agrees to "cooperate with the Robert E. Lee Memorial Association in this project insofar as possible provided funds are secured through the CWA for park improvement projects." | 12/29/1933 | Park Board Minutes Book 8 page 223 |
| Lee Statue | Committee requests Park Board's cooperation in acquiring an $18K grant for the base of the statue, which is proposed for Oak Lawn Park.  Park Board suggests a downtown location (Dealey Plaza).  Funds will be secured. | 5/28/1935 | Park Board Minutes Book 8 page 362 |
| Lee Statue | "Robert E. Lee Memorial will be erected on one of the plazas on the east side of the Commerce-Main-Elm underpass " [Dealey Plaza] | 6/19/1935 | DMN |
| Lee Statue | Park Board tells committee WPA funds were secured to put the monument in Dealey Plaza and asked the committee to agree to change in location. | 1/13/1936 | Park Board Minutes Book 8 page 577 |
| Lee Statue | Recommendation from Park Board that Lee Memorial be located in Oak Lawn Park at corner of Turtle Cree and Lemmon. | 1/16/1936 | Park Board Minutes; Vol 45 - page 577 |
| Lee Statue | City ratifies purchase of plant materials for Oak Lawn Park | 1936 | Council Minutes Vol 46 -page 174 |
| Lee Statue | City ratifies action to pay JW Cearley and Sons $500 for work on the Lee Statue | 1936 | Council Minutes Vol 45 - page 931 |
| Lee Park | Park Board votes to change name from Oak Lawn Park to Lee Park | 5/5/1936 | Council Minutes Vol 45- page 106 |
| Lee Statue | Program:  Dedication of The Lee Memorial | 6/12/1936 | Archives Collection 1995-039 |
| Lee Statue | Southern Memorial Association requested that the wording on the bronze name plate on the Lee statue be changed to specifically designate that the Park Board sponsored the erection of the base of the monument instead of the entire project. | 10/27/1936 | Park Board Minutes Book 9 page 233 |

*Lee Park Timeline*
*9/6/2017*

| Event/Subject/Site | Notes | Date | Source |
|---|---|---|---|
| Lee Statue | Park Board discussion with Southern Memorial Association about the wording on the statue's plaque.  Board unanimously carried that the wording be "Honoring General Robert E Lee, and in recognition of the gift of this statue to the City of Dallas, by the Dallas Southern Memorial Association, the Dallas Park Board has provided the location and erected this base."  WPA Project No 4017 | 11/24/1936 | Park Board Minutes Book 9 page 246 |
| Lee Park/Arlington Hall | Replica Arlington Hall opened at Lee Park | Groundbreaking January 19, 1938, dedicated October 24, 1939 | |
| Lee Park/Arlington Hall | Park Board requests that Southern Memorial Association be requested to officially dedicate all furniture, fixtures, rugs, drapes, and all other exhibits now on display in the Arlington house to the Park Board for the benefit of the public to be retained for exhibit and museum purposes. | 7/9/1941 | Park Board Minutes Book 10 page 288 |
| Lee Statue | Park Board grants Southern Memorial Association permission to place plaque to read as follows:  The soldier accompanying General Lee in this statue represents the entire youth of the South to whom General Lee became a great inspiration.  He was not intended by the sculptor to be an aide-de-camp." | 6/6/1955 | Park Board Minutes Book 12 page 212 |

M. Dickson his heirs and assigns forever. Witness my hand this 12 day of February A.D 1907.

R. Kenly.

The State of Texas

County of Dallas   Before me, H.C. Jarrel a Notary Public in and for said County On this day personally appeared R. Kenly known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed and delivered the same for the purposes and consideration therein expressed. Given under my hand and seal of Office, this 12th day of February A.D. 1907.

[Seal]   H.C. Jarrel.
Notary Public, Dallas Co. Texas.

Filed for record, Sept 26th 1907. at 3:30 P.M.
Jack M. Gaston County Clerk
By J.E. Record Deputy

Recorded Sept 28-1907.
Jack M Gaston County Clerk
By J.P. Humphreys Deputy

Dallas County

23428   A Certified Copy of Order

Sterling Price Camp No 31. U.C.W Wednesday July 20th 1904
Be it Ordered by the Commissioners Court of Dallas County, that the following parcel of land be set aside for the Burial of Ex-Confederate soldiers under the direction and control of Sterling Price Camp No. 31 and the County Surveyor is hereby directed to survey and stake off the same, To-wit: 112 feet off of the south end of the six acres land conveyed by J.M. Crawford and wife of the county of Dallas, on May 18 1901 and recorded in Book 246, Page 208 Deed Records of Dallas County and being a part of the Lagow League. The land here set aside being 112 feet and containing about ¾ of an acre. I J.M. Gaston Clerk of the County Court in and for the County of Dallas in the State of Texas do hereby Certify that the foregoing is a true Copy of an Order made by the Commissioners Court of said Dallas County on the 20th day of July, A.D 1904 as appears of Record in my Office on page 204 Book 10 Commissioners Court Minutes, Dallas County. Given under my hand and seal of Office at Dallas Texas this 9th day of August A.D 1907
[Seal]   Jack M. Gaston, Clerk,
County Court, Dallas County, Texas
By J.C. McAtter Deputy

Filed for Record Sept 25th 1907 at 9:35 P.M.

Jack M. Gaston County Clerk
By J.E. Record Deputy

Recorded Sept 28. 1907.

Jack M. Gaston County Clerk
By J.O. Humphreys Deputy

23488

H.C. Fuqua et ux
To General Warranty Deed
W.F. Strong

The State of Texas
County of Dallas

Know all men By these Presents, That we, H.C. Fuqua & Maggie Fuqua his wife, of the County of Dallas, State of Texas, for and in consideration of the sum of Eleven Thousand Four Hundred & twenty seven Dollars $11427.00 in hand paid to us by W.F. Strong of the City and County of Dallas, the receipt of which is hereby acknowledged, have granted, bargained, sold and conveyed and by these presents do grant, bargain sell and convey unto the said W.F. Strong, his heirs and assigns forever, the following described property, lying and being situated in the County of Dallas, State of Texas, being more particularly described as follows: Lying and being situated in Dallas County Texas, being about three miles north 84 west from the County Court House in the City of Dallas and being part of the J.P. Cole original 480 acre survey, beginning at a stake on the West line of said survey 407 feet North of its original S.W. Corner and 1391 feet North of Dallas and Eagle Ford County wagon road Center said stake being where the middle of Crawford Avenue if produced or extended West would intersect the West line of said Cole survey according to the record map of Fuqua's West Dallas Addition thence East with center of said Crawford Avenue 180 feet to its intersection with center of Sunshet Avenue of said Addition thence South with center line of said avenue 220 feet to stake on a straight line between the N.W. Corner of lot 1, Block 3, and N.E. Corner of lot 3 Block 1 of said Addition thence East as 335 feet past the N.E. corner of lot 3, Block 2 of said addition in all 355 feet to center of Norton street; thence South with center of said street 150 feet to stake 20 feet East of the S.E. corner of said street 150 feet to stake 20 feet East of the S.E. Corner of said lot 6, Block 2; thence East 46 feet to stake, which stake is 27 feet North of said County wagon road center, this stake being 1006 feet East of the West line of said Cole original survey. Thence North parallel with the

ATTACHMENT F



**Robert E. Lee Park**
**3400 Turtle Creek Blvd**

Feet
0   70   140      280        420

𝒹allas
Park & Recreation

35 X

District
14
6/24/2014

DEFS' APPX. 36

## TEXAS SECRETARY of STATE
## ROLANDO B. PABLOS

**UCC** | **Business Organizations** | **Trademarks** | **Notary** | **Account** | **Help/Fees** | **Briefcase** | Logout

BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY

| | | | |
|---|---|---|---|
| Filing Number: | 566901 | Entity Type: | Domestic Nonprofit Corporation |
| Original Date of Filing: | July 30, 1892 | Entity Status: | Expired |
| Formation Date: | N/A | Non-Profit Type: | N/A |
| Tax ID: | 00000000000 | FEIN: | |
| Duration: | Perpetual | | |

Name:    STERLING PRICE CAMP CONFEDERATE VETERANS OF DALLAS TEXAS
Address:   [ADDRESS NOT PROVIDED]

| REGISTERED AGENT | FILING HISTORY | NAMES | MANAGEMENT | ASSUMED NAMES | ASSOCIATED ENTITIES |
|---|---|---|---|---|---|
| View Image | Document Number | Filing Type | | Filing Date | Effective Date | Eff. Cond | Page Count |
| N/A | · 2533509 | Articles Of Incorporation | | July 30, 1892 | July 30, 1892 | No | N/A |

[ Order ]   [ Return to Search ]

Instructions:
- To place an order for additional information about a filing press the 'Order' button.



EXHIBIT

6

DEFS' APPX  37

# TEXAS SECRETARY of STATE
## ROLANDO B. PABLOS

### BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY

| | | | |
|---|---|---|---|
| **Filing Number:** | 566901 | **Entity Type:** | Domestic Nonprofit Corporation |
| **Original Date of Filing:** | July 30, 1892 | **Entity Status:** | Expired |
| **Formation Date:** | N/A | **Non-Profit Type:** | N/A |
| **Tax ID:** | 00000000000 | **FEIN:** | |
| **Duration:** | Perpetual | | |

**Name:** STERLING PRICE CAMP CONFEDERATE VETERANS OF DALLAS TEXAS
**Address:** [ADDRESS NOT PROVIDED]

| REGISTERED AGENT | FILING HISTORY | NAMES | MANAGEMENT | ASSUMED NAMES | ASSOCIATED ENTITIES |
|---|---|---|---|---|---|
| **Name** | | **Name Status** | **Name Type** | **Name Inactive Date** | **Consent Filing #** |
| STERLING PRICE CAMP CONFEDERATE VETERANS OF DALLAS TEXAS | | Inactive | Legal | July 30, 1917 | |

Order     Return to Search

Instructions:
🔹 To place an order for additional information about a filing press the 'Order' button.

DEFS' APPX   38

## AFFIDAVIT OF LISA PENNEY

STATE OF TEXAS §
§
COUNTY OF DALLAS §

  BEFORE ME, the undersigned authority, on this day personally appeared Lisa

Penney, who, being by me first duly sworn, deposed and stated as follows:

"My name is Lisa Penney.  I am over 21 years of age and have never been convicted of any felony or crime involving dishonesty or moral turpitude.  I am an employee of the City of Dallas City Attorney's Office and I have been employed by the City Attorney's office since February 6, 2002.  I have personal knowledge of all the facts stated herein and they are true and correct.

I reviewed document titled "Plaintiffs' Second Amended Complaint, Application for Injunctive Relief, & Motion for Declaratory Judgment" filed as ECF Number 10 in the lawsuit styled and numbered *Patterson et al. v. Rawlings, et al.*, Civil Action Number 3: 17-CV-02361-D pending in the United States Federal District Court for the Northern District of Texas.  In the pleading are references to websites and internet addresses.  I visited those internet sites on September 22, 2017.  Attached as Exhibits 1 to 5 are true and correct copies of documents located on those websites and appear to be the documents referenced in the above-referenced pleading.  I also visited the Texas Secretary of State website which provides information regarding business entities that have incorporated in Texas or are doing business in Texas.  I inquired about the name Sterling Price Camp 31 and United Confederate Veterans.  Attached as Exhibit 6 is a true and correct copy of the results of the inquiry.  It reflects that Sterling Price Camp Confederate Veterans of Dallas Texas was incorporated in 1892 and became inactive in 1917.

Further Affiant Sayeth Not."

_____
LISA PENNEY

  SUBSCRIBED AND SWORN TO BEFORE ME on September _27_, 2017 to

certify which witness my hand and seal of office.



_____
NOTARY PUBLIC IN AND FOR THE STATE OF TEXAS

DEBBIE HOSKINS
MY COMMISSION EXPIRES
July 26, 2018

**EXHIBIT**
7

DEFS' APPX   39

## AFFIDAVIT

THE STATE OF TEXAS
COUNTY OF DALLAS

BEFORE ME, the undersigned authority, a notary public in and for the State of Texas, on this day appeared Jennifer Scripps, who is personally known to me, and who, after being duly sworn according to law, upon oath deposed and said:

"My name is Jennifer Scripps. I am the Director of the Office of Cultural Affairs ("OCA") for the City of Dallas and have been employed by the City since May 25, 2016. I am competent to testify, I have personal knowledge of the matters stated herein, and they are true and correct.

As part of my duties and responsibilities, I am aware that the City of Dallas owns and has on its properties various statutes, monuments, of memorials of Confederate symbols and leaders. After the violence in Charlottesville, Virginia, on August 24, 2017 the Mayor of the City Dallas created and appointed a task force to consider whether to remove symbols of the Confederacy on City property and to rename streets and other public places named for Confederate figures. Attached as Exhibit 1 is a true and correct copy of the web-page concerning the Task Force that appears on OCA's public website. It is updated with information regarding the Task Force's meeting. Attached as Exhibit 2 is the Mayor's memorandum appointing the members of the Task Force. On September 1, 2017, the agenda for the September 6, 2017 City Council was posted and a true and correct copy as attached as Exhibit 3. At the September 6, 2017 meeting, City Council approved a resolution with a vote of 13 to 1, with one member not participating. A true and correct of the Resolution is attached as Exhibit 4. On the OCA's web-page, the Task Force has published information and responded to questions. Attached as Exhibit 5 is a true and correct copy of the questions and responses dated September 6, 2017.

**AFFIDAVIT-Jennifer Scripps**
**Page 1 of 2**



EXHIBIT
8

The City of Dallas is the owner of the land property know as Lee Park. Located within the Lee Park was a statue depicting Robert E. Lee and an unnamed individual on horseback that was mounted to a pedestal. The sculptor of the statue was Alexander Phimister Proctor. The City owns the statute and base on which it sits. Included within the September 6, 2017 Resolution was a directive that the City Manager remove the Lee statute and store it in a safe place until City Council determines what is an appropriate disposition. On September 14, 2017, the City caused the safe removal of the Lee statue and it is currently safely in storage.

Prior to and after the passage of the Resolution, I have had communications with the Proctor Foundation representative which include heirs of Alexander Phimister Proctor. Attached as Exhibit A is a true and correct copy of an email exchange I had with representatives of the Proctor Foundation, including Ms. Laura Ames.

Attached as Exhibit B is a true and correct copy of a report regarding the condition of the statue after removal from Lee Park and transporting to storage.

Further, Affiant sayeth not."

_Jennifer Scripps_

Jennifer Scripps

SUBSCRIBED AND SWORN TO BEFORE ME, on this the 27th day of September 2017.

_____

Notary Public In And For The State Of Texas

CLIFTON GILLESPIE
Notary Public, State of Texas
Comm. Expires 06-20-2020
Notary ID 129029059

**AFFIDAVIT-Jennifer Scripps**
**Page 2 of 2**

-------- Original message --------
From: Laura Ames <lauraames@comcast.net>
Date: 9/16/17 4:38 PM (GMT-06:00)
To: "Scripps, Jennifer" <jennifer.scripps@dallascityhall.com>
Cc: Sandy Church <sschurch@sprynet.com>, "Strother, Jack G." <Jack.Strother@millernash.com>
Subject: Re: Lee Statue Copy Rights

Jennifer,

I just left you a phone message, and am following up to inform you the Proctor Foundation is not involved with any legal complaint against the City of Dallas.  We have just become aware that we were included in a complaint, without our approval, and are not in any way connected to the attorney who prepared it, or the organization filing the complaint. We have communicated this with the attorney who prepared  the complaint, and he acknowledged we were included without our approval and agreed to remove us immediately.

Furthermore, I've made it clear that you have been completely responsive to me and answered my call immediately, both times I reached out to you.  We look forward to further conversations with you and the City of Dallas.

Regards,
Laura

Laura Proctor Ames
The Proctor Foundation
A. Phimister Proctor, Sculptor (1860 - 1950)
www.proctormuseum.com
425-281-2022

> On Sep 16, 2017, at 12:41 PM, Scripps, Jennifer <jennifer.scripps@dallascityhall.com> wrote:

Sandy –
Thank you for your email. I was notified at the end of yesterday that The Proctor Foundation is now involved in a legal complaint with the City of Dallas. I have also been very responsive to Ms. Ames and have spoken with her twice and left our last conversation saying that I wanted to continue our conversation.
However, I am sure you can understand that given the present legal issues, this is no longer possible.
Regards,
Jennifer Scripps

1

EXHIBIT
8 A

**From:** Sandy Church [mailto:sschurch@sprynet.com]
**Sent:** Saturday, September 16, 2017 9:27 AM
**To:** Scripps, Jennifer <jennifer.scripps@dallascityhall.com>
**Cc:** 'Strother, Jack G.' <Jack.Strother@millernash.com>; 'Laura Ames' <lauraames@comcast.net>
**Subject:** Lee Statue Copy Rights

Hello Ms Scripps,

I would like to discuss the Copy Rights on the Robert E Lee monumental statue created by my Grandfather Alexander Phimister Proctor.  My daughter Laura and I have had trouble contacting you and I realize you may be having some challenges after the hurricane.

As you know this is an urgent issue that needs to be handled before any other damage is done to the statue.
I will call you and hope to get in-touch by phone or email.

The Proctor Foundation
Phimister Proctor Church

2



# van Enter Studio Ltd.
1415 Fairview Ave. Dallas TX
75223

Studio van Enter for Fine Art and Conservation.                                          214 515-9948
September 27, 2017

**Attention:**

**Kay Kallos, Ph.D.** | Public Art Program Manager
CITY OF DALLAS, OFFICE OF CULTURAL AFFAIRS
1925 Elm Street, Suite 400 | Dallas, TX | 75201
tel      214.670.3281
fax      214.670.1404
email   kay.kallos@dallascityhall.com



**Robert E Lee Statuary**
**At the Hensley field Location**

This is to confirm that I have inspected the bronze after its removal from Lee Park after being transported to Hensley Field. This was done post transportation and after removal from the transport trailer.

I observed no visible damage occurred in the process of removal or transporting the bronze. I have additional photo documentation on file to verify this.

As the bronze has not had a cleaning for some considerable time I would recommend a cleaning and wax treatment to prevent further deterioration of the surface while in storage.


Michael van Enter
President  van Enter Studio Ltd.

EXHIBIT
tabbies®
**8 B**

van Enter Studio Ltd. - Dallas Texas
214 - 515-9948   mve@vanenterstudio.com

42

VOL.1986
Pg. 42

son whose name is subscribed to the foregoing instrument and having been examined by me privily
and apart from her husband and having the same fully explained to her she the said Gertrude Pow-
ell acknowledged such instrument to be her act and deed and she declared that she had willingly
signed the same for the purposes and consideration therein expressed and that she did not wish
to retract it.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this 18 day of November A.D.1936

O.B. Schwethelm Notary Public

L.S.                                                         Kerr County, Texas.

Filed for record this the 5 day of December A.D.1936 at 10:40 A.M.

Ed H Steger County Clerk by Sam Nesbit Deputy

Recorded Dec 17,1936 Ed H Steger County Clerk by *Mrs Luileryne Eleana* Deputy K.

•••••••

126547— $.75

JUDGE ROBERT OGDEN COUNTY                    THE STATE OF TEXAS:

JUDGE,DALLAS CO.                             :

TO: WARRANTY DEED                            :         KNOW ALL MEN BY THESE PRESENTS:

CITY OF DALLAS                               :   COUNTY OF DALLAS  :

That I, Robert Ogden,County Judge of the County of Dallas,Texas,under and by
virtue of an order of the Commissioner's Court of Dallas County,Texas made and entered on the
16th day of March A.D.1936 and recorded in Vol.25 page 150 Minutes of the Commisioners Court,
Dallas County,Texas, of the County of Dallas,State of Texas,for and inconsideration of the sum of
Ten ($10.00) Dollars to me in hand paid by the City of Dallas,Texas,and other good and valuable
considerations,for and in behalf of Dallas County,Texas, have Granted,Sold and Conveyed and by
these presents do Grant,Sell and Convey unto the said City of Dallas,Texas,of the County of Dallas
State of Texas all that certain lot,tract or parcel of land described as follows:

112 ft.off the South end of the six acres of land conveyed by J.A Crawford and
wife to the County of Dallas,State of Texas on May 17,1901 and recorded in Book 265 page 208 of
the Deed Records of Dallas County, and being a part of the Lagow League. The land set aside being
112 ft by 311 ft containing about 3/4 of an acre,and being the same tract of land heretofore
set aside by the Commissioner's Court of Dallas County,Texas for the burial of Confederate Sol-
diers,by virtue of an order of said Commissioner's Court made and entered on the 20th day of
July A.D.1904 and recorded in Vol.410 page 470 Minutes of the Commissioner's Court of Dallas
County,Texas.

