UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HIRAM PATTERSON; TEXAS DIVISION, SONS OF CONFEDERATE VETERANS, INC., | § § § § | |
| Plaintiffs, | § § | No. 3:17-CV-02361-D |
| v. | § § | |
| MIKE RAWLINGS, et al., | § § | |
| Defendants. | § | |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY
INJUCTION AND DECLARATORY JUDGMENT; AND
MOTION TO STRIKE AND OBJECTIONS TO PLAINTIFFS' EVIDENCE**

CITY ATTORNEY OF THE CITY OF DALLAS

Larry E. Casto
Dallas City Attorney

Stacy Jordan Rodriguez
Executive Assistant City Attorney
Texas Bar No. 11016750
stacy.rodriguez@dallascityhall.com
Charles Estee
Senior Assistant City Attorney
Texas Bar No. 06673600
charles.estee@dallascityhall.com
7DN Dallas City Hall
1500 Marilla Street
Dallas, Texas 75201
Telephone: 214-670-3519
Facsimile: 214-670-0622

ATTORNEYS FOR DEFENDANTS

# TABLE OF CONTENTS

I.  SUMMARY ........................................................................................................ 1

II.  FACTUAL BACKGROUND ............................................................................. 2

III.  STANDARDS FOR A PRELIMINARY INJUNCTION ................................. 3

IV.  PLAINTIFFS HAVE FAILED TO ESTABLISH A SUBSTANTIAL LIKELIHOOD
OF SUCCESS ON THE MERITS ................................................................................. 4

    A.  Plaintiffs have failed to establish a substantial likelihood of success of their
claim of an abridgment of free speech. ................................................................. 4

        1.  Plaintiffs failed to establish standing to assert any First Amendment
claim. ....................................................................................................... 4

        2.  Plaintiffs failed to establish standing to assert a quiet title claim ......... 6

        3.  Only a political question is presented ...................................................... 6

        4.  Only government speech is involved. ..................................................... 10

        5.  Plaintiffs' cases support denial of injunctive relief. ............................. 11

        6.  As government speech, removal of Confederate symbols does not
involve the First Amendment Free Speech Clause. ............................. 14

        7.  Even if government speech were not involved, no First Amendment
claims exist. ........................................................................................... 15

        8.  Plaintiffs are not entitled to enjoin prospective legislative action by
City Council. .......................................................................................... 16

    B.  Plaintiffs have failed to establish a substantial likelihood of success of their
claim to title of the Confederate Cemetery. ....................................................... 16

        1.  The City is the only owner of the Confederate Cemetery. ................... 16

        2.  Governmental immunity bars Plaintiffs attempt to assert title in City-
owned property. ..................................................................................... 19

        3.  Apart from no standing and no waiver of governmental immunity,
Plaintiffs failed to establish the elements of a quiet title action. ......... 21

V.  PLAINTIFFS HAVE FAILED TO ESTABLISH A SUBSTANTIAL THREAT THAT
THEY WILL SUFFER IRREPARABLE HARM ...................................................... 22

**VI.  PLAINTIFFS HAVE FAILED TO ESTABLISH THAT THE BALANCE OF HARMS FAVORS PLAINTIFFS AND THAT GRANTING THE PRELIMINARY INJUNCTION WILL NOT DISSERVE THE PUBLIC INTEREST** ............................................................... 23

**A.    Only the City and the public will be harmed by a preliminary injunction.** .. 23

**VII. PLAINTIFFS' OTHER UNSUPPORTED CLAIMS** ....................................................... 25

**VIII.  MOTION TO STRIKE AND OBJECTIONS TO PLAINTIFFS' EVIDENCE**......... 25

**IX.  CONCLUSION** ................................................................................................................. 26

## INDEX OF AUTHORITIES

**Cases**

*A.M. v. Cash*,
  585 F.3d 214 (5th Cir. 2009) .................................................. 7

*Allen v. Fluor Corporation*,
  No. 3:16-CV-1219-D, 2017 WL 2618821
  (N.D. Tex. June 15, 2017) ................................................ 6, 7, 8, 9

*Allen v. Wright*,
  468 U.S. 737 (1984)........................................................... 4

*Ash Grove Texas, L.P. v. City of Dallas*,
  No. 3:08-CV-2114-O. 2009 WL 3270821 (N.D. Tex. Oct. 09, 2009) .................................... 19

*Baxter v. CitiMortgage, Inc.*,
  No. 3:14–CV–1311–D, 2015 WL 1428572
  (N.D. Tex. March 30, 2015) ................................................. 21

*Board of Regents of Univ. of Wis. System v. Southworth*,
  529 U.S. 217 (2000).......................................................... 24

*Bray v. Fenves*,
  No. 06-15-00075-CV, 2016 WL 3083539
  (Tex. App.—Texarkana Mar. 24, 2016, pet. denied).................................................. 6

*Brewer v. Nirenberg,*
  Civil Action No. 17-CV-837-DAE (W.D. Tex.) .................................................... 1, 5

*Callan v. Fischer*,
  No.3:16-CV-734-TBR, 2017 WL 4273106 (W.D. Ky. Sept. 26, 2017).................................... 5

*Cameron County v. Tompkins*,
  422 S.W.3d 789 (Tex. App.—Corpus Christi 2013, pet. denied)........................................... 20

*Chacon v. Granata*,
  515 F.2d 922 (5th Cir. 1975) ........................................................... 16, 22

*Chiras v. Miller*,
  432 F.3d 606 (5th Cir. 2005) ............................................................ 14

*City of Dallas v. Dallas Consol. Street Rwy. Co.*,
  105 Tex. 337, 148 S.W. 292 (Tex. 1912) ................................................. 16

*City of Houston v. Houston Gulf Coast Bldg.*
  *& Constr. Trades Council*,
  697 S.W.2d 850 (Tex. App.—Houston [1st Dist.] 1985, writ denied))................................... 16

*Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.*,
  473 U.S. 788 (1985)......................................................................................................... 10

*Criterion Brock, Inc. v. Aguirre*,
  2011 WL 2517319 (S.D. Tex. June 23, 2011) ...................................................................... 22

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006)............................................................................................................. 7

*Dawson v. City of Grand Haven*,
  No. 329154, 2016 WL 7611556 (Mich. Ct. App.
  Dec. 29, 2016) (per curiam)................................................................................................ 11

*Elk Grove Unified Sch. Dist. v. Newdow*,
  542 U.S. 1 (2004)............................................................................................................ 5, 7

*Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*,
  762 F.2d 464 (5th Cir.1985) .............................................................................................. 22

*Exhibitors Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*,
  441 F.2d 560 (5th Cir. 1971) ............................................................................................... 3

*Fed. Election Commn v. Mass. Citizens for Life, Inc.*,
  479 U.S. 238 n. 9 (1986)..................................................................................................... 12

*Flast v. Cohen*,
  392 U.S. 83 (1968)............................................................................................................... 6

*Fontent v. McCraw*,
  777 F.3d 741 (5th Cir. 2015) ............................................................................................... 4

*Freedom from Religion Found., Inc. v. City of Warren, Mich.*,
  707 F.3d 686 (6th Cir. 2013) ............................................................................................. 14

*Gen. Servs. Comm'n v. Little-Tex Insulation Co.*,
  39 S.W.3d 591 (Tex. 2001)................................................................................................. 20

*Hawk v. Deutsche Bank Nat'l Trust Co.*,
  No. 3:15-CV-1784-D, 2015 WL 8164779 (N.D. Tex. Dec. 8, 2015)...................................... 21

*Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*,
  467 U.S. 51 (1984)............................................................................................................. 24

iv

*Holland Am. Ins. Co. v. Succession of Roy*,
  777 F.2d 992 (5th Cir.1985) ................................................................. 22

