# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION

| | | |
|---|---|---|
| Hiram Patterson, Texas Division, Sons of Confederate Veterans, Inc., Plaintiffs, | § | |
| v. | § | |
| Mike Rawlings, In His Official Capacity as Mayor of the City of Dallas, and Scott Griggs, Adam Medrano, Casey Thomas, II, Dwaine Caraway, Rickey Callahan, Omar Narvaez, Kevin Felder, Tennell Atkins, Mark Clayton, Adam McGough, Lee Kleinman, Sandy Greyson, Jennifer Gates, Philip Kingston, In Their Official Capacities as Members of the Dallas City Council, Defendants. | § | Civil Action No. 3:17-CV-02361-D |

## PLAINTIFFS' REPLY BRIEF FOR MOTIONS FOR PRELIMINARY INJUNCTION & DECLARATORY JUDGMENT

/s/ KIRK DAVID LYONS
Texas Bar No. 12743500
P.O. Box 1235
Black Mountain, N.C. 28711
E-mail kdl@slrc-csa.org
Tel. (828) 669-5189
Fax (828) 575-5290

/s/ David D. Vandenberg
Mo. Bar No. 69873
Admitted to No. Dist. Tex.
3603D Las Colinas Drive
Austin, Texas 78731
davidvandenberg@hotmail.com
Tel. (512) 373-8694

ATTORNEYS FOR PLAINTIFFS

## TABLE OF CONTENTS

Index of Authorities....2
Cases....2
Statutes and Rules....4
Other Authorities....4
Parties....5
Facts....6
Argument....6
I. Resident-Taxpayer Plaintiff Has Standing, Because He Is Seeking to Enjoin the City from the Illegal Expenditure of Funds....6
II. Plaintiffs Have Standing, Because Plaintiffs Meet the Requirements for Standing under *Lujan*....7
III. Plaintiffs Present No Political Question, As Defined in *Baker*...16
IV. Plaintiffs Have Stated Claims with Sufficiency to Establish That the Court Can Provide Redress....20
Attorney's Fees....23
Prayer....23

## INDEX OF AUTHORITIES

### CASES

*Alco Gravure, Inc. v. Knapp Found.*,
479 N.E.2d 752 (N.Y. 1985)....11

*Allen v.* Wright,
468 U.S. 737 (1984)....7

*A.M. v. Cash*,
585 F.3d 214 (5th Cir. 2009)....17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....20, 22

*Baker v. Carr*,
369 U.S. 186 (1962)....18-20

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)....20, 22

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*,
508 U.S. 520 (1993)....8

*Commonwealth of Massachusetts v. Mellon*,
262 U.S. 447 (1923)....................................6, 17, 22

*Crampton v. Zabriskie*,
101 U.S. 601 (1879)....................................6, 22

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006)....................................7

*Elrod v. Burns*,
427 U.S. 347 (1976)....................................8, 13

*Flast v. Cohen*,
392 U.S. 83 (1968)....................................22

*Gray v. Saint Matthew's Cathedral Endowment Fund*,
544 S.W.2d 488 (Tex. App.—Texarkana 1976, no pet.)..................11, 12

*Henderson v. Stadler*,
287 F.3d 374 (5th Cir. 2002)....................................22-23

*Hooker v. Edes Home*,
579 A.2d 608 (D.C. 1990)....................................11

*Los Angeles v. Lyons*,
461 U.S. 95 (1983)....................................7

*Lujan v. Defenders of Wildlife*,
505 U.S. 555 (1992)....................................7-16

*Marbury v. Madison*,
5 U.S. 137 (1803)....................................18-20

*National Endowment of Arts v. Finley*,
524 U.S. 569 (1998)....................................14, 17

*Pleasant Grove City, Utah, v. Summum*,
555 U.S. 460 (2009)....................................8

*R.A.V. v. City of St. Paul, Minnesota*,
505 U.S. 377 (1992)....................................16-17

*Regan v. Taxation with Representation for Wash.*,
461 U.S. 540 (1983)....................................14

*Rosenberger v. Rector & Visitors of the University of Virginia*,
515 U.S. 819 (1995)........................................................................17

*Scott v. Sch. Bd. of Alachua County*,
324 F.3d 1246 (11th Cir. 2003)........................................................17

*Sierra Club v. Morton*,
405 U.S. 727 (1972)..........................................................................7

