UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HIRAM PATTERSON; TEXAS DIVISION, SONS OF CONFEDERATE VETERANS, INC., | § § § § | |
| Plaintiffs, | § § | No. 3:17-CV-02361-D |
| v. | § § | |
| MIKE RAWLINGS, et al., | § § § | |
| Defendants. | § | |

### DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS

Now come Defendants, sued in their official capacities as Mayor and City Council Members of the City of Dallas, (collectively "Defendants") and file their reply to Plaintiffs' response Defendants' motions to dismiss (ECF No. 24).[1]

### I.   Plaintiffs' Confusion

Plaintiffs' filing, ECF No. 24, is titled a reply to Defendants' response to Plaintiffs' request for preliminary injunction, but its content suggests it is a response to the Defendants' motions to dismiss, (ECF Nos. 18-20). Thus, Defendants file this reply. *See* Local Rule 7.1(f). However, if Plaintiffs insist their filing, ECF No. 24, is a reply, then Plaintiffs have failed to timely file a response to the motions to dismiss. *See* Local Rule 7.1(e). Assuming Plaintiffs will agree their filing was a response to the motions to dismiss, Defendants reply. If not, the Defendants request the Court decide the motions to dismiss solely based on the Defendants' filings.

---

[1] Plaintiffs again incorrectly list Manny Pelaez as a defendant. (ECF No. 24, at 5 [¶ 2]). Mr. Palaez is a San Antonio council-member and a defendant in a different lawsuit brought by one of the Plaintiffs. *See Brewer v. Nirenberg,* Civil Action No. 17-CV-837-DAE (W.D. Tex.).

## II. Plaintiffs' Surrender of Various Claims

Plaintiffs alleged ownership interests in the Pioneer Cemetery Park and the Confederate Cemetery, sought to quiet title, claimed copyright violations, sought declaratory relief, alleged damage to the Lee statue, claimed some type of estoppel, and sought specific performance. (ECF No. 10). Defendants made a facial and factual challenge to Plaintiffs' standing to assert any of these claims and also asserted Plaintiffs had failed to state a valid claim based on any of these theories. (*See* ECF No. 19 at 11-14, 16-18, 22-27). Defendants also argued that any claim regarding the removal of the Lee statue was moot. (*Id.* at 21). With the exception of their claim of free speech infringement, Plaintiffs did not respond and offered no evidence, authority, or argument.[2] Defendants' motions to dismiss these claims should be granted.

## III. Plaintiffs Failed to Allege Standing for A Free Speech Claim

As to their claims concerning free speech, Defendants could only make a facial challenge to standing under a Rule 12(b)(6) standard because of the lack of any factual allegations concerning the Plaintiffs or claimed injuries. (ECF No. 19 at 14-15). Ignoring the standards of review for facial challenges to standing, Plaintiffs now make arguments based on unalleged factual claims. (ECF No. 24 at 9-15). Defendants object to consideration of these new unalleged assertions. New allegations in the response to the motion to dismiss are "not appropriately considered in a Rule 12(b)(6) motion, which evaluates the sufficiency of the complaint itself and does not consider allegations not contained in the pleadings." *Coach, Inc. v. Angela's Boutique*, No. H-10-1108, 2011 WL 2634776, at *2 (S.D. Tex. July 5, 2011). Moreover, the need to rely on unalleged assertions is a concession that standing for the claim was not alleged.

---

[2] In a footnote, Plaintiffs claim they have evidence disputing some of the City's evidence. (ECF No. 24 at 23, note 4). No evidence was provided.

Even if the Court should consider these unalleged matters, a basis for standing has not been stated. Plaintiffs repeatedly claim that the removal of Confederate symbols causes them injuries because it infringes on their minority political viewpoint. (ECF No. 24 at 8-16). Yet, Plaintiffs fail to explain just how removal causes any infringement.

