IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HIRAM PATTERSON and TEXAS DIVISION, SONS OF CONFEDERATE VETERANS, INC., | § § § § | |
| Plaintiffs, | § § | Civil Action No. 3:17-CV-2361-D |
| VS. | § § | |
| MIKE RAWLINGS, In His Official Capacity as Mayor of the City of Dallas, et al., | § § § § § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

The court must decide whether plaintiffs have standing to challenge the City of Dallas' ("City's") removal of a statue of General Robert E. Lee from City property and to bring claims related to the removal of other Confederate monuments and to title to two cemeteries located within the City of Dallas. Concluding that plaintiffs lack standing, the court grants defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(1) and dismisses this action without prejudice by judgment filed today.

I

In 2017 the City's Mayor and City Council adopted a resolution ("Resolution") directing the City Manager to immediately remove the Alexander Phimster Proctor monument of Robert E. Lee at Lee Park ("Lee Statue"), located on City property, and safely store it until a mayoral task force ("Task Force") could make recommendations concerning

the statue's disposition. The Resolution authorized the City Manager to transfer funds or appropriate funds from excess revenue to remove the Lee Statue and to take appropriate actions to seek private funding to reimburse the expenses associated with this action.

The same day the Resolution was adopted, plaintiffs Hiram Patterson ("Patterson") and Texas Division, Sons of Confederate Veterans, Inc. ("SCV") filed this lawsuit against the Mayor and City Council, in their official capacities, alleging violations of plaintiffs' constitutional rights to free speech and due process and seeking a temporary restraining order ("TRO") preventing the removal of the Lee Statue and Confederate monuments at Pioneer Park in Dallas. The court temporarily restrained the removal of the Lee Statue. At the conclusion of a hearing held the following day, the court concluded that plaintiffs had failed to show that they were entitled to a restraining order and dissolved the TRO.

A few days after the court dissolved the TRO, the City removed the Lee Statue and placed it in storage. Plaintiffs then filed an amended complaint and a second amended complaint ("SAC"). In the SAC, plaintiffs bring a claim under 42 U.S.C. § 1983 for alleged violations of their First Amendment free speech rights. They also assert that the City breached SCV's copyright interest in the Lee Statue; that the City breached the reversionary term in the grant of title in the Pioneer Park Cemetery; and that title to the Confederate Cemetery resides in the SCV because title was never delivered, and the City has not exercised possession of the property. Plaintiffs seek damages and declaratory and injunctive relief.

Defendants now move under Rules 12(b)(1) and 12(b)(6) to dismiss the SAC.[1] Plaintiffs oppose the motion.

II

The court first considers defendants' motion to dismiss under Rule 12(b)(1) for lack of standing.

A

"[T]he requirement that a claimant have 'standing is an essential and unchanging part of the case-or-controversy requirement of Article III.'" *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733 (2008) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Standing "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

It is well-settled that "the irreducible constitutional minimum of standing contains three elements." *Lujan*, 504 U.S. at 560. These elements are (1) an injury-in-fact that is concrete and actual or imminent, not hypothetical; (2) a fairly traceable causal link between the injury and the defendant's actions; and (3) that the injury will likely be redressed by a favorable decision. *See, e.g., Bennett v. Spear*, 520 U.S. 154, 167 (1997); *Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009). To obtain injunctive relief, a plaintiff must be "likely to suffer future injury." *City of L.A. v. Lyons*, 461 U.S. 95, 105 (1983). "Past

---

[1]Several other motions are currently pending, *see infra* § V, including plaintiffs' motion for preliminary injunction. Because the court is dismissing this action today under Rule 12(b)(1) for lack of standing, it denies plaintiffs' motion for a preliminary injunction.

exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief[.]" *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974). The threat of future injury to the plaintiff "must be both real and immediate, not conjectural or hypothetical." *Lyons*, 461 U.S. at 102 (internal quotation marks and citations omitted).