TO HAVE AND TO HOLD the above described premises together with all and singular
the rights and appurtenances thereto in anywise belonging unto the said County of Dallas,Texas,its
successors and assigns forever and I do hereby bind the County of Dallas,Texas,its successors
and assigns to Warrant and Forever Defend all and singular the said premises unto the said City
of Dallas, its successors and assigns against every person whomsoever lawfully claiming or to
claim the same or any part thereof.

Witness my hand at Dallas,Texas this 17th day of November 1936

Robert Ogden County Judge

Dallas County,Texas.

THE STATE OF TEXAS:

COUNTY OF DALLAS  : BEFORE ME the undersigned a Notary Public in and for said County and State
on this day personally appeared Robert Ogden County Judge of the County of Dallas,Texas,known to

**EXHIBIT**

**9**

me to be the person whose name is subscribed to the foregoing instrument and acknowledged
to me that she executed the same for the purposes and consideration therein expressed and in
the capacity therein stated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this the 17th day of November A.D.1936

R.S.Quillen Notary Public in and for

L.S.                                                        Dallas County,Texas

Filed for record this the 5 day of December A.D.1936 at 10:40 A.M.

Ed H Steger County Clerk  by Sam Nesbit Deputy

Recorded Dec 18,1936 Ed H Steger County Clerk by *Mrs Kathryne Stewart*    Deputy

ooooooooooo

126548--  $1.00

LINCOLN NATIONAL LIFE INS.CO.:     THE STATE OF INDIANA:

TO: RELEASE                   :                    SS KNOW ALL MEN BY THESE PRESENTS

A.N.LANDES                    :        COUNTY OF ALLEN  :

WHEREAS on the 1st day of May A.D.1934 A.N.Landes and wife Lillian Margaret Landes
of the County of Dallas,State  of Texas did execute,acknowledge and deliver to W.A.McKinley
Trustee,of the County of Dallas,State of Texas,a certain deed of trust on the following de-
scribed real estate,lying and being situated in the County of Dallas,State of Texas,to-wit:

Being known as Lot Number Fourteen (14) in Block Number Four(4) of Walker's Addition
to University Heights,an addition to the City of Dallas,Texas,according to the Plat thereof
recorded in the Map Records of Dallas County,Texas,and being further known as No.3448 Norman-
dy Street,University Park,Texas.

to secure the prompt payment of one certain promissory note  executed by the said
A.N.Landes and Lillian Margaret Landes and payable to the order of The Lincoln National Life
Insurance Company as follows:

Note dated May 1,1934  in the  principal sum of $6500.00 due and payable as follows:

| $325.00 due 11-1-34; | $325.00 due 5-1-36; | $325.00 due 11-1-37; |
|---|---|---|
| $325.00 due 5-1-35; | $325.00 due 11-1-36; | $325.00 due 5-1-38; |
| $325.00 due 11-1-35; | $325.00 due 5-1-37; | $325.00 due 11-1-38; |
|  |  | $3575.00 due 5-1-39; |

AND WHEREAS said note with accrued interest thereon,has been fully paid to The Lin-
coln National Life Insurance  Company,the legal and equitable holder and owner of such note;

NOW THEREFORE KNOW ALL MEN BY THESE PRESENTS That The Lincoln National Life Insur-
ance Company of Allen County,State of Indiana,in consideration of the premises and of the
full and final payment of said note,the receipt of which is hereby acknowledged has this
day and does by these presents RELEASE,DISCHARGE AND QUIT CLAIM unto the said George I Mc-
Gee,his heirs or assigns all the right,title,interest and estate in and to the property ab-
ove described,which it has or may be entitled to by virtue of said deed of trust and does
hereby declare the same fully released and discharged from any and all liens created by
virtue of said deed of trust above mentioned.

Witness its hand this 19th day of November A.D.1936

The Lincoln National Life Insurance Company

ATTEST: C.S.                                  By R.F.Baird Vice President

T.A.Murphy Asst.Secretary

STATE OF INDIANA:

                       SS

COUNTY OF ALLEN  : On this 19th day of November 1936 before me,Vera Pfeiffer a duly

STATE OF TEXAS
COUNTY OF DALLAS

I, JOHN F. WARREN,
County Clerk in and for said County
and State, do hereby certify that the return and foregoing is a
true and correct copy of the Judgment filed for record on the
___5th___ day of __Dec. 1936__ and duly recorded on the
__18th__ day of __Dec. 1936__ in volume __1986__
Page ___42___ of the Records of Dallas County, Texas

WITNESS my hand and seal of office at Dallas, Texas

this ___20th___ day of __September__ 20 __17__.

JOHN F. WARREN, COUNTY CLERK
DALLAS COUNTY, TEXAS

By _____ Deputy



**City of Dallas**

**STATE OF TEXAS**

**COUNTY OF DALLAS**

**CITY OF DALLAS**


I, **BILIERAE JOHNSON,** Interim City Secretary of the City of Dallas, Texas, do hereby certify that the attached is a true and correct copy of:

**Dallas City Council Minutes**
**Volume 45, Page 599**
**November 20, 1936**


filed in my office as official records of the City of Dallas, and that I have custody and control of said records.


WITNESS MY HAND AND THE SEAL OF THE CITY OF DALLAS, TEXAS, this the 20th day of September, 2017.



**BILIERAE JOHNSON**
**INTERIM CITY SECRETARY**
**CITY OF DALLAS, TEXAS**

PREPARED BY: jhs



**EXHIBIT**

10

November 20, 1936

PERSONAL SERVICES

| | | | | |
|---|---|---|---|---|
| A-1 | Supervision | | | |
| | Director | 5 months @ $350 | $1,750 | |
| A-2 | Clerk Hire | | | |
| | Senior Stenographer | | | |
| | | 5 months @ $100 | 500 | |
| | Total Personal Services | | $2,250 | |

Section 3.  That the City Attorney be and he is hereby instructed to prepare an ordinance for the establishment of the Department of Traffic Safety and creation of the position of Director of Traffic Education.

Section 4.  That this resolution shall take effect from and after its passage as in the Charter in such cases made and provided.

-----RESOLUTION UNANIMOUSLY ADOPTED-----


WHEREAS, the County of Dallas, acting by and through Robert Ogden, its County Judge, by deed dated November 17, A. D. 1936, has conveyed to the City of Dallas the following described property known as the Confederate Cemetery, and more particularly described as follows:

112 ft. off the South end of the six acre of land conveyed by J. A. Crawford and wife, of the County of Dallas, State of Texas, on May 17, 1901, and recorded in Book 265, page 208 of the Deed Records of Dallas County, and being a part of the Eagow League; the land here set aside being 112 ft. by 311 ft., containing about 3/4 of an acre, and being the same tract of land heretofore set aside by the Commissioners' Court of Dallas County, Texas for the burial of Confederate Soldiers by virtue of an order of said Commissioners' Court made and entered on the 20th day of July, A. D. 1904, and recorded in Vol. 410, page 470, Minutes of the Commissioners' Court of Dallas County, Texas; and

WHEREAS, such deed and conveyance should be accepted by the City of Dallas, now, therefore,

BE IT RESOLVED BY THE CITY COUNCIL OF THE CITY OF DALLAS:

Section 1.  That the deed and conveyance of the above described tract of land by the County of Dallas to the City of Dallas, executed by Robert Ogden as County Judge thereof, acting under authority and by virtue of an order of the Commissioners' Court of Dallas County, Texas made and entered on the 16th day of March, A. D. 1936 and recorded in Vol. 25, page 150, Minutes of the Commissioners' Court, Dallas County, Texas, be and the same is hereby accepted by the City of Dallas, Texas.

Section 2.  That this resolution shall take effect from and after its passage as in the Charter in such cases made and provided.

-----RESOLUTION UNANIMOUSLY ADOPTED-----


WHEREAS, application of Miss Winnifred Fair for a permit to conduct a school of dancing at Brook Mays Studio, 1005 Elm Street, to be known as the Winnifred Fair School of the Dance, has been investigated and approved by the Department of Public Welfare; Now, therefore

BE IT RESOLVED BY THE CITY COUNCIL OF THE CITY OF DALLAS:

Section 1.  That the application of Miss Winnifred Fair be and the same is hereby approved; and

Section 2.  That this resolution shall take effect from and after its passage as in the charter made and provided.

-----RESOLUTION UNANIMOUSLY ADOPTED-----


WHEREAS, the five years' maintenance contract in connection with the pavement on Carroll Avenue, from Parry Avenue to Haskell Avenue, expired October 27, 1936; and

WHEREAS, said pavement has been examined by the Department of Public Works and found to be in first-class condition; Now, Therefore:

BE IT RESOLVED BY THE CITY COUNCIL OF THE CITY OF DALLAS:

Section 1.  That the Contractor, Uvalde Construction Company, and the Sureties, National Surety Company, and Paul C. Whitley, be released from the five years' maintenance contract and bond, all conditions of which have been complied with.

DEFS' APPX   49

# AFFIDAVIT

THE STATE OF TEXAS

COUNTY OF DALLAS

BEFORE ME, the undersigned authority, a notary public in and for the State of Texas, on this day appeared David Dixon, who is personally known to me, and who, after being duly sworn according to law, upon oath deposed and said:

"My name is David Dixon. I am an employee of the City of Dallas Park and Recreation Department and have been employed by the City since March 28, 2007. I am competent to testify, I have personal knowledge of the matters stated herein, and they are true and correct. I am currently a compliance manager and part of my duties include managing, supervising, inspecting, and monitoring the performance of contractors who have contracts with the City of Dallas. The City has entered into contracts for mowing and for ground maintenance of various parks and other properties owned by the City of Dallas. In addition to the contracted work, City forces also work at the City owned properties. The City employees will perform tree trimming, provide extra grounds maintenance after severe storms, and other work not encompassed within the contracts with the contractors. This includes fence repair, construction, inspections, installation of concrete pads, benches or tables, litter barrels, signage installation, and bollard installation.

The property known as the Confederate Cemetery has been under contract for grounds maintenance and litter maintenance since at least 2011. I did not research the maintenance history before that date.

The cemetery has an average 14-day mowing cycle between March 15th and November 15th which is considered our primary mowing season with litter scheduled to be picked up by a

**DAVID DIXON'S AFFIDAVIT**
**Page 1 of 3**



EXHIBIT

11

contractor at least twice per week annually.  The mowing operations generally stop around the middle of November and do not resume until the middle of April and the litter maintenance is year-round with a reduced schedule during December thru February.  Through its contractors the City has been providing routine and scheduled maintenance to the cemetery since at least 2011.  For the last several years and currently, Good Earth, Inc. has been providing the lawn services related to the Confederate Cemetery.  Currently, T. Smith Lawn Service is performing the litter removal.  In addition, City employees have performed maintenance and related work at the cemetery.  Attached as Exhibit A is a true and correct copy of completed work order cost and charge listing since October 2014 to August 2017 that reflects the work performed and the costs incurred related to maintaining the grounds of the Confederate Cemetery.  The listing includes work performed by Good Earth, Inc.; T. Smith Lawn Services; and City employees at the Confederate Cemetery.  The contractors' time is always listed in the system as 0 hours but their total cost for the work is entered as a lump sum at the end of each month. The City has not abandoned the Confederate Cemetery and the City has maintained and is currently maintaining the property.

I have never received a request by the Texas Division, Sons of the Confederate Veterans, Inc. ("TDSCV") to perform any maintenance or restoration work at the Confederate Cemetery.  I have inquired of others within the Park and Recreation Department and no one is aware of any notification or request by TDSCV to perform maintenance or restoration work at the Confederate Cemetery.  Any maintenance or restoration work at the Confederate Cemetery by TDSCV would have been unauthorized.

I am one of the custodians of records for the City of Dallas Parks and Recreation Department.  It was the regular course of business for the City's Parks and Recreation Department for an employee with knowledge of the act, event, or condition to make a record or to transmit

**DAVID DIXON'S AFFIDAVIT**
**Page 2 of 3**

information thereof to be included in such record, and that such records be made at or near the time, or reasonably soon thereafter.  The attached and referenced exhibits are true and correct copies of excerpts of the City's records and the above referenced items.

Further, Affiant sayeth not."

David Dixon

SUBSCRIBED AND SWORN TO BEFORE ME, on this the 26th day of September 2017.

Notary Public In And For The State Of Texas



LISA TATE PENNEY
Notary Public
STATE OF TEXAS
My Comm. Exp. 10-24-2018

**DAVID DIXON'S AFFIDAVIT**
**Page 3 of 3**



**Dallas Park and Recreation**

1500 Marilla, 6FN
Dallas, Texas  75201
Phone: 214-670-4100          Fax: 214-670-3205

**City of Dallas**

# Completed Work Order Cost and Charge Listing

Between 10/1/2014 and 8/31/2017
Filter:  Asset = '02-Confederate Cemetery'

| WO #<br>Completed | Service<br><br>Detail Type<br>Detail Name | | Qty/Hours | Cost | Charge |
|---|---|---|---|---|---|
| 147934<br>10/1/2014 | Mowing | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | |
| | Labor | | | | |
| | Good Earth | | 3.00 | 160.50 | 160.50 |
| | | Total | | 160.50 | 160.50 |
| 155080<br>10/31/2014 | Litter | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | |
| | Labor | | | | |
| | Good Earth | | 9.00 | 52.65 | 52.65 |
| | | Total | | 52.65 | 52.65 |
| 155631<br>11/30/2014 | Mowing | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | |
| | Labor | | | | |
| | Good Earth | | 2.00 | 107.00 | 107.00 |
| | | Total | | 107.00 | 107.00 |
| 161779<br>11/30/2014 | Litter | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | |
| | Labor | | | | |
| | Good Earth | | 8.00 | 46.80 | 46.80 |
| | | Total | | 46.80 | 46.80 |
| 168190<br>12/31/2014 | Litter | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | |
| | Labor | | | | |
| | Good Earth | | 9.00 | 52.65 | 52.65 |
| | | Total | | 52.65 | 52.65 |
| 176492<br>1/31/2015 | Litter | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | |
| | Labor | | | | |
| | Good Earth | | 9.00 | 52.65 | 52.65 |
| | | Total | | 52.65 | 52.65 |



EXHIBIT

tabbies

11 A

DEFS' APPX   53

# Completed Work Order Cost and Charge Listing

Between 10/1/2014 and 8/31/2017
Filter: Asset = '02-Confederate Cemetery'

| WO #<br>Completed | Service<br><br>Detail Type<br>Detail Name | | Qty/Hours | Cost | Charge |
|---|---|---|---|---|---|
| 182721<br>2/28/2015 | Litter | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | |
| | Labor | | | | |
| | Good Earth | | 0.00 | 40.95 | 40.95 |
| | | | Total | 40.95 | 40.95 |
| 183698<br>3/1/2015 | Mowing | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | |
| | Labor | | | | |
| | Good Earth | | 0.00 | 53.50 | 53.50 |
| | | | Total | 53.50 | 53.50 |
| 191975<br>3/31/2015 | Litter | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | |
| | Labor | | | | |
| | Good Earth | | 0.00 | 52.65 | 52.65 |
| | | | Total | 52.65 | 52.65 |
| 192558<br>4/30/2015 | Mowing | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | |
| | Labor | | | | |
| | Good Earth | | 2.00 | 107.00 | 107.00 |
| | | | Total | 107.00 | 107.00 |
| 200888<br>4/28/2015 | Amenities | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | |
| | Labor | | | | |
| | Mendoza-Pina Manuel | | 0.50 | 8.44 | 11.48 |
| | Montoya-De La Rosa Luis | | 0.50 | 9.29 | 11.89 |
| | Ramos Guillermo | | 0.50 | 6.78 | 9.21 |
| | Parts | | | | |
| | 02-3/4 Ton Pickup | | 0.5 | 1.14 | 1.20 |
| | | | Total | 25.65 | 33.78 |
| 201329<br>4/30/2015 | Litter | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | |
| | Labor | | | | |
| | Good Earth | | 80.00 | 46.80 | 46.80 |
| | | | Total | 46.80 | 46.80 |

DEFS' APPX   54

# Completed Work Order Cost and Charge Listing

Between 10/1/2014 and 8/31/2017
Filter:  Asset = '02-Confederate Cemetery'

| WO #<br>Completed | Service<br>Detail Type<br>Detail Name | | Qty/Hours | Cost | Charge |
|---|---|---|---|---|---|
| 202241<br>5/31/2015 | Mowing | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | |
| | Labor | | | | |
| | Good Earth | | 2.00 | 107.00 | 107.00 |
| | | Total | | 107.00 | 107.00 |
| 210823<br>5/31/2015 | Litter | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | |
| | Labor | | | | |
| | Good Earth | | 9.00 | 52.65 | 52.65 |
| | | Total | | 52.65 | 52.65 |
| 211258<br>5/27/2015 | Forestry | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | |
| | Labor | | | | |
| | Escamilla Xavier | | 3.00 | 41.79 | 56.00 |
| | Mendoza Jose | | 3.00 | 46.37 | 62.13 |
| | Parts | | | | |
| | 04-2 Ton Truck | | 0 | 0.00 | 0.00 |
| | 22-Small Equipment | | 0 | 0.00 | 0.00 |
| | | Total | | 88.16 | 118.13 |
| 211386<br>6/30/2015 | Mowing | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | |
| | Labor | | | | |
| | Good Earth | | 0.00 | 107.00 | 107.00 |
| | | Total | | 107.00 | 107.00 |
| 214208<br>6/5/2015 | Storm Damage | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | |
| | Labor | | | | |
| | Escamilla Xavier | | 0.50 | 6.97 | 9.33 |
| | Parts | | | | |
| | 02-3/4 Ton Pickup | | 1 | 2.28 | 2.39 |
| | | Total | | 9.25 | 11.73 |
| 215466<br>6/15/2015 | Storm Damage | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | |
| | Labor | | | | |
| | Escamilla Xavier | | 3.50 | 48.76 | 65.33 |
| | Mendoza Jose | | 3.50 | 54.09 | 72.49 |
| | Mills James | | 1.00 | 20.32 | 25.20 |

DEFS' APPX   55

# Completed Work Order Cost and Charge Listing

Between 10/1/2014 and 8/31/2017
Filter: Asset = '02-Confederate Cemetery'

**WO #**
**Completed**
    **Service**
        **Detail Type**

| WO #<br>Completed | Service<br>Detail Type<br>Detail Name | Qty/Hours | Cost | Charge |
|---|---|---|---|---|
| | **Other Costs** | | | |
| | Dump trip | | 0.00 | 0.00 |
| | **Parts** | | | |
| | 02-3/4 Ton Pickup | 3.5 | 7.98 | 8.38 |
| | 12-Skid Steer Loader / Bobcat | 3.5 | 12.15 | 12.75 |
| | 15-3 Ton truck | 3.5 | 22.51 | 23.63 |
| | 22-Small Equipment | 3.5 | 5.29 | 5.55 |
| | 23-Trailer | 3.5 | 3.08 | 3.23 |
| | 52-10,(4)22 | 3.5 | 44.45 | 46.67 |
| | | **Total** | **218.62** | **263.24** |
| **215980**<br>6/19/2015 | **Storm Damage**    Property: **District 2**<br>Asset: **02-Confederate Cemetery** | | | |
| | **Labor** | | | |
| | Escamilla Xavier | 1.00 | 13.93 | 18.67 |
| | Mendoza Jose | 1.00 | 15.46 | 20.71 |
| | **Parts** | | | |
| | 10-Winch Truck | 1 | 6.66 | 6.99 |
| | 12-Skid Steer Loader / Bobcat | 1 | 3.47 | 3.64 |
| | 15-3 Ton truck | 1 | 6.43 | 6.75 |
| | | **Total** | **45.95** | **56.76** |
| **218413**<br>6/30/2015 | **02-Confederate Cemetery-Contract Litter-**<br>**Monthly, 6/30/2015**   Property: **District 2**<br>Asset: **02-Confederate Cemetery** | | | |
| | **Labor** | | | |
| | Good Earth | 0.00 | 52.65 | 52.65 |
| | | **Total** | **52.65** | **52.65** |
| **220872**<br>7/31/2015 | **02-Confederate Cemetery-Contract Mowing-**<br>**Monthly, 7/1/2015**   Property: **District 2**<br>Asset: **02-Confederate Cemetery** | | | |
| | **Labor** | | | |
| | Good Earth | 0.00 | 160.50 | 160.50 |
| | | **Total** | **160.50** | **160.50** |
| **224097**<br>7/7/2015 | **Mowing**    Property: **District 2**<br>Asset: **02-Confederate Cemetery** | | | |
| | **Labor** | | | |
| | Mendoza-Pina Manuel | 0.50 | 8.44 | 11.48 |
| | Montoya-De La Rosa Luis | 0.50 | 9.29 | 11.89 |
| | Ramos Guillermo | 0.50 | 6.78 | 9.21 |
| | **Parts** | | | |
| | 02-3/4 Ton Pickup | 0.5 | 1.14 | 1.20 |