*Humana, Inc. v. Jacobson*,
  804 F.2d 1390 (5th Cir. 1986) .............................................................. 22

*Hurd v. BAC Home Loans Servicing, LP*,
  880 F. Supp. 2d 747 (N.D. Tex. 2012) ................................................. 21

*In re African-Am. Slave Descendants Litig.*,
  375 F. Supp. 2d 721 (N.D. Ill. 2005) *aff'd in part*
  *and rev'd in part,* 471 F.3d 754 (7th Cir. 2006) ..................................... 9

*In re Spiritas Ranch Enters., L.L.P.*,
  218 S.W.3d 887 (Tex. App. –Fort Worth 2007, no pet. h.)..................... 16

*Jatera Corp. v. U.S. Bank Nat'l Assoc.*,
  No. 3:16-CV-0242-K, 2017 WL 3917674
  (N.D. Tex. Sept. 7, 2017)........................................................................ 6

*Jones v. Bush*,
  122 F.Supp.2d 713 (N.D. Tex. 2000),
  *aff'd*, 244 F.3d 134 (5th Cir. 2000) (per curiam)..................................... 3

*Kaufman County v. Combs*,
  393 S.W.3d 336 (Tex. App.—Dallas 2012, pet. denied)......................... 20

*Lewis v. Casey*,
  518 U.S. 343 (1996)................................................................................. 7

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)................................................................................. 4

*Machete Production LLC v. Page*,
  809 F.3d 281 (5th Cir. 2015) ................................................................. 15

*Martinez v. Mathews*,
  544 F.2d 1233 (5th Cir.1976) ................................................................. 3

*Matal v. Tam*,
  137 S. Ct. 1744 (2017).................................................................... 10, 14

*Metcalf v. Deutsche Bank Nat'l Trust Co.*,
  No. 3:11-CV-3014-D, 2012 WL 2399369
  (N.D. Tex. June 26, 2012) ..................................................................... 21

*Miss. Power & Light*,
  760 F.2d at 621 ....................................................................................... 3

*Monumental Task Comm., Inc. v. Foxx*,
 157 F. Supp. 3d 573 (E.D. La. 2016), *aff'd*,
 678 F. App'x 250 (5th Cir. 2017) ..................................................................... 11

*Moore v Bryant*,
 853 F.3d 245 (5th Cir. 2017) ............................................................................ 5

*Nat'l. Endowment of Arts v. Finely*,
 524 U.S. 569 (1998) ............................................................................... 13, 15

*Newton v. LePage*,
 789 F.Supp.2d 172 (D. Me. 2011), *aff'd*,
 700 F.3d 595 (1st Cir. 2012) ........................................................................... 11

*Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*,
 734 F.3d 406 (5th Cir. 2013) ........................................................................... 24

*Pleasant Grove City v. Summum*,
 555 U.S. 460 (2009) ................................................................ 7, 10, 12, 14, 15

*Pulphus v. Ayers*,
 No. 17-310 (JDB), 2017 WL 1379316, (D.D.C. April 14, 2017) ................ 11, 23, 25

*R.A.V. v. City of St. Paul, Minn.*,
 505 U.S. 377 (1992) ....................................................................................... 13

*Raines v. Byrd*,
 521 U.S. 811 (1997) ......................................................................................... 4

*Regan v. Taxation with Representation of Washington*,
 461 U.S. 540 (1983) ................................................................................. 13, 14

*Robbins v. Amoco Prod. Co.*,
 952 F.2d 901 (5th Cir. 1992) ........................................................................... 22

*Rosenberger v. Rector & Visitors of the Univ. of Va.*,
 515 U.S. 819 (1995) ....................................................................................... 13

*Rust v. Sullivan*,
 550 U.S. 173 (1991) ....................................................................................... 12

*Simon & Schuster, Inc. v. Members of New York State Crime Victim Board*,
 502 U.S. 105 (1991) ................................................................................. 13, 14

*Tex. Ass'n of Bus. v. Tex. Air Control Bd.*,
 852 S.W.2d 440 (Tex. 1993) ........................................................................... 20

*Tex. Dep't of Parks & Wildlife v. Miranda*,
   133 S.W.3d 217 (Tex. 2004)..................................................................................... 19

*Tex. Parks and Wildlife Dep't v. Sawyer Trust*,
   354 S.W. 3d 384 (Tex. 2011).................................................................................... 20

*Texas Dep't of Transp. v. Jones*,
   8 S.W.3d 636 (Tex. 1999)) ....................................................................................... 20

*TRAVELHOST, Inc. v. Figg*,
   No. 3:11-CV-0455-D, 2011 WL 6009096
   (N. D. Tex. Nov. 22, 2011) ................................................................................. 22, 26

*United Veterans Mem'l & Patriots Ass'n of City of New Rochelle v.
   City of New Rochelle*,
   72 F. Supp. 3d 468 (S.D. N.Y. 2014) ....................................................................... 11

*Va. Ry. v. Sys. Fed'n No. 40*,
   300 U.S. 515 (1937)................................................................................................... 24

*Villareal v. Dallas County*,
   No. 3:11-CV-2233-F, 2011 WL 4851067
   (N.D. Tex. Sept. 29, 2011)........................................................................................ 16

*Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*,
   135 S. Ct. 2239 (2015)................................................................................... 10, 11, 14

*Williams v. Parker*,
   843 F.3d 617 (5th Cir. 2016) ...................................................................................... 5

**Rules**

N.D. Tex. Loc. R. 7.2(e) ................................................................................................ 25

Tex. Disciplinary Rules Prof'l Conduct R. 3.08........................................................... 26

**DEFENDANTS' RESPONSE TP PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND DECLARATORY RELIEF**

Defendants, Mike Rawlings, Scott Griggs, Adam Medrano, Casey Thomas II, Dwaine Caraway, Rickey Callahan, Omar Narvaez, Kevin Felder, Tennell Atkins, Mark Clayton, Adam McGough, Lee Kleinman, Sandy Greyson, Jennifer Gates, and Philip Kingston, all sued in their official capacities as Mayor and City Council Members of the City of Dallas, (collectively "Defendants") file this response to Plaintiffs' request for a preliminary injunction.[1]

## I.      SUMMARY

Plaintiffs, Hiram Patterson ("Patterson") and Texas Division, Sons of Confederate Veterans, Inc. ("TDSCV"), request a preliminary injunction.  (ECF No. 16).  Defendants have already moved to dismiss their complaint for lack of jurisdiction and a failure to state a claim. (ECF Nos. 18, 19, 20).  While labeled a brief in support of a motion for preliminary injunction; this brief appears to be a near identical version of the amended complaint.  (*Compare* ECF Nos. 10 and 16).   Plaintiffs apparently seek a preliminary injunction to exclude the City of Dallas ("the City") from a City-owned and maintained cemetery, to require the return of a City-owned statue to a City park, and to prevent the City from taking any future action regarding City-owned Confederate symbols at City parks.  As set forth in Defendants' motions to dismiss, Plaintiffs lack standing, only a political question is presented, and Plaintiffs have failed to state a claim.  (*See* ECF Nos. 18, 19, 20).  In terms of their request for a preliminary injunction, Plaintiffs offer no evidence and no authority to support a preliminary injunction and have failed to establish a single

---

[1] In their brief, Plaintiffs list Manny Pelaez as a defendant.  (ECF No. 16 at 7 [¶ 2]).  Mr. Palaez is a San Antonio council-member and a defendant in a different lawsuit brought by one of the Plaintiffs.  *See Brewer v. Nirenberg,* Civil Action No. 17-CV-837-DAE (W.D. Tex.), ECF No. 1 at 3 [¶ 12]).   Apparently, Plaintiffs failed to delete his name from their copied pleadings in that case.