*Simon v. Eastern Kentucky Welfare Rights Org.*,
426 U.S. 26 (1976)...........................................................................7, 13

*Spokeo, Inc. v. Robins*,
578 U.S. _____ (2016)........................................................................8

*St. John's-St. Luke Evangelical Church v. National Bank*,
283 N.W.2d 852 (Mich. App. 1979).............................................11-12

*Three Expo Events, L.L.C. v. City of Dallas*,
No. 3:16-CV-0513-D, 2017 WL 1955527 (N. D. Tex. May 11, 2017)........8

*United States v. Blanding*,
250 F.3d 858 (4th Cir. 2001)...........................................................17

*Warth v. Seldin*,
422 U.S. 490 (1975)..........................................................................7

*Whitmore v. Arkansas*,
495 U.S. 149 (1990)..........................................................................7

STATUTES AND RULES

Federal Rule of Civil Procedure 8(b)(6).............................................21-22

Public Law 85-425...............................................................................9

28 U.S.C. § 1988................................................................................23

OTHER AUTHORITIES

*About Us*, SCVTEXAS.ORG,
http://www.scvtexas.org/What_Is_The_SCV.html........................14, 17

*Baylor L. Rev.*, Notes (1973).,,.............................................................11

Bogert, *The Law of Trusts and Trustees*, § 414, 344 (1964))........................11

*Dedication of the Lee Memorial: An Heroic Statue in Bronze Erected in Lee Park Dallas, Texas*, DALLASCULTURE.ORG, http://dallasculture.org/confederatemonuments/..................................14

*Home Page*, SCVTEXAS.ORG, http://www.scvtexas.org........................14, 17

*A Resolution of the City of Dallas Regarding Confederate Figures and Symbols*, DALLASCITYHALL.COM, http://dallascityhall.com/government/Council%20Meeting%20Documents/Agenda_090617.pdf........................................................13, 14

Rex Curry, *Dallas Removes Robert E. Lee's Statue from City Park*, REUTERS.COM (September 14, 2017, 9:39 p.m.), https://www.reuters.com/article/us-dallas-statue/dallas-removes-robert-e.-lees-statue-from-city-park-idUSKCN1BQ07Z..............................13

Tristan Hallman, *Dallas City Council Inundated with Scathing Messages, Threats over Lee Statue's Removal*, DALLASNEWS.COM (October 9, 2017), https://www.dallasnews.com/news/dallas-city-hall/2017/10/09/will-debate-confederate-monuments-affect-dallas-politics....................9, 14

## A. PARTIES

1. Plaintiffs are HIRAM PATTERSON and the TEXAS DIVISION, SONS of CONFEDERATE VETERANS, INC.

2. Defendants are MIKE RAWLINGS, in his official capacity as MAYOR of the CITY OF DALLAS, and SCOTT GRIGGS, ADAM MEDRANO, CASEY THOMAS, DWAINE CARAWAY, RICKY CALLAHAN, OMAR NARVAEZ, KEVEN FELDER, MANNY PELAEZ, TENNELL ATKINS, MARK CLAYTON, ADAM McGOUGH, LEE KLEINMAN, SANDY

GREYSON, JENNIFER GATES, and PHILIP KINGSTON, in their official capacities as DALLAS CITY COUNCIL MEMBERS.

## B. FACTS

3. Plaintiff, Hiram Patterson, is a citizen of the State of Texas, a resident taxpayer of Dallas, and a descendant of Confederate veterans.

4. Plaintiff, Texas Division, Sons of Confederate Veterans, Inc., is a non-profit corporation that is organized under the laws of the State of Texas.

5. Plaintiffs incorporate facts pled in their Brief for Motions for Preliminary Judgment and Declaratory Judgment by reference. 7-11.

## C. ARGUMENT

### I. RESIDENT-TAXPAYER PLAINTIFF HAS STANDING, BECAUSE HE IS SEEKING TO ENJOIN THE CITY FROM THE ILLEGAL EXPENDITURE OF CITY FUNDS.