First, removal is government speech and the First Amendment Free Speech Clause does not apply; therefore, viewpoint discrimination analysis is inapplicable. *Matal v. Tam*, 137 S. Ct. 1744, 1757 (2017) ("[t]he Free Speech Clause does not require government to maintain viewpoint neutrality when its officers and employees speak"); *Walker v. Tex. Div., Sons of Confederate Veterans, Inc*., 135 S. Ct. 2239, 2253 (2015) ("just as Texas cannot require SCV to convey 'the State's ideological message,' … SCV cannot force Texas to include a Confederate battle flag on its specialty license plates."); *Pleasant Grove City v. Summum*, 555 U.S. 460, 467 (2009) ("[t]he Free Speech Clause restricts government regulation of private speech; it does not regulate government speech."); *Chiras v. Miller*, 432 F.3d 606, 620 (5th Cir. 2005) ("the selection of textbooks by the state for use in public school classrooms is government speech, and is not subject to the forum analysis … or the viewpoint neutrality requirement"); *Freedom from Religion Found., Inc. v. City of Warren, Mich*., 707 F.3d 686, 690 (6th Cir. 2013) ("Because the display amounts to government speech and because the First Amendment does not prohibit a government from making content or viewpoint distinctions when it comes to its own speech, the City did not violate the Foundation's free-speech rights by refusing to add the Foundation's sign."). No possible infringement of free speech is alleged and, therefore, no possible harm is alleged and Plaintiffs lack standing.

Second, there are no assertions, alleged or unalleged, that Plaintiffs have been restricted in any way from exercising their First Amendment rights. There are no claims that they have been

silenced, threatened to remain silent, censored, or otherwise precluded from or punished for the expression of a particular view. Instead, Plaintiffs seek to impose their unstated political viewpoint on everyone else through government-owned property. No such First Amendment right exists. Again, no possible infringement of free speech is alleged and, therefore, no possible harm is alleged. *See Machete Production LLC v. Page*, 809 F.3d 281, 289-90 (5th Cir. 2015).

Third, Plaintiffs' claim of harm is only a generalized grievance. Plaintiffs do not even assert that they have ever visited or ever saw any of the Dallas Confederate symbols. Standing is not placed in the hands of those who use it as a vehicle to vindicate a value interest no matter how committed or zealous they are to that value. *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2663 (2013). Furthermore, the purported injury is not distinct from anyone else's other than Plaintiffs' claim of greater interest.

In the cases involving removal of Confederate monuments or other statues or memorials, the courts have held such claims are generalized grievances and that the plaintiffs had no standing. *See Moore v Bryant*, 853 F.3d 245 (5th Cir. 2017) (holding plaintiff lacked standing to complain about the presence of the Confederate battle flag as part of the state flag of Mississippi); *Brewer v. Nirenberg*, No. SA:17-CV-837-DAE (W.D. Tex. Aug. 31, 2017) (copy attached as Defs.' App'x at 124-132, ECF No. 20 at 127-132) (rejecting taxpayer standing status to challenge removal of Confederate monument); *Callan v. Fischer*, No.3:16-CV-734-TBR, 2017 WL 4273106, *4 (W.D. Ky. Sept. 26, 2017) (holding plaintiff's complaint about removal of a Confederate monument was no more than a generalized grievance and failed to confer standing); *Bray v. Fenves*, No. 06-15-00075-CV, 2016 WL 3083539 (Tex. App.—Texarkana Mar. 24, 2016, pet. denied) (plaintiffs only had a generalized grievance concerning removal of confederate monuments).

Plaintiff Patterson also claims standing under a lesser standard that municipal taxpayers may have standing to enjoin illegal use of taxpayer funds by a municipal entity. (ECF No. 24 at 6-7, 22-23). *See Ehm v. San Antonio City Council*, 269 Fed. Appx. 375, 377 (5th Cir. 2008). The contention fails on multiple grounds. First, there are no plausible allegation of any illegal activity. Plaintiffs' pleading establishes only government speech is involved. Second, while Patterson claims to be a resident taxpayer, that allegation is insufficient as it does not allege whether or not he has paid taxes to the City. Payment of sales taxes are paid to the State, not the City, and "paying sales tax does not confer taxpayer standing upon a party." *Williams v. Lara*, 52 S.W.3d 171, 180 (Tex. 2001). Third, Patterson seeks more than to prevent the expenditure of funds but rather seeks to compel the expenditure of funds through the request to return the Lee statute. Fourth, Patterson does not allege there has been an expenditure of taxpayer funds. Instead, Patterson references the City's resolution directing the City Manager to transfer funds for the removal of the Lee statute. (ECF No 10 at 9 [¶ 31]).[3] However, the resolution states there is to be a transfer from "excess revenue" and the City Manager is to seek private funding to reimburse the cost. (Defs.'; App'x at 13; ECF No. 20 at 16). Finally, to the extent there is any continuing difference between the standard for taxpayer standing against a state and a municipality, as acknowledged in Plaintiffs' brief, (ECF No. 24 at 7, note 1), that difference is based on antiquated views of municipalities and corporations held in the 1800's. Dallas, as a home-rule city, has all of the power of the State, except as specifically withdrawn by the State; Dallas has a larger population than several states and the lack of a direct impact is equally remote; and the basis for the historical formation of municipalities has no relevance to how modern municipalities operate today. Patterson failed to allege taxpayer standing.