Prudential standing, by contrast, does not emanate from the Constitution, and it instead "embodies 'judicially self-imposed limits on the exercise of federal jurisdiction.'" *Cibolo Waste, Inc. v. City of San Antonio*, 718 F.3d 469, 474 (5th Cir. 2013) (quoting *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004)). The doctrine asks

> whether a plaintiff's grievance arguably falls within the zone of interests protected by the statutory provision invoked in the suit, whether the complaint raises abstract questions or a generalized grievance more properly addressed by the legislative branch, and whether the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties.

*Ass'n of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 363 (5th Cir. 1999).

B

When challenging subject matter jurisdiction under Rule 12(b)(1), a party can make a facial attack or a factual attack. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981). If the party merely files its Rule 12(b)(1) motion, it is considered a facial attack, and the court looks only at the sufficiency of the allegations in the pleading and assumes them to be true. *Id.* If the allegations are sufficient to allege jurisdiction, the court must deny the motion. *Id.* This is akin to a Rule 12(b)(6) motion in that the "pleading's allegations are presumed to be true, and '[i]f those allegations sufficiently allege a claim for recovery the

complaint stands and the federal court must entertain the suit.'" *Vinmar Overseas, Ltd. v. OceanConnect, LLC*, 2012 WL 3599486, at *4 (S.D. Tex. Aug. 20, 2012) (quoting *Jones v. SuperMedia Inc.*, 281 F.R.D. 282, 286 (N.D. Tex. 2012) (Boyle, J.)).

A party can also make a factual attack on subject matter jurisdiction by submitting evidence, such as affidavits or testimony. *IBEW-NECA Sw. Health & Benefit Fund v. Winstel*, 2006 WL 954010, at *1 (N.D. Tex. Apr. 12, 2006) (Fitzwater, J.) (citing *Paterson*, 644 F.2d at 523). "A factual attack on the subject matter jurisdiction of the court . . . challenges the facts on which jurisdiction depends and matters outside of the pleadings, such as affidavits and testimony, are considered." *Vinmar Overseas*, 2012 WL 3599486, at *4 (quoting *Oaxaca v. Roscoe*, 641 F.2d 386, 391 (5th Cir. Unit A April 1981)). The "court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. May 1981). "[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* The plaintiff in a factual challenge, as the party seeking to invoke jurisdiction, must "submit facts through some evidentiary method and . . . prov[e] by a preponderance of the evidence that the trial court does have subject matter jurisdiction." *Paterson*, 644 F.2d at 523.

III

The court begins with defendants' contention that the evidence establishes that plaintiffs lack standing, which constitutes a factual attack on the court's subject matter

jurisdiction.

A

The court first considers plaintiffs' copyright claim. In the SAC, plaintiffs allege:

> [w]hen the City removed the [Lee Statue], it separated the pedestal from the bronze monument that had been one integral design of the sculptor and had been intended to remain in perpetuity. The City intentionally and with gross negligence destroyed and mutilated an artistic work of recognized international stature, thereby, infringing the sculptor's estate's copyright.

SAC ¶ 23; *see also id.* ¶ 35 ("Defendants willfully infringed the Proctor Estate's copyrighted work."). In support of their request for preliminary injunction, plaintiffs contend that "the Proctor Estate has [the] copyright, has orally agreed to assignment of title to the SCV, and defendants have infringed [the] copyright by damaging the [Lee Statue], as well as removing the Monument from permanent public display in Lee park." *Id.* ¶ 62 (footnote omitted). In a footnote, plaintiffs contend that SCV and the Proctor Estate "are negotiating a written assignment of the Estate's copyright interest to the SCV." *Id.* ¶ 62 n.7.

Defendants move to dismiss plaintiffs' copyright claim, contending that plaintiffs do not have even a potential interest in the copyright to the Lee Statue. In support, defendants cite an email from Laura Proctor Ames ("Ames"), on behalf of the Proctor Foundation, in which Ames states that "the Proctor Foundation is not involved with any legal complaint against the City of Dallas," Ds. App. 42, does not approve of being included in the SAC, and is "not in any way connected to the attorney who prepared [the SAC], or the organization filing the complaint," *id*. Ames also states that she had spoken with plaintiffs' attorney "and

he acknowledged we were included without our approval and agreed to remove us immediately." *Id.* Defendants contend that this evidence establishes plaintiffs' lack of standing for any claimed copyright violation.