# Completed Work Order Cost and Charge Listing

Between 10/1/2014 and 8/31/2017
Filter:  Asset = '02-Confederate Cemetery'

| WO #<br>Completed | Service<br><br>Detail Type<br>    Detail Name | | Qty/Hours | Cost | Charge |
|---|---|---|---|---|---|
| | | | Total | 25.65 | 33.78 |
| 227824<br>7/31/2015 | 02-Confederate Cemetery-Contract Litter-<br>Monthly, 7/31/2015 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | |
| | Labor | | | | |
| | Good Earth | | 0.00 | 52.65 | 52.65 |
| | | | Total | 52.65 | 52.65 |
| 229365<br>7/22/2015 | Forestry | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | |
| | Labor | | | | |
| | Escamilla Xavier | | 0.50 | 6.97 | 9.33 |
| | Mendoza Jose | | 0.50 | 7.73 | 10.36 |
| | Mills James | | 0.50 | 10.16 | 12.60 |
| | Parts | | | | |
| | 12-Skid Steer Loader / Bobcat | | 0.5 | 1.74 | 1.82 |
| | 23-Trailer | | 0.5 | 0.44 | 0.46 |
| | 52-10,(4)22 | | 0.5 | 6.35 | 6.67 |
| | 55-05,(2)22 | | 0.5 | 5.73 | 6.02 |
| | 56-04,18,(2)22 | | 0.5 | 4.47 | 4.69 |
| | | | Total | 43.58 | 51.95 |
| 229957<br>8/31/2015 | 02-Confederate Cemetery-Contract Mowing-<br>Monthly, 8/1/2015 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | |
| | Labor | | | | |
| | Good Earth | | 0.00 | 107.00 | 107.00 |
| | | | Total | 107.00 | 107.00 |
| 231393<br>8/4/2015 | 02-Confederate Cem. Inspection-ST1, 8/4/2015 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | |
| | Labor | | | | |
| | Mendoza-Pina Manuel | | 0.50 | 8.44 | 11.48 |
| | Montoya-De La Rosa Luis | | 0.50 | 9.29 | 11.89 |
| | Ramos Guillermo | | 0.50 | 6.78 | 9.21 |
| | Parts | | | | |
| | 02-3/4 Ton Pickup | | 0.5 | 1.14 | 1.20 |
| | | | Total | 25.65 | 33.78 |
| 236984<br>8/31/2015 | 02-Confederate Cemetery-Contract Litter-<br>Monthly, 8/31/2015 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | |
| | Labor | | | | |
| | Good Earth | | 0.00 | 52.65 | 52.65 |

DEFS' APPX   57

# Completed Work Order Cost and Charge Listing

Between 10/1/2014 and 8/31/2017
Filter: Asset = '02-Confederate Cemetery'

| WO #<br>Completed | Service<br><br>Detail Type<br>Detail Name | | | Qty/Hours | Cost | Charge |
|---|---|---|---|---|---|---|
| | | | Total | | 52.65 | 52.65 |
| 239225<br>9/30/2015 | 02-Confederate Cemetery-Contract Mowing-Monthly, 9/1/2015 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | | |
| | Labor | | | | | |
| | Good Earth | | | 0.00 | 107.00 | 107.00 |
| | | | Total | | 107.00 | 107.00 |
| 240750<br>9/1/2015 | 02-Confederate Cem. Inspection-ST1, 9/1/2015 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | | |
| | Labor | | | | | |
| | Mendoza-Pina Manuel | | | 0.50 | 8.44 | 11.48 |
| | Montoya-De La Rosa Luis | | | 0.50 | 9.29 | 11.89 |
| | Ramos Guillermo | | | 0.50 | 6.78 | 9.21 |
| | Parts | | | | | |
| | 02-3/4 Ton Pickup | | | 0.5 | 1.14 | 1.20 |
| | | | Total | | 25.65 | 33.78 |
| 247344<br>9/30/2015 | 02-Confederate Cemetery-Contract Litter-Monthly, 9/30/2015 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | | |
| | Labor | | | | | |
| | Good Earth | | | 0.00 | 46.80 | 46.80 |
| | | | Total | | 46.80 | 46.80 |
| 247927<br>10/31/2015 | 02-Confederate Cemetery-Contract Mowing-Monthly, 10/1/2015 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | | |
| | Labor | | | | | |
| | Good Earth | | | 0.00 | 107.00 | 107.00 |
| | | | Total | | 107.00 | 107.00 |
| 251067<br>10/6/2015 | 02-Confederate Cem. Inspection-ST1, 10/6/2015 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | | |
| | Labor | | | | | |
| | Justice Wendell | | | 0.20 | 2.61 | 2.61 |
| | Ramos Guillermo | | | 0.20 | 2.85 | 3.87 |
| | Vargas Estanislao | | | 0.20 | 3.42 | 4.65 |
| | Parts | | | | | |
| | 02-3/4 Ton Pickup | | | 0.2 | 0.46 | 0.48 |
| | | | Total | | 9.33 | 11.61 |
| 256209<br>10/31/2015 | 02-Confederate Cemetery-Contract Litter-Monthly, 10/31/2015 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | | |

DEFS' APPX   58

# Completed Work Order Cost and Charge Listing

Between 10/1/2014 and 8/31/2017
Filter:  Asset = '02-Confederate Cemetery'

| WO #<br>Completed | Service<br><br>Detail Type<br>Detail Name | | | Qty/Hours | Cost | Charge |
|---|---|---|---|---|---|---|
| | Labor | | | | | |
| | Good Earth | | | 0.00 | 52.65 | 52.65 |
| | | | Total | | 52.65 | 52.65 |
| 258132<br>12/2/2015 | 02-Confederate Cemetery-Contract Mowing-<br>Monthly, 11/1/2015 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | | |
| | Labor | | | | | |
| | Good Earth | | | 0.00 | 53.50 | 53.50 |
| | | | Total | | 53.50 | 53.50 |
| 265882<br>11/30/2015 | 02-Confederate Cemetery-Contract Litter-<br>Monthly, 11/30/2015 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | | |
| | Labor | | | | | |
| | Good Earth | | | 0.00 | 52.65 | 52.65 |
| | | | Total | | 52.65 | 52.65 |
| 270446<br>12/31/2015 | 02-Confederate Cemetery-Contract Litter-<br>Monthly, 12/31/2015 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | | |
| | Labor | | | | | |
| | Good Earth | | | 0.00 | 46.80 | 46.80 |
| | | | Total | | 46.80 | 46.80 |
| 277230<br>1/5/2016 | 02-Confederate Cem. Inspection-ST1, 1/5/2016 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | | |
| | Labor | | | | | |
| | 01-Temporary Labor | | | 0.50 | 5.31 | 5.31 |
| | Still Mark E | | | 0.50 | 6.93 | 9.43 |
| | Williams Gerald L | | | 0.50 | 5.98 | 8.14 |
| | Parts | | | | | |
| | 02-3/4 Ton Pickup | | | 0.5 | 1.14 | 1.20 |
| | | | Total | | 19.37 | 24.07 |
| 281450<br>1/31/2016 | 02-Confederate Cemetery-Contract Litter-<br>Monthly, 1/31/2016 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | | |
| | Labor | | | | | |
| | Good Earth | | | 0.00 | 52.65 | 52.65 |
| | | | Total | | 52.65 | 52.65 |
| 286772<br>2/16/2016 | Off Season Grounds Mowing | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | | |
| | Labor | | | | | |
| | Johnson Kevin | | | 1.10 | 13.73 | 17.02 |

DEFS' APPX   59

# Completed Work Order Cost and Charge Listing

Between 10/1/2014 and 8/31/2017
Filter: Asset = '02-Confederate Cemetery'

| WO #<br>Completed | Service<br><br>Detail Type<br><br>Detail Name | | Qty/Hours | Cost | Charge |
|---|---|---|---|---|---|
| | | Mendoza-Pina Manuel | 1.10 | 16.56 | 22.52 |
| | | Ramos Guillermo | 1.10 | 16.56 | 22.52 |
| | | Segura Jose C | 1.10 | 16.56 | 23.02 |
| | | Vargas Estanislao | 1.10 | 16.56 | 22.52 |
| | Parts | | | | |
| | | 29-02-21,(4) 22, 23 | 1.1 | 11.47 | 12.05 |
| | | 70-Tractor Diesel | 1.1 | 3.41 | 3.58 |
| | | **Total** | | **94.85** | **123.23** |

| 288459<br>3/31/2016 | 02-Confederate Cemetery-Contract Litter-<br>Monthly, 2/29/2016 | **Property:** | District 2 | | |
| | | **Asset:** | 02-Confederate Cemetery | | |
| | Labor | | | | |
| | | Good Earth | 0.00 | 52.65 | 52.65 |
| | | **Total** | | **52.65** | **52.65** |

| 290841<br>3/1/2016 | **Off Season Grounds Mowing** | **Property:** | District 2 | | |
| | | **Asset:** | 02-Confederate Cemetery | | |
| | Labor | | | | |
| | | Montoya-De La Rosa Luis | 2.50 | 48.22 | 61.72 |
| | | Pena Daniel | 2.50 | 37.64 | 51.19 |
| | | Ramos Guillermo | 2.50 | 37.64 | 51.19 |
| | | Vargas Estanislao | 2.50 | 37.64 | 51.19 |
| | Parts | | | | |
| | | 29-02-21,(4) 22, 23 | 2.5 | 26.08 | 27.38 |
| | | 70-Tractor Diesel | 2.5 | 7.75 | 8.14 |
| | | **Total** | | **194.96** | **250.80** |

| 290842<br>3/31/2016 | 02-Confederate Cemetery-Contract Grounds<br>Maintenance 14-days, 3/1/2016 | **Property:** | District 2 | | |
| | | **Asset:** | 02-Confederate Cemetery | | |
| | Labor | | | | |
| | | Good Earth | 0.00 | 60.00 | 60.00 |
| | | **Total** | | **60.00** | **60.00** |

| 302192<br>3/31/2016 | 02-Confederate Cemetery-Contract Litter-<br>Monthly, 3/31/2016 | **Property:** | District 2 | | |
| | | **Asset:** | 02-Confederate Cemetery | | |
| | Labor | | | | |
| | | Terence Smith Smith Lawn Service | 0.00 | 57.50 | 57.50 |
| | | **Total** | | **57.50** | **57.50** |

| 303994<br>4/30/2016 | 02-Confederate Cemetery-Contract Grounds<br>Maintenance 14-days, 4/1/2016 | **Property:** | District 2 | | |
| | | **Asset:** | 02-Confederate Cemetery | | |
| | Labor | | | | |
| | | Good Earth | 0.00 | 120.00 | 120.00 |

# Completed Work Order Cost and Charge Listing

Between 10/1/2014 and 8/31/2017
Filter:  Asset = '02-Confederate Cemetery'

| WO #<br>Completed | Service<br>Detail Type<br>Detail Name | | | Qty/Hours | Cost | Charge |
|---|---|---|---|---|---|---|
| | | | Total | | 120.00 | 120.00 |
| 305238<br>5/3/2016 | 02-Confederate Cem. Inspection-ST1, 4/5/2016 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | | |
| | Labor | | | | | |
| | Mendoza-Pina Manuel | | | 0.00 | 0.00 | 0.00 |
| | Montoya-De La Rosa Luis | | | 0.00 | 0.00 | 0.00 |
| | Ramos Guillermo | | | 0.00 | 0.00 | 0.00 |
| | | | Total | | 0.00 | 0.00 |
| 312239<br>5/31/2016 | 02-Confederate Cemetery-Contract Grounds<br>Maintenance 14-days, 5/1/2016 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | | |
| | Labor | | | | | |
| | Good Earth | | | 0.00 | 120.00 | 120.00 |
| | | | Total | | 120.00 | 120.00 |
| 312240<br>4/30/2016 | 02-Confederate Cemetery-Contract Litter-<br>Monthly, 4/30/2016 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | | |
| | Labor | | | | | |
| | Terence Smith Smith Lawn Service | | | 0.00 | 74.75 | 74.75 |
| | | | Total | | 74.75 | 74.75 |
| 314858<br>5/3/2016 | 02-Confederate Cem. Inspection-ST1, 5/3/2016 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | | |
| | Labor | | | | | |
| | Montoya-De La Rosa Luis | | | 0.50 | 9.64 | 12.35 |
| | Ramos Guillermo | | | 0.50 | 7.53 | 10.24 |
| | Vargas Estanislao | | | 0.50 | 7.53 | 10.24 |
| | Parts | | | | | |
| | 02-3/4 Ton Pickup | | | 0.5 | 1.14 | 1.20 |
| | | | Total | | 25.84 | 34.02 |
| 320138<br>5/31/2016 | 02-Confederate Cemetery-Contract Litter-<br>Monthly, 5/31/2016 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | | |
| | Labor | | | | | |
| | Terence Smith Smith Lawn Service | | | 0.00 | 74.75 | 74.75 |
| | | | Total | | 74.75 | 74.75 |
| 324435<br>6/30/2016 | 02-Confederate Cemetery-Contract Grounds<br>Maintenance 14-days, 6/1/2016 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | | |
| | Labor | | | | | |
| | Good Earth | | | 0.00 | 180.00 | 180.00 |

DEFS' APPX    61

# Completed Work Order Cost and Charge Listing

Between 10/1/2014 and 8/31/2017
Filter: Asset = '02-Confederate Cemetery'

| WO #<br>Completed | Service<br><br>Detail Type<br>Detail Name | | | Qty/Hours | Cost | Charge |
|---|---|---|---|---|---|---|
| | | | | Total | 180.00 | 180.00 |
| 332649<br>7/31/2016 | 02-Confederate Cemetery-Contract Grounds Maintenance 14-days, 7/1/2016 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | | |
| | Labor | | | | | |
| | Good Earth | | | 0.00 | 120.00 | 120.00 |
| | | | | Total | 120.00 | 120.00 |
| 332650<br>6/30/2016 | 02-Confederate Cemetery-Contract Litter-Monthly, 6/30/2016 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | | |
| | Labor | | | | | |
| | Terence Smith Smith Lawn Service | | | 0.00 | 74.75 | 74.75 |
| | | | | Total | 74.75 | 74.75 |
| 345255<br>7/31/2016 | 02-Confederate Cemetery-Contract Litter-Monthly, 7/31/2016 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | | |
| | Labor | | | | | |
| | Terence Smith Smith Lawn Service | | | 0.00 | 74.75 | 74.75 |
| | | | | Total | 74.75 | 74.75 |
| 346203<br>8/31/2016 | 02-Confederate Cemetery-Contract Grounds Maintenance 14-days, 8/1/2016 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | | |
| | Labor | | | | | |
| | Good Earth | | | 0.00 | 120.00 | 120.00 |
| | | | | Total | 120.00 | 120.00 |
| 347800<br>8/11/2016 | 02-Confederate Cemetary Amenities 1, 8/9/2016 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | | |
| | Labor | | | | | |
| | Frazier Joseph R | | | 0.30 | 4.52 | 4.52 |
| | Vanegas Humberto | | | 0.30 | 4.52 | 6.14 |
| | Parts | | | | | |
| | 02-3/4 Ton Pickup | | | 0.3 | 0.68 | 0.72 |
| | 73-Pressure Washer | | | 0.3 | 0.39 | 0.41 |
| | | | | Total | 10.10 | 11.78 |
| 354638<br>8/24/2016 | 02-Confederate Cemetary Amenities 1, 8/23/2016 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | | |
| | Labor | | | | | |
| | Frazier Joseph R | | | 0.40 | 6.02 | 6.02 |
| | Vanegas Humberto | | | 0.40 | 6.02 | 8.19 |
| | Parts | | | | | |

DEFS' APPX   62

# Completed Work Order Cost and Charge Listing

Between 10/1/2014 and 8/31/2017
Filter: Asset = '02-Confederate Cemetery'

| WO #<br>Completed | Service<br><br>Detail Type<br>Detail Name | | | Qty/Hours | Cost | Charge |
|---|---|---|---|---|---|---|
| | | | 02-3/4 Ton Pickup | 0.4 | 0.91 | 0.96 |
| | | | 73-Pressure Washer | 0.4 | 0.52 | 0.54 |
| | | | Total | | 13.47 | 15.71 |
| 356746<br>8/31/2016 | 02-Confederate Cemetery-Contract Litter-<br>Monthly, 8/31/2016 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | | |
| | Labor | | | | | |
| | | | Terence Smith Smith Lawn Service | 0.00 | 80.50 | 80.50 |
| | | | Total | | 80.50 | 80.50 |
| 359188<br>9/30/2016 | 02-Confederate Cemetery-Contract Grounds<br>Maintenance 14-days, 9/1/2016 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | | |
| | Labor | | | | | |
| | | | Good Earth | 0.00 | 120.00 | 120.00 |
| | | | Total | | 120.00 | 120.00 |
| 359327<br>9/12/2016 | Forestry | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | | |
| | Labor | | | | | |
| | | | Cerda Rodolfo C | 1.50 | 28.93 | 37.03 |
| | | | Chimney Andre | 1.50 | 18.72 | 26.02 |
| | | | Montoya-De La Rosa Luis | 1.50 | 28.93 | 37.03 |
| | | | Ramos Guillermo | 1.50 | 22.58 | 30.71 |
| | | | Segura Jose C | 1.50 | 22.58 | 31.39 |
| | | | Vargas Estanislao | 1.50 | 22.58 | 30.71 |
| | | | Williams Gerald L | 1.50 | 22.58 | 30.71 |
| | Parts | | | | | |
| | | | 02-3/4 Ton Pickup | 1.5 | 3.42 | 3.59 |
| | | | 02-3/4 Ton Pickup | 1.5 | 3.42 | 3.59 |
| | | | 29-02-21,(4) 22, 23 | 0 | 0.00 | 0.00 |
| | | | 70-Tractor Diesel | 0 | 0.00 | 0.00 |
| | | | Total | | 173.75 | 230.79 |
| 365753<br>9/30/2016 | 02-Confederate Cemetery-Contract Litter-<br>Monthly, 9/30/2016 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | | |
| | Labor | | | | | |
| | | | Terence Smith Smith Lawn Service | 0.00 | 74.75 | 74.75 |
| | | | Total | | 74.75 | 74.75 |
| 370314<br>10/6/2016 | 02-Confederate Cemetary Amenities 1,<br>10/4/2016 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | | |
| | Labor | | | | | |
| | | | Frazier Joseph R | 0.30 | 4.52 | 4.52 |