1

element necessary for the granting of injunctive relief. Plaintiffs' request for a preliminary injunction should be denied.

## II.    FACTUAL BACKGROUND

There are only four factual matters relevant to Plaintiffs' request for a preliminary injunction and all other relief they seek. First, Plaintiffs do not and never have had any property or ownership interest in any City-owned property. (Defs.' Resp. App'x at 105-106). They do not have any property or ownership interest in any City-owned Confederate statues, memorials, monuments, plaques, signs, or other depictions. Specifically, they do not have any ownership or property interest in, the Confederate Cemetery or anything located there, Fair Park or anything located there, Lee Park, the Lee statue, or the Pioneer Cemetery Park or anything located there. Plaintiffs present no evidence to suggest otherwise. (*See* Pls.' App'x, ECF No. 16-1).

Second, Plaintiffs' freedom of speech has not been restricted. Plaintiffs present no evidence to suggest otherwise. (*See* Pls.' App'x, ECF No. 16-1).

Third, the Mayor of the City of Dallas has appointed a Task Force to consider whether to remove City-owned symbols of the Confederacy currently on City property and to rename streets and other public places named for Confederate figures. (Defs.' Resp. App'x at 1-4). The Task Force has prepared written recommendations. (Defs.' Resp. App'x at 92-95). The Task Force is currently scheduled to present its suggestions to the Dallas Cultural Affairs Commission on October 12, 2017. (Defs.' Resp. App'x at 90-91). The Commission in turn will make suggestions to the Dallas City Council. Assuming the Court does not intervene, the Dallas City Council will then decide what action, if any, will be taken. (Defs.' Resp. App'x at 12-13). Plaintiffs present no evidence to suggest otherwise. (*See* Pls.' App'x, ECF No. 16-1).

Fourth, the Dallas City Council, after a public council meeting, voted to remove the Alexander Phimister Proctor statue of Robert E. Lee formerly located at Lee Park (the "Lee

2

statue"). (Defs.' Resp. App'x at 13). The Lee statue was subsequently removed, without damage, from Lee Park and is safely stored. (Defs.' Resp. App'x at 41, 44). Assuming the Court does not intervene, the statue's ultimate disposition will be decided by City Council. Plaintiffs present no evidence to suggest otherwise. (*See* Pls.' App'x, ECF No. 16-1).

### III.   STANDARDS FOR A PRELIMINARY INJUNCTION

The purpose of a preliminary injunction is to preserve the status quo and thus prevent irreparable harm until the respective rights of the parties can be ascertained during a trial on the merits. *Exhibitors Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*, 441 F.2d 560, 560 (5th Cir. 1971). To obtain a preliminary injunction, Plaintiffs must establish: (1) a substantial likelihood that they will prevail on the merits; (2) a substantial threat that they will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to Plaintiffs outweighs the threatened harm the injunction may do to Defendants; and (4) that granting the preliminary injunction will not disserve the public interest. *Jones v. Bush*, 122 F.Supp.2d 713, 718 (N.D. Tex. 2000), *aff'd*, 244 F.3d 134 (5th Cir. 2000) (per curiam). The decision whether to grant a preliminary injunction is within the court's discretion, but it is an extraordinary remedy that should only be granted if the movant has clearly carried its burden. *Id.* "The decision to grant a preliminary injunction is to be treated as the exception rather than the rule." *Miss. Power & Light*, 760 F.2d at 621. In addition, preliminary injunctive relief that goes beyond simply maintaining the status quo is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party. *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir.1976).

## IV.   PLAINTIFFS HAVE FAILED TO ESTABLISH A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

### A. Plaintiffs have failed to establish a substantial likelihood of success of their claim of an abridgment of free speech.

#### 1.   Plaintiffs failed to establish standing to assert any First Amendment claim.

Initially, as set forth in Defendants' motion to dismiss, Plaintiffs lack standing to assert claims regarding the removal or the retention of Confederate symbols, statue, memorials, monuments, or names. A plaintiff must establish that it satisfies the standing requirements imposed by the "case" or "controversy" provision of Article III of the United States Constitution. U.S. Const., art. III; *Allen v. Wright*, 468 U.S. 737, 750-51, (1984). Under the case or controversy requirement, each plaintiff must establish that it has standing to sue. *Raines v. Byrd*, 521 U.S. 811, 818 (1997). Article III standing to sue requires that a plaintiff has suffered injury (a) to a legally protected interest that is actual or imminent, concrete and particularized; (b) that is fairly traceable to the challenged action of the defendant; and (c) that is redressable by the court. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). The court must evaluate standing for each claim. *Fontent v. McCraw*, 777 F.3d 741, 746 (5th Cir. 2015).

Defendants have located only one reference within Plaintiffs' brief to Plaintiffs regarding the First Amendment claim.   The statement makes the conclusory claim that removal of Confederate monuments "would impair plaintiffs' right to enjoy the disfavored political speech embodied in the Monuments that plaintiffs have promoted their entire lives an ancestral legacy." (ECF No. 16 at 21 [¶ 32]).[2]   Plaintiffs' offer no evidence to support the allegation and indeed offered no evidence regarding themselves.   Plaintiffs have failed to meet their burden to establish

---

[2] Plaintiffs never explain what the "disfavored political speech" or the "ancestral legacy" are.  It is unclear if Plaintiffs advance racism or white supremacy as the political speech and legacy because elsewhere they appear to argue that the Lee statue does not embody any political speech.  (ECF No. 16 at 17 [¶ 23]).

standing to assert any First Amendment claim.  *See Williams v. Parker,* 843 F.3d 617, 622-23 (5th Cir. 2016) (stating that "bare assertions" or "unadorned contentions" of violations of First Amendments rights are insufficient to confer standing).  *Callan v. Fischer*, No.3:16-CV-734-TBR, 2017 WL 4273106, *3-4 (W.D. Ky. Sept. 26, 2017) (holding plaintiff failed to demonstrate removal of Confederate monument caused him to suffer or would cause him to suffer an injury in fact or affect him in a personal and individual way and therefore lacked standing).

Additionally, Plaintiffs do not establish how their alleged injuries are different or distinct from the general public.  To the contrary, they repeat the claim that they filed "in the public interest."  (ECF No. 16 at 24 [¶ 37]).  In *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004), the Supreme Court held that prudential standing prevents courts from being called on to decide abstract questions of wide public significance when other government branches may be better suited to address those questions. In the cases involving removal of Confederate monuments or other statues or memorials, the courts have held such claims are generalized grievances and that the plaintiffs had no standing.  *See Moore v Bryant*, 853 F.3d 245 (5th Cir. 2017) (holding plaintiff lacked standing to complain about the presence of the Confederate battle flag as part of the state flag of Mississippi);  *Brewer v. Nirenberg*, No. SA:17-CV-837-DAE (W.D. Tex. Aug. 31, 2017) (copy attached as Defs.' Resp. App'x at 96-104) (rejecting taxpayer standing status to challenge removal of Confederate monument); *Callan v. Fischer*, 2017 WL 4273106, at *4 (holding plaintiff's complaint about removal of a Confederate monument was no more than a generalized grievance and failed to confer standing); *Bray v. Fenves*, No. 06-15-00075-CV, 2016 WL 3083539

(Tex. App.—Texarkana Mar. 24, 2016, pet. denied) (plaintiffs only had a generalized grievance concerning removal of confederate monuments).[3]

Since Plaintiffs have no standing to raise First Amendment claims, they have no probability of success on the merits.