6. The U.S. Supreme Court has ruled that resident taxpayers of a municipality have standing in federal court to challenge the municipality's illegal expenditure of funds. "Resident taxpayers may sue to enjoin an illegal use of the moneys of a municipal corporation." *Commonwealth of Massachusetts v. Mellon*, 262 U.S. 447, 486 (1923) (citing *Roberts v. Bradfield*, 12 App. D.C. 453, 459-60). "The interest of a taxpayer of a municipality in the application of its moneys is direct and immediate and the remedy by injunction to prevent their misuse is not inappropriate. It is upheld by a large number of state cases and is the rule of this court." *Mellon*, 262 U.S. at 486 (citing *Crampton v. Zabriskie*, 101 U.S. 601, 609 (1879)); *see also*

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 349 (2006).[1]

7. Hiram Patterson is a resident taxpayer of the City of Dallas. His address is 6148 Brandeis Lane, Dallas, Texas 75214. Mr. Patterson has been a resident taxpayer at this address since 2002. Since Mr. Patterson is a resident taxpayer in the City of Dallas and he has contested that the removal and planned removal of the Confederate Monuments is unconstitutional, Mr. Patterson has taxpayer standing in this matter. *DaimlerChrysler*, 547 U.S. at 349; *Mellon*, 262 U.S. at 486; *Crampton*, 101 U.S. at 609.

## II. PLAINTIFFS HAVE STANDING, BECAUSE PLAINTIFFS MEET THE REQUIREMENTS FOR STANDING UNDER *LUJAN*.

8. The U.S. Supreme Court has established a three-part test for standing. *Lujan v. Defenders of Wildlife*, 505 U.S. 555, 560-61 (1992).

> First, the plaintiff must have suffered an "an injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, *see* [*Allen v.* Wright, 468 U.S. 737, 756 (1984)]; *Warth v. Seldin*, 422 U.S. 490, 508 (1975); *Sierra Club v. Morton*, 405 U.S. 727, 740-41, n. 16 (1972); and (b) "actual or imminent," not "conjectural or hypothetical," *Whitmore* [*v. Arkansas*, 495 U.S. 149, 155 (1990)] (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). Second, there must be a causal connection between the injury and the conduct complained of—the injury as to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court." *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976). Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Id.* at 38, 42.

[1] The provision of an equitable remedy to a single resident taxpayer against a municipal corporation is similar to the relation between a stockholder and a private corporation. *Commonwealth of Massachusetts v. Mellon*, 262 U.S. 447, 487 (1923). The relations of a resident taxpayer to the federal government or a state government, however, are very different and do not admit standing. *Id.*

*Lujan*, 505 U.S. at 560-61; *see also Three Expo Events, L.L.C. v. City of Dallas*, No. 3:16-CV-0513-D, 2017 WL 1955527, at *2 (N. D. Tex. May 11, 2017).

9. A concrete injury-in-fact need not be merely tangible.[2] *Spokeo, Inc. v. Robins*, 578 U.S. ______ (2016) at II(B)(2) (citing *Pleasant Grove City, Utah, v. Summum*, 555 U.S. 460 (2009) (denial of free speech); *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993) (denial of free expression of religion)). "The loss of First Amendment interests were either threatened or in fact being impaired at the time relief was sought. The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Plaintiffs incorporate their Brief on Motion for Preliminary Judgment and Motion for Declaratory Judgment by reference, in particular to show that defendants' actions, past and future, have and will abridge plaintiffs' right to freedom of speech. Plaintiffs' Brief 11-19. Plaintiffs' constitutional injury is the injury-in-fact.

10. Plaintiffs have suffered an injury-in-fact that is concrete, because the City has removed Proctor's Lee and Young Soldier that communicated political viewpoint. *Lujan*, 505 U.S. at 560-61. Plaintiffs are in the position to suffer an imminent concrete injury, because the City is planning to remove the Confederate War Memorial in Pioneer

---

[2] Plaintiffs' attorney pled the elements of standing at the September 7, 2017, hearing, contrary to defendants' allegations that plaintiffs failed to allege an injury-in-fact, causation, and redressability. Defendants Brief 12.

Park Cemetery, the Confederate Memorial in Confederate Cemetery, and the Confederate public art in Fair Park. Tristan Hallman, *Dallas City Council Inundated with Scathing Messages, Threats over Lee Statue's Removal*, DALLASNEWS.COM (October 9, 2017), https://www.dallasnews.com/news/dallas-city-hall/2017/10/09/will-debate-confederate-monuments-affect-dallas-politics. These works of public art express a political viewpoint: that the men who fought for the Confederacy in the Civil War deserve our respect.[3] This political viewpoint extends to Congress, who recognized Confederate soldiers, sailors, and marines as American veterans, eligible to receive federal pensions and whose widows were eligible to receive federal veterans' survivor pensions. Public Law 85-425. https://www.gpo.gov/fdsys/pkg/STATUTE-72/pdf/STATUTE-72-Pg133.pdf.