---

[3] Plaintiffs incorrectly allege the resolution was a transfer of funds for the removal of all public Confederate monuments. (*See* Defs.'; App'x at 13; ECF No. 20 at 16).

5

Plaintiffs make several assertions that the Dallas Confederate monuments are subsidized public art and that this somehow alters the analysis of or creates an exception to government speech. (ECF No. 24 at 9, 14,16, 16, 21, 23). Subsidized public art is not involved and if it was, no exception exists.[4]  When government speech is involved, the Free Speech Clause is inapplicable, regardless of the source of funding. *See Matal*, 137 S. Ct. at 1757 (2017); *Walker*, 135 S. Ct. at 2245; *Summum,* 555 U.S. at  467-68, 470; *Rust v. Sullivan*, 550 U.S. 173, 193-94 (1991); *Fed. Election Commn v. Mass. Citizens for Life, Inc.,* 479 U.S. 238, 256 n. 9 (1986) ("[T]here is no right to have speech subsidized by the Government.").

In conclusion, Plaintiffs have failed to meet their burden to establish standing to assert any First Amendment claim.  *See Williams v. Parker,* 843 F.3d 617, 622-23 (5th Cir. 2016) (stating that "bare assertions" or "unadorned contentions" of violations of First Amendments rights are insufficient to confer standing).  *Callan*, 2017 WL 4273106, at *3-4 (holding plaintiff failed to demonstrate removal of Confederate monument caused him to suffer or would cause him to suffer an injury in fact or affect him in a personal and individual way and therefore lacked standing).  The case should be dismissed because Plaintiffs lack standing.

### IV.     Only a Political Question is Presented and There is no Justiciable Claim

The political question doctrine excludes from judicial review issues that revolve around policy choices and "value determinations" constitutionally committed to the other branches of government for resolution because courts are ill-suited and underequipped to formulate policies or develop standards for matters that are not legal in nature. *See Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 (1986).  Political questions are considered nonjusticiable and therefore

---

[4] There was no public subsidy of the two monuments at issue.  The Lee statue was donated by the Dallas Southern Memorial Association and the Confederate Memorial in Pioneer Park was donated by the Daughters of the Confederacy.  (*See* Defs.' Resp. App'x at 32-33, 109-110; ECF No. 22 at 36-37, 113-114).

6

not a "case or controversy" as defined by Article III of the federal Constitution. *Occidental of Umm al Qaywayn, Inc. v. A Certain Cargo of Petroleum Laden Aboard Tanker Dauntless Colocotronis*, 577 F.2d 1196, 1202 (5th Cir. 1978). The political question doctrine arises from the separation of powers and recognition of "the limitation of the judiciary as a decisional body." *Id*. at 1203, *citing Coleman v. Miller*, 307 U.S. 433 (1939). In *Baker v. Carr*, 369 U.S. 186, 217 (1962), the Supreme Court identified six factors to determine if a political question is presented and, here, all six support a finding of a political question.

The first factor is whether there is a textually demonstrable constitutional commitment of the issue to a coordinate political department. *Baker*, 369 U.S. at 217. The second factor is whether there is a lack of judicially discoverable and manageable standards for resolving the issue. *Id.* In their response, Plaintiffs merely state that constitutional issues are within the purview of the courts and have a long history of resolving constitutional questions. (ECF No. 24 at 18-19). Plaintiffs have cited no authority for the proposition that courts are well suited or equipped to determine what monuments, memorials, names, or symbols should or should be not be placed or removed from government property or what standard of review should be used. Government speech and generalized grievances are not proper issues for review by the courts.