Plaintiffs do not respond to defendants' motion to dismiss their copyright claim, do not dispute defendants' evidence that SCV has no interest or even potential interest in the copyright to the Lee Statue, and do not offer any evidence that would demonstrate that they suffered any injury-in-fact as a result of any alleged copyright violation. "[O]nly two types of claimants have standing to sue for copyright infringement under the Copyright Act: (1) owners of copyrights, and (2) persons who have been granted exclusive licenses by owners of copyrights." *Isbell v. DM Records, Inc.*, 2004 WL 1243153, at *4 (N.D. Tex. June 4, 2004) (Fish, C.J.). The undisputed evidence shows that plaintiffs do not own the copyright to the Lee Statue, have not been granted an exclusive license by the copyright owner, and are not in the process of negotiating any such ownership or license rights. Accordingly, the court grants defendants' motion to dismiss plaintiffs' copyright claim alleged in count 1 of the SAC.[2]

B

The court now turns to plaintiffs' claim that defendants breached the reversionary

---

[2]Defendants also make a facial attack on plaintiffs' copyright claim, contending that plaintiffs have failed to allege an injury in fact, to allege causation between defendants' action and any claimed injury, and to allege how any claimed injury would be redressed by a favorable decision. The court agrees that plaintiffs have failed to plead standing with respect to their copyright claim.

term in the grant of title in the Pioneer Park Cemetery.

In count 3 of the SAC, plaintiffs allege that the City took title to Pioneer Park Cemetery from Tannehill Lodge No. 52 and Dallas Lodge No. 44 (the "Lodges"), with the understanding that the City would "use and maintain" the property as a "Memorial Cemetery Park." SAC ¶ 53. Plaintiffs assert that, by publicly announcing that it would remove the Confederate War Memorial in Pioneer Park Cemetery, the City "refus[ed] and fail[ed] to use the memorial park for the purpose mandated in the transfer of title to the City," and that, as a result, title must revert to the Lodges. *Id.* ¶¶ 53, 55. Without citing supporting authority, plaintiffs request that the court "[e]nter judgment that quiets title to Pioneer Cemetery Park in favor of plaintiffs." *Id.* ¶ 71(f).

Defendants move to dismiss count 3, contending that plaintiffs have failed to allege, and there is no supporting evidence, that any of the Lodges' interests or rights was ever transferred to plaintiffs; that Dallas Lodge No. 44 expressly denies conveying any interest to plaintiffs, Ds. App. 133-34; that plaintiffs do not allege that the Confederate monument is located on the property previously owned by the Lodges (and the documents located so far indicate that it was not placed on the local Lodges' former property); and that the evidence therefore establishes that plaintiffs lack standing for any claimed interest in Pioneer Cemetery Park.

As with plaintiffs' copyright claim, they have failed to respond to defendants' motion to dismiss count 3. Because plaintiffs have neither pleaded nor introduced any evidence showing that they have any interest in Pioneer Cemetery Park, the court grants defendants'

motion to dismiss count 3 based on plaintiffs' lack of standing.[3]

C

The court next considers plaintiffs' claim for a judgment quieting title to the Confederate Cemetery

In count 4 of the SAC, plaintiffs allege that the Sterling Price Camp of the United Confederate Veterans—to which SCV is the successor association—gave the Confederate Cemetery to the Dallas Parks and Recreation Department in 1936. They assert that, because no record exists of conveyance of title, title still resides with the grantor—the SCV—and they request that the court enter judgment quieting title to the Confederate Cemetery in their favor.