Printed 9/20/2017 12:26:10 PM

# Completed Work Order Cost and Charge Listing

Between 10/1/2014 and 8/31/2017
Filter: Asset = '02-Confederate Cemetery'

| WO #<br>Completed | Service | | | Qty/Hours | Cost | Charge |
|---|---|---|---|---|---|---|
| | Detail Type | | | | | |
| | Detail Name | | | | | |
| | Vanegas Humberto | | | 0.30 | 4.52 | 6.14 |
| | Parts | | | | | |
| | 02-3/4 Ton Pickup | | | 0.3 | 0.68 | 0.72 |
| | 73-Pressure Washer | | | 0.3 | 0.39 | 0.41 |
| | | | Total | | 10.10 | 11.78 |
| 370315<br>10/31/2016 | 02-Confederate Cemetery-Contract Grounds Maintenance 14-days, 10/1/2016 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | | |
| | Labor | | | | | |
| | Good Earth | | | 0.00 | 120.00 | 120.00 |
| | | | Total | | 120.00 | 120.00 |
| 376215<br>10/19/2016 | 02-Confederate Cemetary Amenities 1, 10/18/2016 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | | |
| | Labor | | | | | |
| | Frazier Joseph R | | | 0.60 | 9.03 | 9.03 |
| | Parts | | | | | |
| | 02-3/4 Ton Pickup | | | 0.6 | 1.37 | 1.44 |
| | 73-Pressure Washer | | | 0.6 | 0.77 | 0.81 |
| | | | Total | | 11.17 | 11.28 |
| 376216<br>10/31/2016 | 02-Confederate Cemetery-Contract Litter-Monthly, 10/31/2016 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | | |
| | Labor | | | | | |
| | T. Smith Lawn Service | | | 0.00 | 74.75 | 74.75 |
| | | | Total | | 74.75 | 74.75 |
| 380409<br>11/28/2016 | 02-Confederate Cemetary Amenities 1, 11/1/2016 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | | |
| | Labor | | | | | |
| | Frazier Joseph R | | | 0.50 | 7.53 | 7.53 |
| | Vanegas Humberto | | | 0.50 | 7.53 | 10.24 |
| | Parts | | | | | |
| | 02-3/4 Ton Pickup | | | 0.5 | 1.14 | 1.20 |
| | 73-Pressure Washer | | | 0.5 | 0.65 | 0.68 |
| | | | Total | | 16.84 | 19.64 |
| 380410<br>11/30/2016 | 02-Confederate Cemetery-Contract Grounds Maintenance 14-days, 11/1/2016 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | | |
| | Labor | | | | | |
| | Good Earth | | | 0.00 | 120.00 | 120.00 |

DEFS' APPX   64

# Completed Work Order Cost and Charge Listing

Between 10/1/2014 and 8/31/2017
Filter: Asset = '02-Confederate Cemetery'

| WO #<br>Completed | Service<br><br>Detail Type<br>Detail Name | | | Qty/Hours | Cost | Charge |
|---|---|---|---|---|---|---|
| | | | Total | | 120.00 | 120.00 |
| 386908<br>11/28/2016 | 02-Confederate Cemetary Amenities 1,<br>11/15/2016 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | | |
| | Labor | | | | | |
| | Frazier Joseph R | | | 0.20 | 3.01 | 3.01 |
| | Vanegas Humberto | | | 0.20 | 3.01 | 4.09 |
| | Parts | | | | | |
| | 02-3/4 Ton Pickup | | | 0.2 | 0.46 | 0.48 |
| | 73-Pressure Washer | | | 0.2 | 0.26 | 0.27 |
| | | | Total | | 6.74 | 7.86 |
| 389632<br>11/30/2016 | 02-Confederate Cemetery-Contract Litter-<br>Monthly, 11/30/2016 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | | |
| | Labor | | | | | |
| | T. Smith Lawn Service | | | 0.00 | 74.75 | 74.75 |
| | | | Total | | 74.75 | 74.75 |
| 395724<br>12/16/2016 | 02-Confederate Cemetary Amenities 1,<br>12/13/2016 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | | |
| | Labor | | | | | |
| | Frazier Joseph R | | | 0.10 | 1.51 | 1.51 |
| | Vanegas Humberto | | | 0.00 | 0.00 | 0.00 |
| | | | Total | | 1.51 | 1.51 |
| 399363<br>12/27/2016 | 02-Confederate Cemetary Amenities 1,<br>12/27/2016 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | | |
| | Labor | | | | | |
| | Frazier Joseph R | | | 0.20 | 2.96 | 2.96 |
| | Vanegas Humberto | | | 0.20 | 2.96 | 4.02 |
| | Parts | | | | | |
| | 02-3/4 Ton Pickup | | | 0.2 | 0.46 | 0.48 |
| | 73-Pressure Washer | | | 0.2 | 0.26 | 0.27 |
| | | | Total | | 6.62 | 7.72 |
| 399364<br>12/31/2016 | 02-Confederate Cemetery-Contract Litter-<br>Monthly, 12/31/2016 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | | |
| | Labor | | | | | |
| | T. Smith Lawn Service | | | 0.00 | 46.00 | 46.00 |
| | | | Total | | 46.00 | 46.00 |

DEFS' APPX   65

# Completed Work Order Cost and Charge Listing

Between 10/1/2014 and 8/31/2017
Filter: Asset = '02-Confederate Cemetery'

| WO #<br>Completed | Service<br><br>Detail Type<br>Detail Name | | Qty/Hours | Cost | Charge |
|---|---|---|---|---|---|
| 402605<br>1/10/2017 | 02-Confederate Cemetary Amenities 1,<br>1/10/2017 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | |
| | Labor | | | | |
| | Frazier Joseph R | | 0.20 | 2.96 | 2.96 |
| | Vanegas Humberto | | 0.20 | 2.96 | 4.02 |
| | Parts | | | | |
| | 02-3/4 Ton Pickup | | 0.2 | 0.46 | 0.48 |
| | 73-Pressure Washer | | 0.2 | 0.26 | 0.27 |
| | | Total | | 6.62 | 7.72 |
| 406711<br>1/24/2017 | 02-Confederate Cemetary Amenities 1,<br>1/24/2017 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | |
| | Labor | | | | |
| | Frazier Joseph R | | 0.20 | 2.96 | 2.96 |
| | Vanegas Humberto | | 0.20 | 2.96 | 4.02 |
| | Parts | | | | |
| | 02-3/4 Ton Pickup | | 0.2 | 0.46 | 0.48 |
| | | Total | | 6.37 | 7.45 |
| 406712<br>1/31/2017 | 02-Confederate Cemetery-Contract Litter-<br>Monthly, 1/31/2017 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | |
| | Labor | | | | |
| | T. Smith Lawn Service | | 0.00 | 57.50 | 57.50 |
| | | Total | | 57.50 | 57.50 |
| 414222<br>2/21/2017 | 02-Confederate Cemetary Amenities 1,<br>2/21/2017 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | |
| | Labor | | | | |
| | Frazier Joseph R | | 0.20 | 2.96 | 2.96 |
| | Vanegas Humberto | | 0.20 | 2.96 | 4.02 |
| | Parts | | | | |
| | 02-3/4 Ton Pickup | | 0.2 | 0.46 | 0.48 |
| | 73-Pressure Washer | | 0.2 | 0.26 | 0.27 |
| | | Total | | 6.62 | 7.72 |
| 414223<br>2/28/2017 | 02-Confederate Cemetery-Contract Litter-<br>Monthly, 2/28/2017 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | |
| | Labor | | | | |
| | T. Smith Lawn Service | | 0.00 | 46.00 | 46.00 |
| | | Total | | 46.00 | 46.00 |

DEFS' APPX  66

# Completed Work Order Cost and Charge Listing

Between 10/1/2014 and 8/31/2017
Filter: Asset = '02-Confederate Cemetery'

| WO #<br>Completed<br>    Detail Type<br>        Detail Name | | Qty/Hours | Cost | Charge |
|---|---|---|---|---|
| **417082**<br>2/10/2017 | **Off Season Grounds Mowing** | Property:  **District 2**<br>Asset:  **02-Confederate Cemetery** | | |
| Labor | | | | |
| Alvarez Martin | | 2.00 | 38.32 | 49.05 |
| Mendoza-Pina Manuel | | 2.00 | 29.55 | 40.19 |
| Still Mark E | | 2.00 | 29.55 | 40.19 |
| Parts | | | | |
| 02-3/4 Ton Pickup | | 2 | 4.56 | 4.79 |
| | | **Total** | **101.99** | **134.22** |
| **417948**<br>3/7/2017 | **02-Confederate Cemetary Amenities 1,**<br>3/7/2017 | Property:  **District 2**<br>Asset:  **02-Confederate Cemetery** | | |
| Labor | | | | |
| Frazier Joseph R | | 0.00 | 0.00 | 0.00 |
| Vanegas Humberto | | 0.40 | 5.91 | 8.04 |
| | | **Total** | **5.91** | **8.04** |
| **417949**<br>3/31/2017 | **02-Confederate Cemetery-Contract Grounds**<br>**Maintenance 14-days, 3/1/2017** | Property:  **District 2**<br>Asset:  **02-Confederate Cemetery** | | |
| Labor | | | | |
| Good Earth | | 0.00 | 120.00 | 120.00 |
| | | **Total** | **120.00** | **120.00** |
| **418159**<br>2/28/2017 | **Grounds Maintenance** | Property:  **District 2**<br>Asset:  **02-Confederate Cemetery** | | |
| Labor | | | | |
| Cerda Rodolfo C | | 2.50 | 47.90 | 61.32 |
| Segura Jose C | | 2.50 | 36.94 | 51.35 |
| Williams Gerald L | | 2.50 | 36.94 | 50.24 |
| Parts | | | | |
| 29-02-21,(4) 22, 23 | | 2.5 | 26.08 | 27.38 |
| 70-Tractor Diesel | | 2.5 | 7.75 | 8.14 |
| | | **Total** | **155.61** | **198.42** |
| **421264**<br>3/21/2017 | **02-Confederate Cemetary Amenities 1,**<br>3/21/2017 | Property:  **District 2**<br>Asset:  **02-Confederate Cemetery** | | |
| Labor | | | | |
| Frazier Joseph R | | 0.20 | 2.96 | 2.96 |
| Vanegas Humberto | | 0.20 | 2.96 | 4.02 |
| | | **Total** | **5.91** | **6.97** |

DEFS' APPX   67

# Completed Work Order Cost and Charge Listing

Between 10/1/2014 and 8/31/2017
Filter: Asset = '02-Confederate Cemetery'

| WO #<br>Completed | Service<br><br>Detail Type<br>Detail Name | | | Qty/Hours | Cost | Charge |
|---|---|---|---|---|---|---|
| 427523<br>3/31/2017 | 02-Confederate Cemetery-Contract Litter-<br>Monthly, 3/31/2017 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | | |
| | Labor | | | | | |
| | Johnson-Boyd Linda | | | 0.00 | 0.00 | 0.00 |
| | T. Smith Lawn Service | | | 0.00 | 80.50 | 80.50 |
| | | | Total | | 80.50 | 80.50 |
| 430081<br>4/4/2017 | 02-Confederate Cemetary Amenities 1,<br>4/4/2017 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | | |
| | Labor | | | | | |
| | Frazier Joseph R | | | 0.30 | 4.43 | 4.43 |
| | Vanegas Humberto | | | 0.30 | 4.43 | 6.03 |
| | | | Total | | 8.87 | 10.46 |
| 430082<br>4/30/2017 | 02-Confederate Cemetery-Contract Grounds<br>Maintenance 14-days, 4/1/2017 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | | |
| | Labor | | | | | |
| | Good Earth | | | 0.00 | 120.00 | 120.00 |
| | | | Total | | 120.00 | 120.00 |
| 435229<br>3/29/2017 | Storm Damage | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | | |
| | Labor | | | | | |
| | Cerda Rodolfo C | | | 0.20 | 3.83 | 4.91 |
| | Segura Jose C | | | 0.20 | 2.96 | 4.11 |
| | Williams Gerald L | | | 0.20 | 2.96 | 4.02 |
| | Parts | | | | | |
| | 02-3/4 Ton Pickup | | | 0.2 | 0.46 | 0.48 |
| | | | Total | | 10.20 | 13.51 |
| 436597<br>4/18/2017 | 02-Confederate Cemetary Amenities 1,<br>4/18/2017 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | | |
| | Labor | | | | | |
| | Frazier Joseph R | | | 0.20 | 2.96 | 2.96 |
| | Vanegas Humberto | | | 0.20 | 2.96 | 4.02 |
| | | | Total | | 5.91 | 6.97 |
| 436599<br>5/31/2017 | 02-Confederate Cemetery-Contract Grounds<br>Maintenance 14-days, 5/1/2017 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | | |
| | Labor | | | | | |
| | Good Earth | | | 0.00 | 120.00 | 120.00 |

DEFS' APPX   68

# Completed Work Order Cost and Charge Listing

Between 10/1/2014 and 8/31/2017

Filter:  Asset = '02-Confederate Cemetery'

| WO #<br>Completed | Service<br><br>Detail Type<br>Detail Name | | Qty/Hours | Cost | Charge |
|---|---|---|---|---|---|
| | | | Total | 120.00 | 120.00 |
| 436600<br>4/30/2017 | 02-Confederate Cemetery-Contract Litter-<br>Monthly, 4/30/2017 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | |
| | Labor | | | | |
| | T. Smith Lawn Service | | 0.00 | 69.00 | 69.00 |
| | | | Total | 69.00 | 69.00 |
| 444251<br>5/16/2017 | 02-Confederate Cemetary Amenities 1,<br>5/16/2017 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | |
| | Labor | | | | |
| | Frazier Joseph R | | 0.20 | 2.96 | 2.96 |
| | Vanegas Humberto | | 0.20 | 2.96 | 4.02 |
| | | | Total | 5.91 | 6.97 |
| 454491<br>5/30/2017 | 02-Confederate Cemetary Amenities 1,<br>5/30/2017 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | |
| | Labor | | | | |
| | Frazier Joseph R | | 0.05 | 0.74 | 0.74 |
| | Vanegas Humberto | | 0.05 | 0.74 | 1.00 |
| | Parts | | | | |
| | 62-03,23 | | 0.05 | 0.21 | 0.22 |
| | | | Total | 1.68 | 1.96 |
| 454492<br>6/30/2017 | 02-Confederate Cemetery-Contract Grounds<br>Maintenance 14-days, 6/1/2017 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | |
| | Labor | | | | |
| | Good Earth | | 0.00 | 180.00 | 180.00 |
| | | | Total | 180.00 | 180.00 |
| 454493<br>5/31/2017 | 02-Confederate Cemetery-Contract Litter-<br>Monthly, 5/31/2017 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | |
| | Labor | | | | |
| | T. Smith Lawn Service | | 0.00 | 80.50 | 80.50 |
| | | | Total | 80.50 | 80.50 |
| 465995<br>6/28/2017 | 02-Confederate Cemetary Amenities 1,<br>6/27/2017 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | |
| | Labor | | | | |
| | Frazier Joseph R | | 0.20 | 2.96 | 2.96 |
| | Vanegas Humberto | | 0.20 | 2.96 | 4.02 |

Printed 9/20/2017 12:26:10 PM

# Completed Work Order Cost and Charge Listing

Between 10/1/2014 and 8/31/2017
Filter: Asset = '02-Confederate Cemetery'

| WO #<br>Completed | Service<br><br>Detail Type<br>Detail Name | | | Qty/Hours | Cost | Charge |
|---|---|---|---|---|---|---|
| | | | Total | | 5.91 | 6.97 |
| 465996<br>6/30/2017 | 02-Confederate Cemetery-Contract Litter-<br>Monthly, 6/30/2017 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | | |
| | Labor | | | | | |
| | T. Smith Lawn Service | | | 0.00 | 74.75 | 74.75 |
| | | | Total | | 74.75 | 74.75 |
| 470151<br>7/31/2017 | 02-Confederate Cemetery-Contract Grounds<br>Maintenance 14-days, 7/1/2017 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | | |
| | Labor | | | | | |
| | Good Earth | | | 0.00 | 120.00 | 120.00 |
| | | | Total | | 120.00 | 120.00 |
| 470203<br>6/29/2017 | Grounds Maintenance | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | | |
| | Labor | | | | | |
| | Cerda Rodolfo C | | | 1.50 | 28.74 | 36.79 |
| | Gulley James | | | 1.50 | 18.72 | 26.02 |
| | Segura Jose C | | | 1.50 | 22.16 | 30.81 |
| | Williams Gerald L | | | 1.50 | 22.16 | 30.14 |
| | Parts | | | | | |
| | 02-3/4 Ton Pickup | | | 1.5 | 3.42 | 3.59 |
| | 23-Trailer | | | 1.5 | 1.32 | 1.39 |
| | | | Total | | 96.53 | 128.74 |
| 475735<br>7/11/2017 | 02-Confederate Cemetary Amenities 1,<br>7/11/2017 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | | |
| | Labor | | | | | |
| | Frazier Joseph R | | | 0.00 | 0.00 | 0.00 |
| | Vanegas Humberto | | | 0.30 | 4.43 | 6.03 |
| | | | Total | | 4.43 | 6.03 |
| 480184<br>7/25/2017 | 02-Confederate Cemetary Amenities 1,<br>7/25/2017 | Property:<br>Asset: | District 2<br>02-Confederate Cemetery | | | |
| | Labor | | | | | |
| | Frazier Joseph R | | | 0.30 | 4.43 | 4.43 |
| | Vanegas Humberto | | | 0.30 | 4.43 | 6.03 |
| | Parts | | | | | |
| | 03-1 Ton Pickup or Truck | | | 0.3 | 0.98 | 1.02 |
| | | | Total | | 9.84 | 11.49 |

DEFS' APPX   70

# Completed Work Order Cost and Charge Listing

Between 10/1/2014 and 8/31/2017
Filter: Asset = '02-Confederate Cemetery'

| WO #<br>Completed<br>  Detail Type<br>    Detail Name | | Qty/Hours | Cost | Charge |
|---|---|---|---|---|
| 483052<br>8/31/2017 | 02-Confederate Cemetery-Contract Grounds<br>Maintenance 14-days, 8/1/2017 | Property: | District 2 | |
| | | Asset: | 02-Confederate Cemetery | |
| **Labor** | | | | |
| Good Earth | | 0.00 | 120.00 | 120.00 |
| | | Total | 120.00 | 120.00 |
| 483053<br>7/31/2017 | 02-Confederate Cemetery-Contract Litter-<br>Monthly, 7/31/2017 | Property: | District 2 | |
| | | Asset: | 02-Confederate Cemetery | |
| **Labor** | | | | |
| T. Smith Lawn Service | | 0.00 | 74.75 | 74.75 |
| | | Total | 74.75 | 74.75 |
| 485470<br>8/21/2017 | 02-Confederate Cemetary Amenities 1,<br>8/8/2017 | Property: | District 2 | |
| | | Asset: | 02-Confederate Cemetery | |
| **Labor** | | | | |
| Frazier Joseph R | | 0.20 | 2.96 | 2.96 |
| Vanegas Humberto | | 0.20 | 2.96 | 4.02 |
| **Parts** | | | | |
| 02-3/4 Ton Pickup | | 0.2 | 0.46 | 0.48 |
| | | Total | 6.37 | 7.45 |
| 491621<br>8/31/2017 | 02-Confederate Cemetery-Contract Litter-<br>Monthly, 8/31/2017 | Property: | District 2 | |
| | | Asset: | 02-Confederate Cemetery | |
| **Labor** | | | | |
| T. Smith Lawn Service | | 0.00 | 80.50 | 80.50 |
| | | Total | 80.50 | 80.50 |
| 499585<br>4/5/2017 | **City Wide Forestry** | Property: | District 2 | |
| | | Asset: | 02-Confederate Cemetery | |
| **Labor** | | | | |
| Escamilla Xavier | | 2.00 | 39.59 | 53.05 |
| Escamilla Xavier | | 3.00 | 59.39 | 79.58 |
| Garcia Martin | | 2.00 | 30.50 | 40.88 |
| Garcia Martin | | 3.00 | 45.76 | 61.31 |
| Jackson Adrian | | 2.00 | 30.50 | 41.49 |
| Jackson Adrian | | 3.00 | 45.76 | 62.23 |
| Mandujano Enor | | 2.00 | 30.50 | 40.88 |
| McCoy Byron | | 2.00 | 30.50 | 40.88 |
| McCoy Byron | | 3.00 | 45.76 | 61.31 |
| Mills James | | 2.00 | 39.59 | 49.10 |
| **Parts** | | | | |
| 83-(81 and 82) | | 2 | 87.78 | 92.17 |
| 83-(81 and 82) | | 3 | 131.67 | 138.25 |

DEFS' APPX   71

# Completed Work Order Cost and Charge Listing

Between 10/1/2014 and 8/31/2017
Filter:  Asset = '02-Confederate Cemetery'

| WO #  Service | | | |
|---|---|---|---|
| Completed | | | |
| Detail Type | | | |
| Detail Name | Qty/Hours | Cost | Charge |
| | Total | 617.32 | 761.13 |
| | Totals | 7,332.49 | 7,898.69 |

DEFS' APPX   72

Corporations Section
P.O.Box 13697
Austin, Texas 78711-3697

Rolando B. Pablos
Secretary of State



# Office of the Secretary of State

The undersigned, as Secretary of State of Texas, does hereby certify that the attached is a true and correct copy of each document on file in this office as described below:

### TEXAS DIVISION, SONS OF CONFEDERATE VETERANS, INC.
Filing Number: 162656901

| | |
|---|---|
| Articles Of Incorporation | May 03, 2001 |
| Nonprofit Periodic Report | April 28, 2008 |
| Nonprofit Periodic Report | March 19, 2012 |
| Change of Name or Address by Registered Agent | December 02, 2013 |
| Nonprofit Periodic Report | August 10, 2017 |

In testimony whereof, I have hereunto signed my name officially and caused to be impressed hereon the Seal of State at my office in Austin, Texas on September 21, 2017.