### 2.   Plaintiffs failed to establish standing to assert a quiet title claim.

Plaintiffs apparently seek injunctive relief to prevent the City from entering the City-owned Confederate Cemetery.  (ECF No. 16 at 19-20).  Plaintiffs do not and never have had an ownership interest in the cemetery.  (Defs.' Resp. App'x at 45-52).  They offer no evidence to support their claim.  (Pls.' App'x, ECF No. 16-1).  Standing requires more than empty claims and Plaintiffs claim for injunctive relief to quiet title should be dismissed for lack of standing.  *Jatera Corp. v. U.S. Bank Nat'l Assoc.*, No. 3:16-CV-0242-K, 2017 WL 3917674, *3-4 (N.D. Tex. Sept. 7, 2017) (granting summary judgment against quiet title claim because of lack of standing based on plaintiff's failure to offer evidence of an interest in the property).

### 3.   Only a political question is presented.

The issue of what names, symbols, monuments, statues, or memorials are to be installed on or removed from a local government's property is a political question.  The political question doctrine implicates jurisdiction and forecloses as nonjusticiable actions which would improperly require judicial review of decisions exclusively within the purview of the political branches of government.  *Allen v. Fluor Corp.*, No. 3:16-CV-1219-D, 2017 WL 2618821, at *3 (N.D. Tex. June 15, 2017).  Whether a particular case raises a political question is to be determined by

---

[3] While Patterson alleged he was a resident and taxpayer of Dallas, Plaintiffs' brief makes no mention of his status and no evidence of his status was offered.  (*See* ECF Nos. 16, 16-1).  Even if shown, status as a taxpayer would not provide standing for Patterson. *See Flast v. Cohen*, 392 U.S. 83, 88 (1968).

considering six factors.  *Id*. All the factors support the conclusion that the issue is a political question.

The first factor is whether there is a textually demonstrable constitutional commitment of the issue to a coordinate political department.  *Id*., 2017 WL 2618821, at *3.  The placement or removal of monuments is government speech and the First Amendment Free Speech Clause is not applicable.  *See Pleasant Grove City v. Summum*, 555 U.S. 460, 464 (2009).  *Summum* and the related cases demonstrate a constitutional commitment of the issue to state and local legislatures and executives and not to the courts.  Likewise, the complaint involves a generalized grievance and the courts recognize that generalized grievances are better handled by the other branches of government.  *Elk Grove Unified Sch. Dist.*, 542 U.S. at 12.   Courts should avoid "undertaking tasks assigned to the political branches." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 353 (2006) (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996)).  This factor favors the conclusion that the issue is a political question.

The second factor is whether there is a lack of judicially discoverable and manageable standards for resolving the issue.   *Allen*, 2017 WL 2618821, at *3.  Defendants are aware of no discoverable and manageable judicial standard for resolving what names, symbols, monuments, statues, or memorials should be or not be used or continued to be used on government property.  Plaintiffs suggest none.  In the specific context of Confederate monuments, it is impossible for any court to balance the claims of those asserting the monuments honor a past heritage and those asserting the monuments are symbols of oppression and racism.[4]   Attempting to fashion a

---

[4] For example, in *A.M. v. Cash*, 585 F.3d 214, 222 (5th Cir. 2009), the court observed that some view the Confederate flag as a symbol of racism and intolerance regardless of whatever other meanings may be associated with it.  The court chronicled and quoted from other opinions that noted the Confederate flag was viewed as a symbol of heritage by some and by others as a symbol of white supremacy and racism by those that harbor a racial bias against African-Americans.  *Id*. at 222, n. 5.

manageable and sensible judicial standard would place an impossible burden on courts. This factor favors the conclusion that the issue is a political question.

The third factor is whether it is impossible to resolve the issue without an initial policy determination of a kind clearly for nonjudicial discretion. *Allen*, 2017 WL 2618821, at *3. Again, what names, symbols, monuments, statues, or memorials should be or not be used or continued to be used on government property is a nonjudicial policy question. The initial placement of the monuments and memorials was a nonjudicial policy determination. Whether some or all should remain is likewise a clearly nonjudicial, policy determination. If that were not the case, then courts could decree whose name should be on a building or whose statue should be placed in the city square. This factor favors the conclusion that the issue is a political question.

The fourth factor is whether it is impossible for a court to undertake an independent resolution without expressing a lack of the respect due the other branches of government. *Allen*, 2017 WL 2618821, at *3. Any resolution of the issue by a court would represent a disrespect and disregard of the local executive or legislative branch's decision whether to install or remove particular names, symbols, monuments, statues, or memorials from government-owned property. Here, the City has created a Task Force to make recommendations to a commission who will in turn provide suggestions to City Council. City Council will then decide what action, if any, should be taken. Public input has been and will be provided at each step. Any court action would be in contravention to this process. This factor favors the conclusion that the issue is a political question.

The fifth factor is whether there is an unusual need for unquestioning adherence to a political decision already made. *Allen*, 2017 WL 2618821, at *3. In the context of this issue, the courts should adhere to the political decision involving whether names, symbols, monuments, statues, or memorials should be preserved or removed. There is a vigorous political debate as to

8

state and local governments' continued use or display of Confederate names, symbols, or figures. The elected officials of the City made the decision to remove one statue and have sought public input through a task force and a commission before deciding what actions should be taken regarding other Confederate symbols. (Defs.' Resp. App'x at 11-13). The courts should adhere to the decisions of the elected officials. This factor favors the conclusion that the issue is a political question.

The final factor is whether there is the potential of embarrassment from multifarious pronouncements by various governmental entities and branches on one question. *Allen*, 2017 WL 2618821, at *3. There is the very real potential of differing decisions by state and local governments on the continued use or display of Confederate names, symbols, or figures. The Court may take judicial notice that certain governments have decided to remove them and others have decided to let them remain. The Task Force has recommended different treatment of different Confederate symbols. (Defs.' Resp. App'x at 92-95). Thus, City Council may reach different decisions as to particular monuments. The decision to remove Confederate symbols will be made by each state and local governments weighing the various political factors for each particular symbol at the particular time of the decisions. This factor favors the conclusion that the issue is a political question.

Only a political question is presented. *See In re African-Am. Slave Descendants Litig.*, 375 F. Supp. 2d 721, 754-66 (N.D. Ill. 2005) *aff'd in part and rev'd in part,* 471 F.3d 754 (7th Cir. 2006) (discussing standards for a political question). Since only a political question is raised, Plaintiffs have no probability of success on the merits.

**4.   Only government speech is involved.**

Plaintiffs have also failed to establish any violation of the First Amendment.  The first step in evaluating any First Amendment claims is to "decide whether [the activity at issue] is speech protected by the First Amendment, for, if it is not, [the court] need go no further."  *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.,* 473 U.S. 788, 797 (1985).  Here, only government speech is involved and the Court need go no further.

The Supreme Court recently explained and reiterated that government speech is not subject to First Amendment prohibitions on free speech.  The Court held:

> The First Amendment prohibits Congress and other government entities and actors from "abridging the freedom of speech"; the First Amendment does not say that Congress and other government entities must abridge their own ability to speak freely. And our cases recognize that "[t]he Free Speech Clause ... does not regulate government speech."
>
> …
>
> When a government entity embarks on a course of action, it necessarily takes a particular viewpoint and rejects others. The Free Speech Clause does not require government to maintain viewpoint neutrality when its officers and employees speak about that venture.

*Matal v. Tam*, 137 S. Ct. 1744, 1757 (2017) (citations omitted).  *See also Walker v. Tex. Div., Sons of Confederate Veterans, Inc*., 135 S. Ct. 2239, 2245 (2015) ("When government speaks, it is not barred by the Free Speech Clause from determining the content of what it says.")  *Summum,* 555 U.S. at  467-68 ("A government entity has the right to speak for itself. It is entitled to say what it wishes, and to select the views that it wants to express.").