11. This Congressional respect for Confederate-American veterans is the same political viewpoint that the members of the Sons of Confederate Veterans share individually and corporately. The Texas Division, Sons of the Confederate Veterans, posts the following message on its webpage, given in 1906 by Lt. Gen. Stephen D. Lee, CSA:

To you, Sons of Confederate Veterans, we will submit the

[3] Congress recognized Confederate soldiers, sailors, and marines as American veterans, eligible to receive federal pensions and whose widows were eligible to receive federal veterans' survivor pensions. Public Law 85-425.

> vindication of the cause for which we fought. To your strength will be given the defense of the Confederate soldier's good name, the guardianship of his history, the emulation of his virtues, and the perpetuation of those principles he loved. Remember, it is your duty to see that the true history of the South is presented to future generations.

*About Us*, SCVTEXAS.ORG (October 4, 2017), http://www.scvtexas.org/What_Is_The_SCV.html.

12. The purpose of the Texas Division, Sons of Confederate Veterans, Inc., is described on the association's website:

> We, the Sons of Confederate Veterans, having been commissioned by the Confederate Veterans themselves, retain our responsibility and right to adhere to the founding principles of the United States of America[,] remembering the bravery, defending the honor and protecting the memory of our beloved Confederate Veterans, which includes their memorials, images, symbols, monuments and gravesites for ourselves and future generations.

*Home Page*, SCVTEXAS.ORG (October 4, 2017), http://www.scvtexas.org/Home_Page.php.

13. The SCV's purpose is to protect Confederate-American memorials, images, symbols, monuments, and gravesites for the communication of the political viewpoint that Confederate-American heroes sacrificed for a noble cause that the victors in the war have almost uniformly whitewashed from history. Individual plaintiff, the SCV, and all SCV members have made public affirmations of the values of the military service of their ancestors in the Civil War and in the restoration and reconciliation of the nation subsequently. When the City of Dallas removed Proctor's Lee and is now threatening all other Confederate-American memorials and symbols in

the city, the City's actions established past and imminent concrete injury-in-fact to plaintiffs by the infringement of their political viewpoint communicated by the Monuments. *Lujan*, 505 U.S. at 560-61.

14. Plaintiffs have suffered an injury-in-fact that is particularized, because plaintiffs' injury is distinct from any effect on the general public. *Id.* In order for an injury to be particularized, it must effect "a small, easily identifiable group, as distinguished from the public generally." *Gray v. Saint Matthew's Cathedral Endowment Fund*, 544 S.W.2d 488, 491 (Tex. App.—Texarkana 1976, no pet.); *see Baylor L. Rev.*, Notes, 163 (1973). An example of the application of this rule involves an action over which parties have standing to enforce a charitable trust over a church.

> If a trust exists for the benefit of a definite local church, . . . the members and pewholders of that church have a rather certain definite interest in the enforcement of the trust. While the benefits will go to all the community . . . and also to the general public, it is practically sure that the members of the church will all of them obtain some advantage. It is therefore not surprising to find that a number of courts have allowed a church member or pewholder in such a case to sue to enforce the charity.

*Gray*, 544 S.W.2d at 491 (quoting Bogert, *The Law of Trusts and Trustees*, § 414, 344 (1964)).

Likewise, potential beneficiaries of a charitable trust would have standing to enforce trust terms, "if the class is sharply defined and its members limited in number." *Hooker v. Edes Home*, 579 A.2d 608, 614 (D.C. 1990) (citing *Alco Gravure, Inc. v. Knapp Found.*, 479 N.E.2d 752, 755 (N.Y. 1985); *St. John's-St. Luke Evangelical Church v. National Bank*, 283 N.W.2d 852, 858-60 (Mich.

App. 1979) (where class of beneficiaries not "uncertain and indefinite," standing should not be denied); *Gray*, 544 S.W.2d at 491 (problems of indentification and undue harassment are not present when class of persons to be benefited is small, identifiable group, distinguished from public generally)).