The final four factors are interrelated and ask whether it is impossible to resolve the issue without an initial policy determination of a kind clearly for nonjudicial discretion; whether it is impossible for a court to undertake an independent resolution without expressing a lack of the respect due the other branches of government; whether there is an unusual need for unquestioning adherence to a political decision already made; and whether there is the potential of embarrassment from multifarious pronouncements by various governmental entities and branches on one question. *Baker*, 369 U.S. at 217. In their response, Plaintiffs merely state that the Court has the unique

7

power to decide constitutional questions and the appellate process exists "to harmonize disparate decisions". (ECF 24 at 19-20). The response fails to address that the symbols a local government chooses to use or not use is clearly a nonjudicial policy decision; that any judicial decision would disrespect that local government's political policy decision; that the events in Charlottesville present an unusual need for adherence to the political decision already made and similar decisions about to be made; and that local governments are going to handle Confederate symbols uniquely and individually based on the particular symbol and the particular interests, policies, and politics of each local government. Respectfully, these decisions should remain with local elected officials and not the courts. *See Bd. of Regents of Univ. of Wisc. Sys. v. Southworth*, 529 U.S. 217, 235 (2000) ("When the government speaks, … it is, in the end, accountable to the electorate and the political process for its advocacy. If the citizenry objects, newly elected officials later could espouse some different or contrary position.")

### V. Plaintiffs Have Failed to State a Claim for Free Speech Infringement

Regarding the failure to state any claim, Plaintiffs only address the contention that their freedom of speech was violated. (ECF No. 24 at 20-23). First, Plaintiffs assert that Defendants have not answered and pursuant to Rule 8(b)(6) of the Federal Rules of Civil Procedure have admitted their allegations. (ECF No. 24 at 21-22). Plaintiffs ignore that Rule 12(a)(4)(A) provides that if a defendant files a Rule 12 motion to dismiss, an answer does not need to be filed until 14 days after the court denies the motion or postpones its decision to trial. Fed. R. Civ. P. 12(a)(4)(A). *See Leeds v. Texas Dept. of Family and Protective Serv*s, No. 3:14–CV–3578–N–BK, 2015 WL 4736567, *4 (N.D. Tex. Aug. 10, 2015) ("[c]ontrary to Plaintiffs' arguments, a defendant is not required to answer a lawsuit until a Rule 12 motion to dismiss is ruled on by the court."). The Court has not denied Defendants' motion to dismiss and has not postponed its decision until trial. Accordingly, Defendants' answer is not yet due.

Throughout their response, Plaintiffs make the conclusory claim that their pleadings are sufficient. (ECF No. 4 at 20-23). No argument, explanation, or authority is offered to support the claim. The remainder of Plaintiffs' arguments is a repeat of their contentions about standing and subsidized public art. (ECF No. 24 at 21, 22-23). Those contentions have already been addressed above.

Plaintiffs have failed to state a claim against Defendants. As the court in *United Veterans Mem'l & Patriots Ass'n of City of New Rochelle v. City of New Rochelle*, 72 F. Supp. 3d 468, 478 (S.D. N.Y. 2014) aff'd 615 Fed. Appx. 693 (2nd Cir. 2015) held:

> the City has a valid interest in expressing the message it chooses through its [symbols], and may decide to avoid speech that it believes will be perceived by some of its constituents as divisive. Indeed, because it is the City … that is perceived as the speaker, the City is the entity accountable for whatever message observers perceive in [the symbol]. Plaintiffs are not prevented from expressing their own views through other channels … Their private speech is not being inhibited by the City's decision to take down [the symbol], but the City's expressive rights would be diminished were this Court to order the City to display [the symbol] against its wishes.

The case should be dismissed.

## VI.   CONCLUSION

WHEREFORE, PREMISES CONSIDERED, the Defendants request that the Court grant Defendants' motions to dismiss in whole, or alternatively in part, and grant Defendants such other relief as the Court finds just.

Respectfully submitted,

CITY ATTORNEY OF THE CITY OF DALLAS

Larry E. Casto
Dallas City Attorney

*/s/  Charles S. Estee*
Stacy Jordan Rodriguez
Executive Assistant City Attorney
Texas Bar No. 11016750
stacy.rodriguez@dallascityhall.com
Charles Estee
Senior Assistant City Attorney
Texas Bar No. 06673600
charles.estee@dallascityhall.com
7DN Dallas City Hall
1500 Marilla Street
Dallas, Texas 75201
Telephone: 214-670-3519
Facsimile: 214-670-0622

## CERTIFICATE OF SERVICE

I certify that on the 27th day of October 2017, the foregoing document was served on counsel of record for Plaintiffs via the Court's electronic filing manager.

*/s/ Charles S. Estee*
Charles S. Estee