Defendants move to dismiss count 4, contending that plaintiffs lack standing. They have produced evidence that, contrary to plaintiffs' allegations, the property was conveyed to the City on November 17, 1936, and the warranty deed was recorded in the Dallas County

---

[3]As with plaintiffs' copyright claim, defendants also mount a facial challenge to plaintiffs' claim related to Pioneer Cemetery Park. Defendants contend that plaintiffs do not allege any relationship to the original grantors or otherwise explain how they have any rights or interest in the property; fail to allege that the monument is even located on the property formerly owned by the Lodges; and fail to allege how removing a monument that was moved to the property after its transfer to the City violates maintaining the property as a memorial cemetery park. In sum, defendants posit that plaintiffs have failed to allege an injury in fact, causation, or that any claimed injury would be redressed by a favorable decision. The court agrees with these grounds for defendants' motion and holds that plaintiffs have failed to plead standing with respect to count 3.

land records[4]; that, contrary to the allegations in the SAC, the City has performed the mowing, maintenance, and litter removal at the cemetery and has not authorized or approved anyone else's taking such action at the Confederate Cemetery; and that Sterling Price Camp Number 31, a unit of United Confederate Veterans, became inactive in 1917, SCV was not formed until 2001, and none of SCV's corporate filings suggests that it is a successor to Sterling Price Camp Number 31.

Plaintiffs do not respond to defendants' motion to dismiss count 4. Because plaintiffs have failed to introduce any evidence that they have an interest in the Confederate Cemetery, the court grants defendants' motion under Rule 12(b)(1) to dismiss count 4 on the ground that plaintiffs lack standing.[5]

IV

The court now turns to defendants' contention—framed as a facial challenge to this court's subject matter jurisdiction—that plaintiffs lack standing to bring a First Amendment

---

[4]Defendants contend that plaintiffs have misstated a question and answer page from the Mayor's Task Force. Defendants maintain that plaintiffs allege that certain statements are admissions of non-ownership when, in fact, the actual statements are that, as of the time the questions and answers were written, there was no official action found accepting the cemetery, but that further research was ongoing.

[5]Defendants also bring a facial challenge to plaintiffs' quiet title action in the Confederate Cemetery. They contend that plaintiffs have not alleged a plausible basis for their ownership of, or any legal interest in, the Confederate Cemetery; that plaintiffs do not plausibly allege any basis to believe they have any of the rights of the Sterling Camp Number 31; and that plaintiffs do not allege any type of injury from the supposed lack of filing of the record of conveyance. The court agrees and holds for these and the reasons discussed above that plaintiffs lack standing to assert the claim alleged in count 4.

claim.

A

Defendants maintain that plaintiffs' First Amendment claim must be dismissed because plaintiffs do not allege any concrete and particularized or actual or imminent injury that has occurred or will occur to them caused by moving the Lee Statue or any other action by the City regarding its other property; plaintiffs do not plead how their injuries are different or distinct from the general public's; and, to the extent Patterson asserts standing based on his status as a city taxpayer, he has not alleged and cannot demonstrate facts that would support a suit in that narrowly-prescribed capacity.

Plaintiffs respond[6] that, as a resident taxpayer of the City, Patterson has standing to challenge the City's allegedly unconstitutional removal and planned removal of Confederate monuments; that plaintiffs have suffered a concrete injury-in-fact because the City has removed the Lee Statue and is planning to remove the Confederate War Memorial in Pioneer Park Cemetery, the Confederate Memorial in Confederate Cemetery, and the Confederate public art in Fair Park, which has infringed and will infringe plaintiffs' political viewpoint communicated by the monuments; that their injury is particularized because it is distinct from any effect on the general public, and SCV membership is limited in number and restricted to males who can prove descent from, and blood kinship with, Confederate veterans; that

---

[6]Although plaintiffs' brief is entitled "plaintiffs' reply brief for motions for preliminary injunction & declaratory judgment," the brief is in substance a response to defendants' motion to dismiss. Accordingly, the court will therefore treat it as a response brief.

- 11 -

SCV and its members were uniquely injured because they have a dissenting political viewpoint that was communicated by the Lee Statue; that the City has imputed repugnant (and erroneous) political viewpoints onto the Lee Statue; and the City's imminent plans to remove other Confederate monuments will have the identical effect that the City's removal of the Lee Statue had, i.e., impairment of viewpoint and denial of free speech.