Rolando B. Pablos
Secretary of State



EXHIBIT
12

DEFS' APPX   73

*Come visit us on the internet at http://www.sos.state.tx.us/*

Phone: (512) 463-5555          Fax: (512) 463-5709          Dial: 7-1-1 for Relay Services
Prepared by: DROGERS          TID: 10266          Document: 762628680002



000007081710 1

**ARTICLES OF INCORPORATION**

**TEXAS DIVISION SONS OF CONFEDERATE VETERANS Inc**

FILED
In the Office of the
Secretarv of State of Texas
MAY 0 3 2001
Corporations Section

We the undersigned natural person of the age of twenty one (21) years or more a

citizen of the State of Texas acting as incorporator of a corporation under the Texas Non

profit Corporation Act do hereby adopt the following Articles of Incorporation for such

corporation

### Article I

The name of the corporation is Texas Division Sons of Confederate Veterans

Inc

### Article II

The corporation is a non profit corporation

### Article III

The period of the corporation s duration is perpetual

### Article IV

The purposes for which the corporation is organized is to promote interest in and

perpetuate the memory of the Southern Confederacy and of the soldiers sailors and

statesmen of the Confederacy To cultivate the ties of friendship among those whose

ancestors were in the service of the Confederacy and to perpetuate the ideals for which

they struggled and suffered To encourage the writing of accounts narratives memoirs

historic episodes and occurrences of the war between the States and to gather authentic statistics documents reports plans maps and other materials for an impartial history of services rendered by the soldiers sailors and statesmen of the Confederacy and to erect monuments over the graves of the Confederate dead  To vindicate the charge of Lt General Stephen Dill Lee  CSA  This corporation may own land hold property both real and personal and borrow money and issue bonds notes mortgages or other securities or evidence of debt

Article V

The street address of the initial registered office of the Corporation is 347 Ridgewood Drive Ferris Texas 75125 and the initial registered agent at such address is Denne A Sweeney

Article VI

The number of directors constituting the initial Board of Directors is three (3) and the names addresses of the persons who are to serve as the initial directors are

Denne A Sweeney
347 Ridgewood
Ferris TX 75125

Steve Lucas
11 Highview Court
Denton TX 76205

George Perry
954 South Weathered
Richardson TX 75080

These directors shall serve until the first annual meeting or until their successors are elected and qualified

Article VII

The corporation will have members

Article VIII

Said corporation is organized exclusively for charitable religious educational or scientific purposes including for such purposes the making of distributions to organizations that qualify as exempt organizations under Section 501c(3) of the Internal Revenue Code of 1954 (or the corresponding provisions of any future Internal Revenue Law) Upon dissolution of the corporation the Board of Directors shall after paying or making provisions for the payment of all liabilities of the corporation dispose of all assets of the corporation exclusively for the purpose of the corporation in such manner or to such organization or organizations organized and operated exclusively for charitable religious educational or scientific purposes as shall at the time qualify as an exempt organization or organizations under Section 501c(3) of the Internal Revenue Code of 1954 (or the corresponding provisions of any future Internal Revenue Law) as the Board of Directors may determine

Any such assets not so disposed of shall be disposed of by a State District Court of the State of Texas of the county in which the principal office of which the corporation is then located exclusively for such purposes or to such organization or organizations as said court determines which are organized or operated exclusively for such purposes

Article IX

The internal affairs of the corporation shall be governed by by laws which shall

be as adopted and amended from time to time by the members of the corporation a copy

of which will be on file with the Secretary of the corporation

Article X

The name and address of the incorporator is

Denne A Sweeney
347 Ridgewood Drive
Ferris TX 75125

The undersigned incorporator signs these articles of incorporation subject to the penalty
imposed article 9 03A Texas Non Profit Corporation Act for the submission of a false or
fraudulent document

signed this _____ 30 _____ day of _____ April _____ 2001 by

_____

DENNE A SWEENEY

Reports Unit
P O Box 12028
Austin, Texas 78711-2028



Phil Wilson
Secretary of State

## Office of the Secretary of State

### PERIODIC REPORT - NONPROFIT CORPORATION

File Number: 162656901
Filing Fee: $5

Page 1 of 2

1. The corporation name is:
   **TEXAS DIVISION, SONS OF CONFEDERATE VETERANS, INC.**

2. It is incorporated under the laws of: *(set forth state or foreign country)*
   **Texas**

FILED
In the Office of the
Secretary of State of Texas

APR 2 8 2008

Corporations Section

3. The name of the registered agent is.
   **C T Corporation System**
   *(Make changes here)*

4. The registered office address, which is identical to the business office address of the registered
   agent in Texas, is:
   **350 North St. Paul St.**
   **Dallas, TX 75201**

   *(Make changes here-use street or building address, see Instructions)*

5. If the corporation is a foreign corporation, the address of its principal office in the state or
   country under the laws of which it is incorporated is:

   *(Make changes here-use street or building address; see Instructions).*

6. The names and addresses of all directors of the corporation are: (A Texas corporation <u>must have</u>
   <u>at least 3 directors</u>)

   *(If additional space is needed, include the information as an attachment to this form for item 6)*

   | Name | Address | City/ State/Zip |
   | --- | --- | --- |
   | H. GREGORY MANNING | 5390 FM 2484 | SALADO TEXAS 76571 |
   | DR. RAY W. JAMES | 1501 FROST DRIVE | COLLEGE STATION TX 77845 |
   | CODY MARSHALL | P.O. BOX 2618 | ABILENE TEXAS 79604 |

Nonprofit Periodic Report
File Number: 162656901
Page 2 of 2

7.  The names, addresses, and titles of all officers of the corporation are: (A Texas corporation must
include a president and a secretary and the same person cannot hold both offices)
    *(If additional space is needed, include the information as an attachment to this form for item 7.)*

| Name | Address | City/State/Zip | Title |
|------|---------|----------------|-------|
| H. GREGORY MANNING | 5390 FM 2484 | SALADO TEXAS 76571 | PRESIDENT |
| DR. RAY W. JAMES | 1501 FROST DRIVE | COLLEGE STATION, TX 77845 | VICE PRESIDENT |
| CODY MARSHALL | P.O. BOX 2618 | ABILENE TEXAS 79604 | SECRETARY |
| Execution: JIM FARRAR | 116 N. SEAMAN ST. | EASTLAND TEXAS 76448 | ASST. SECRETARY |

The undersigned signs this document subject to the penalties imposed by law for the submission of
a materially false or fraudulent instrument.

Date : 4/28/2008

Signature of authorized officer



**Office of the Secretary of State**
**Reports Unit**
**P.O. Box 12028**
**Austin, Texas 78711-2028**
**(Form 802)**

**Filed in the Office of the**
**Secretary of State of Texas**
**Filing #: 162656901 03/19/2012**
**Document #: 413258930002**
**Image Generated Electronically**
**for Web Filing**

## PERIODIC REPORT - DOMESTIC NONPROFIT CORPORATION

File Number: **162656901**

1. The name of the corporation is: **TEXAS DIVISION, SONS OF CONFEDERATE VETERANS, INC.**

2. It is incorporated under the laws of: **TEXAS, USA**

3. The name of the registered agent is: **C T Corporation System**

4. The registered office address, which is identical to the business office address of the registered agent in Texas, is:
   **350 N. St. Paul St., Ste. 2900, Dallas, TX, USA 75201-4234**

### Consent of Registered Agent

☐ A. A copy of the consent of registered agent is attached.

### OR

☑ B. The consent of the registered agent is maintained by the entity.

5. If the corporation is a foreign corporation, the address of its principal office in the state or country under the laws of which it is incorporated, is:

   _____

6. The names and addresses of all directors of the corporation are:

| | |
|---|---|
| Director 1: (Individual Name) | **Granvel J. Bolck** |
| Address: | **1604 Buckingham Drive    Orange, TX, USA  77632-0487** |

| Director 2: (Individual Name) | Jared Michael Hurley |
| Address: | 116 Buckingham Street   Victoria, TX, USA  77904 |
| Director 3: (Individual Name) | William Ray Wainner |
| Address: | 505 Dresden Wood Drive   Boerne, TX, USA  78006-5878 |

7.  The names, addresses and titles of all officers of the corporation are:

| Officer 1: (Individual Name) | Joseph G. Ginn | | Title: | Assistant Secretary |
| Address: | 504 Cross Mountain Drive   Fredericksburg, TX, USA  78624-2717 |
| Officer 2: (Individual Name) | Granvel J. Block | | Title: | President |
| Address: | 1604 Buckingham Drive   Orange, TX, USA  77632-0487 |
| Officer 3: (Individual Name) | William Ray Wainner | | Title: | Secretary |
| Address: | 505 Dresden Wood Drive   Boerne, TX, USA  78006-5878 |
| Officer 4: (Individual Name) | Jared Michael Hurley | | Title: | Vice-President |
| Address: | 116 Buckingham Street   Victoria, TX, USA  77904 |

**Execution:**

The undersigned affirms that the person designated as registered agent has consented to the appointment. The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and certifies under penalty of perjury that the undersigned is authorized under the provisions of law governing the entity to execute the filing instrument.

Date: **MARCH 19, 2012**           **William Ray Wainner**

                                                Signature of authorized officer

FILING OFFICE COPY



**Office of the Secretary of State**
**Corporations Section**
**P.O. Box 13697**
**Austin, Texas 78711-3697**
**(Form 408)**

**Filed in the Office of the**
**Secretary of State of Texas**
**Filing #: 162656901  12/02/2013**
**Document #: 518496773346**
**Image Generated Electronically**

## STATEMENT OF CHANGE OF
## ADDRESS OF REGISTERED AGENT

1. The name of the entity represented is
   <u>TEXAS DIVISION, SONS OF CONFEDERATE VETERANS, INC.</u>

   The entity's filing number is  <u>162656901</u>

2. The address at which the registered agent has maintained the registered office address for
   such entity is: (Please provide street address, city, state and zip code presently shown in
   the records of the Secretary of State.)

   <u>350 N. St. Paul Street, Suite 2900, Dallas, TX, 75201-4234</u>

3. The address at which the registered agent will hereafter maintain the registered office
   address for such entity is: (Please provide street address, city, state and zip code.  The
   address must be in Texas.)

   <u>1999 Bryan St., Ste. 900, Dallas , TX, 75201 - 3136</u>

4. Notice of the change of address has been given to said entity in writing at least 10
   business days prior to the submission of this filing.


Date:   <u>12/02/2013</u>


<u>C T Corporation System</u>

**Name of Registered Agent**


<u>Marie Hauer</u>

**Signature of Registered Agent**


**FILING OFFICE COPY**

**Form 802**
**(Revised 08/12)**

Submit in duplicate to:
Secretary of State
Reports Unit
P.O. Box 12028
Austin, TX 78711-2028
Phone: (512) 475-2705
FAX: (512) 463-1423
Dial: 7-1-1 for Relay Services
**Filing Fee: See Instructions**



**Periodic Report**
**of a**
**Nonprofit Corporation**

This space reserved for filing office use.
**FILED**
**In the Office of the**
**Secretary of State of Texas**

**AUG 10 2017**

**Corporations Section**

---

**File Number:** 0162656901

1. The name of the corporation is: *(A name change requires an amendment; see Instructions)*

   Texas Division, Sons of Confederate Veterans, Inc.

2. It is incorporated under the laws of: (Set forth state or foreign country)  Texas, USA

3. The name of the registered agent is:

   ☐ A.  The registered agent is a corporation (cannot be entity named above) by the name of:

   CT Corporation

   **OR**

   ☐ B.  The registered agent is an individual resident of the state whose name is:

   **RECEIVED**
   **AUG 10 2017**
   **Secretary of State**

   | First Name | MI | Last Name | Suffix |
   |---|---|---|---|

4. The registered office address, which is identical to the business address of the registered agent in Texas, is:
   *(Only use street or building address; see Instructions)*

   | Street Address | City | State | Zip Code |
   |---|---|---|---|
   | 1999 Bryan Ste 900 | Dallas | TX | 75201 |

5. If the corporation is a foreign corporation, the address of its principal office in the state or country under the laws of which it is incorporated is:

   | Street or Mailing Address | City | State | Zip Code | Country |
   |---|---|---|---|---|

6. The names and addresses of all directors of the corporation are: (A minimum of three directors is required.)
   *(If additional space is needed, include the information as an attachment to this form for item 6.)*

   | First Name | MI | Last Name | | Suffix |
   |---|---|---|---|---|
   | David | P | McMahon | | |
   | Street or Mailing Address | | City | State  Zip Code | Country |
   | P.O. Box 3311 | | San Angelo | TX  76902 | USA |

   | First Name | MI | Last Name | | Suffix |
   |---|---|---|---|---|
   | John | F. | McCammon | | |
   | Street or Mailing Address | | City | State  Zip Code | Country |
   | 103 Elm Springs | | Boerne | TX  78006 | USA |

   | First Name | MI | Last Name | | Suffix |
   |---|---|---|---|---|
   | John | | Dickey | | |
   | Street or Mailing Address | | City | State  Zip Code | Country |
   | 3121 Sturgis LN | | Waco | TX  76708 | USA |

Form 802 — Page 4 of 5

7. The names, addresses, and titles of all officers of the corporation are: (The offices of president and secretary must be filled, but both may not be held by the same officer.)

*(If additional space is needed, include the information as an attachment to this form for item 7.)*

| | | | | | | Officer Title |
|---|---|---|---|---|---|---|
| David | p | McMahon | | | | President |
| *First Name* | *MI* | *Last Name* | | | *Suffix* | |
| P.O. Box 3311 | | San Angelo | Tx | 76902 | | USA |
| *Street or Mailing Address* | | *City* | *State* | *Zip Code* | | *Country* |

| | | | | | | Officer Title |
|---|---|---|---|---|---|---|
| John | | Dickey | | | | Secretary |
| *First Name* | *MI* | *Last Name* | | | *Suffix* | |
| 3121 Sturgis Ln. | | Waco | TX | 76708 | | USA |
| *Street or Mailing Address* | | *City* | *State* | *Zip Code* | | *Country* |

| | | | | | | Officer Title |
|---|---|---|---|---|---|---|
| John | F. | McCammon | | | | Vice-President |
| *First Name* | *MI* | *Last Name* | | | *Suffix* | |
| 103 Elm Springs | | Boerne | TX | 78006 | | USA |
| *Street or Mailing Address* | | *City* | *State* | *Zip Code* | | *Country* |

**Execution:**

The undersigned affirms that the person designated as registered agent has consented to the appointment. The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and certifies under penalty of perjury that the undersigned is authorized under the provisions of law governing the entity to execute the filing instrument.

Date:   7/12/2017

_____
Signature of authorized officer

DEFS' APPX   84

Corporations Section
P.O.Box 13697
Austin, Texas 78711-3697

Rolando B. Pablos
Secretary of State



# Office of the Secretary of State

The undersigned, as Secretary of State of Texas, does hereby certify that the attached is a true and correct copy of each document on file in this office as described below:

Sons of Confederate Veterans, Inc.
Filing Number: 800509038

| | |
|---|---|
| Articles of Incorporation | June 21, 2005 |
| Articles of Merger | July 25, 2005 |
| Public Information Report (PIR) | December 31, 2006 |
| Restated Articles of Incorporation | February 14, 2007 |
| Articles of Correction | July 16, 2007 |
| Public Information Report (PIR) | December 31, 2007 |

In testimony whereof, I have hereunto signed my name officially and caused to be impressed hereon the Seal of State at my office in Austin, Texas on September 21, 2017.





Rolando B. Pablos
Secretary of State



**EXHIBIT**

tabbies

13

DEFS' APPX   85

*Come visit us on the internet at http://www.sos.state.tx.us/*

Phone: (512) 463-5555
Prepared by: DROGERS

Fax: (512) 463-5709
TID: 10266

Dial: 7-1-1 for Relay Services
Document: 762628680002

In the Office of the
Secretary of State of Texas

JUN 21 2005

Corporations Section

# ARTICLES OF INCORPORATION

## SONS OF CONFEDERATE VETERANS, Inc.

I, the undersigned natural person of the age of twenty-one (21) years or more, a citizen of the State of Texas, acting as an incorporator of a corporation under the Texas Non-Profit Corporation Act, do hereby adopt the following Articles of Incorporation for such corporation.

### Article I.

The name of the corporation is: **Sons of Confederate Veterans, Inc.**

### Article II.

The corporation is a non-profit corporation.

### Article III.

The period of the corporation's duration is perpetual.

### Article IV.

The purposes for which the corporation is organized is: **To vindicate and advance the Charge of Lt. General Stephen Dill Lee, C.S.A.** to current and succeeding generations; To promote interest in and perpetuate the memory of the Confederate States of America and of the soldiers, sailors and statesmen of the Confederate States; To cultivate the ties of fraternity among those whose venerated ancestors were veterans in the service of the Confederate States of America; and to perpetuate the ideals for which they struggled and suffered; To encourage the writing of accounts, narratives, memoirs, historic episodes and occurrences of the War Between the States; To gather authentic statistics, documents, reports, plans, maps and other materials for an impartial history of services rendered by the soldiers, sailors and statesmen of the Confederate States of America; To erect monuments over the graves of the Confederate veteran dead and to protect all existing monuments and graves; To educate the public to the precious Confederate

history and heritage shared by all Americans and to advocate in the public forum on behalf of issues in the best interests of the membership and others with Confederate ancestry. To defend and promote the patriotic use of all Confederate symbols, especially the Confederate Battle flag and the Southern anthem "Dixie." This corporation may own land, hold property, both real and personal and borrow money and issue bonds, notes, mortgages or other securities or evidences of debt.

## Article V.

The street address of the initial registered office of the Corporation is 2017 Minnie Drive, Arlington, TX 76012 ; and the initial registered agent at such address is James W. Dark.

## Article VI.

The number of directors constituting the initial Board of Directors is three (3); and the names and addresses of the persons who are to serve as the initial directors are:

Denne A Sweeney
347 Ridgewood
Ferris, TX 75125

Christopher M. Sullivan
875 Altamont Rd
Greenville, SC 29609

James W. Dark
2017 Minnie Drive
Arlington, TX 76012

These directors shall serve until the first annual meeting in 2006 or until their successors are elected and qualified. Other Directors may be added, as soon as elected or appointed, pursuant to the by-laws.

## Article VII.

The corporation will have members.

## Article VIII.

The Sons of Confederate Veterans, Inc. shall function at all times as an organization which is eligible to be approved for exemption from federal income taxes and which is qualified to receive donations which are deductible by the donor for income tax purposes under § 501 (c) (3) of the Internal Revenue Code of 1954 (or the corresponding provision of any future United States Internal Revenue law). Said corporation is organized exclusively for charitable, religious, educational, or scientific purposes, including, for such purposes, the making of distributions to organizations that qualify as exempt organizations under Section 501c(3) of the Internal Revenue Code of 1954 (or the corresponding provisions of any future United States Internal Revenue Law).

## Article IX.

Upon dissolution of the corporation, the Board of Directors shall, after paying or making provisions for the payment of all liabilities of the corporation, dispose of all assets of the corporation exclusively for the purpose of the corporation in such manner, or to such organization or organizations organized and operated exclusively for charitable, religious, educational, or scientific purposes as shall at the time qualify as an exempt organization or organizations under Section 501c(3) of the Internal Revenue Code of 1954 (or the corresponding provisions of any future Internal Revenue Law), as the Board of Directors may determine.