The Supreme Court held that "the placement of a permanent monument in a public park is best viewed as a form of government speech and is therefore not subject to scrutiny under the Free Speech Clause." *Summum*, 555 U.S. at 464.  The Court reasoned that "[w]hen a government entity arranges for the construction of a monument, it does so because it wishes to convey some thought

or instill some feeling in those who see the structure." *Id.* at 470.  Indeed, "[g]overnments have long used monuments to speak to the public." *Id.*  Thus, whether a city installs or removes a monument, it is exercising its government speech. *Id.* at 481 (refusing to accept a donated monument was government speech); *Monumental Task Comm., Inc. v. Foxx*, 157 F. Supp. 3d 573, 594 (E.D. La. 2016), *aff'd*, 678 F. App'x 250 (5th Cir. 2017) (holding that the removal of a Confederate monument "is a form of government speech and is exempt from First Amendment scrutiny."). *See also Walker,* 135 S. Ct. 2239 (symbols on license plates were government speech and state was entitled to refuse and could not be forced to include Confederate battle flag on its license plates); *United Veterans Mem'l & Patriots Ass'n of City of New Rochelle v. City of New Rochelle*, 72 F. Supp. 3d 468 (S.D. N.Y. 2014) (city decision to remove Gadsden flag from city flagpole was government speech and did not implicate the First Amendment); *Newton v. LePage*, 789 F.Supp.2d 172 (D. Me. 2011), *aff'd,* 700 F.3d 595 (1st Cir. 2012) (removal of mural from state building was government speech); *Pulphus v. Ayers*, No. 17-310 (JDB), 2017 WL 1379316, *10 (D.D.C. April 14, 2017) (removal of painting originally placed in Capitol complex as part of art competition was not government speech); *Dawson v. City of Grand Haven*, No. 329154, 2016 WL 7611556 (Mich. Ct. App. Dec. 29, 2016) (per curiam) (city decision to prohibit previously allowed display of cross on city monument was government speech and removal did not implicate the First Amendment).  Plaintiffs seek to limit the City's viewpoint but the First Amendment imposes no such conditions on governments and does not grant such rights to Plaintiffs.

### 5.  Plaintiffs' cases support denial of injunctive relief.

In their brief, Plaintiffs appear to acknowledge that the placement or removal of a monument is government speech and not subject to the First Amendment.  (*See* ECF No. 16 at 11-

12 [¶ 12]).  However, Plaintiffs present confusing arguments that blend First Amendment concepts in an apparent attempt to avoid the holding of *Summum* and the effect of government speech.

They first contend, without authority, that there is an exemption to government speech "when government funds speech through subsidies to promote diversity" and elsewhere argue *Summum* did not inquire into subsidies in relation to government speech.  (ECF No. 16 at 12 [¶ 12], 14 [¶ 16, note 4]).  The *Summum* Court rejected such a contention when it observed that no one disputed the "obvious proposition that a monument that is commissioned and financed by a government body for placement on public land constitutes government speech."  *Summum*, 555 U.S. at 470.

Plaintiffs, citing *Rust v. Sullivan*, then contend that "[t]he U.S. Supreme Court in its first government-speech case took pains to acknowledge that the government may not discriminate against government-subsidized activities solely on the basis of viewpoint."  (ECF No. 16 at 12 [¶12]).  The holding in the case is contrary to Plaintiffs' claim.  Instead the Court held:

> The Government can, without violating the Constitution, selectively fund a program to encourage certain activities it believes to be in the public interest, without at the same time funding an alternative program which seeks to deal with the problem in another way.

*Rust v. Sullivan*, 550 U.S. 173, 193 (1991) (citations and quotation marks omitted).  The Court concluded that "Petitioners' assertions ultimately boil down to the position that if the government chooses to subsidize one protected right, it must subsidize analogous counterpart rights. But the Court has soundly rejected that proposition."  *Id*. at 194.  *See Fed. Election Commn v. Mass. Citizens for Life, Inc.,* 479 U.S. 238, 256 n. 9 (1986) ("[T]here is no right to have speech subsidized by the Government.").

Plaintiffs then make various statements about viewpoint restrictions and viewpoint discrimination under the First Amendment.  (ECF No. 16 at 12-19).  Plaintiffs first cite *R.A.V. v.*

*City of St. Paul, Minn.*, 505 U.S. 377 (1992).  This was not a government speech case and instead involved the constitutionality of an ordinance that prohibited the display of symbols that a person knows would arouse "anger, alarm, or resentment" of others based on a protected class.  The issue was content based discrimination of private speech.

Plaintiffs next cite *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819 (1995) and claim it involved "viewpoint discrimination in government speech in a limited public forum."  (ECF No. 16 at 13, 14 [¶¶ 14, 16]).  Again, this was not a government speech case and instead involved a university's refusal to provide funding based on the content of a student publication when the university provided funding for other student publications.  The issue was viewpoint discrimination of private speech.

 Plaintiffs then cite *Nat'l. Endowment of Arts v. Finely*, 524 U.S. 569 (1998) and claim it involved "viewpoint discrimination in government speech in a limited public forum."  (ECF No. 16 at 14 [¶ 16]).  Yet again this is not a government speech case.  Instead, the case involved the award of grants to private artists.  The court concluded that evaluating the award of grants to artists under the standard of ensuring artistic excellence and merit "taking into consideration general standards of decency and respect for the diverse beliefs and values of the American public" did not violate the First Amendment even though content review was required for the determination of the grant recipients.  *Finely*, 524 U.S. at 572, 588.

Plaintiffs also cite *Simon & Schuster, Inc. v. Members of New York State Crime Victim Board*, 502 U.S. 105 (1991) and *Regan v. Taxation with Representation of Washington*, 461 U.S. 540 (1983).   (ECF No. 16 at 15, 18 [¶¶ 18, 25]).  Once again neither case involved government speech.  *Simon & Schuster* involved the constitutionality of a statute requiring a criminal's income from works describing his or her crime be placed in escrow for victims.  *Regan* involved the denial

13

of non-profit status for income tax purposes because the plaintiff intended to engage in substantial lobbying activities.  The Court found that the issue was whether Congress was required to provide the plaintiff with public money with which to lobby and concluded "we hold that it is not."  *Id.,* *Regan,* 461 U.S. at 551.

None of the cases cited by Plaintiffs support their claim under the First Amendment because none involve government speech.

### 6.  As government speech, removal of Confederate symbols does not involve the First Amendment Free Speech Clause.

The central holding of all government speech cases is that the First Amendment Free Speech Clause does not apply and viewpoint discrimination analysis is inapplicable.  *Matal*, 137 S. Ct. at 1757 ("The Free Speech Clause does not require government to maintain viewpoint neutrality when its officers and employees speak"); *Walker*, 135 S. Ct. at 2253 ("And just as Texas cannot require SCV to convey 'the State's ideological message,' … SCV cannot force Texas to include a Confederate battle flag on its specialty license plates."); *Summum*, 555 U.S. at 467 ("The Free Speech Clause restricts government regulation of private speech; it does not regulate government speech."); *Chiras v. Miller*, 432 F.3d 606, 620 (5th Cir. 2005) ("the selection of textbooks by the state for use in public school classrooms is government speech, and is not subject to the forum analysis of *Hazelwood* [*Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260 (1988)] or the viewpoint neutrality requirement"); *Freedom from Religion Found., Inc. v. City of Warren, Mich.*, 707 F.3d 686, 690 (6th Cir. 2013) ("Because the display amounts to government speech and because the First Amendment does not prohibit a government from making content or viewpoint distinctions when it comes to its own speech, the City did not violate the Foundation's free-speech rights by refusing to add the Foundation's sign.").