15. Members of the SCV are discrete and small in number. The Sons of Confederate Veterans is a small, easily identifiable group. *Gray*, 544 S.W.2d at 491. SCV membership averages 3,000 annually in a state population of around 27,500,000. The membership is easily identifiable. The membership rolls can be readily accessed and all individual members identified. Membership is restricted to men who can prove descent from Confederate-American veterans through independent genealogical research. Every member must show blood kinship with Confederate-American veterans, so that membership also carries a familial requirement in addition to the veteran's service requirement. Remarkably few men can meet these two requirements.

16. Plaintiff association and individual member suffered a particularized injury, even though the public was also affected by the Monument removal. The SCV and SCV members were uniquely injured, because plaintiffs have a dissenting political viewpoint that was communicated by Proctor's Lee. The removal of Confederate-American Monuments uniquely and particularly affects plaintiffs, because of plaintiffs'

unique ties through familial veterans' service to the dissenting political viewpoint expressed in the Monuments and which the City has impaired.

17. Plaintiffs' injury is actual and imminent, but not conjectural or hypothetical. *Lujan*, 505 U.S. at 560-61 (quoting *Simon*, 426 U.S. at 41-42). Plaintiffs' injury-in-fact is the City's removal of Proctors' Lee and Young Soldier on September 14, 2017. Rex Curry, *Dallas Removes Robert E. Lee's Statue from City Park*, REUTERS.COM (September 14, 2017, 9:39 p.m.), https://www.reuters.com/article/us-dallas-statue/dallas-removes- robert-e.-lees-statue-from-city-park-idUSKCN1BQ07Z. The City's removal of the Monument abridged plaintiffs' right to free speech. *Elrod*, 427 U.S. at 373. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Id.* Plaintiffs have a century-long purpose in the preservation of the Southern viewpoint relative to the Civil War and subsequent historic events that is expressed through the public art of the Dallas Confederate-American Monuments. The City removed Proctor's Lee expressly because the City decided to suppress the political viewpoint expressed by the Lee Monument. *A Resolution of the City of Dallas Regarding Confederate Figures and Symbols*, DALLASCITYHALL.COM, http://dallascityhall.com/government/Council%20Meeting%20Documents/Agenda_090617.pdf.

18. The City's suppression of the political viewpoint communicated in the Lee Monument injured plaintiffs, because the suppressed political

viewpoint is the same viewpoint that plaintiffs have long protected and promoted. *Home Page; About Us.* To be clear, the City has also imputed repugnant political viewpoints onto the Lee Monument's communication. *A Resolution.* The City's imputed political viewpoints are baseless in fact and are decidedly separate from the political viewpoints that the Lee Monument was erected to communicate. *Dedication of the Lee Memorial: An Heroic Statue in Bronze Erected in Lee Park Dallas, Texas*, DALLASCULTURE.ORG, http://dallasculture.org/confederatemonuments/. The City's imputation of erroneous political viewpoints onto and subsequent removal of Proctor's Lee are the two injuries-in-fact suffered by plaintiffs. The imputation of erroneous political viewpoint and the removal of the Lee Monument for the imputed viewpoint suppressed the diversity of political viewpoint in public art, subsidized by the City for diversity of political viewpoint and protected by plaintiffs for over a century. *National Endowment for the Arts v. Finley*, 524 U.S. 569, 613-14 (1998) (quoting *Regan v. Taxation with Representation for Wash.*, 461 U.S. 540, 548 (1983)).

19. Plaintiffs' imminent injuries-in-fact are of like kind to plaintiffs' on-going injuries-in-fact. The City has made plans to remove other Confederate-American Monuments. Tristan Hallman, *Dallas City Council Inundated.* The City's imminent plans will injure plaintiffs' free speech guarantees just as surely as the City's removal of Proctor's Lee already has, because the City's imminent plans will have the identical effect that the City's removal of

Proctor's Lee had: impairment of viewpoint and denial of free speech.

20. There is a causal connection between the suppression of political viewpoint in the Confederate-American Monuments that plaintiffs have long protected and the City's removal of the Proctor's Lee and the threatened removal of other Confederate-American Monuments. The suppression of free speech communicated by the Monuments has been and is being threatened by the City, who removed Proctor's Lee and has made plans and budgeted to remove the other Monuments. *A Resolution of the City of Dallas.* No other entity but the City has removed the Lee Monument. Since the City is the actual and sole cause for the removal of the Lee Monument and is the actual and sole cause of the threatened removal of the other Confederate-American Monuments, plaintiffs' injuries causally result from the City's conduct. *Lujan*, 505 U.S. at 560-61.