Defendant argue in reply that the court should not consider allegations in plaintiffs' response that are not pleaded in the SAC; that the removal of the Lee Statue and other Confederate monuments is government speech to which the First Amendment Free Speech Clause does not apply, and because no possible infringement of free speech is alleged, no possible harm is alleged and plaintiffs lack standing; that plaintiffs do not allege that they have been restricted in any way from exercising *their* First Amendment rights; and that plaintiffs' claim of harm is only a generalized grievance since plaintiffs do not assert that they have ever visited or ever saw any of the City's Confederate symbols.

B

The court first addresses whether Patterson has standing.

1

Defendants argue that Patterson lacks standing because he has not suffered an injury-in-fact. Reduced to its essence, plaintiffs' responsive argument appears to be that, because Patterson holds the political viewpoint that "the men who fought for the Confederacy in the Civil War deserve our respect," Ps. Br. 9, and because the Confederate monuments at issue also communicate the same viewpoint, the removal of these monuments from City property

somehow infringes Patterson's First Amendment rights.

The court acknowledges that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury" sufficient to satisfy Article III's standing requirement. *Id.* at 8 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). In this case, however, plaintiffs have not alleged that *Patterson* has been deprived of any First Amendment freedom for any period of time. Plaintiffs contend that Patterson holds the political viewpoint that "the men who fought for the Confederacy in the Civil War deserve our respect." *Id.* at 9. But they do not allege that the City has ever taken any action that would prevent *Patterson* from expressing this political view. They have at most alleged that Patterson *shares* the political viewpoint communicated to the general public by the Confederate monuments. This allegation, however, does not explain how the removal of Confederate monuments from City-owned property prevents Patterson from expressing *his* political viewpoint. *See, e.g., Serra v. U.S. Gen. Servs. Admin.*, 847 F.2d 1045, 1049 (2d Cir. 1988) (noting that "the Government's action in this case [(removing a sculpture from a federal plaza)] is limited to an exercise of discretion with respect to the display of its own property" and that "nothing GSA has done here encroaches in any way on Serra's or any other individual's right to communicate."). Plaintiffs have failed to cite any case in which a plaintiff's agreement with the message conveyed by someone else's speech—here, the City's—transforms that speech into the plaintiff's speech for First Amendment standing purposes. Accordingly, the court concludes that plaintiffs have failed to plausibly allege that the City's removal of the Lee Statue and forthcoming removal of other Confederate

monuments infringes *Patterson's* First Amendment free speech rights.

2

Patterson also lacks taxpayer standing. Plaintiffs do not actually plead taxpayer standing in the SAC: they allege only that Patterson "is a citizen of the State of Texas, a resident taxpayer of Dallas, and a descendant of Confederate veterans." SAC ¶ 1.[7] In their response, however, plaintiffs contend that "[s]ince Mr. Patterson is a resident taxpayer in the City of Dallas and he has contested that the removal and planned removal of the Confederate Monuments is unconstitutional, Mr. Patterson has taxpayer standing in this matter." Ps. Br. 7. The court disagrees.

It is insufficient for plaintiffs merely to allege that Patterson is a taxpayer and that the City's conduct is unconstitutional.[8] "A plaintiff [only] meets the 'injury' requirement of municipal taxpayer standing if he shows that 'he pays taxes to the relevant entity' and 'tax revenues are expended on the disputed practice.'" *Ehm v. San Antonio City Council*, 269 Fed. Appx. 375, 377 (5th Cir. 2008) (per curiam) (citing *Doe v. Duncanville Indep. Sch. Dist.*, 70 F.3d 402, 408 (5th Cir. 1995); *Cammack v. Waihee*, 932 F.2d 765, 770 (9th Cir. 1991)); *see also Freedom From Religion Found. v. Zielke*, 845 F.2d 1463, 1470 (7th Cir. 1988) (stating that "[a] plaintiff's status as a municipal taxpayer is irrelevant for standing

---

[7]Moreover, plaintiffs do not allege that Patterson *actually paid* any taxes to the City of Dallas. *See* SAC ¶ 1.