Any such assets not so disposed of shall be disposed of by a State District Court of the State of Texas, of the county in which the principal office of which the corporation is then located, exclusively for such purposes or to such organization or organizations as said court shall determine, which are organized or operated exclusively for such purposes.

## Article X.

The internal affairs of the corporation shall be governed by by-laws, styled as a "Constitution," which shall be as adopted and amended from time to time, a copy of which will be on file with the Secretary of the corporation.

## Article XI.

This corporation shall be made up of local subdivisions called "camps," state

subdivisions called "divisions," and regional subdivisions called "departments." Divisions may specify a subdivision by groups of counties, parishes or boroughs called "brigades."

### Article XII.

Any camp or division of this corporation that independently incorporates must acknowledge in its Articles of incorporation and by-laws that it is a subdivision of the Sons of Confederate Veterans, Inc.

### Article XIII.

This Corporation vests in each member in good standing the right to one vote in the election of each of his camp's elected officers and one vote within his camp on any motion, resolution or constitutional amendment.

### Article XIV.

This Corporation vests in each member in good standing of a camp the right to vote for and be represented by, a delegate at his division convention or any annual (or special) meeting of the corporation, there being allowed one delegate for every ten (10) active members in good standing in the camp and one additional for a fraction thereof of five (5) or more; provided that every camp shall be entitled to at least two (2) delegates.

### Article XV.

At any division convention, annual meeting or special meeting of the corporation, proxy voting is specifically disallowed and  delegate voting shall conform to the bylaws and the non-profit corporation laws of the State of Texas.

### Article XVI.

Electronic voting for motions, amendments, resolutions or election of officers may be used at any division convention, annual or special meeting of the corporation so long as such voting system is capable of preserving individual ballots.

## Article XVII.

The corporation shall be governed by these articles and, where not inconsistent with these articles, the current Constitution of the Sons of Confederate Veteran, Inc., a Mississippi non-profit corporation, save that taking a "roll call" vote at an annual or special meeting of the corporation must be requested by at least ten percent (10%) of the delegates present. Before the 2006 annual meeting of the corporation, the Board of Directors shall present a new set of by-laws to govern the corporation that is not inconsistent with these articles. Copies of the proposed by-laws will be sent to the commander of each member camp in the corporation at least 30 days before the 2006 annual meeting of the corporation. Said by-laws may be adopted by a majority vote of the delegates at the 2006 annual meeting of the corporation. Subsequent amendments of the by-laws shall be submitted first to the Board of Directors, for their recommendation, at least 60 days before any annual meeting and 45 days before any special meeting of the corporation, with 30 days notice to each camp commander; and passage then requires a 2/3 vote of the delegates at any subsequent annual or special meeting of the corporation.

## Article XVIII.

The Board of Directors shall set initial annual dues and fees to be paid by members and the methods and times when such payments are due. Subsequent dues increases, methods and times of payment shall be recommended by the Board of Directors and approved by the delegates at any annual or special meeting of the corporation.

## Article XIX.

Any decision of the Board of Directors may be overturned by appealing to the next annual or special meeting of the corporation, where the delegates, by majority vote may confirm or overturn said decision.

## Article XX.

The name and address of the incorporator is:

Denne A. Sweeney
347 Ridgewood Drive
Ferris, TX 75125

The undersigned incorporator signs these Articles of Incorporation subject to the penalty imposed by Article 1396-9.03A of the Texas Non-Profit Corporation Act, for the submission of a false or fraudulent document.

Signed this _20ᵗʰ_ day of _JUNE_, 2005, by:

_Denne A. Sweeney_

DENNE A. SWEENEY



### INTERNATIONAL HEADQUARTERS
# Sons of Confederate Veterans
*"Historic Elm Springs"*

June 21, 2005

Texas Secretary of State
1019 Brazos Street
Austin, Texas 78701

Attn: Virginia
Per Fax: 512-463-7946

*RECEIVED*
*JUN 22 2005*
*Secretary of State*

Re: Incorporation of Sons of Confederate Veterans, Inc.

This letter is to authorize the Sons of Confederate Veterans, Inc. to use the term "Veterans" in their corporate name and charter pursuant to Vol. III, § 1302-3.01 of Vernon's Texas Statutes.

The Sons of Confederate Veterans was founded in 1896 by the United Confederate Veterans and is a Mississippi corporation chartered in 1916 and 1977, in existence since 1896, and is recognized as the official organization looking out for the care and welfare of the then surviving Confederate Veterans and their widows.

The Veteran's Administration looks to the Sons of Confederate Veterans for support and liaison in the care and upkeep of thousands of Confederate graves in VA and military cemeteries across the country. The SCV has also been recognized by Congress for this past work, and it is an approved Combined Federal Campaign charity, number 0887, for receipt of charitable donations from military and civilian employees of the federal government. There are over 2,793 members of the Sons of Confederate Veterans in the State of Texas who are organized into 68 subordinate units which are known as camps.

The international headquarters happily gives permission to the Texas Corporation, Sons of Confederate Veteran's to use Veterans in its name.

Please do not hesitate to call if I can provide further information.

Sincerely,

*Ben C. Sewell III*

Ben C. Sewell III
Lt Col. USA -retired
Executive Director

# ARTICLES OF MERGER

## PROVIDING FOR THE MERGER
### OF
### SONS OF CONFEDERATE VETERANS, INC.
### A NATIONAL CONFEDERATION
#### (a Mississippi non-profit corporation)
### INTO
### SONS OF CONFEDERATE VETERANS, INC.
#### (a Texas non-profit corporation)

FILED
In the Office of the
Secretary of State of Texas

JUL 2 5 2005

Corporations Section

Pursuant to the provisions of Article 5.04 of the Texas Non-Profit Corporation Act (the "TNPCA"), SONS OF CONFEDERATE VETERANS, INC., a Texas non-profit corporation ("Surviving Corporation"), and SONS OF CONFEDERATE VETERANS, INC., A NATIONAL CONFEDERATION, a Mississippi non-profit corporation ("Merging Corporation"), submit the following Articles of Merger for the purpose of effecting a merger of the Merging Corporation with and into the Surviving Corporation (the "Merger") in accordance with the provisions of Part Five of the TNPCA and do hereby certify:

1.    The name and the state of incorporation of each domestic or foreign corporation that is a party to the Agreement and Plan of Merger (the "Plan") are:

| Name of Corporation | Type of Entity | State of Incorporation |
|---|---|---|
| Sons of Confederate Veterans, Inc. | Nonprofit Corporation | Texas |
| Sons of Confederate Veterans, Inc., a National Confederation | Nonprofit Corporation | Mississippi |

2.    A copy of the Plan is attached hereto as **Exhibit A**.

3.    The Plan was approved and adopted in accordance with the provisions of Article 5.07 of the TNPCA.

4.    As to the Surviving Corporation, approval by the members was not required because although the Articles of Incorporation provide that the Surviving Corporation will have members, currently the Surviving Corporation does not have any members.  The Plan was approved by a majority of the members of the Board of Directors of the Surviving Corporation, at a meeting on June 15, 2005, duly called and constituted, at which a quorum was present.

5.    The approval of the Plan was duly authorized by all action required by the laws under which the Merging Corporation was incorporated and by its constituent documents.

## [THIS SPACE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the undersigned officers of the respective corporations have signed these Articles of Merger as of the 22ᴺᴰ day of _____July_____, 2005.

SONS OF CONFEDERATE VETERANS, INC., A NATIONAL
a Mississippi non-profit corporation          CONFEDERATION

By: _Denne A. Sweeny_
Name: _DENNE A. SWEENEY_
Title: _Commander in Chief_

SONS OF CONFEDERATE VETERANS, INC.,
a Texas non-profit corporation

By: _Denne A. Sweeny_
Name: _Denne A. Sweeney_
Title: _Chairman of the Board_

DEFS' APPX   94

EXHIBIT

A

## AGREEMENT AND PLAN OF MERGER

THIS AGREEMENT AND PLAN OF MERGER (this "Agreement") is executed by SONS OF CONFEDERATE VETERANS, INC., A NATIONAL CONFEDERATION, a Mississippi non-profit corporation (the "Non-Surviving Corporation"), and SONS OF CONFEDERATE VETERANS, INC., a Texas non-profit corporation (the "Surviving Corporation").

### RECITALS:

The respective Boards of Directors of the Non-Surviving Corporation and the Surviving Corporation deem it advisable for the Non-Surviving Corporation to merge with and into the Surviving Corporation (the "Merger") as authorized by the Mississippi Nonprofit Corporation Act ("Mississippi Act") and the Texas Non-Profit Corporation Act (the "Texas Act"), and on the terms set forth herein.

NOW, THEREFORE, in consideration of the promises and the mutual agreements, covenants and provisions herein contained, the parties hereto agree as follows:

### ARTICLE I

### THE MERGER

1.1    Merger.  At the Effective Time (as defined in Section 1.2), the Non-Surviving Corporation shall be merged with and into the Surviving Corporation, the separate existence of the Non-Surviving Corporation shall cease, and the Surviving Corporation, as the surviving corporation of such merger, shall continue to exist by virtue of and shall be governed by the laws of the State of Texas.

1.2    Effective Time of Merger.  On July 22, 2005, Articles of Merger setting forth the information required by, and otherwise in compliance with, the Mississippi Act shall be delivered for filing with the Secretary of State of the State of Mississippi; Articles of Merger setting forth the information required by, and otherwise in compliance with, the Texas Act shall be delivered for filing with the Secretary of State of the State of Texas; and the Merger shall become effective upon the later of (i) the date and at the time the Secretary of State of the State of Mississippi files the Articles of Merger with respect to the Merger, and (ii) the date and at the time the Secretary of State of the State of Texas issues a Certificate of Merger with respect to the Merger (the time of such effectiveness is herein called the "Effective Time").

1.3    Effect of Merger.  At the Effective Time, the Surviving Corporation without further action, as provided by the laws of the State of Mississippi and as provided by the laws of the State of Texas, shall succeed to and possess all the rights, privileges, and powers, of a public as well as of a private nature, of the Non-Surviving Corporation; all property, real, personal and mixed, and all debts due on whatsoever account, and all other causes in action, and all and every other interest, of or belonging to or due to the Non-Surviving Corporation, shall be deemed to be vested in the Surviving Corporation without further act or deed; and the title to any real estate, or any interest therein, vested in the Surviving Corporation or the Non-Surviving Corporation shall not revert or

be in any way impaired by reason of the Merger. Such transfer to and vesting in the Surviving Corporation shall be deemed to occur by operation of law and no consent or approval of any other person shall be required in connection with any such transfer or vesting unless such consent or approval is specifically required in the event of merger or consolidation by law or express provision in any contract, agreement, decree, order or other instrument to which the Surviving Corporation or the Non-Surviving Corporation is a party or by which any of them are bound. The Surviving Corporation shall thenceforth be responsible and liable for all debts, liabilities and duties of the Non-Surviving Corporation, which may be enforced against the Surviving Corporation to the same extent as if said debts, liabilities and duties had been incurred or contracted by it. Neither the rights of creditors nor any liens upon the property of the Surviving Corporation or the Non-Surviving Corporation shall be impaired by the Merger.

1.4    Articles of Incorporation.    The Articles of Incorporation of the Surviving Corporation, a copy of which is attached hereto as Exhibit A (the "Articles of Incorporation"), shall continue in full force and effect until amended or changed in the manner prescribed by the Texas Act.

1.5    Constitution. The Constitution of the Non-Surviving Corporation currently in effect, which is incorporated herein by reference a copy of which has been provided to the members previously, shall be the Constitution of the Surviving Corporation as of the Effective Time, to the extent that the Constitution does not conflict with the Articles of Incorporation of the Surviving Corporation. The Constitution shall continue in effect until the same shall thereafter be amended or repealed in accordance with the Texas Act, the Articles of Incorporation and the Constitution.

1.6    Officers. The officers of the Surviving Corporation who are serving as such at the Effective Time shall be the officers of the Surviving Corporation, as the surviving corporation, from and after the Effective Time, each such individual to serve until his or her successor has been duly elected or appointed and qualified or until his or her earlier death, resignation or removal in accordance with the Texas Act, the Surviving Corporation's Articles of Incorporation and its Constitution.

1.7    Directors. The directors of the Surviving Corporation who are serving as such immediately prior to the Effective Time shall be the directors of the Surviving Corporation, as the surviving corporation, from and after the Effective Time, each such individual to serve until his or her successor has been duly elected or appointed and qualified or until his or her earlier death, resignation or removal in accordance with law, the Surviving Corporation's Articles of Incorporation and its Constitution.

1.8    Members. At the Effective Time, the members of Non-Surviving Corporation shall be members of the Surviving Corporation on the terms and conditions provided in the Texas Act, the Articles of Incorporation and the Bylaws of the Surviving Corporation.

DEFS' APPX   96

## ARTICLE II

## MISCELLANEOUS

2.1     Counterparts.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which collectively shall constitute one and the same instrument.

2.2     Governing Law.  This Agreement shall be governed by, and construed in accordance with, the laws of the State of Texas.

2.3     Headings.  The article and section headings contained in this Agreement are inserted for convenience of reference only and shall not affect the meaning or interpretation of this Agreement.

2.4     Amendment.  This Merger Agreement may be amended in any manner (except that any of the principal terms may not be amended without the approval of the members of the Non-Surviving Corporation) as may be determined in the judgment of the respective Boards of Directors of the Non-Surviving Corporation and the Surviving Corporation to be necessary, desirable or expedient in order to clarify the intention of the parties hereto or to effect or facilitate the purpose and intent of this Merger Agreement.

## [THIS SPACE INTENTIONALLY LEFT BLANK]

DEFS' APPX   97

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the date or dates indicated below, to be effective as of the date first set forth above.

SONS OF CONFEDERATE VETERANS, INC.,
a Texas non-profit corporation

By: _Denne A. Sweeney_

Name: _Denne A. Sweeney_

Title: _Chairman of the Board_

Date: _July 22_, 2005

SONS OF CONFEDERATE VETERANS, INC., A NATIONAL
a Mississippi non-profit corporation                    CONFEDERATION,

By: _Denne A. Sweeney_

Name: _Denne A. Sweeney_

Title: _Commander in Chief_

Date: _July 22_, 2005

# EXHIBIT A TO AGREEMENT AND PLAN OF MERGER



FROM :                        FAX NO. :                        Jul. 24 2005 05:51PM  P1

Corporations Section                                                          Roger Williams
P.O.Box 13697                                                                Secretary of State
Austin, Texas 78711-3697



## Office of the Secretary of State

## CERTIFICATE OF INCORPORATION
## OF

### Sons of Confederate Veterans, Inc.
### Filing Number: 800509038

The undersigned, as Secretary of State of Texas, hereby certifies that Articles of Incorporation for the
above named corporation have been received in this office and have been found to conform to law.

Accordingly, the undersigned, as Secretary of State, and by virtue of the authority vested in the Secretary
by law, hereby issues this Certificate of Incorporation.

Issuance of this Certificate of Incorporation does not authorize the use of a name in this state in violation
of the rights of another under the federal Trademark Act of 1946, the Texas trademark law, the Assumed
Business or Professional Name Act, or the common law.

Dated: 06/21/2005

Effective: 06/21/2005



Roger Williams
Secretary of State

FROM :                          FAX NO. :                      Jul. 24 2005 05:52PM  P2

FILED
In the Office of the
Secretary of State of Texas

JUN 21 2005

## ARTICLES OF INCORPORATION

## SONS OF CONFEDERATE VETERANS, Inc.

Corporations Section

I, the undersigned natural person of the age of twenty-one (21) years or more, a citizen of the State of Texas, acting as an incorporator of a corporation under the Texas Non-Profit Corporation Act, do hereby adopt the following Articles of Incorporation for such corporation.

### Article I.

The name of the corporation is: **Sons of Confederate Veterans, Inc.**

### Article II.

The corporation is a non-profit corporation.

### Article III.

The period of the corporation's duration is perpetual.

### Article IV.

The purposes for which the corporation is organized is: **To vindicate and advance the Charge of Lt. General Stephen Dill Lee, C.S.A.** to current and succeeding generations; To promote interest in and perpetuate the memory of the Confederate States of America and of the soldiers, sailors and statesmen of the Confederate States; To cultivate the ties of fraternity among those whose venerated ancestors were veterans in the service of the Confederate States of America; and to perpetuate the ideals for which they struggled and suffered; To encourage the writing of accounts, narratives, memoirs, historic episodes and occurrences of the War Between the States; To gather authentic statistics, documents, reports, plans, maps and other materials for an impartial history of services rendered by the soldiers, sailors and statesmen of the Confederate States of America; To erect monuments over the graves of the Confederate veteran dead and to protect all existing monuments and graves; To educate the public to the precious Confederate

Articles of Incorporation: Sons of Confederate Veterans, Inc. page 2

history and heritage shared by all Americans and to advocate in the public forum on behalf of issues in the best interests of the membership and others with Confederate ancestry. To defend and promote the patriotic use of all Confederate symbols, especially the Confederate Battle flag and the Southern anthem "Dixie." This corporation may own land, hold property, both real and personal and borrow money and issue bonds, notes, mortgages or other securities or evidences of debt.

### Article V.

The street address of the initial registered office of the Corporation is 2017 Minnie Drive, Arlington, TX  76012 ; and the initial registered agent at such address is James W. Dark.

### Article VI.

The number of directors constituting the initial Board of Directors is three (3); and the names and addresses of the persons who are to serve as the initial directors are:

Denne A Sweeney
347 Ridgewood
Ferris, TX  75125

Christopher M. Sullivan
875 Altamont Rd
Greenville, SC  29609

James W. Dark
2017 Minnie Drive
Arlington, TX  76012

These directors shall serve until the first annual meeting in 2006 or until their successors are elected and qualified.  Other Directors may be added, as soon as elected or appointed, pursuant to the by-laws.

### Article VII.

The corporation will have members.

Articles of Incorporation: Sons of Confederate Veterans, Inc. page 3

## Article VIII.

The Sons of Confederate Veterans, Inc. shall function at all times as an organization which is eligible to be approved for exemption from federal income taxes and which is qualified to receive donations which are deductible by the donor for income tax purposes under § 501 (c) (3) of the Internal Revenue Code of 1954 (or the corresponding provision of any future United States Internal Revenue law). Said corporation is organized exclusively for charitable, religious, educational, or scientific purposes, including, for such purposes, the making of distributions to organizations that qualify as exempt organizations under Section 501c(3) of the Internal Revenue Code of 1954 (or the corresponding provisions of any future United States Internal Revenue Law).

## Article IX.

Upon dissolution of the corporation, the Board of Directors shall, after paying or making provisions for the payment of all liabilities of the corporation, dispose of all assets of the corporation exclusively for the purpose of the corporation in such manner, or to such organization or organizations organized and operated exclusively for charitable, religious, educational, or scientific purposes as shall at the time qualify as an exempt organization or organizations under Section 501c(3) of the Internal Revenue Code of 1954 (or the corresponding provisions of any future Internal Revenue Law), as the Board of Directors may determine.

Any such assets not so disposed of shall be disposed of by a State District Court of the State of Texas, of the county in which the principal office of which the corporation is then located, exclusively for such purposes or to such organization or organizations as said court shall determine, which are organized or operated exclusively for such purposes.

## Article X.

The internal affairs of the corporation shall be governed by by-laws, styled as a "Constitution," which shall be as adopted and amended from time to time, a copy of which will be on file with the Secretary of the corporation.

## Article XI.

This corporation shall be made up of local subdivisions called "camps," state

FROM :                              FAX NO. :                      Jul. 24 2005 05:53PM  P5

subdivisions called "divisions," and regional subdivisions called "departments." Divisions may specify a subdivision by groups of counties, parishes or boroughs called "brigades."

## Article XII.

Any camp or division of this corporation that independently incorporates must acknowledge in its Articles of incorporation and by-laws that it is a subdivision of the Sons of Confederate Veterans, Inc.

## Article XIII.

This Corporation vests in each member in good standing the right to one vote in the election of each of his camp's elected officers and one vote within his camp on any motion, resolution or constitutional amendment.

## Article XIV.

This Corporation vests in each member in good standing of a camp the right to vote for and be represented by, a delegate at his division convention or any annual (or special) meeting of the corporation, there being allowed one delegate for every ten (10) active members in good standing in the camp and one additional for a fraction thereof of five (5) or more; provided that every camp shall be entitled to at least two (2) delegates.