14

In their brief, Plaintiffs make several allusions that the Confederate monuments were government funded and that this somehow alters the analysis.  (ECF No. 16 at 12, 13, 14-15, 16, 18-19 [¶¶ 12, 14, 17-18, 21, 26]).  The Lee statue was donated by the Dallas Southern Memorial Association and the Confederate Memorial in Pioneer Park was donated by the Daughters of the Confederacy.  (Defs.' Resp. App'x at 32-33, 109-110).  *Summum* involved a proposed donated monument.  Government speech applies regardless of the source of the funds.

Plaintiffs have no probability of success on the merits.

### 7.   Even if government speech were not involved, no First Amendment claims exist.

Even if City funds were involved and the City's actions were not evaluated as government speech, Plaintiffs claims remain defective and unsupported.  In *Machete Production LLC v. Page*, 809 F.3d 281 (5th Cir. 2015), the State of Texas refused to provide a grant to a production company under a film and television incentive program.  The production company sued claiming the denial of the grant violated the First Amendment based on viewpoint discrimination.  *Id*. at 289.  The Fifth Circuit affirmed the dismissal holding that the funding program did not violate the First Amendment as long as it did not silence speakers by expressly threatening censorship of ideas or introducing considerations which would effectively preclude or punish the expression of a particular view. *Id*. (citing *and quoting Finely*, 524 U.S. at 572).  The Fifth Circuit found the denial of funding had not effectively punished or precluded the production company from holding particular viewpoints or prevented it from engaging in protected First Amendment activities outside the scope of the incentive program.  *Id*. at 290.  The production company was free to engage in protected First Amendment activity without the benefit of the program and did in fact engage is such activity by making the film.  *Id.* at 289.

The same is true in the case at bar.  Plaintiffs have not been punished or precluded from holding a viewpoint.  They have not been silenced or prevented in any way from engaging in protected First Amendment activity including from holding and expressing any view related to Confederate symbols outside the scope of the City's Confederate symbols.  Defendants' actions are not limiting the First Amendment rights of Plaintiffs or anyone else.  Plaintiffs have failed to carry their burden of showing any First Amendment violation and lack any chance of success on the merits.

### 8.  Plaintiffs are not entitled to enjoin prospective legislative action by City Council.

In *Villareal v. Dallas County*, No. 3:11-CV-2233-F, 2011 WL 4851067, at *2-3 (N.D. Tex. Sept. 29, 2011), the court observed that generally injunctions against prospective ordinances are "unauthorized", "not available", or "strictly circumscribed".  *Id.* (citing and quoting *Chacon v. Granata*, 515 F.2d 922, 925 (5th Cir. 1975); *City of Dallas v. Dallas Consol. Street Rwy. Co.*, 105 Tex. 337, 343, 148 S.W. 292 (Tex. 1912); *In re Spiritas Ranch Enters., L.L.P.*, 218 S.W.3d 887, 900 (Tex. App. –Fort Worth 2007, no pet. h.); *City of Houston v. Houston Gulf Coast Bldg. & Constr. Trades Council*, 697 S.W.2d 850, 851–53 (Tex. App.—Houston [1st Dist.] 1985, writ denied)).  Plaintiffs seek a preliminary injunction to prevent the City Council from making prospective legislative determinations as to what to do with Confederate symbols.  Judicial deference to the prospective acts of legislative bodies should compel the Court to deny any injunctive relief and further render the likelihood of success improbable.  *Id.*

### B.  Plaintiffs have failed to establish a substantial likelihood of success of their claim to title of the Confederate Cemetery.

### 1.  The City is the only owner of the Confederate Cemetery.

Based on a question and answer sheet released by the Task Force, Plaintiffs assert that the Task Force "has published its title search of the Confederate Cemetery in favor of the United

Confederate Veterans", "the City admits it has no legal records of conveyance and no record of title"; "title should reside with the grantor, the Sons of Confederate Veterans"; "City title search has revealed that title rests in the Sons of Confederate Veterans and that an alleged conveyance of the cemetery never occurred"; and "the City's own title search in favor of SCV … should rest title in fee simple squarely in the SCV."  (ECF No. 16 at 19-20 [¶¶ 27-28, 30]).  Not a single statement is supported by evidence or is true.

Initially, the question and answer sheet does not include any of the admissions claimed by Plaintiffs.  It merely recited that a limited search of records within the Park and Recreation Department had been conducted, that a document reflecting the City's acceptance of the Confederate Cemetery had not been located, and that the search for the record was ongoing.  The actual question and answer exchange was:

> [Question]     What documentation is available regarding the City's ownership of Confederate Cemetery?
>
> [Response]     Staff researched the records of the Park and Recreation Department. In 1901, J. A. Crawford and  his wife Mattie sold six acres adjacent to Oakland Cemetery to Dallas County. In 1907, the Dallas County Commissioners Court set aside .75 acres of the tract for the burial of ex-Confederate soldiers "under the direction and the control of Sterling Price Camp [United Confederate Veterans] No. 31." In 1936 the Sterling Price Camp wrote to the Park and Recreation Department giving the cemetery to the Park and Recreation Department to operate and maintain. While there is mention in the board minutes of the Confederate Cemetery being given to the Park and Recreation Department on November 17, 1936, there is no official board action accepting this cemetery. Staff has reached out to Dallas County to determine if the county has any records pertaining to the transfer of the Confederate Cemetery to the Park and Recreation Department. Attached to this document is the 1907 deed [Attachment E].

(*See* Pls.' App'x at 2, ECF 16-1 at 2).  Plaintiffs' claims based on this document are untrue.

Additionally, the City has already provided to the Court copies of the recorded deed conveying the land to the City and the City resolution accepting the conveyance and are again

17

attached to the appendix supporting this response.  (Defs.' Resp. App'x at 45-49).  Again, the claim that there was no conveyance or acceptance is untrue.

As part of this claim, TDSCV asserts, without any evidence, that the previous owner was Sterling Price Camp Number 31, a unit of United Confederate Veterans, and that TDSCV is its successor.  (ECF No. 16 at 19-20 [¶¶ 27-30).  The contention fails in both regards.

First, Sterling Price Camp was never the owner of the Confederate Cemetery.  Plaintiffs rely on a statement from the questions and answer sheet that says Dallas County agreed that .75 acres of its property be "set aside" as a cemetery "under the direction and control of Sterling Camp [United Confederate Veterans] No. 31."  (Pls.' App'x at 2, ECF No. 16-1 at 2).  The "set aside" and allowing the property to be under Sterling Price Camp's direction and control did not convey any ownership interest in the property.  Ownership remained with Dallas County.  The Sterling Camp Number 31 would have no possible ownership interest to convey to any claimed successor.  Furthermore, the very evidence that Plaintiffs rely on states that Sterling Price Camp wrote to the Park Department giving the cemetery to the Park Department to operate and maintain.  (Pls.' App'x at 2, ECF No. 16-1 at 2).  Plaintiffs offer no evidence or argument disputing the existence of the letter or suggesting that the letter was insufficient to convey all of Sterling Price Camp's interests to the City.

Second, TDSCV is not the legal successor of any claimed legal rights of Sterling Price Camp.  Sterling Price Camp was incorporated in 1892.  (Defs.' Resp. App'x at 37-38, 85-89).  Sterling Price Camp's articles of incorporation provided for a twenty-five year existence that was never modified or extended and the entity ceased to exist in 1917.  (Defs.' Resp. App'x at 87).  Similarly, the United Confederate Veterans was organized in 1889 consisting of veterans of the Confederate forces.   Its last reunion was in 1951 and it too ceased to exist.   *See*

https://en.wikipedia.org/wiki/United_Confederate_Veterans. TDSCV was not formed until 2001 and none of its corporate filings suggest being a successor Sterling Price Camp Number 31 or to the United Confederate Veterans.  (Defs.' Resp. App'x at 73-84).