21. It is likely, as opposed to merely speculative, that plaintiffs' injury will be redressed by a favorable decision. Plaintiffs are requesting the Court enjoin defendants from further removing the Confederate-American Monuments and to replace Proctor's Lee and Young Soldier. The reinstallation of Proctor's Lee, a grant of preliminary injunction, a grant of permanent injunction, and a favorable order on declaratory judgments will secure the dissenting political viewpoint communicated by the Confederate-American Monuments from the City's removal of public art that is subsidized by the City to express diversity of viewpoint. The Court's ruling to enjoin the

City from removing and to replace subsidized public art and to maintain neutrality of viewpoint will restore plaintiffs' right to free speech. *Id.*

22. Plaintiff Hiram Patterson has taxpayer standing to sue to prevent the expenditure of municipal funds for an illegal purpose, because the requirements for taxpayer standing have been proven. All plaintiffs have standing to sue under the *Lujan* standard, because the elements for standing have been proven.

## III. PLAINTIFFS PRESENT NO POLITICAL QUESTION, AS DEFINED UNDER *BAKER*.

23. Defendants allege that plaintiffs' cause of action "requires judicial review of decisions exclusively within the purview of the political branches of government." Defendants' Brief 12-15. Defendants continue that the "issue of what names, symbols, monuments, statues, or memorials are to be installed on or removed from a local government is a political question." *Id.* at 13. This is misleading. Plaintiffs have not presented the question as to whether the City has authority over determining the meaning of the speech communicated by public works of art. Plaintiffs are presenting the question as to whether an exception to the government-speech doctrine exists where the City may not discriminate against political viewpoint in public art subsidized by the City to promote diversity of viewpoint.

24. U.S. Supreme Court precedent clearly sets limits to viewpoint discrimination in all types of speech: in unprotected speech, *R.A.V. v. City of St. Paul, Minnesota*, 505 U.S. 377, 383-84 (1992); in government speech in a

limited public forum, *Rosenberger v. Rector & Visitors of the University of Virginia*, 515 U.S. 819, 833 (1995); and in government speech in a government forum, where the government has subsidized public art in order to promote diversity of viewpoint, *National Endowment for the Arts*, 524 U.S. at 613-14.

25. Had plaintiffs requested the Court to determine the meaning of the political viewpoint expressed in Proctor's Lee or any of the other Confederate-American Monuments, this matter would have then become a political question. Defendants have misconstrued plaintiffs' pleadings.

26. The character of the speech communicated by Proctor's Lee is inherently private in nature. Each individual person has his own understanding of political symbols. *See A.M. v. Cash*, 585 F.3d 214, 222 n. 5 (5th Cir. 2009) (citing *Scott v. Sch. Bd. of Alachua County*, 324 F.3d 1246, 1249, 1249 (11th Cir. 2003); *United States v. Blanding*, 250 F.3d 858, 861 (4th Cir. 2001) (per curiam)). Plaintiffs have sworn to protect their own understanding of the Monument's political viewpoint, which differs from the City's. *About Us; Home Page*. This protection of political viewpoint is a private right that plaintiffs are asking the Court to enforce against the City. "It is only where the rights of persons or property are involved, and when such rights can be presented under some judicial form of proceedings, that courts of justice can interpose relief." *Mellon*, 262 U.S. at 484.

27. Plaintiffs' cause of action is not a political question, because the facts of the cause are not sufficient to establish a political question under the *Baker* doctrine.

> Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Baker v. Carr*, 369 U.S. 186, 217 (1962).

28. This cause does not make a textually demonstrable constitutional commitment of the issue to a coordinate political department. The question before the bar is whether the City may exercise viewpoint discrimination against public art subsidized by the City to express diversity of viewpoint and thereby infringe on plaintiffs' right to free speech, communicated through Confederate-American Monuments. The issue is not a request for the Court to determine the political meaning of Proctor's Lee or any work of public art. The question is properly before the Court, because determinations of the constitutionality of legislative branch actions are uniquely within the purview of the judiciary. "It is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. 137, 177 (1803). "So, if a law be in opposition to the Constitution, if both the law and

the Constitution apply to a particular case, so that the Court must either decide that case conformably to the law, disregarding the Constitution, or conformably to the Constitution, disregarding the law, the Court must determine which of these conflicting rules governs the case." *Id.*

29. This cause does not lack judicially discoverable and manageable standards for resolving it before the Court. Constitutional questions relative to legislative actions are within the unique purview of the judiciary and the expertise and case law to make the determination requested by plaintiffs resides firmly within this branch. *Id.* The Court and the judicial branch have a long history of resolving constitutional questions.