[8]The court assumes *arguendo*, for purposes of Patterson's taxpayer standing arguments, that the City's removal of Confederate monuments *is* unconstitutional.

purposes if no tax money is spent on the allegedly unconstitutional activity."); *Shea v. Brister*, 26 F.Supp.2d 943, 945 (S.D. Tex. 1998) (holding that plaintiff's status as taxpayer did not confer standing where no "expenditure of public revenues [was] utilized in connection with the acquisition, installation, preservation, maintenance, or display of the copy of the Ten Commandments" and there was a "total absence of any connection between public funds and the display challenged.").

In the SAC, plaintiffs allege that the Resolution "directs the city manager to transfer funds to remove all public Confederate monuments." SAC ¶ 31. But what the Resolution *actually* states[9] is that the City Manager is *authorized* to transfer or appropriate funds from excess revenue to remove the Lee Statue, and that he is to seek private funding to reimburse the removal expenses. *See* Ds. App. 13 (§ 7 of the Resolution, which states that "the city manager is hereby authorized to transfer funds or appropriate funds from excess revenue, as necessary, to remove the [Lee Statue]. The city manager will take all appropriate actions to seek private funding to reimburse the expenses associated with this action."). Plaintiffs do not allege that the City Manager used (or intends to use) tax revenues in connection with the removal of the Lee Statue or any other Confederate monuments, or that, assuming the City

---

[9]Defendants maintain that their standing challenge to plaintiffs' First Amendment-based § 1983 claim is facial. In deciding defendants' facial challenge to this court's jurisdiction, the court is permitted, as in a Rule 12(b)(6) motion, to consider the contents of the Resolution, which is [a publicly-available document that is] referenced in the SAC. *See Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) ("The court's review [of a Rule 12(b)(6) motion] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.").

Manager *did* use such revenue in connection with the removal of the Lee Statue, he did not obtain full reimbursement from "private funding," as the Resolution directs. Accordingly, because, at the very least, plaintiffs have failed to adequately plead that tax money was spent in connection with the removal of the Lee Statue or any other Confederate monument, the court holds that Patterson lacks taxpayer standing.

C

The court now considers whether plaintiffs have plausibly alleged that SCV has associational standing.

1

There are two ways for an organization to demonstrate standing. First, the organization can assert representational standing on behalf of its members.

> An association has standing to bring a suit on behalf of its members when: (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members.

*Texans United for a Safe Econ. Educ. Fund v. Crown Cent. Petroleum Corp.*, 207 F.3d 789, 792 (5th Cir. 2000) (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977); *Friends of the Earth, Inc. v. Chevron Chem. Co.*, 129 F.3d 826, 827-28 (5th Cir. 1997)). When a defendant contests an organization's standing based on a factual challenge to the standing of a member whose standing to sue in his own right controls the organization's standing, the Rule 12(b)(1) motion is also a factual attack.

Second, an organization may have standing on its own behalf. To establish standing on its own, the organization must show that it has constitutional standing in the same manner as any individual. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982). Because this method of establishing standing does not rely on the independent standing of any of the organization's members or any other plaintiff, a challenge to this form of standing is facial unless the defendant adduces evidence attacking a jurisdictional fact on which standing relies. Defendants have not produced any evidence challenging SCV's standing on its own behalf, and therefore the court treats this challenge as facial. *See Jones*, 281 F.R.D. at 286.

2

SCV has failed to show representational standing because the only member it identifies is Patterson, who does not have standing to bring this suit. SCV has therefore failed to show that one of its members has standing in his own right.