## Article XV.

At any division convention, annual meeting or special meeting of the corporation, proxy voting is specifically disallowed and  delegate voting shall conform to the bylaws and the non-profit corporation laws of the State of Texas.

## Article XVI.

Electronic voting for motions, amendments, resolutions or election of officers may be used at any division convention, annual or special meeting of the corporation so long as such voting system is capable of preserving individual ballots.

DEFS' APPX   104

Articles of Incorporation: Sons of Confederate Veterans, Inc. page 5

### Article XVII.

The corporation shall be governed by these articles and, where not inconsistent with these articles, the current Constitution of the Sons of Confederate Veteran, Inc., a Mississippi non-profit corporation, save that taking a "roll call" vote at an annual or special meeting of the corporation must be requested by at least ten percent (10%) of the delegates present.  Before the 2006 annual meeting of the corporation, the Board of Directors shall present a new set of by-laws to govern the corporation that is not inconsistent with these articles. Copies of the proposed by-laws will be sent to the commander of each member camp in the corporation at least 30 days before the 2006 annual meeting of the corporation. Said by-laws may be adopted by a majority vote of the delegates at the 2006 annual meeting of the corporation.  Subsequent amendments of the by-laws shall be submitted first to the Board of Directors, for their recommendation, at least 60 days before any annual meeting and 45 days before any special meeting of the corporation, with 30 days notice to each camp commander; and passage then requires a 2/3 vote of the delegates at any subsequent annual or special meeting of the corporation.

### Article XVIII.

The Board of Directors shall set initial annual dues and fees to be paid by members and the methods and times when such payments are due. Subsequent dues increases, methods and times of payment shall be recommended by the Board of Directors and approved by the delegates at any annual or special meeting of the corporation.

### Article XIX.

Any decision of the Board of Directors may be overturned by appealing to the next annual or special meeting of the corporation, where the delegates, by majority vote may confirm or overturn said decision.

### Article XX.

The name and address of the incorporator is:

Denne A. Sweeney
347 Ridgewood Drive
Ferris, TX 75125

Articles of Incorporation: Sons of Confederate Veterans, Inc. page 6

The undersigned incorporator signs these Articles of Incorporation subject to the penalty
imposed by Article 1396-9.03A of the Texas Non-Profit Corporation Act, for the submission of a
false or fraudulent document.

Signed this _____20th_____ day of _____JUNE_____, 2005, by:

_Denne G. Sweeney____

DENNE A. SWEENEY

05-102
(12-05/28)

3333

b.

a. T Code ■ 13196

This report MUST be filed to
satisfy franchise tax requirements

Do not write in the space above

c. Taxpayer identification number
3-20176-6697-8

d. Report year
2006

# TEXAS FRANCHISE TAX PUBLIC INFORMATION REPORT

Corporation name and address

SONS OF CONFEDERATE VETERANS INC
1614 SIDNEY BAKER ST
KERRVILLE TX 78028-2640

e. PIR / IND     1     4

Secretary of State file number or, if none,
Comptroller unchartered number

Item k on Franchise
Tax Report, Form 05-142
g. ■ 0800509038

Please mark through any incorrect information, and type or print the correct information.

The following information MUST be provided for the Secretary of State (SOS) by each corporation or
limited liability company that files a Texas Corporation Franchise Tax Report. Use additional sheets for
Sections A, B, and C, if necessary. The information will be available for public inspection.

○ Blacken this circle completely if there are currently no changes to the information preprinted in
Section A of this report. Then, complete Sections B and C.

**Please sign below!**   Officer and director
information is reported
as of the date a Public Information Report is
completed. The information is updated annually
as part of the franchise tax report. There is no
requirement or procedure for supplementing the
information as officers and directors change
throughout the year.

Corporation's principal office
740 MOORESVILLE PIKE COLUMBIA TN 38401

Principal place of business
COLUMBIA TN

**SECTION A.**   Name, title, and mailing address of each officer and director.

| NAME | TITLE | DIRECTOR | Term expiration (mm-dd-yyyy) |
|---|---|---|---|
| DENNE A SWEENEY | DIRECTOR | X YES | 07 31 2008 |
| MAILING ADDRESS   347 RIDGEWOOD FERRIS. TX 75125 | | | |
| CHRISTOPHER M SULLIVAN | DIRECTOR | X YES | 07 31 2008 |
| MAILING ADDRESS   PO BOX 50765 COLUMBIA SC 29250 | | | |
| MARK A. SIMPSON | DIRECTOR | X YES | 07 31 2008 |
| MAILING ADDRESS   105 WINTERBERRY CT SPARTANBURG SC 29301 | | | |
| NAME | TITLE | YES | Term expiration (mm-dd-yyyy) |
| MAILING ADDRESS | | | |
| NAME | TITLE | YES | Term expiration (mm-dd-yyyy) |
| MAILING ADDRESS | | | |

**SECTION B.**   List each corporation or limited liability company, if any, in which this reporting corporation or limited liability company owns an interest of ten
percent (10%) or more. Enter the information requested for each corporation or limited liability company.

| Name of owned (subsidiary) corporation or limited liability company | State of inc./organization | Texas SOS file number | Percentage interest |
|---|---|---|---|
| | | | |
| Name of owned (subsidiary) corporation or limited liability company | State of inc./organization | Texas SOS file number | Percentage interest |
| | | | |

**SECTION C.**   List each corporation or limited liability company, if any, that owns an interest of ten percent (10%) or more in this reporting corporation or limited
liability company. Enter the information requested for each corporation or limited liability company.

| Name of owning (parent) corporation or limited liability company | State of inc./organization | Texas SOS file number | Percentage interest |
|---|---|---|---|
| | | | DEFS' APPX   107 |

Registered agent and registered office currently on file. (See instructions if you need to make changes.)
Agent: NATIONAL REGISTERED AGENTS, INC.
Office: 1614 SIDNEY BAKER STREET
KERRVILLE, TX 78028

○ Blacken this circle if you need forms to change this
information. Changes can also be made on-line at
http://www.sos.state.tx.us/corp/sosda/index.shtml

I declare that the information in this document and any attachments is true and correct to the best of my knowledge and belief, as of the date below, and that a copy of this report has
been mailed to each person named in this report who is an officer or director and who is not currently employed by this, or a related, corporation or limited liability company.

sign here ► Officer, director, or other authorized person
Ben C. Sewell III

Title
EXECUTIVE DIRECTOR

Date
02 06 2007

Daytime phone (Area code and number)
(931) 380-1844 ext 207

FILED
In the Office of the
Secretary of State of Texas

FEB 14 2007

# RESTATED ARTICLES OF INCORPORATION
## SONS OF CONFEDERATE VETERANS, Inc.

### Article One

Corporations Section

Sons of Confederate Veterans, Inc., pursuant to the provisions of Article 4.06 of the Texas Non-Profit Corporation Act, hereby adopts Restated Articles of Incorporation which accurately copy the Articles of Incorporation and all corrections thereto that are in effect to date and this instrument contains no other change in any provision thereof.

### Article Two

The Articles of Incorporation and all corrections thereto are hereby superseded by the following Restated Articles of Incorporation, which accurately copy the entire text thereof and set forth:

I, the undersigned natural person of the age of twenty-one (21) years or more, a citizen of the State of Texas, acting as an incorporator of a corporation under the Texas Non-Profit Corporation Act do hereby adopt the following Articles of Incorporation for such corporation.

### Article I.

The name of the corporation is: Sons of Confederate Veterans, Inc.

### Article II.

The corporation is a non-profit corporation.

### Article III.

The period of the corporation's duration is perpetual.

### Article IV.

The organization is organized exclusively for charitable, educational and scientific purposes under section 501 (c) (3) of the Internal Revenue Code or corresponding section of any future federal tax code. To vindicate and advance the Charge of Lt. General Stephen Dill Lee, C.S.A. to current and succeeding generations; To promote interest in and perpetuate the memory of the Confederate States of America and of the soldiers, sailors and statesmen of the Confederate States; To cultivate the ties of fraternity among those whose venerated ancestors were veterans in the service of the Confederate States of America; and to perpetuate the ideals for which they struggled and suffered; To encourage the writing of accounts, narratives, memoirs, historic episodes and occurrences of the War Between the States; To gather authentic statistics, documents, reports, plans, maps and other materials for an impartial history of services rendered by

RECEIVED
FEB 14 2007
Secret-

the soldiers, sailors and statesmen of the Confederate States of America: To erect monuments over the graves of the Confederate veteran dead and to protect all existing monuments and graves; To educate the public to the precious Confederate history and heritage shared by all Americans and to advocate in the public forum on behalf of issues in the best interests of the membership and others with Confederate ancestry. To defend and promote the patriotic use of all Confederate symbols, especially the Confederate Battle flag and the Southern anthem "Dixie." This corporation may own land, hold property, both real and personal and borrow money and issue bonds, notes, mortgages or other securities or evidences of debt.

### Article V.

The street address of the registered office of the Corporation is 1614 Sidney Baker Street, Kerrville, Texas, 78028, and the registered agent at such address is National Registered Agents, Inc.

### Article VI.

The number of directors constituting the current Board of Directors is sixteen (16); and the names and addresses of the persons who are to serve as the current directors are:

Christopher M. Sullivan
875 Altamont Rd
Greenville, SC 29609

Ronald E. Casteel
1222b Duane Swift Pkwy
Jefferson City, MO   65109

Donald G Shelton
P.O. Box 807
Nicholasville, KY   40340

Mark Albert Simpson
105 Winterberry Ct
Spartanburg, SC   29301

Roy Burl McCoy
5964 Winchester Rd
Lexington, KY   40509

Dr. Cecil A. Fayard Jr
689 Harmony Rd
Duck Hill, MS   38925

Darryl Felton Starnes
7306 McClellan Rd
Mechanicsville, VA   23111

Robert Michael Givens
2698 Broad St
Beaufort, SC   29902

Bragdon R Bowling Jr
3019 Kensington Ave
Richmond, VA   23221

Charles Kelly Barrow
621 Forrest Ave
Griffin, GA   30224

Edward McNatt Butler
3575 Vista Circle
Cookeville, TN   38506

Luther William Norred
16526 Karen Road
Madera, CA   93638

Charles E McMichael
7734 W Lakeshore
Shreveport, LA 71107

Denne A. Sweeney
347 Ridgewood Dr
Ferris, TX   75125

R.G. Wilson
203 Siloam Rd
Easley, SC   29642

Edwin L. Deason
Po Box 94234
Oklahoma City, OK   73143

Article VII.

The corporation will have members.

Article VIII.

The Sons of Confederate Veterans, Inc. shall function at all times as an organization which is eligible to be approved for exemption from federal income taxes and which is qualified to receive donations which are deductible by the donor for income tax purposes under § 501 (c) (3) of the Internal Revenue Code of 1954 (or the corresponding provision of any future United States Internal Revenue law).

## Article IX.

Upon dissolution of the corporation, the Board of Directors shall, after paying or making provisions for the payment of all liabilities of the corporation, dispose of all assets of the corporation exclusively for the purpose of the corporation in such manner, or to such organization or organizations organized and operated exclusively for charitable, religious, educational, or scientific purposes as shall at the time qualify as an exempt organization or organizations under Section 501c(3) of the Internal Revenue Code of 1954 (or the corresponding provisions of any future Internal Revenue Law), as the Board of Directors may determine.

Any such assets not so disposed of shall be disposed of by a State District Court of the State of Texas, of the county in which the principal office of which the corporation is then located, exclusively for such purposes or to such organization or organizations as said court shall determine, which are organized or operated exclusively for such purposes.

## Article X.

The internal affairs of the corporation shall be governed by by-laws, styled as a "Constitution," which shall be as adopted and amended from time to time, a copy of which will be on file with the Secretary of the corporation.

## Article XI.

This corporation shall be made up of local subdivisions called "camps," state subdivisions called "divisions," and regional subdivisions called "departments." Divisions may specify a subdivision by groups of counties, parishes or boroughs called "brigades."

## Article XII.

Any camp or division of this corporation that independently incorporates must acknowledge in its Articles of incorporation and by-laws that it is a subdivision of the Sons of Confederate Veterans, Inc.

## Article XIII.

This Corporation vests in each member in good standing the right to one vote in the election of each of his camp's elected officers and one vote within his camp on any

motion, resolution or constitutional amendment.

## Article XIV.

This Corporation vests in each member in good standing of a camp the right to vote for and be represented by, a delegate at his division convention or any annual (or special) meeting of the corporation, there being allowed one delegate for every ten (10) active members in good standing in the camp and one additional for a fraction thereof of five (5) or more; provided that every camp shall be entitled to at least two (2) delegates.

## Article XV.

At any division convention, annual meeting or special meeting of the corporation, proxy voting is specifically disallowed and delegate voting shall conform to the bylaws and the nonprofit corporation laws of the State of Texas.

## Article XVI.

Electronic voting for motions, amendments, resolutions or election of officers may be used at any division convention, annual or special meeting of the corporation so long as such voting system is capable of preserving individual ballots.

## Article XVII.

The corporation shall be governed by these articles and, where not inconsistent with these articles, the current Constitution of the Sons of Confederate Veterans, Inc., a Mississippi nonprofit corporation, save that taking a "roll call" vote at an annual or special meeting of the corporation must be requested by at least ten percent (10%) of the delegates present. Before the 2006 annual meeting of the corporation, the Board of Directors shall present a new set of by-laws to govern the corporation that is not inconsistent with these articles. Copies of the proposed by-laws will be sent to the commander of each member camp in the corporation at least 30 days before the 2006 annual meeting of the corporation. Said by-laws may be adopted by a majority vote of the delegates at the 2006 annual meeting of the corporation. Subsequent amendments of the by-laws shall be submitted first to the Board of Directors, for their recommendation, at least 60 days before any annual meeting and 45 days before any special meeting of the corporation, with 30 days notice to each camp commander and passage then requires a 2/3 vote of the delegates at any subsequent annual or special meeting of the corporation.

## Article XVIII.

The Board of Directors shall set initial annual dues and fees to be paid by members and the methods and times when such payments are due. Subsequent dues increases, methods and times of payment shall be recommended by the Board of

Directors and approved by the delegates at any annual or special meeting of the corporation.

## Article XIX.

Any decision of the Board of Directors may be overturned by appealing to the next annual or special meeting of the corporation, where the delegates, by majority vote may confirm or overturn said decision.

## Article Three

The undersigned has signed these Restated Articles of Incorporation subject to the penalty imposed by Article 1396-9.03A of the Texas Non-Profit Corporation Act, for the submission of a false or fraudulent document.

Signed this 9th day of February, 2007, by:

R. Burl McCoy
Judge Advocate-in-Chief

**Form 403**
**(Revised 01/06)**

Return in duplicate to:
Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
512 463-5555
FAX: 512/463-5709
**Filing Fee: $15**

**THE STATE OF TEXAS**

**Certificate of Correction**

This space reserved for office use.

**FILED**
**In the Office of the**
**Secretary of State of Texas**

**JUL 16 2007**

**Corporations Section**

---

## Entity Information

The name of the filing entity is:

Sons of Confederate Veterans, Inc
_____

State the name of the entity as currently shown in the records of the secretary of state. If the certificate of correction
corrects the name of the entity, state the present name and not the name as it will be corrected.

The file number issued to the filing entity by the secretary of state is:  800509038

---

## Filing Instrument to be Corrected

The filing instrument to be corrected is : Articles of Incorporation
The *date the filing instrument was filed* with the secretary of state:  06/21/2005
                                                                          *mm/dd/yyyy*

## Identification of Errors and Corrections
(Indicate the errors that have been made by checking the appropriate box or boxes; then provide the corrected text.)

☐  The entity name is inaccurate or erroneously stated.  The corrected entity name is:

_____

☐  The registered agent name is inaccurate or erroneously stated.  The corrected registered agent
name is:
                            Corrected Registered Agent
                      (Complete either A or B, but not both.)

A. The registered agent is an organization (cannot be entity named above) by the name of:

_____

OR

B. The registered agent is an individual resident of the state whose name is:

_____

| *First* | | *Middle* | *Last Name* | | | *Suffix* |
|---------|--|----------|-------------|--|--|----------|

**RECEIVED**

**JUL 16 2007**

**Secretary of State**

☐ The registered office address is inaccurate or erroneously stated. The corrected registered office address is:

Corrected Registered Office Address

|  |  | TX | |
| --- | --- | --- | --- |
| Street Address (No P.O. Box) | City | State | Zip Code |

☐ The purpose of the entity is inaccurate or erroneously stated. The purpose is corrected to read as follows:

☑ The period of duration of the entity is inaccurate or erroneously stated.

The period of duration is corrected to read as follows:

See attached Exhibit 1

---

**Identification of Other Errors and Corrections**
(Indicate the other errors and corrections that have been made by checking and completing the appropriate box or boxes.)

---

☐ **Other errors and corrections**. The following inaccuracies and errors in the filing instrument are corrected as follows:

☐ **Add**   Each of the following provisions was omitted and should be added to the filing instrument. The identification or reference of each added provision and the full text of the provision is set forth below.

☑ **Alter**   The following identified provisions of the filing instrument contain inaccuracies or errors to be corrected. The full text of each corrected provision is set forth below:

See attached Exhibit 2

☐ **Delete**   Each of the provisions identified below was included in error and should be deleted.

Form 403

4

☐ **Defective Execution**   The filing instrument was defectively or erroneously signed, sealed, acknowledged or verified.   Attached is a correctly signed, sealed, acknowledged or verified instrument.

## Statement Regarding Correction

The filing instrument identified in this certificate was an inaccurate record of the event or transaction evidenced in the instrument, contained an inaccurate or erroneous statement, or was defectively or erroneously signed, sealed, acknowledged or verified.  This certificate of correction is submitted for the purpose of correcting the filing instrument.

## Effectiveness of Filing

After the secretary of state files the certificate of correction, the filing instrument is considered to have been corrected on the date the filing instrument was originally filed except as to persons adversely affected.  As to persons adversely affected by the correction, the filing instrument is considered to have been corrected on the date the certificate of correction is filed by the secretary of state.

## Execution

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument.

Date:   July 13, 2007

R. Burl McCoy, Judge Advocate-in-Chief

Signature and title of authorized person (see instructions)

Form 403                                             5

Article IV.

Said organization is organized exclusively for charitable, religious, educational, and scientific purposes, including, for such purposes, the making of distributions to organizations that qualify as exempt organizations under 501 (c) (3) of the Internal Revenue Code, or corresponding section of any future federal tax code.

EXHIBIT

1

## Article XVII

The corporation shall be governed by these articles and, where not inconsistent with these articles, the current Constitution of the Sons of Confederate Veterans, Inc., a Texas nonprofit corporation, save that taking a "roll call" vote at an annual or special meeting of the corporation must be requested y at least ten percent (10%) of the delegates present. Before the 2006 annual meeting of the corporation, the Board of Directors shall present a new set of by-laws to govern the corporation that is not inconsistent with these articles. Copies of the proposed by-laws will be sent to the commander of each member camp in the corporation at least 30 days before the 2006 annual meeting of the corporation. Said by-laws may be adopted by a majority vote of the delegates at the 2006 annual meeting of the corporation. Subsequent amendments of the by-laws shall be submitted first to the Board of Directors, for their recommendation, at least 60 days before any annual meeting and 45 days before any special meeting of the corporation, with 30 days notice to each camp commander and passage then requires a 2/3 vote of the delegates at any subsequent annual or special meeting of the corporation.

EXHIBIT

2

a. T Code ■ 13196

*This report MUST be filed to satisfy franchise tax requirements*

Do not write in the space above

# TEXAS FRANCHISE TAX PUBLIC INFORMATION REPORT

c. Taxpayer identification number ■ 3-20176-6697-8

d. Report year ■ 2007

Corporation name and address

SONS OF CONFEDERATE VETERANS INC
1614 SIDNEY BAKER ST
KERRVILLE TX 78028-2640

e. PIR / IND ☐ 1 ☐ 4

Secretary of State file number or, if none, Comptroller unchartered number

Item k on Franchise Tax Report, Form 05-142
g. ■ 0800509038

Please mark through any incorrect information, and type or print the correct information.

*The following information is required by Section 171.203 of the Tax Code for each corporation or limited liability company that files a Texas Corporation Franchise Tax Report. Use additional sheets for Sections A, B, and C, if necessary. The information will be available for public inspection.*

◯ Blacken this circle completely if there are currently no changes to the information preprinted in Section A of this report. Then, complete Sections B and C.

**Please sign below!** Officer and director information is reported as of the date a Public Information Report is completed. The information is updated annually as part of the franchise tax report. There is no requirement or procedure for supplementing the information as officers and directors change throughout the year.

Corporation's principal office
COLUMBIA TN

Principal place of business
740 MOORESVILLE PIKE COLUMBIA TN 38401

**SECTION A.** Name, title, and mailing address of each officer and director.

| NAME | TITLE | DIRECTOR | Term expiration (mm-dd-yyyy) |
|---|---|---|---|
| DENNE A SWEENEY | DIRECTOR | X YES | 07/31/2012 |
| MAILING ADDRESS 347 RIDGEWOOD FERRIS, TX 75125 | | | |
| CHRISTOPHER M SULLIVAN | DIRECTOR | X YES | 07/31/2014 |
| MAILING ADDRESS 875 ALTAMONT RD. GREENVILLE, SC 29609 | | | |
| JAMES W DARK | DIRECTOR | X YES | |
| MAILING ADDRESS 2017 MINNIE DRIVE ARLINGTON, TX 76012 | | | |
| MARK A. SIMPSON | DIRECTOR | X YES | 07/31/2010 |
| MAILING ADDRESS 105 WINTERBERRY CT SPARTANBURG SC 29301 | | | |
| NAME | TITLE | ☐ YES | |
| MAILING ADDRESS | | | |

**SECTION B.** List each corporation or limited liability company, if any, in which this reporting corporation or limited liability company owns an interest of ten percent (10%) or more. Enter the information requested for each corporation or limited liability company.

| Name of owned (subsidiary) corporation or limited liability company | State of inc./organization | Texas SOS file number | Percentage Interest |
|---|---|---|---|
| | | | |
| Name of owned (subsidiary) corporation or limited liability company | State of inc./organization | Texas SOS file number | Percentage Interest |
| | | | |

**SECTION C.** List each corporation or limited liability company, if any, that owns an interest of ten percent (10%) or more in this reporting corporation or limited liability company. Enter the information requested for each corporation or limited liability company.

| Name of owning (parent) corporation or limited liability company | State of inc./organization | Texas SOS file number | Percentage Interest |
|---|---|---|---|
| | | | DEFS' APPX 119 |

Registered agent and registered office currently on file. *(See instructions if you need to make changes.)*

Agent: NATIONAL REGISTERED AGENTS, INC.
Office: 1614 SIDNEY BAKER STREET
KERRVILLE, TX 78028

◯ Blacken this circle if you need forms to change the registered agent or registered office information.

I declare that the information in this document and any attachments is true and correct to the best of my knowledge and belief, as of the date below, and that a copy of this report has been mailed to each person named in this report who is an officer or director and who is not currently employed by this, or a related, corporation or limited liability company.

| sign here ▶ | Officer, director, or other authorized person Ben C. Sewell III | Title EXECUTIVE DIRECTOR | Date 8/20/2007 | Daytime phone (Area code and number) (931) 380-1844 |

0333494

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

| | |
|---|---|
| Hiram Patterson, Texas Division, Sons | ) |
| Of Confederate Veterans, Inc., | ) |
| Plaintiffs, | ) |
| v. | ) |
| Mike Rawlings, in His Official Capacity | ) |
| as Mayor of the City of Dallas, et. al., | ) |
| Defendants. | ) |

## DECLARATION OF ERIC RADWICK

I, Eric D. Radwick, declare and state as follows:

1. I am a Special Agent with the U.S. General Services Administration (GSA), Office of Inspector General (OIG). I have been employed in this capacity for over fifteen years. Since 2006, I have served as the OIG's national coordinator for matters involving artwork created through the various New Deal era federal art programs of the mid 1930's to early 1940's. These programs were funded through the Works Progress Administration (WPA), a predecessor of the GSA, and the ownership of much of the artwork created through the programs remains with the federal government through the GSA.

2. On approximately, September 11, 2017, I was contacted telephonically by Searcy Ferguson, a citizen who was concerned with the removal of the General Robert E. Lee statute from Dallas' Lee Park. He indicated that the base of statue may be federal property since it was funded through a grant with the Works Progress Administration (WPA). I then did some initial



research and was unable to substantiate that the base of the statute was federal property.
However, I was informed by Ferguson, that the Dallas Southern Memorial Association (DSMA)
had copies of the original documentation and agreements between the WPA, DSMA and the City
of Dallas.

3. On September 14, 2017, Patty Dye, a member of the DSMA, informed me that
Attorney David Vandenberg planned to file an injunction in federal court to stop the removal of
the statue of General Robert E. Lee in Dallas' Lee Park. Dye indicated that Vandenberg wanted
to speak with me and may have information regarding the documentation. Dye provided me
with Vandenberg's contact information.

4. On September 14, 2017, at or about 7:17 PM (Eastern Time), I telephonically
contacted Attorney David Vandenberg. Upon reaching Vandenberg, I identified myself as a
special agent with the GSA OIG. Vandenberg explained that he was filing an injunction to stop
the removal of the statue and asked if he could represent in the filing that GSA was contesting
ownership of the base. I advised Vandenberg that GSA was not contesting ownership, as
documentation could not establish federal ownership. I asked Vandenberg if he had the
documentation that I had discussed with Dye. He did not. Vandenberg asked if there was any
way GSA/GSA OIG could stop the City of Dallas from removing the statue. I informed
Vandenberg that since there was no claim of federal ownership, GSA OIG had no nexus or legal
standing to stop the City of Dallas from doing anything relating to the statue. Vandenberg asked
if he could represent that GSA IG was actively investigating and looking through federal records
to determine federal ownership. I told Vandenberg that the OIG was not actively investigating,
but if he had additional information, I would be happy to receive it and forward it on to GSA's
Office of the Chief Architect, Fine Arts Program (FAP) Office (the office within GSA that is

responsible for inventory of WPA artwork).  I informed Vandenberg that I had received notice from the FAP that GSA did not have documentation to establish a claim of federal ownership in the base of the statue and reiterated that as a result, we had no legal interest in the statue.  As I started to explain the intricacies of the various WPA programs and the processes the OIG and FAP go through to determine federal ownership, Vandenberg abruptly ended the conversation stating he did not have time for this.  He informed me he was at the statue site and had to go because there were jackhammers and other heavy equipment at the site and he had to do something.  The call with Vandenberg lasted approximately five minutes.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on September 22, 2017.

Eric D. Radwick
Assistant Special Agent in Charge
U.S. General Services Administration
Office of Inspector General
National Capital Region, Office of Investigations

Search billions of records on Ancestry.com
First Name | Last Name | Search

 Home

 Dallas History

 Cemetery Map

 Markers & Memorials

 Sources

 About Me

# Interactive Cemetery Map

Using the mouse, position your cursor over the map to locate the hot spots while watching for the hand icon to appear. (The hand icon will not appear in an area of the map where there is no hot spot.) Click a lot on the map to learn more about the people buried there.





EXHIBIT 15

Surnames Index

DEFS' APPX   123

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| RICHARD BREWER, JEAN CAROL LANE, TEXAS DIVISION SONS OF CONFEDERATE VETERANS, INC., | § § § § | No. SA:17–CV–837–DAE |
| Plaintiffs, | § § § | |
| vs. | § § | |
| RON NIRENBERG, ROBERTO TREVINO, WILLIAM SHAW, REBECCA VIAGRAN, REY SALDANA, SHIRLEY GONZALES, GREG BROCKHOUSE, ANA SANDOVAL, MANNY PALAEZ, JOHN COURAGE, CLAYTON PERRY, | § § § § § § § § § § § | |
| Defendants. | § § § | |

ORDER DENYING PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER WITH DIRECTION TO DEFENDANTS

Before the Court is Plaintiffs Richard Brewer, Jean Carol Lane, and

the Texas Division Sons of Confederate Veterans, Inc.'s ("Confederate Veterans")

(collectively, "Plaintiffs") Motion for Temporary Restraining Order ("TRO").

(Dkt. # 2.)  Plaintiffs' motion requests that the Court immediately restrain

Defendants—the Mayor of San Antonio, Texas, and ten members of the San

Antonio City Council—from removing a Confederate Monument ("the

Monument") located in Travis Park in downtown San Antonio.  (Id.)  A hearing



EXHIBIT
16

DEFS' APPX  124

was held on this matter on August 31, 2017.  At the hearing, Plaintiffs were

telephonically represented by Kirk David Lyons and in person by James Chapman.

Defendants were represented by Deborah Klein.

After careful consideration of the memoranda in support and in

Opposition to the motion, and the arguments of counsel at the hearing, the Court,

for the reasons that follow, **DENIES** the motion for a TRO **WITH DIRECTION**

**TO DEFENDANTS**.

## BACKGROUND

The Confederate Veterans is an organization dedicated to preserving

the memory of Americans who fought for the Confederacy during the Civil War.[1]

(See Dkt. # 1.)  According to the Confederate Veteran's website, its membership is

limited to male descendants of Confederate Veterans.  See

http://www.scv.org/new/.  Defendants are the Mayor and City Council members of

the City of San Antonio.  (Dkt. # 1 at 1–3.)

According to Plaintiffs, on July 31, 2017, City Councilmen Roberto

Trevino and William Shaw filed a memo with the City Council's governance

committee to request a full council vote to remove the Monument.  (Dkt. # 1 at 5.)

Plaintiffs assert that on August 31, 2017, today's date, the City Council will vote

on whether to remove the Monument.  (Id. at 6.)  Plaintiffs represent to the Court

---

[1] Although not clear from Plaintiffs' filings, the individual Plaintiffs are
presumably members of the Confederate Veterans.  (See Dkts. ## 1, 2.)

DEFS' APPX   125

that immediately after the vote, the City will remove the Monument. (Dkt. # 2 at

2.) On August 30, 2017, Plaintiffs filed suit against Defendants, alleging federal

claims under the First Amendment and for Due Process, as well as state law claims

for attempted trespass to land and for breach of an easement. (Dkt. # 1.) Plaintiffs

simultaneously filed the instant motion for TRO, asking the Court to immediately

restrain Defendants from removing the Monument.[2] (Dkt. # 2.) Defendants filed a

response in opposition on August 31, 2017. (Dkt. # 5.)

<u>LEGAL STANDARD</u>

Rule 65 of the Federal Rules of Civil Procedure provides that a district

court:

> may issue a temporary restraining order without written or oral notice to the
> adverse party or its attorney only if:
>
> > (A) specific facts in an affidavit or verified complaint clearly show
> > that immediate and irreparable injury, loss, or damage will result to
> > the movant before the adverse party can be heard in opposition; and
>
> > (B) the movant's attorney certifies in writing any efforts made to give
> > notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b).

In order to obtain injunctive relief, including a temporary restraining

order, a plaintiff must establish that (1) there is a substantial likelihood that the

---

[2] It should be noted that, as of the date of Plaintiffs' filing of their complaint and
motion for TRO, the City Council had not yet voted on the Monument's removal.
At the hearing, however, Defendants' counsel informed the Court that the City
Council had indeed voted to remove the Monument.

3

plaintiff will prevail on the merits; (2) there is a substantial threat that irreparable

harm will result if the injunction is not granted; (3) the threatened injury to the

plaintiff outweighs whatever damage the proposed injunctive relief would cause

the defendant; and (4) the granting of the injunction is not adverse to the public

interest.  Anderson v. Jackson, 556 F.3d 351, 360 (5th Cir. 2009) (quoting Canal

Auth. v. Callaway, 489 F.2d 567, 572 (5th Cir. 1974)).

## DISCUSSION

As an initial matter, the Court notes that Plaintiffs have not addressed

the issue of standing in this case.  Plaintiffs do not discuss this issue in their

pleadings or in the instant motion for injunctive relief.  (See Dkts. ## 1, 2.)  To the

extent they may assert standing as city taxpayers, they have not alleged any facts to

support suit in that narrowly proscribed capacity.  See Flast v. Cohen, 392 U.S. 83,

88 (1968).  However, even if Plaintiffs can demonstrate standing, they have not

established the elements necessary for the Court's issuance of a TRO.  Each of

these elements is addressed below.

A.    Substantial Likelihood of Success

To obtain a preliminary injunction, the movant must first show a

substantial likelihood of success on the merits.  Lindsay v. City of San Antonio,

821 F.2d 1103, 1107 (5th Cir. 1987).  While Plaintiffs have made several state law

4

claims[3] against Defendants, the crux of their request for a TRO is their claim that

removal of the Monument will abridge the political speech of the Monument, thus

resulting in a violation of Plaintiffs' free speech rights under the First Amendment.

(Dkt. # 2 at 3.)  Plaintiffs also make a vague claim for due process.  (Dkt. # 1 at 9.)

Plaintiffs' contentions are without merit.  The Supreme Court has held

that "the placement of a permanent monument in a public park is best viewed as a

form of government speech and is therefore not subject to scrutiny under the Free

Speech Clause."  Pleasant Grove v. City of Summun, 555 U.S. 460, 464 (2009).

The Court reasoned that, "[w]hen a government entity arranges for the construction

of a monument, it does so because it wishes to convey some thought or instill some

feeling in those who see the structure."  Id. at 470.  Indeed, "[g]overnments have

long used monuments to speak to the public."  Id.  Further, a government entity "is

entitled to say what it wishes" and "select the views that it wants to express."  Id. at

467–68.  "Therefore, the removal of the [M]onument[] is a form of government

speech and is exempt from First Amendment scrutiny."  Monumental Task

Comm., Inc. v. Foxx, 157 F. Supp. 3d 573, 594 (E.D. La. 2016), aff'd 678 F.

App'x 250 (5th Cir. 2017).  Accordingly, Plaintiffs cannot establish a substantial

---

[3] Plaintiffs have not made any showing, or for that matter, any argument in their motion for TRO, in support of their state law claims.  Therefore, Plaintiffs have not established a substantial likelihood of success on the merits of those claims.

5

likelihood of success on the merits of a claim based on free speech violations under

the First Amendment.

Additionally, Plaintiffs have not clearly alleged whether they are

asserting a claim for procedural due process or substantive due process from

Defendants' removal of the Monument.  (See Dkt. # 1 at 9–11.)  And, Plaintiffs'

motion for TRO does not address their likelihood of success on any due process

claim.  (See Dkt. # 2.)  In any event, the Court finds that Plaintiffs are not likely to

succeed on either a procedural or substantive due process claim.  Plaintiffs cannot

establish that they have any property interest in the Monument, thus failing to

establish a substantial likelihood of success on any claim for substantive due

process.  See Monumental Task Comm., 157 F. Supp. 3d at 597 (determining that

volunteer services or donations by organizations towards preserving monuments do

not support property interests in the monuments).  Likewise, Plaintiffs cannot

establish the likelihood of success on any claim for procedural due process,

especially where a vote to remove the Monument was held in an open city council

meeting.  And, as discussed, Plaintiffs cannot establish that they have a property

interest in the Monument sufficient to require constitutionally adequate procedural

due process.  See id. at 598.

6

Accordingly, Plaintiffs have failed to establish a likelihood of success of any of their claims sufficient to meet the first element of a TRO.[4]

B.     <u>Substantial Threat of Irreparable Harm</u>

As to the second element of a preliminary injunction, a plaintiff must demonstrate a substantial threat of irreparable harm if the injunction is not granted. <u>Lindsay</u>, 821 F.2d at 1107. In support of this element, Plaintiffs contend that the removal of the Monument will result in a loss of their First Amendment interests. (Dkt. # 2.) However, as discussed above, the Monument is a form of government speech and is exempt from First Amendment scrutiny. <u>See</u> <u>Monumental Task Comm.,</u> 157 F. Supp. 3d at 594. Accordingly, Plaintiffs cannot demonstrate a substantial threat of irreparable harm if the Monument is removed, and this element fails.

C.     <u>Balancing of Equities and Service of the Public Interest</u>

The third and fourth elements required for obtaining a preliminary injunction are whether the threatened injury to the movant of not granting the injunction outweighs any harm that may result to the non-movant from granting the injunction, and whether an injunction would harm the public interest. <u>Lindsay</u>, 821 F.2d at 1107. Because Plaintiffs have failed to demonstrate a likelihood of

---

[4] In any case, it does not appear that Plaintiffs have properly alleged a claim against city officials for First Amendment or due process violations; Plaintiffs' complaint fails to seek any relief pursuant to 42 U.S.C. § 1983 or the Fourteenth Amendment. (<u>See</u> Dkt. # 1.)

success, the Court need not weigh the relative harms to the parties or consider the

public interest.  See Monumental Task Comm., 157 F. Supp. 3d at 594.  The last

two elements fail.  Accordingly, "[b]ecause a preliminary injunction may only be

awarded upon a clear showing that the plaintiff is entitled to such relief," Barber v.

Bryant, 860 F.3d 345, 352 (5th Cir. 2017) (internal quotations and citation

omitted), the "denial of a preliminary injunction will be upheld where the movant

has failed sufficiently to establish *any one* of the four criteria." Black Fire Fighters

Ass'n v. City of Dall., 905 F.2d 63, 65 (5th Cir. 1990) (emphasis in original).

D.    Conclusion

Plaintiffs have failed to demonstrate or even allege standing for their

claims against Defendants.  Even if Plaintiffs have standing, they have not

established they are entitled to the extraordinary remedy of a TRO or other

injunctive relief.  Plaintiffs' motion is therefore denied.[5]

DIRECTION TO DEFENDANTS

At the hearing, Defendants indicated their intention of removing the

Monument in a manner that protects it from damage or from being defaced.  The

Court hereby **DIRECTS** that, should Defendants or their assigns remove the

Monument in question from its present location, that the removal of the Monument

---

[5] At the hearing, Plaintiffs' counsel announced Plaintiffs' intent to file an amended
complaint in this matter.  The Court, however—having only the original complaint
before it at this time—is unable to determine whether any defects in Plaintiffs'
pleadings, as noted above, can and will be cured by an amended pleading.

8

be carried out in such a manner as to preserve the integrity of the Monument; and

further, that the Monument be stored in a secure location in order to protect it from

damage or from being defaced pending resolution of this lawsuit or further order of

this Court.

CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiffs' Motion for

TRO, **WITH DIRECTION TO DEFENDANTS** as stated above, and for any

other injunctive relief other than as specifically noted herein.  (Dkt. # 2.)

**IT IS SO ORDERED.**

**DATED:** San Antonio, Texas, August 31, 2017.


_____

David Alan Ezra
Senior United States District Judge

9

## AFFIDAVIT

THE STATE OF TEXAS
COUNTY OF DALLAS

BEFORE ME, the undersigned authority, a notary public in and for the State of Texas, on this day appeared Ivan Kotcher, who is personally known to me, and who, after being duly sworn according to law, upon oath deposed and said:

"My name is Ivan Kotcher. I am a member of and the Secretary for the Dallas Lodge Number 44, Independent Order of Odd Fellows. I am competent to testify, I have personal knowledge of the matters stated herein, and they are true and correct.

Dallas Lodge Number 44 has been in continuous existence since 1854. In 1951, the Tannehill Lodge Number 52, Ancient Free and Accepted Masons and the Dallas Lodge Number 44 conveyed a portion of the property now known as Pioneer Park to the City of Dallas. The property was a cemetery that included the final resting place for members of Tannehill Lodge Number 52 and Dallas Lodge Number 44. The property was conveyed to the City of Dallas to be used as and maintained as a memorial cemetery park. Pioneer Park has been and continues to be used as memorial cemetery park and I am aware of no information that its use as a memorial cemetery park will change in the future.

The Dallas Lodge Number 44 has not transferred or conveyed any of its interests in Pioneer Park to the Texas Division, Sons of Confederate Veterans, Inc. or to anyone else.



EXHIBIT
17

AFFIDAVIT
Page 1 of 2

DEFS' APPX   133

IK ...014

Further, Affiant sayeth not."



Ivan Kotcher

SUBSCRIBED AND SWORN TO BEFORE ME, on this the 28th day of September

2017.

_____

Notary Public In And For The State Of Texas

LISA TATE PENNEY
Notary Public
STATE OF TEXAS
My Comm. Exp. 10-24-2018

**AFFIDAVIT**
**Page 2 of 2**