Finally, Plaintiffs contend that members of "the Sons of Confederate Veterans" have been regularly caring for the Confederate Cemetery for the last three years and that prior to this "basic park maintenance had apparently remained absent for decades" and therefore "evident abandonment of the cemetery, followed by restoration by SCV, should rest title in fee simple squarely in the SCV."  (ECF No. 16 at 20 [¶¶ 29, 30]).[5]  Initially, Plaintiffs offer no evidence to support any aspect of the claim.  (Pls.' App'x, ECF No. 16-1).  Second, the claim is that members performed the work and there is no claim that the work was performed on behalf or at the direction or control of TDSCV.  Finally, the City has performed the mowing, maintenance, and litter removal at the cemetery during the last three years and beyond.   (Defs.' Resp. App'x at 50-72). The City has not authorized or approved TDSCV performing any work, however well intended, at the Confederate Cemetery.  (Defs.' Resp. App'x at 51).

Plaintiffs' factual allegations are untrue and unsupported and Plaintiffs have no likelihood of success on the merits.

## 2.  Governmental immunity bars Plaintiffs attempt to assert title in City-owned property.

In Texas, governmental immunity deprives a trial court of subject-matter jurisdiction for lawsuits against the State or other governmental units unless the State consents to suit.  *Ash Grove Texas, L.P. v. City of Dallas*, No. 3:08-CV-2114-O. 2009 WL 3270821, *5 (N.D. Tex. Oct. 09, 2009) (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004) and

---

[5] Plaintiffs' use of the term "Sons of Confederate Veterans" is confusing.  As noted in the Defendants' motion to dismiss, there is another existing Texas corporation by that name.  (*See* ECF Nos. 19 at 7, note 6; 20 at 85-119).  It is not clear the allegation refers to member of Plaintiff TDSVC or the other entity.

*Texas Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999)).   To establish subject-matter jurisdiction against a governmental unit, a plaintiff must establish the legislature's consent to its lawsuit; otherwise, immunity from suit will deprive the trial court of subject-matter jurisdiction. *Jones*, 8 S.W.3d at 638.   For the waiver to be effective, a plaintiff must plead a constitutional or legislative waiver with facts that make the waiver applicable.   *See Gen. Servs. Comm'n v. Little-Tex Insulation Co*., 39 S.W.3d 591, 599 (Tex. 2001) (holding that the plaintiff had failed to allege facts to demonstrate a valid takings claim to invoke a waiver of immunity from suit); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993) (holding that the pleader must allege facts that affirmatively demonstrate the court's jurisdiction to hear the cause).   In addition, to establish a waiver of governmental immunity, the plaintiff must plead a valid claim.   *See Kaufman County v. Combs*, 393 S.W.3d 336, 345 (Tex. App.—Dallas 2012, pet. denied).

Governmental immunity bars claims seeking title of government property unless there is a valid waiver of immunity from suit.   *See Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W. 3d 384, 388-90 (Tex. 2011) (claims against governments' title in property barred by sovereign immunity); *Cameron County v. Tompkins*, 422 S.W.3d 789, 800-801 (Tex. App.—Corpus Christi 2013, pet. denied) (county official had co-extensive immunity with the county against plaintiffs' quiet-title and declaratory-judgment claims because the county officials were sued in their official capacity).   Plaintiffs did not allege and offered no evidence of any type of waiver of immunity. Also, Plaintiffs have not plead and cannot establish a valid claim.   Since there is no applicable waiver of sovereign immunity for their claim, Plaintiffs are not entitled to a preliminary injunction or any other relief regarding the City's ownership of the Confederate Cemetery.   Governmental immunity precludes all likelihood of success on the merits.

**3.   Apart from no standing and no waiver of governmental immunity, Plaintiffs failed to establish the elements of a quiet title action**.

Plaintiffs failed to meet their burden to establish a claim to quiet title in Plaintiff.  The elements for quiet title claims under Texas law are that: (1) plaintiff has an interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) the claim, although facially valid, is invalid or unenforceable.  *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 766-67 (N.D. Tex. 2012).  A plaintiff must establish right, title, or ownership in itself with sufficient certainty to enable the court to see that plaintiff has a right of ownership that will warrant judicial interference.  *Id*.  The plaintiff must recover on the strength of its own title, not on the weakness of its adversary's title.  *Id.   See also Metcalf v. Deutsche Bank Nat'l Trust Co*., No. 3:11-CV-3014-D, 2012 WL 2399369, at *7 (N.D. Tex. June 26, 2012).

Plaintiffs make only conclusory unsupported claims about the purported weakness of the City's title and offer no evidence to support their claim of ownership.  (ECF No. 16 at 19-20 [¶¶ 27-30]).   As detailed above, since 1936, title has and continues to reside with the City.  There is no possibility of success on Plaintiffs' claim of quiet title.  *Baxter v. CitiMortgage, Inc*., No. 3:14-CV-1311-D, 2015 WL 1428572 (N.D. Tex. March 30, 2015) (granting summary judgment against trespass and quiet title claims because plaintiff failed to create fact issue as to superior title).  *See also Hurd*, 880 F. Supp. 2d at 767 (dismissing quiet and trespass title claims pursuant to Rule 12(b)(6) because of a failure to plead facts to enable a reasonable inference of superior title to the property); *Hawk v. Deutsche Bank Nat'l Trust Co.*, No. 3:15-CV-1784-D, 2015 WL 8164779, at *4 (N.D. Tex. Dec. 8, 2015) (same).

Plaintiffs offered no evidence of any title in the Confederate Cemetery let alone superior title.  Texas law requires a plaintiff claiming title to real property to make an affirmative showing of superior title in one of three ways: (1) proof of adverse possession; (2) proof of a regular chain

of conveyances out of the sovereign; or (3) proof that it holds a superior title from a common source.  *Robbins v. Amoco Prod. Co.,* 952 F.2d 901, 905 (5th Cir. 1992).  Plaintiffs offered no evidence of title from a chain of conveyances or a common source or proof of adverse possession. (*See* Pls.' App'x, ECF 16-1).  Defendants disproved the claim.  (Defs.' Resp. App'x at 45-72).

Plaintiffs have no likelihood of success on the merits of their claim to quiet title.

## V.   PLAINTIFFS HAVE FAILED TO ESTABLISH A SUBSTANTIAL THREAT THAT THEY WILL SUFFER IRREPARABLE HARM

To establish a substantial threat of irreparable harm, Plaintiffs must demonstrate a significant threat of injury from the impending action, that the injury is imminent and irreparable, and that plaintiff has no other adequate remedy at law and money damages would not fully repair the harm.  *TRAVELHOST, Inc. v. Figg*, No. 3:11-CV-0455-D, 2011 WL 6009096, at *4, (N. D. Tex. Nov. 22, 2011) (quoting and citing *Humana, Inc. v. Jacobson*, 804 F.2d 1390, 1394 (5th Cir. 1986); *Criterion Brock, Inc. v. Aguirre*, 2011 WL 2517319, at *3 (S.D. Tex. June 23, 2011); *Chacon v. Granata*, 515 F.2d at 925)).  "Speculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant." *Id.* (*quoting Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir.1985)).  Clearly demonstrating irreparable harm is a heavy burden to overcome. *Id.* (citing *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir.1985)).

Plaintiffs offered no evidence regarding irreparable injury as to their First Amendment claim.  (*See* Pls.' App'x, ECF No. 16-1).  They only make conclusory claims of harm because they would no longer be able to enjoy Confederate monuments and symbols.  (ECF No. 16 at 21 [¶ 32]).    As previously explained, the removal of Confederate symbols is government speech and not subject to the restrictions of the Free Speech Clause.  Likewise, even if not government speech, the removal does not violate the First Amendment.   No harm is possible. *See Pulphus v. Ayers*,

2017 WL 1379316, at *11 (since removal of art was government speech, plaintiffs suffered no loss of First Amendment rights and could not demonstrate irreparable harm).  Plaintiffs have not presented any alternative basis for irreparable injury and have failed to prove this element.

Plaintiffs made no specific reference regarding irreparable injury as to their quiet title claim.  They offered no evidence of any injury.  (*See* Pls.' App'x, ECF No. 16-1).  They only allege that the City will be trespassing by entering the City's own land.  (ECF No. 16 at 22 [¶35]).  The conclusory claims are insufficient to satisfy Plaintiffs' burden.  Furthermore, as the evidence demonstrates, Plaintiffs have no ownership rights in City property and no harm occurs from the City entering its own property.  As with the First Amendment, Plaintiffs have not presented any alternative basis for irreparable injury and have failed to prove this element.

## VI.   PLAINTIFFS HAVE FAILED TO ESTABLISH THAT THE BALANCE OF HARMS FAVORS PLAINTIFFS AND THAT GRANTING THE PRELIMINARY INJUNCTION WILL NOT DISSERVE THE PUBLIC INTEREST

### A.  Only the City and the public will be harmed by a preliminary injunction.

Plaintiffs presented no evidence as to the two final factors for injunctive relief balance of harm and disservice of the public interest.  (*See* Pls.' App'x, ECF No. 16-1).  Plaintiffs conclusorily claimed that the balance favors them because they are suffering a trespass and denied a "dissenting political viewpoint communicated by the Monuments."  (ECF No. 16 at 22 [¶ 35]).  With theatrical overreach but without facts or law, they claimed injunctive relief would not be a disservice because it would prevent the City's control of political speech.  (*Id*. at 23 [¶36]).

As explained above, Plaintiffs are not the owners and have no legal interest in any City property and particularly they have no interest in the Confederate Cemetery.  The balance of harm and the public interest is best served by keeping interlopers out of public property.  Also, as explained above, the First Amendment is not implicated or involved in the decision to keep or remove Confederate symbols from City property.  The monuments themselves have no First

Amendment rights and Plaintiffs have failed to explain how their communication of a "dissenting political viewpoint" has been restricted or curtailed.

The issue of whether to remove, replace, or retain Confederate-era names, statues, and symbols is a political question properly resolved through a legislative decision. Elected officials exercising the authority and discretion granted to them by the citizenry are best suited to make those determinations. Those who disagree with political policy decisions can attempt to seek a different result through the ballot box. *See Board of Regents of Univ. of Wis. System v. Southworth*, 529 U.S. 217, 235 (2000) ("[W]hen the government speaks, for instance to promote its own policies or to advance a particular idea, it is, in the end, accountable to the electorate and the political process for its advocacy. If the citizenry objects, newly elected officials later could espouse some different or contrary position."). Granting an injunction would thwart the duly conducted legislative process of the City and its elected officials.

The policy of the City by its elected officials as reflected in the Resolution is "in itself a declaration of public interest and policy." *Va. Ry. v. Sys. Fed'n No. 40*, 300 U.S. 515, 552 (1937). If legislation is enjoined, the City "necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws." *Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2013). The City's harm merges with the public's harm. *Id.*, *see also Heckler v. Cmty. Health Servs. of Crawford Cmty., Inc.,* 467 U.S. 51, 60 (1984) (when government is unable to enforce its law, "the interest of the citizenry as a whole in obedience to the rule of law is undermined."). Finally, "the government action here is likely constitutional. Thus, the public interest in protecting First Amendment rights would not be vindicated by granting a preliminary injunction. Moreover, granting a preliminary injunction would harm the government by interfering with its ability to control the content of its own speech." *Pulphus v. Ayers*, 2017

WL 1379316, at *11.  The balance of harm and the public's interest require the denial of Plaintiffs'

request for a preliminary injunction.

## VII.    PLAINTIFFS' OTHER UNSUPPORTED CLAIMS

In their prayer, Plaintiffs request for a preliminary injunction against Defendants "that they

may not remove, obscure, alter, or destroy Confederate Monuments . . .  in Lee Park, Pioneer Plaza

Cemetery, Confederate Cemetery, Fair Park, or in any other location." (ECF No.16 at 24 [¶ 39(a)]).

As discussed above the only factual allegations concern the Lee statue and the Confederate

Cemetery.  No evidence or argument is presented as to the other locations.  The request must be

denied.

Also, in the prayer, Plaintiffs seek declaratory relief, "specific performance," permanent

injunction, quiet tittle, attorney fees, and costs.  (ECF No. 16 at 24-25 [¶ 39(b-g)]).  The requests

are not part of any possible requested preliminary injunction and no evidence or argument is

presented in support of these contentions.  Defendants have already addressed these claims in their

motion to dismiss and supporting brief.  (*See* ECF No. 19 at 20-21).  To the extent the claims are

part of a request for injunctive relief, the claims should be denied.

## VIII.   MOTION TO STRIKE AND OBJECTIONS TO PLAINTIFFS' EVIDENCE

Defendants object to and move to strike an affidavit supplied by Plaintiffs.  Plaintiffs

tendered the affidavit of one their attorneys in apparent support of Plaintiffs' request for a

preliminary injunction.   (ECF No. 16 at 27).[6]   Consisting of four sentences, the affidavit

(1) identifies the affiant, (2) vaguely states that the affiant is competent, (3) recites that the facts

stated within the brief are within the affiant's personal knowledge and true and correct, and (4)

states that the affiant has "been reading news articles, talking with witnesses, and reading

---

[6] Attaching the affidavit to the brief is contrary to the Court's instruction to file evidence in a separate appendix.  (*See* ECF No. 12 at 1-2, 3).  *See also* N.D. Tex. Loc. R. 7.2(e).

statements by parties in this matter." (*Id*.).  Defendants acknowledge that rules of evidence for a preliminary injunction are relaxed and less formal.  *See e.g. TRAVELHOST, Inc.*, 2011 WL 6009096, at *4 n. 7.  However, under any standard, the affidavit should not be regarded as competent or admissible evidence.  There is nothing to suggest personal knowledge.  To the contrary all information appears to be based solely on reading unidentified documents or talking to unidentified persons.  The statements are vague and conclusory.  No facts are specified.  Also, apart from a complete lack of evidentiary foundation or substance, counsel now appears to be claiming to be a witness in violation of Rule 3.08 of the Texas Disciplinary Rules of Professional Conduct.  Tex. Disciplinary Rules Prof'l Conduct R. 3.08.  The affidavit should be stricken and not considered in any regard in evaluating Plaintiffs' motion for a preliminary injunction.  However, with or without the affidavit, Plaintiffs are not entitled to relief.

## IX.    CONCLUSION

WHEREFORE, PREMISES CONSIDERED, the Defendants requests that the Court grant the motion to strike and further deny in whole, or alternatively in part, Plaintiffs' request for a preliminary injunction or any other requested relief, dismiss this action with prejudice as requested in the Defendants' motions to dismiss, and grant Defendants such other relief as the Court finds just.

Respectfully submitted,

CITY ATTORNEY OF THE CITY OF DALLAS

Larry E. Casto
Dallas City Attorney

*/s/  Charles S. Estee*
Stacy Jordan Rodriguez
Executive Assistant City Attorney
Texas Bar No. 11016750
stacy.rodriguez@dallascityhall.com
Charles Estee
Senior Assistant City Attorney
Texas Bar No. 06673600
charles.estee@dallascityhall.com
7DN Dallas City Hall
1500 Marilla Street
Dallas, Texas 75201
Telephone: 214-670-3519
Facsimile: 214-670-0622

## **CERTIFICATE OF SERVICE**

I certify that on the 12th day of October 2017, the foregoing document was served on counsel of record for Plaintiffs via the Court's electronic filing manager.

*/s/ Charles S. Estee*
Charles S. Estee