30. It is decidedly possible to decide this cause without an initial policy determination of a kind clearly for non-judicial discretion. The Court can decide this case without requiring a policy decision from a non-judicial source, because the Court has the unique power of deciding constitutional questions. *Id.*

31. It is decidedly possible for the Court to undertake independent resolution without expressing lack of the respect due coordinate branches of government. The Court will not express lack of respect due coordinate branches of government in deciding this case, because the Court has the unique power of deciding constitutional questions. *Id.*

32. No unusual need exists for unquestioning adherence to a political decision already made, because the Court has the unique power of deciding constitutional questions. *Id.*

33. No potentiality of embarrassment from multifarious pronouncements by various departments on plaintiffs' sole constitutional question obtains. The appellate process exists to harmonize disparate decisions without embarrassment were multifarious pronouncements to be made. *Id.* No decisions have been made on plaintiffs' claims, because this is a case of first impression.

34. None of the factors for the determination of a political question have been met under the *Baker* test. This strawman is not worth the straw it was built on. Therefore, this cause is not a political question and should not be dismissed for presenting a political question.

## IV. PLAINTIFFS HAVE STATED CLAIMS WITH SUFFICIENCY TO ESTABLISH THAT THE COURT CAN PROVIDE REDRESS.

35. Plaintiffs have more than sufficiently stated facts in their claim for relief that the cause is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 579 (2007). Plaintiffs' factual allegations have raised the right to relief above mere speculation. *Id.* Plaintiffs' claims are facially plausible, because plaintiffs have pled facts that allow the Court to draw a reasonable inference that defendants are liable for the alleged misconduct and plaintiffs are entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

36. Plaintiffs incorporate their Brief on Motion for Preliminary

Injunction and Motion for Declaratory Judgment herein by reference to support their sufficiency of pleading fact and law.

37. Defendants have not presented a response to plaintiffs' extensive pleading that the City violated plaintiffs' right to freedom of speech by removing Proctor's Lee and denying plaintiffs' interest in the dissenting viewpoint communicated in public art subsidized by the City to promote diversity of viewpoint. Defendants allege that plaintiffs have not stated any free-speech infringement effective against plaintiffs. Defendants' Brief 19-20. Defendants' conclusion is erroneous. Plaintiffs pled such an infringement at the September 7, 2017, hearing, as well as in plaintiffs' second amended complaint and in plaintiffs' brief. Hearing Transcript 4-22; Plaintiffs' Brief 11-20; Second Amended Complaint 11-19.

38. Defendants have made no response to plaintiffs' allegation that an exception exists in the government-speech doctrine for the protection of viewpoint in works of public art subsidized by the City to promote diversity of viewpoint. Federal Rule of Civil Procedure 8(b)(6) provides that "An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.". . . The Court required defendants provide a response brief in the Court's scheduling order of September 15, 2017. Order 2. Defendants have not responded to plaintiffs' extensive pleading on their constitutional injury-in-fact; therefore,

plaintiffs allegation of constitutional injury by defendants' conduct must be admitted. F. R. Civ. Pro. 8(b)(6).

39. The pleading standard under *Iqbal* and *Twombly* applies directly to complaints, but the Court should also apply the standard to responses. 556 U.S. at 678-79; 550 U.S. at 555. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause will not do.". . . *Twombly*, 550 U.S. at 555. Defendants' conclusion that plaintiffs have not pled injury-in-fact, contrary to the weight of evidence, and defendants' failure to respond to plaintiffs' allegations of injury-in-fact, should cause the Court to admit that plaintiffs have suffered a constitutional injury-in-fact, as per plaintiffs' extensive pleadings on this point.

40. Defendants cite several cases erroneously to assert that plaintiffs lack standing. As regards taxpayer standing, defendants cite a case in which a taxpayer sued the federal government to prevent an increase in taxes. *Flast v. Cohen*, 392 U.S. 83 (1968). *Flast* is distinguishable, because the taxpayer sued the federal government, not a municipality. Plaintiffs are suing the City for the illegal expenditure of funds, for which standing is conferred in federal court. *Mellon*, 262 U.S. at 486 (citing *Crampton*, 101 U.S. at 609). Equally maladroit was defendants' citation of a case in which a taxpayer sued the State of Louisiana to challenge the constitutionality of a state statute. *Henderson v. Stadler*, 287 F.3d 374 (5th Cir. 2002). *Henderson* does not

concern a taxpayer suit against a municipality, and it too is distinguishable and immaterial for the Court's decision.[4] Other cited cases are so irrelevant they need not be addressed.

41. Defendants' erroneous, irrelevant, and melodramatic posturing is a cowardly attempt to avoid the truth and distract the Court from the fact that defendants have failed to provide relevant case law and facts to support their case. Further, defendants wholly failed to respond to plaintiffs' allegations of a constitutional injury-in-fact. Defendants' lack of support derives from the fact that the case law and facts support plaintiffs' standing, that the case law and facts support plaintiffs' injuries at defendants' hands, and that the case law and facts show that defendants violated their own City policy to advance diversity of viewpoint by imputing false political viewpoints onto works of subsidized public art and then removing the public art at an expense that far exceeded City Council's public promise of the removal cost.

## E. ATTORNEYS' FEES AND COSTS

42. Plaintiffs are entitled to an award of attorney fees and costs under 28 U.S.C. § 1988.

## F. PRAYER

43. For these reasons, plaintiffs ask that the Court do the following:

---

[4] City Counsel assert that Plaintiffs' Counsel Vandenberg falsely reported Ms. Laura Ames' statements. Defendants' Brief 5. Mr. Vandenberg has e-mails confirming her statements to him that contradict the statements Ms. Ames made to City attorneys. City Counsel made additional false assertions relative to Special Agent Radwick's contact of Attorney Vandenberg. *Id.* at 8. Mr. Vandenberg has his call log, call records, and e-mail record to support his statements.

a. Rule that plaintiffs have standing and dismiss Defendants' Motion to Dismiss for Lack of Jurisdiction with prejudice;

b. Dismiss Defendants' Motion to Dismiss for Failure to State a Claim with prejudice;

c. Order specific performance that plaintiffs are to inspect Proctor's Lee;

d. Enter a preliminary injunction against defendants that they may not remove, obscure, alter, or destroy the Confederate-American Monuments and their dissenting political viewpoint in any manner in Lee Park, Pioneer Plaza Cemetery, Confederate Cemetery, Fair Park, or in any other location, to include Proctor's statue of Lee and Young Soldier and its plinth for the pendency of this suit;

e. Enter a declaratory judgment that defendants' action in removing Proctor's Lee and Young Soldier violated plaintiffs' constitutional right, guaranteed in the First Amendment to the U.S. Constitution, and that defendants' further contemplated actions of removal of other public art that expresses Confederate-American political viewpoints violates the same constitutional right;

f. Order specific performance against defendants that defendants must repair and replace Proctor's Lee and

Young Soldier Statue to its original and perpetual site in Lee Park;

g. Enter a permanent injunction against defendants that defendants must maintain and retain the Confederate-American Monuments and Symbols, already in their possession and as agreed upon by estoppel, in their original locations and in perpetuity;

h. Award reasonable attorney fees to plaintiffs;

i. Award costs of suit to plaintiffs; and,

j. Grant any other relief the Court deems appropriate.

Respectfully submitted this 12th day of October 2017.

/s/ KIRK DAVID LYONS
Texas Bar No. 12743500
P.O. Box 1235
Black Mountain, N.C. 28711
E-mail kdl@slrc-csa.org
Tel. (828) 669-5189
Fax (828) 575-5290

/s/ David D. Vandenberg
Mo. Bar No. 69873
Admitted to No. Dist. Tex.
3603D Las Colinas Drive
Austin, Texas 78731
davidvandenberg@hotmail.com
Tel. (512) 373-8694

## CERTIFICATE OF SERVICE

I certify that on October 12, 2017, a copy of Plaintiffs' Reply Brief on Motions for Declaratory Judgment and Preliminary Injunction was electronically filed on the CM/ECF system, which will automatically serve a Notice of Electronic Filing on the following attorney in charge for defendants, Mike Rawlings, et al.

Charles S. Estee
Office of the City Attorney

1500 Marilla Street
Dallas, Texas 75201
Tel. (214) 670-3519
charles.estee@dallascityhall.com

/s/ David D. Vandenberg