3

SCV has not adequately alleged organizational standing. Although plaintiffs do not separately address whether SCV has organizational standing, they contend in their response that

> [t]he SCV's purpose is to protect Confederate-American memorials, images, symbols, monuments, and gravesites for the communication of the political viewpoint that Confederate-American heroes sacrificed for a noble cause that the victors in the war have almost uniformly whitewashed from history. Individual plaintiff, the SCV, and all SCV members have made public affirmations of the values of the military service of their

- 17 -

> ancestors in the Civil War and in the restoration and reconciliation of the nation subsequently. When the City of Dallas removed [the Lee Statue] and is now threatening all other Confederate-American memorials and symbols in the city, the City's actions established past and imminent concrete injury-in-fact to plaintiffs by the infringement of their political viewpoint communicated by the Monuments. . . . The City's suppression of the political viewpoint communicated in the [Lee Statue] injured plaintiffs, because the suppressed political viewpoint is the same viewpoint that plaintiffs have long protected and promoted.

Ps. Br. 10-11, 13-14. This argument is no different from plaintiffs' standing arguments in relation to Patterson. Accordingly, for the reasons explained above, *see supra* § IV(B), the court holds that plaintiffs have failed to adequately plead that SCV has standing on its own behalf to bring a First Amendment claim.

D

Because plaintiffs lack standing to bring a First Amendment-based § 1983 claim based on the City's removal of the Lee Statue or the forthcoming removal of other Confederate monuments, the court grants defendants' motion to dismiss this claim.[10]

V

Also pending before the court are plaintiffs' motion to strike defendants' second brief, plaintiffs' amended motion to strike, plaintiffs' motion for sanctions, and defendants' objection and motion to strike affidavits. The court denies these motions.

---

[10]Because the court concludes that plaintiffs have not alleged an injury-in-fact in relation to their First Amendment claim, it does not address defendants' contention that plaintiffs have failed to plead a justiciable claim, and, instead, plead only a political question.

A

On September 15, 2017 the court filed a preliminary injunction application scheduling order that directed plaintiffs to file their supporting materials and a separate brief. Plaintiffs filed their brief on motions for preliminary injunction and declaratory judgment on September 26, 2017. After moving on September 29, 2017 to dismiss plaintiffs' SAC, defendants responded on October 12, 2017 to plaintiffs' brief on motions for preliminary injunction. Plaintiffs seek to strike defendants' October 12, 2017 response on various grounds, including that defendants have submitted a redundant pleading, that the court expressly limited defendants to a single response brief, and that defendants' second brief, although styled as a responsive pleading, is formatted as a brief. In their amended motion to strike, plaintiffs maintain that the court should strike defendants' October 12, 2017 brief because it is redundant and was submitted in violation of the court's scheduling order; the court should strike both of defendants' briefs because the briefs are legally insufficient; and, if the court does not strike defendants' second brief, it should consolidate the two briefs and permit plaintiffs to reply to the consolidated brief.

On October 27, 2017 defendants filed their reply in support of their motion to dismiss. On November 8, 2017 plaintiffs filed a motion for sanctions, characterizing the reply as a surreply and a "second unauthorized pleading," Ps. 11/8/17 Br. 3, and requesting "sanctions against defendants and defendants' attorneys for disobedience of the Court's Scheduling Order by filing unauthorized briefs or pleadings and subsequently refusing to withdraw these pleadings when given the opportunity." *Id.* at 4.

B

The court has reviewed defendants' filings and holds that they are procedurally proper. Defendants' October 12, 2017 response to plaintiffs' motion for preliminary injunction was expressly permitted by the court's preliminary injunction application scheduling order. And their October 27, 2017 reply brief filed in support of their motion to dismiss is authorized under the local civil rules. Accordingly, because defendants have complied with the requirements of the federal and local civil rules and have not violated any applicable scheduling order, the court denies plaintiffs' motions to strike and motion for sanctions.

C

Because the court is granting defendants' motion to dismiss, it denies as moot their November 3, 2017 objection and motion to strike affidavits.

\* \* \*

Accordingly, for the reasons explained, the court grants defendants' motion under Rule 12(b)(1) to dismiss plaintiffs' action for lack of standing, and it dismisses this action without prejudice by judgment filed today. All other pending motions are denied.

**SO ORDERED**.

February 7, 2018.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE